IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,　　　　:

　　　　Plaintiffs,

　　v.　　　　　　　　　　　　　　　:　　Case No. 3:13-cv-115

THE DAYTON POWER & LIGHT　　　　　　JUDGE WALTER H. RICE
CO., *et al.*,

　　　　Defendants.　　　　　　　　:

---

DECISION AND ENTRY **OVERRULING** THE "*RES JUDICATA*
DEFENDANTS'" MOTION TO DISMISS COMPLAINT OR
ALTERNATIVE MOTION TO STAY PENDING APPEAL (DOC. #99),
AND DEFENDANT THE DAYTON POWER & LIGHT COMPANY'S
MOTION TO DISMISS COUNT I ("MIGRATION CLAIM") OF THE
COMPLAINT (DOC. #138); **SUSTAINING IN PART AND OVERRULING
IN PART EACH OF THE FOLLOWING:** CERTAIN DEFENDANTS'
MOTION TO DISMISS (DOC. #100); DEFENDANT L.M. BERRY AND
CO. LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS, JOINDER
IN OTHER DEFENDANTS' MOTIONS AND ALTERNATIVE MOTION
FOR STAY (DOC. #115); DEFENDANT REYNOLDS AND REYNOLDS
CO.'S MOTION FOR JUDGMENT ON THE PLEADINGS, JOINDER IN
OTHER DEFENDANTS' MOTIONS, AND ALTERNATIVE MOTION FOR
STAY (DOC. #118); MOTION TO DISMISS OF DEFENDANT
NEWMARK LLC (DOC. #157); MOTION TO DISMISS OF DEFENDANT
LA MIRADA PRODUCTS CO., INC. (DOC. #164); DEFENDANT
FICKERT DEVCO, INC.'S MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT (DOC. #168)

---

Plaintiffs Hobart Corporation, Kelsey-Hayes Company, and NCR Corporation

filed suit against more than thirty defendants, all allegedly "potentially responsible

parties" under the Comprehensive Environmental Response, Compensation and

Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§9607 and 9613, in

connection with clean-up efforts at the South Dayton Dump and Landfill Site. Plaintiffs assert claims for cost recovery under § 107(a) of CERCLA, contribution under § 113(f)(3)(B) of CERCLA, declaratory judgment, and unjust enrichment.

This matter is currently before the Court on several motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docs. ##99, 100, 138, 157, 164, 168), and two motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Docs. ##115, 118).

I.    **Background and Procedural History**

This is the third lawsuit that Plaintiffs have filed in their effort to recover costs incurred in connection with their clean-up efforts at the South Dayton Dump and Landfill Site (the "Site"). An understanding of what transpired in the first two lawsuits is crucial to resolving the pending motions in the above-captioned case.

According to the First Amended Complaint, the Site, located in Moraine, Ohio, is contaminated with several hazardous substances, including 1,2-dichloroethene, tetrachloroethene, toluene, polychlorinated biphenyls, vinyl chloride, arsenic, barium, cadmium, chromium, mercury, nickel, lead, zinc, and polynuclear aromatic hydrocarbons, including phenanthrene, benzoanthracene, benzopyrene, and flouranthene. Doc. #144, at ¶3. The United States Environmental Protection Agency ("EPA") has proposed listing the Site on the National Priorities List.

Plaintiffs were identified as potentially responsible parties ("PRPs") under CERCLA, because they either: (1) own and operate the Site; (2) owned or operated

2

the Site when hazardous substances were disposed of there; (3) arranged for disposal or transport for disposal of hazardous substances at the Site; or (4) accepted hazardous substances for transport to the Site. *See* 42 U.S.C. § 9607 (a).

### A.   2006 ASAOC

In August of 2006, Plaintiffs and the EPA entered into an "Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study" ("2006 ASAOC"). Plaintiffs agreed to conduct a remedial investigation and feasibility study ("RI/FS") for the Site.[1] Stated objectives included the determination of the nature and extent of contamination and any current or potential threats to the public health, welfare, or the environment, the identification and evaluation of remedial alternatives, and the recovery of response and oversight costs incurred by the EPA with respect to the ASAOC. Ex. 1 to Doc. #100, ¶ 9.

In exchange, the EPA agreed not to sue or take administrative action against Plaintiffs for the "Work" that was the subject of the 2006 ASAOC or for "Future Response Costs." *Id.* at ¶ 82. The 2006 ASAOC defined "the Work" as "all activities Respondents are required to perform under this Settlement Agreement." "Future Response Costs" were defined as all costs incurred by the United States in

---

[1] "The purpose of the remedial investigation/feasibility study (RI/FS) is to assess site conditions and evaluate alternatives to the extent necessary to select a remedy. Developing and conducting an RI/FS generally includes the following activities: project scoping, data collection, risk assessment, treatability studies, and analysis of alternatives." 40 C.F.R. § 300.430(a)(2).

implementing, overseeing, and enforcing the Settlement Agreement. *Id.* at ¶ 11(i) and (x).

The parties agreed that the "Settlement Agreement constitute[d] an administrative settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2)," and that Plaintiffs were therefore entitled to protection from contribution actions for matters addressed therein. They also agreed that the Settlement Agreement constituted "an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9113 (f)(3)(B)," pursuant to which Plaintiffs "have, as of the Effective Date, resolved their liability to the United States for the Work, and Future Response Costs." The ASAOC did not prevent the parties from asserting claims for indemnification, contribution, or cost recovery against others who were not parties to it. *Id.* at ¶ 96.

### 1. *Hobart I* (Case No. 3:10-cv-195)

On May 24, 2010, Plaintiffs filed suit against eight PRPs, including Waste Management of Ohio, Inc. ("Waste Management"), The Bimac Corporation, Bridgestone Americas Tire Operations, LLC ("Bridgestone"), Cargill, Inc. ("Cargill"), The Dayton Power & Light Company ("DP&L"), Monsanto Company, Valley Asphalt Corporation, and IRG Dayton I, LLC ("IRG"). Plaintiffs asserted four causes of action in connection with the RI/FS: (1) cost recovery under CERCLA § 107(a); (2) contribution under CERCLA § 113 (f)(3)(B); (3) unjust enrichment; and (4) declaratory judgment.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants DP&L, Bridgestone, and IRG filed motions to dismiss for failure to state a claim upon which relief can be granted. On February 10, 2011, the Court issued a Decision and Entry ruling on those motions. *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 840 F. Supp.2d 1013 (S.D. Ohio 2011). The Court dismissed in part the §107(a) cost recovery claim asserted in Count 1. To the extent Plaintiffs alleged that Defendants disposed of hazardous substances directly at the Site, the allegations were sufficient to state a claim under § 107(a). However, to the extent Plaintiffs alleged that Defendants released hazardous substances on property adjacent to the Site and allowed those substances to migrate through the groundwater to contaminate the Site, Plaintiffs had failed to state a claim upon which relief could be granted.

The Court dismissed Count 2 in its entirety, finding that Plaintiffs' § 113(f) contribution claim was not filed within the applicable three-year statute of limitations and was therefore time-barred. The Court also dismissed Count 3 in its entirety, holding that because Plaintiffs had a legal duty to pay remediation costs, they were precluded from pursuing a claim for unjust enrichment. As to Count 4, which sought declaratory judgment concerning the parties' rights and responsibilities under CERCLA for the response costs incurred by Plaintiffs, the Court sustained the motion to dismiss to the same extent it had sustained the motion to dismiss the substantive claims under § § 107(a) and 113(f). *Id.*

5

On June 21, 2012, Defendant DP&L filed a motion for summary judgment on the remaining portion of Plaintiffs' § 107(a) claim and related request for declaratory judgment. Doc. #121 in Case No. 3:10-cv-195. Defendants Waste Management, Bridgestone, and Cargill joined in that motion. Docs. #125, 126, 140 in Case No. 3:10-cv-195. Defendants argued that §§ 107(a) and 113(f) of CERCLA are mutually exclusive, and that, because Plaintiffs entered into an administrative settlement under § 113(f)(3)(B) of CERCLA, resolving some of their liability to the United States, Plaintiffs were limited to a § 113(f) contribution claim, and were barred, as a matter of law, from pursuing a cost recovery claim under § 107(a).

On June 29, 2012, Plaintiffs moved for leave to file a third amended complaint, seeking to add several newly-discovered defendants, a theory of owner/ operator liability against DP&L, and allegations concerning Waste Management's successor liability. Doc. #124 in Case No. 3:10-cv-195.

### 2. *Hobart II* (Case No. 3:12-cv-213)

On June 29, 2012, Plaintiffs also filed a second lawsuit arising out of the same facts, and asserting the same four causes of action asserted in *Hobart I*. Defendants named in the second suit included Coca-Cola Enterprises, Inc., DAP Products, Inc., GlaxoSmithKline, LLC, and The Sherwin-Williams Company.

On August 15, 2012, these defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. #12 in Case No. 3:12-cv-213. They noted that, in *Hobart I*, the Court previously dismissed many of the claims

6

asserted. They further argued that the remaining claims should be dismissed for the same reason asserted in the summary judgment motions filed by the defendants in *Hobart I*, namely that a PRP with a § 113(f) contribution claim cannot also seek cost recovery under § 107(a).

### 3. February 8, 2013, Decision and Entry

On February 8, 2013, the Court entered judgment in favor of Defendants in *Hobart I and Hobart II. Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 923 F. Supp.2d 1086 (S.D. Ohio 2013). The Court held that cost recovery actions under § 107(a) and contribution claims under § 113(f) of CERCLA are mutually exclusive. Because the 2006 ASAOC was an "administrative settlement," Plaintiffs were limited to a § 113(f) contribution claim. That claim was time-barred, having been filed outside the three-year statute of limitations set forth in 42 U.S.C. § 9613 (g)(3). For the same reason, the Court dismissed the remainder of the declaratory judgment claim. The Court also denied Plaintiffs' motion for leave to file a third amended complaint in *Hobart I*, finding that the proposed amendments would be futile.

On March 4, 2013, the parties appealed the final judgments in *Hobart I* and *Hobart II* to the Sixth Circuit Court of Appeals. Nos. 13-3273, 13-3276. Those cases remain pending on appeal.

### B. 2013 ASAOC/ *Hobart III* (Case No. 3:13-cv-115)

On April 5, 2013, Plaintiffs entered into an "Administrative Settlement Agreement and Order on Consent for Removal Action" with the EPA ("2013

7

ASAOC"). The 2013 ASAOC concerns "vapor intrusion risks" at the Site, and requires Plaintiffs to perform the following "Work": (a) develop and implement a Site Health and Safety Plan; (b) conduct subsurface gas sampling, extent-of-contamination sampling, and complete an investigation to determine whether concentrations of methane at the property boundary are greater than the lower explosive limit; (c) if necessary, design and install a vapor abatement mitigation system; (d) if necessary, design and install a landfill gas extraction system designed to prevent landfill gas migration off-site; (e) develop and implement a performance sample plan; and (f) if necessary, develop and implement a landfill gas extraction system performance sample plan, and a landfill gas extraction system effluent sample plan. Ex. 1 to Doc. #1, ¶ 16.

The 2013 ASAOC also requires Plaintiffs to pay $85,968.57 to the EPA for "Past Response Costs," defined as "all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site from June 5, 2012 through September 30, 2012, plus Interest on all such costs through such date." *Id.* at ¶¶ 8, 38. In addition, Plaintiffs must pay "Future Response Costs," defined as "all costs, including but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Settlement Agreement, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Settlement Agreement on or after the Effective Date." *Id.* at ¶¶ 8, 39.

8

In exchange, the EPA agreed not to sue Plaintiffs for the Work, Past Response Costs, and Future Response Costs. *Id.* at ¶ 57. Again, the parties agreed that the 2013 ASAOC constitutes an "administrative settlement" for purposes of §§ 113(f)(2) and 113(f)(3)(B), pursuant to which Plaintiffs "have, as of the Effective Date, resolved their liability to the United States for the Work, Past Response Costs, and Future Response Costs." *Id.* at ¶ 66.

Less than two weeks after the "Effective Date" of April 5, 2013, Plaintiffs filed their third lawsuit, *Hobart III*. On August 9, 2013, Plaintiffs filed a First Amended Complaint, naming the same defendants as in *Hobart I* and *Hobart II*, along with several new PRPs that Plaintiffs had unsuccessfully tried to join in *Hobart I*.

The First Amended Complaint asserts claims against the following companies: The Dayton Power and Light Company; Waste Management of Ohio, Inc., as successor to Industrial Waste Disposal Co. Inc., and to Blaylock Trucking and Waste Removal, and to SCA Services of Ohio, Inc., and to Container Services, Inc. a/k/a Container Service, Inc., and to General Refuse Service, Inc.; Bridgestone Americas Tire Operations, LLC, as successor to The Dayton Tire & Rubber Company; Bridgestone/Firestone, Inc. f/k/a The Dayton Tire & Rubber Company; Cargill, Inc.; Monsanto Company, a/k/a Monsanto Research Company n/k/a Pharmacia Corporation; Valley Asphalt Corporation; A.E. Fickert, Inc., as successor to A.E. Fickert & Son, Inc.; City of Dayton, Ohio; Coca-Cola Refreshments USA, Inc., as successor to Dayton Coca-Cola Bottling Co.; Conagra Grocery Products

Co., LLC, as successor to McCall Corp.; Cox Media Group Ohio, Inc., as successor to Dayton Daily News and to Dayton Journal Herald; DAP Products, Inc., as successor to DAP, Inc.; Day International, Inc., as successor to The Dayton Rubber Company; Dayton Industrial Drum, Inc.; Dayton Board of Education; Fickert Devco, Inc., f/k/a A.E. Fickert & Son, Inc.; Flowserve Corporation, as successor to Duriron Corporation; Franklin Iron & Metal Corp.; Harris Corporation, as successor to Harris-Seybold Co.; Hewitt Soap Works, Inc., as successor to The Hewitt Soap Company, Inc.; Kimberly-Clark Corporation; La Mirada Products Co., Inc., f/k/a DAP, Inc.; L.M. Berry and Company LLC, as successor to L.M. Berry and Company; Newmark LLC, f/k/a Van Dyne-Crotty, Inc.; The Ohio Bell Telephone Company; P-Americas, LLC, as successor to Pepsi-Cola General Bottlers of Ohio, Inc.; The Peerless Transportation Company; PPG Industries, Inc.; The Reynolds and Reynolds Company; The Sherwin-Williams Company; The Standard Register Company; University of Dayton; Van-Dyne Crotty Co., as successor to Van Dyne-Crotty, Inc.; and "John Doe" Corporations. Doc. #144.

In the First Amended Complaint, Plaintiffs allege that they have incurred and will incur necessary response costs: (1) in performance of the Work required by the 2013 ASAOC, including costs of investigation, testing, evaluating, and removal of the contaminants; and (2) in identifying other PRPs. Doc. #144, ¶¶ 6-7. Plaintiffs again seek cost recovery for Response Costs and Future Response Costs under § 107(a) of CERCLA, and contribution under § 113(f)(3)(B) of CERCLA. They also again assert claims of unjust enrichment and declaratory judgment.

## II.   Motions to Dismiss/Motions for Judgment on the Pleadings

Each named Defendant in *Hobart III* has joined in one or both of the following motions: (1) The "*Res Judicata* Defendants'" Motion to Dismiss Complaint or Alternative Motion to Stay Pending Appeal, Doc. #99; and (2) Certain Defendants' Motion to Dismiss, Doc. #100.  Both motions urge dismissal of Plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  Separate Motions for Judgment on the Pleadings filed by L.M. Berry & Co., LLC, Doc. #115, and Reynolds and Reynolds Co., Doc. #118, and Motions to Dismiss filed by Newmark LLC, Doc. #157, La Mirada Products, Doc. #164, and Fickert Devco, Inc., Doc. #168, simply reassert the same arguments raised in Documents ##99 and 100.

Defendant DP&L has also filed a separate Motion to Dismiss Count I ("Migration Claim") of the Complaint, Doc. #138, on grounds not relevant to the other defendants.[2]

---

[2]   Defendants DAP Products, Inc., Hewitt Soap Works, Inc., and Van Dyne-Crotty Co. also filed Motions to Dismiss.  Docs. ##152, 153, and 172.  In addition to joining the arguments raised in Documents 99 and 100, they argue that the First Amended Complaint does not contain sufficient allegations to support claims of successor liability.  The Court has addressed the "successor liability" arguments in a separate Decision and Entry.  Likewise, Defendant Cargill, Inc., has filed a motion for summary judgment, Doc. #106, which is the subject of a separate Decision and Entry.

A.    **Standard of Review**

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain

"a short and plain statement of the claim showing that the pleader is entitled to

relief." The complaint must provide the defendant with "fair notice of what the

. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal

of a complaint on the basis that it "fail[s] to state a claim upon which relief can be

granted." The moving party bears the burden of showing that the opposing party

has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir.

1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a

defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief

even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d

635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe

the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v.

City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at

476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the

complaint must contain "enough facts to state a claim to relief that is plausible on

its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the

12

plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint

must be dismissed." *Id.* Although this standard does not require "detailed factual

allegations," it does require more than "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not

unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Legal conclusions

"must be supported by factual allegations" that give rise to an inference that the

defendant is, in fact, liable for the misconduct alleged. *Id*. at 679.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are

closed - but early enough not to delay trial - a party may move for judgment on the

pleadings." A motion for judgment on the pleadings under Rule 12(c) is subject to

the same standards as a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Lindsay*

*v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*,

829 F.2d 10, 11 (6th Cir. 1987).

### B. *Res Judicata*/Collateral Estoppel

#### 1. *Res Judicata* Defendants' Motion to Dismiss/Alternative Motion to Stay (Doc. #99)

DAP Products, Inc., and GlaxoSmithKline LLC, filed "The '*Res Judicata*

Defendants' Motion to Dismiss Complaint or Alternative Motion to Stay Pending

Appeal." Doc. #99.  This motion has been joined by numerous other defendants.

They argue that Plaintiffs' claims are barred by the doctrine of *res judicata* and/or

the doctrine of defensive, non-mutual collateral estoppel.  They also argue that the

filing of *Hobart III* constitutes an improper collateral attack on the Court's previous

13

Decision and Entry overruling Plaintiffs' motion for leave to file a third amended complaint in *Hobart I*. In the alternative, the *Res Judicata* Defendants urge the Court to stay this case pending appeal of the decisions in *Hobart I* and *Hobart II*.

> a. *Res Judicata*

Defendants first argue that the final judgment issued in *Hobart I* and *Hobart II* bars Plaintiffs from litigating their claims in *Hobart III*. Under the doctrine of *res judicata*, otherwise known as claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979). This doctrine promotes judicial economy and protects litigants from having to defend against multiple lawsuits related to the same transaction. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).

> For *res judicata* to apply, the following elements must be established:
>
> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). It is undisputed that this Court issued a final decision on the merits in *Hobart I* and *Hobart II.* The first element is therefore satisfied.

The second element requires the subsequent action to be between the same parties or their privies. Given that movants DAP Products, Inc., and

14

GlaxoSmithKline LLC, were also named as defendants in *Hobart II*, the second element is met as to them.

Many others who have joined in the motion were included as defendants in the proposed Third Amended Complaint in *Hobart I*. Doc. #124-1 in Case No. 3:10-cv-195. However, because the Court overruled Plaintiffs' motion for leave to file that amended complaint, they were never actually joined as parties in *Hobart I* or *Hobart II*, nor are they in privity with any previously-named defendants.

Citing *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1471-72 (11th Cir. 1986), Plaintiffs argue that the defendants who were not actually joined in the earlier cases cannot be considered "parties" for purposes of *res judicata*. Defendants counter that mutuality of parties is not always required. Under the doctrine of nonmutual claim preclusion, dismissal may be appropriate where the subsequent lawsuit arises out of the same operative facts with only slight changes to the legal theory asserted or the parties sued. *See Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992). As explained more fully below, in the Court's view, *Hobart III* does *not* arise out of the same operative facts as *Hobart I* and *Hobart II*. Therefore, the second element of *res judicata*, *i.e.*, a subsequent action between the same parties or their "privies," is not satisfied as to the defendants not actually joined in *Hobart I* or *Hobart II*.

The third and fourth elements are also problematic. Defendants must identify an issue in *Hobart III* which was litigated, or which should have been litigated, in *Hobart I* and *Hobart II.* Defendants maintain that the issue of their

15

liability for necessary response costs for alleged contamination at the Site was already litigated in those earlier cases. In the opening paragraphs of the Complaints filed in each of the three cases, Plaintiffs broadly sought "the recovery from Defendants of response costs which Plaintiffs have expended to date and will expend in the future in response to releases and threatened releases of hazardous substances." Defendants note that the Court concluded that Plaintiff's one potentially viable claim against them was time-barred.

Defendants take the position that the 2013 ASAOC is merely a continuation of the 2006 ASAOC. According to Defendants, there was no need for a separate ASAOC, because the 2006 ASAOC was broad enough that the EPA could have required Plaintiffs to perform any additional work it deemed necessary, including abatement of vapor intrusion risks. They accuse Plaintiffs of entering into the 2013 ASAOC for the sole purpose of attempting to resuscitate the time-barred claim, and urge the Court to reject this attempt at piecemeal litigation.

There can be little doubt that the 2013 ASAOC grew out of the 2006 ASAOC and overlaps in some respects. The "Statement of Work" in the 2006 ASAOC required Plaintiffs to perform specific tasks related to the RI/FS. Ex. A to Doc. #100, at ¶ 11(v). The EPA reserved the right to require "additional work" if necessary to accomplish the objectives of the RI/FS, *id.* at ¶ 37(c), and to "require performance of further response actions as otherwise provided in this Settlement Agreement," *id.* at ¶ 37(f). Investigations conducted at the Site as part of the RI/FS included landfill gas sampling. Doc. #1-1, at ¶ 9(j).

16

A Vapor Intrusion Investigation Work Plan for the Site, approved by the EPA in 2011, specifically refers to the 2006 ASAOC. Doc. #100-3. In 2012, after collecting vapor intrusion samples, the EPA determined that the landfill vapors may pose a threat to human health, and that the landfill gas may create a risk of explosion. Doc. #1-1, ¶ 9(q). This led to the execution of the 2013 ASAOC, which requires Plaintiffs to design a Site Health and Safety Plan, conduct additional subsurface gas sampling, and, if necessary, design and install vapor abatement systems and landfill gas extraction systems. *Id.* at ¶ 16.

Plaintiffs do not dispute that the 2013 ASAOC grew out of the 2006 ASAOC. They nevertheless argue that those two settlement agreements impose different obligations on Plaintiffs in terms of the scope of work required, and result in distinct response costs.

The 2006 ASAOC required Plaintiffs to conduct an RI/FS, the purpose of which was to determine the *nature and extent* of the contamination, to *identify and evaluate* various remedial alternatives, and to *recover response costs* incurred by the EPA with respect to the Settlement Agreement. Ex. A to Doc. #100, at ¶ 9 (emphasis added). It concerned "the reimbursement for future response costs incurred by U.S. EPA *in connection with the RI/FS* for this Site." *Id.* at ¶ 1 (emphasis added). The 2006 ASAOC resolved Plaintiffs' liability for "Work" and "Future Response Costs." *Id.* at ¶ 96a. Those terms are not open-ended. "Work" is defined as only those activities Plaintiffs were required to perform under the Settlement Agreement. *Id.* at ¶ 11(x). "Future Response Costs" are defined as all

17

costs incurred by the United States in implementing, overseeing, and enforcing the Settlement Agreement. *Id.* at ¶ 11(i).

In contrast to the 2006 ASAOC, the 2013 ASAOC required Plaintiffs to perform certain removal activities, including subsurface gas sampling and actual remediation of the Site with respect to vapor intrusion risks identified by the EPA in 2012. Doc. #1-1, ¶ 16. The 2013 ASAOC resolved Plaintiffs' liability for the Work, Past Response Costs, and Future Response Costs, as those terms are defined therein. *Id.* at ¶ 66(b). Again, the "Work" is limited to activities that Plaintiffs are required to perform under that particular Settlement Agreement. *Id.* at ¶8. Plaintiffs are required to pay $85,968.57 in "Past Response Costs," *id.* at ¶38, defined as "all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site from June 5, 2012 through September 30, 2012, plus Interest on all such costs through such date." *Id.* at ¶8. Plaintiffs are also required to pay "Future Response Costs," *id.* at ¶39, defined as all costs incurred by the United States in developing plans and reports pursuant to the Settlement Agreement, overseeing implementation of the "Work," and otherwise implementing or enforcing the Settlement Agreement.

When the terms "Work," "Past Response Costs," and "Future Response Costs" are interpreted according to the definitions set forth in the two ASAOCs, it is clear that the scope of Plaintiffs' obligations under each agreement is separate and distinct. It is equally clear that the response costs sought by Plaintiffs in

18

*Hobart III* are different than the response costs sought by Plaintiffs in *Hobart I* and

*Hobart II.*

It often takes many years to clean up an industrial waste site, and the work

is often completed in phases. It is not uncommon for several ASAOCs to be

executed in connection with the same Site. In fact, CERCLA specifically

contemplates that parties will enter into multiple, partial settlements with the

Government:

> A person who has resolved its liability to the United States . . . for
> *some or all* of a response action or for *some or all* of the costs of such
> action in an administrative or judicially approved settlement may seek
> contribution from any person who is not a party to a settlement. . .

42 U.S.C. § 9613(f)(3)(B) (emphasis added). Each settlement agreement may give

rise to a separate claim for contribution.[3] The three-year statute of limitations on

each contribution claim begins to run on the date of the settlement "with respect

to such costs or damages." 42 U.S.C. § 9613(g)(3)(B). The Sixth Circuit has

construed this to mean only those "costs or damages" imposed by that particular

settlement. *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 559 (6th Cir.

2007).

---

[3]  Quoting *United States v. Gurley*, 43 F.3d 1188, 1196 (8th Cir. 1994),
Defendants urge the Court to focus on the question of "whether the wrong for
which redress is sought is the same in both actions." They note that *Hobart I*,
*Hobart II*, and *Hobart III* all involve the same alleged contamination at the same
Site. The holding in *Gurley*, however, was that the EPA could not pursue one
action under the Clean Water Act, and another, later action under CERCLA to right
the same wrong. In so holding, the court specifically noted that the law permits
"successive CERCLA actions." *Id.*

In the Court's February 8, 2013, Decision and Entry in *Hobart I* and *Hobart II*, the Court stated, "DP&L notes that the subject matter of Plaintiffs' claims relates only to costs incurred in connection with the RI/FS. Actual remediation costs have not yet been incurred, and dismissal of Plaintiffs' current claims will not prevent Plaintiffs from attempting to recover those remediation costs at a later date." 923 F. Supp.2d at 1090 n.2. Notably, the Amended Complaint in *Hobart III* specifically states that "[r]esponse costs incurred and to be incurred by Plaintiffs pursuant to the 2006 ASAOC are not the subject of this action but were addressed in [*Hobart I* and *Hobart II*]." Doc. #144, at ¶ 4.

In short, the 2006 ASAOC and the 2013 ASAOC impose different obligations on Plaintiffs, giving rise to different response costs, and separate contribution claims, each with their own statute of limitations. The Court's previous holding, that Plaintiffs' contribution claims arising from the 2006 ASAOC were time-barred, is not dispositive with respect to the contribution claims arising from the 2013 ASAOC. As such, Defendants have failed to identify an issue in *Hobart III* that was actually litigated in *Hobart I* and *Hobart II*.

Defendants have also failed to identify an issue that *should have been* litigated in *Hobart I* or *Hobart II*. As the court noted in *Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 38 (1st Cir. 1998), "*res judicata* will not attach if the claim asserted in the second suit could not have been asserted in the first." The claims asserted in *Hobart III* could not have been asserted in the prior lawsuits, because the legal obligations imposed by

20

the 2013 ASAOC did not exist at that time, and the response costs at issue had not yet been incurred. *See Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 17 (1st Cir. 2004) (settlement agreements for contribution claims involving soil remediation did not have *res judicata* effect on subsequent contribution claims for groundwater remediation when the groundwater remediation occurred after the soil remediation claims were settled).

The fourth element of *res judicata* requires Defendants to establish an identity of the causes of action. It is undisputed that, in each suit, Plaintiffs have asserted causes of action for cost recovery under § 107(a) of CERCLA, contribution under § 113(f)(3)(B) of CERCLA, unjust enrichment, and declaratory judgment. Standing alone, however, this is not enough. An "identity of the causes of action" means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981).

Certainly, there is some overlap. In *Hobart III*, as in *Hobart I* and *Hobart II*, Plaintiffs will have to prove that there has been a release of a hazardous substance at the Site, that the release has caused Plaintiffs to incur "necessary costs of response," and that each defendant is in one of four categories of potentially responsible parties. *See Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006). The response costs at issue in *Hobart III*, however, are different from the response costs at issue in *Hobart I* and *Hobart II*, and Plaintiffs' right to seek contribution for those response costs arises solely from the 2013

21

ASAOC. As such, there is no identity of the facts creating the right of action, and the evidence necessary to sustain the claims in *Hobart III* differs from that needed to sustain the claims in *Hobart I* and *Hobart II*.

For all of these reasons, the Court finds that Plaintiffs' claims are not barred by the doctrine of *res judicata*.

### b. Defensive, non-mutual collateral estoppel

In the alternative, the *Res Judicata* Defendants argue that the doctrine of defensive, non-mutual collateral estoppel warrants dismissal of Plaintiffs' claims. The doctrine of collateral estoppel, or issue preclusion, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990).

In order for collateral estoppel to apply:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Kosinski v. Comm'r*, 541 F.3d 671, 675 (6th Cir. 2008) (citation omitted). So long as the plaintiff had a full and fair opportunity to litigate the same issue in the prior proceeding, the doctrine of defensive, non-mutual collateral estoppel bars the plaintiff from re-litigating the issue in a subsequent suit, even against different

22

defendants. *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093 (6th Cir. 2012).

Plaintiffs argue that the doctrine of defensive, non-mutual collateral estoppel does not apply because the precise issue raised in *Hobart III*, *i.e.*, Defendants' liability for response costs associated with the 2013 ASAOC, was not raised and actually litigated in *Hobart I* or *Hobart II*, nor was determination of this issue necessary to the outcome of those earlier cases. For the reasons set forth above, the Court agrees, and concludes that Plaintiffs' claims are not barred by collateral estoppel.

### c. Collateral Attack

Finally, the "*Res Judicata* Defendants" argue that the filing of *Hobart III* constitutes an improper collateral attack on this Court's denial, in *Hobart I*, of Plaintiffs' motion for leave to file a third amended complaint to join additional defendants. However, as Plaintiffs note, "[t]he collateral attack doctrine precludes litigants from collaterally attacking the judgments of *other* courts." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) (emphasis added). *See also Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004) ("A 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court."). It is not applicable to this situation.

For the reasons set forth above, the Court OVERRULES the *Res Judicata* Defendants' Motion to Dismiss Complaint, Doc. #99.

> d.    Alternative Motion for Stay

In the alternative, the *"Res Judicata* Defendants" urge the Court to stay *Hobart III* pending appeal of the Court's previous decisions in *Hobart I* and *Hobart II.* At issue on appeal is whether § 107 cost recovery claims and § 113(f) contribution claims are mutually exclusive, the relevant statute of limitations for the § 113(f) claims, and the availability of an unjust enrichment remedy.[4] Defendants argue that Plaintiffs should not be permitted to split their claims by prosecuting their appeals at the same time this action is pending.

Having determined that the claims asserted in *Hobart III* are separate and distinct from the claims asserted in *Hobart I* and *Hobart II*, the Court sees no reason to delay discovery, or otherwise stay this case pending appeal.  Regardless of whether the Sixth Circuit decides that remedies under § 107(a) and § 113(f) are mutually exclusive, it would appear that Plaintiffs in *Hobart III* could proceed on at least one of those theories.  Moreover, because a new statute of limitations was triggered when the parties executed the 2013 ASAOC, the statute of limitations issue concerning the § 113(f) claims asserted in *Hobart I* and *Hobart II* appears to be irrelevant.  Finally, although the Sixth Circuit's view on the availability of an unjust enrichment remedy may be helpful, the pending appeal concerning this issue

_____

[4]  Defendant DAP also cross-appealed with respect to the Court's statement, in footnote 2 of the February 8, 2013, Decision and Entry, that "dismissal of Plaintiffs' current claims will not prevent Plaintiffs from attempting to recover those remediation costs at a later date."  The Sixth Circuit, however, dismissed this cross-appeal on the ground that DAP, as the prevailing party, was not aggrieved and therefore was not entitled to appellate review.

is, in this Court's view, an insufficient ground for delaying the litigation of this case.

Accordingly, the Court OVERRULES the *Res Judicata* Defendants' Alternative Motion to Stay Pending Appeal, Doc. #99.

> **2.    Dayton Power & Light Company's Motion to Dismiss Count I (Migration Claim) (Doc. #138)**

In *Hobart I*, Plaintiffs alleged that Defendant Dayton Power and Light Company ("DP&L"):

> arranged for the disposal of wastes at the Site, including waste containing hazardous substances from its facilities and operation located in and around Dayton.  DP&L contributed to Contamination at the Site through its disposal of wastes that included hazardous substances at the Site. In addition, DP&L released hazardous substances on its property adjacent to the Site and *allowed* these hazardous substances on its property to *migrate* through the groundwater to contaminate the Site.

Doc. #69, at ¶ 31, in Case No. 3:10-cv-195 (emphasis added).  The Court dismissed the "migration" portion of Plaintiff's §107(a) cost recovery claim, finding that because Plaintiffs had insufficiently pled the intent requirement, they had not stated a plausible claim for "arranger" liability under 42 U.S.C. § 9607(a)(3).

In *Hobart III*, Plaintiffs again assert a "migration" claim against DP&L, but this time, they assert an "owner/operator" theory of liability under 42 U.S.C. § 9607(a)(2).  Instead of alleging that DP&L "allowed" hazardous substances to migrate to the Site, Plaintiffs allege that DP&L "released hazardous substances on its property adjacent to the Site and these hazardous substances on its property migrated through the groundwater to contaminate the Site."  Doc. #144, at ¶ 56.

25

DP&L argues that the "migration" portion of the §107(a) claim in *Hobart III* is barred by the doctrine of *res judicata* because Plaintiffs could have asserted an owner/operator theory of liability in *Hobart I.* [5]  DP&L maintains that the new claim is based on a "common nucleus of operative facts," in that it arises out of the same alleged wrongdoing, at the same Site, during the same time period.  The only difference is the asserted theory of liability.

Again, for the reasons set forth above, the Court finds that *res judicata* does not apply because there is no "identity of the causes of action," *i.e,* an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem.*, 656 F.2d at 1227.  Because the "Work" required by the 2013 ASAOC, and the related "Response Costs" now sought by Plaintiffs, are different than those at issue in *Hobart I*, the evidence necessary to sustain the action is separate and distinct.  Given that the Court finds no identity of causes of action, the Court OVERRULES Defendant DP&L's Motion to Dismiss Count I (Migration Claim), on *res judicata* grounds, Doc. #138.[6]

-----

[5]   Prior to filing its own motion to dismiss the migration portion of the § 107(a) claim, DP&L joined the "Certain Defendants' Motion to Dismiss," Doc. #100.  Plaintiffs argue that Federal Rule of Civil Procedure 12(g)(2) prohibits DP&L from filing successive motions to dismiss.  Under the circumstances presented here, DP&L's conduct does not run afoul of Rule 12(g)(2).  For the sake of judicial economy, it made sense for DP&L to join the other defendants in asserting common arguments, and to file a separate motion to dismiss based on arguments unique to DP&L.

[6]   As discussed below, the Court does, however, dismiss Count I of the First Amended Complaint on other grounds.

### C. Certain Defendants' Motion to Dismiss (Doc. #100)

All Defendants in *Hobart III* have joined the "Certain Defendants' Motion to Dismiss." Doc. #100. Defendants have requested oral argument on this motion. However, because many of the arguments asserted are substantially similar to those asserted in *Hobart I* and *Hobart II*, the Court finds that oral argument is not essential to the fair resolution of this case. *See* S.D. Ohio Civ. R. 7.1(b)(2). The Court therefore overrules that request.

#### 1. Sufficiency of Pleading

Defendants first argue that Plaintiffs' allegations are insufficient under the pleading standards set forth in *Twombly* and *Iqbal*. The Court rejected a similar argument in *Hobart I*. *See Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 840 F. Supp.2d 1013, 1028-31 (S.D. Ohio 2011).

Four elements are required for CERCLA recovery under § 107(a) of CERCLA:

(1) the property is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP; and (4) the defendant is in one of four categories of potentially responsible parties.

*Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006). A contribution claim under § 113(f) of CERCLA requires the same elements. *See Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 653 (6th Cir. 2000) ("parties seeking contribution under § 113 must look to § 107 to establish the basis and elements of the liability of the defendants").

27

Defendants argue that the First Amended Complaint is deficient because it contains no specific allegations concerning what *kind* of hazardous substance each of the 30+ individual defendants allegedly released, *how* those releases occurred, or *when* they occurred.  In support, they rely on *Coppola v. Smith*, 935 F. Supp.2d 993 (E.D. Cal. 2013).  In that case, the complaint alleged that there had been releases and disposal of "hazardous substances," but the only hazardous substance identified in the complaint was PCE.  The court found that the second element was inadequately pled since it was "entirely unclear what other hazardous substances could be at issue."  *Id.* at 1009.

The Court agrees with Plaintiffs that *Coppola* is factually distinguishable.  Plaintiffs in this case have identified over a dozen different hazardous substances that were found at the Site.  Doc. #144, at ¶ 3.  They have further alleged that each Defendant contributed to the contamination at the Site through the disposal of waste containing hazardous substances.  Said disposal allegedly started in or before 1941.  *Id.* at ¶ 51.

At this stage of the litigation, Plaintiffs need not identify exactly which hazardous substances were released by which defendants, in what manner, or on what specific dates.  In *Kalamazoo River Study Group*, the court noted that the text of § 107 requires only that a plaintiff prove "that the defendant's hazardous substances were deposited at the site from which there was a release and that the release caused the incurrence of response costs." 228 F.3d at 655 (quoting *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 266 (3d Cir. 1992)).  *See also*

*Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1153 (9th Cir. 1989) ("a plaintiff need not allege the particular manner in which a release or threatened release has occurred."); *Arkema Inc. v. Anderson Roofing Co., Inc.*, 719 F. Supp.2d 1318, 1332 (D. Or. 2010) (holding that complaint alleging location of release, kinds of waste involved, and indicating time frame when defendant allegedly arranged for disposal at site, was sufficient).

In their Motions for Judgment on the Pleadings, Defendants L.M. Berry and Co., and Reynolds and Reynolds Co., also argue that Plaintiffs failed to sufficiently allege "intent" as a required element of a § 107 claim based on an "arranger" theory of liability. Docs. ##115, 118. However, as the Court previously held, when a person enters into a transaction for the sole purpose of discarding a hazardous substance that is no longer needed, the requisite state of mind is implicit in the very nature of the disposal activity. *Hobart*, 840 F. Supp.2d at 1027.

The Court concludes that the factual allegations contained in the First Amended Complaint are sufficient to withstand Defendants' motions under the pleading standards set forth in *Iqbal* and *Twombly*.

### 2. §107 Cost Recovery Claim

Defendants again argue that Count I of the First Amended Complaint, seeking cost recovery under § 107(a) of CERCLA must be dismissed because, having entered into the 2013 ASAOC with the EPA, Plaintiffs' exclusive remedy is one for contribution under § 113(f)(3)(b). For the reasons set forth in this Court's

29

February 8, 2013, Decision and Entry in *Hobart I* and *Hobart II*, the Court agrees.
*See Hobart*, 923 F. Supp.2d at 1091-96.

Citing *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), Plaintiffs
argue that, at the very least, in addition to their claim for contribution under § 113
(f)(3)(B), they have an *independent* claim for cost recovery under § 107(a) for
"work performed in identifying other PRPs." In *Key Tronic*, the Supreme Court
held that, although attorney's fees and litigation expenses are generally not
recoverable under CERCLA, the cost of identifying other PRPs is a recoverable
"necessary cost of response . . . under the terms of § 107(a)(4)(B)" because it is
closely tied to the actual cleanup effort and increases the probability that the
cleanup will be effective. *Id.* at 820.[7]

Defendants argue that the costs of identifying PRPs are part of the costs
embodied in the §113(f) claims and, if warranted, would be recoverable in that
context. In other words, there is no need for a separate § 107(a) claim. There
appears to be very little case law on this topic, but Defendants' argument is
persuasive.

As noted earlier, "parties seeking contribution under § 113 must look to
§ 107 to establish the basis and elements of the liability." *Kalamazoo River Study
Group*, 228 F.3d at 653. One of those elements is that the release caused the
plaintiff to incur "necessary costs of response." *Reg'l Airport Auth. of Louisville*,

---

[7] Section 107(a)(4)(B) provides that the four categories of PRPs are liable
for "any other necessary costs of response incurred by any other person consistent
with the national contingency plan."

460 F.3d at 703. If the cost of identifying PRPs constitutes a "necessary cost of response" for purposes of § 107(a), there is no reason why it cannot also constitute a "necessary cost of response" for purposes of § 113(f)(3)(B). *Key Tronic* contains no such limitation. At least one other court has held that the cost of identifying PRPs is a "necessary cost of response" that is recoverable under § 113(f). *See City of Wichita, Kansas v. Trustees of APCO Oil Corp. Liquidating Trust*, 306 F. Supp.2d 1040, 1095 (D. Kan. 2003).[8]

Having considered the applicable law, the Court finds that the cost of identifying PRPs is recoverable in the context of a contribution claim under § 113(f). There is no need for a separate cost recovery claim under § 107(a). The Court therefore SUSTAINS Defendants' motion to dismiss the § 107(a) cost recovery claim set forth in Count I of the First Amended Complaint.[9]

---

[8]  The Court also notes that, as a general rule, contribution claims under § 113(f) are subject to a shorter statute of limitations than cost recovery claims under § 107(a). See 42 U.S.C. § 9613(g)(2)-(3). If Plaintiffs are permitted to recover the cost of identifying PRPs in the context of their § 113(f) claim, then all related claims for contribution for necessary response costs will logically be subject to the same statute of limitations.

[9]  In the alternative, Defendants argue that Plaintiffs have not sufficiently alleged facts meeting the standard set forth in *Village of Milford v. K-H Holding Corp.*, 390 F.3d 926 (6th Cir. 2004). There, the Sixth Circuit held that the cost of identifying PRPs is recoverable as a necessary cost of response only if the activities at issue "could have been performed by a non-attorney, are closely tied to an actual cleanup, are not related to litigation, and are otherwise necessary." *Id.* at 936.

Defendants have cited no authority indicating that *Village of Milford* establishes any specific *pleading* standard. Given that the Court has determined that Plaintiffs' exclusive remedy is one for contribution under § 113(f)(3)(b), and that the cost of identifying PRPs is potentially recoverable in that context, there is

### 3.  §113 Contribution Claim

In Count II of the First Amended Complaint, Plaintiffs seek contribution from Defendants under § 113(f) of CERCLA for response costs incurred in connection with the 2013 ASAOC.  Defendants urge the Court to once again dismiss this claim as barred by the three-year statute of limitations.  Like the "*Res Judicata* Defendants*,*" they argue that Plaintiffs cannot revive the time-barred §113(f) claim simply by entering into a new ASAOC that encompasses the same scope of work as the 2006 ASAOC.

For the reasons set forth above, the Court finds that the 2013 ASAOC involves a different scope of work and requires Plaintiffs to incur different response costs than did the 2006 ASAOC.  The Court therefore OVERRULES Defendants' motion to dismiss Count II of the First Amended Complaint.

### 4.  Unjust Enrichment

Count III of the First Amended Complaint asserts a claim for unjust enrichment.  The Court previously dismissed a claim of unjust enrichment in *Hobart I* and *Hobart II*, holding that recovery was barred because plaintiffs were under a legal duty to pay remediation costs.  *Hobart*, 840 F. Supp.2d at 1035-37.  Defendants urge the Court to again dismiss the unjust enrichment claim on the same grounds.  For the reasons cited in the Court's previous ruling, the Court again

---

no need for the Court to determine, at this juncture, whether the alleged pleading deficiencies provide additional grounds for dismissal of the § 107(a) claim.

concludes that, to the extent that Plaintiffs' unjust enrichment claim is based on expenses incurred pursuant to the legal obligations imposed by the 2013 ASAOC, Plaintiffs have failed to state a claim upon which relief can be granted.

Plaintiffs, however, argue that they have incurred certain response costs *in addition* to those required by the 2013 ASAOC. More specifically, they argue that they have incurred expenses in identifying other PRPs, a task they were under no legal obligation to perform.[10] Notably, Defendants make no attempt to respond to this argument.

To succeed on a claim of unjust enrichment, Plaintiffs must demonstrate: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, at ¶ 20. Presumably, Plaintiffs maintain that by identifying other PRPs who can share in the costs of remediating the Site, they have conferred a benefit on all defendants. Defendants, having been named as parties in the lawsuits, were aware of Plaintiffs' efforts. Plaintiffs further allege that it would be unjust to allow Defendants to retain the benefit of having additional parties to share in the

---

[10] Plaintiffs acknowledge that they cannot recover the same response costs under CERCLA and under state law, but maintain that they are entitled to pursue the unjust enrichment claim as an alternative theory of recovery.

remediation costs without requiring Defendants to contribute to the cost of identifying those other PRPs.

Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have stated a plausible claim of unjust enrichment with respect to the limited costs associated with identifying other PRPs. To the extent that Plaintiffs have asserted this claim as an alternate theory of recovery, the Court concludes that dismissal of this claim is not warranted at this juncture.

Accordingly, the Court SUSTAINS IN PART and OVERRULES IN PART Defendants' motion to dismiss Count III of the First Amended Complaint.

### 5. Declaratory Judgment

Count IV of the First Amended Complaint seeks a declaratory judgment under 42 U.S.C. § 9613(g)(2), concerning Defendants' liability for additional future response costs under § 107(a) and/or § 113(f)(3)(B). Defendants argue that because Plaintiffs have failed to state a claim upon which relief can be granted under either of those sections, this dependent claim fails as well.

Defendants' motion to dismiss Count IV of the First Amended Complaint is SUSTAINED IN PART and OVERRULED IN PART. To the extent that Plaintiffs seek a declaration of liability for recovery of future response costs under § 107(a), the Court agrees that this portion of the claim is not viable. However, because the Court has determined that Plaintiffs have stated a viable contribution claim under § 113(f)(3)(B), this portion of the declaratory judgment claim survives as well.

III.    **Conclusion**

For the reasons set forth above, the Court:

(1)    **OVERRULES:**
- The *Res Judicata* Defendants' Motion to Dismiss Complaint or Alternative Motion to Stay Pending Appeal (Doc. #99); and
- Defendant The Dayton Power & Light Company's Motion to Dismiss Count I ("Migration Claim") of the Complaint (Doc. #138);

(2)    **SUSTAINS IN PART AND OVERRULES IN PART:**
- Certain Defendants' Motion to Dismiss (Doc. #100);
- Defendant L.M. Berry and Co. LLC's Motion for Judgment on the Pleadings, Joinder in Other Defendants' Motions and Alternative Motion for Stay (Doc. #115);
- Defendant Reynolds and Reynolds Co.'s Motion for Judgment on the Pleadings, Joinder in Other Defendants' Motions, and Alternative Motion for Stay (Doc. #118);
- Motion to Dismiss of Defendant Newmark LLC (Doc. #157);
- Motion to Dismiss of Defendant La Mirada Products Co., Inc. (Doc. #164); and
- Defendant Fickert Devco, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (Doc. #168)

Plaintiffs may proceed on the following claims asserted in the First Amended Complaint:  (1) Count II – contribution claim under § 113(f)(3)(B) of CERCLA; (2) Count III – unjust enrichment, but only with respect to the cost of identifying PRPs; and (3) Count IV – declaratory judgment, but only with respect to liability under § 113(f)(3)(B) of CERCLA.

Date: February 18, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE