IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,

       Plaintiffs,

   v.

THE DAYTON POWER & LIGHT
CO., *et al.*,

       Defendants.

:

:

:

:

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING DAP PRODUCTS, INC.'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT OR
ALTERNATIVE MOTION TO STAY PENDING APPEAL (DOC. #152);
SUSTAINING MOTION OF DEFENDANT HEWITT SOAP WORKS, INC.,
TO DISMISS THE AMENDED COMPLAINT (DOC. #153), AND
DISMISSING CLAIMS AGAINST HEWITT SOAP WORKS, INC.,
WITHOUT PREJUDICE; OVERRULING MOTION TO DISMISS OF VAN
DYNE-CROTTY CO. (DOC. #172); PLAINTIFFS GIVEN LEAVE TO FILE
SECOND AMENDED COMPLAINT AGAINST DEFENDANT HEWITT
SOAP WORKS, INC., SUBJECT TO THE STRICTURES OF FED. R. CIV.
P. 11, WITHIN 20 CALENDAR DAYS FROM DATE OF ORDER

---

Plaintiffs Hobart Corporation, Kelsey-Hayes Company, and NCR Corporation

filed suit against more than thirty potentially responsible parties, seeking relief

under §107 and §113 of the Comprehensive Environmental Response,

Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§9607 and

9613 ("CERCLA"), in connection with clean-up efforts at the South Dayton Dump

and Landfill Site ("the Site").  In addition to their claims for cost recovery and

contribution under CERCLA, Plaintiffs seek declaratory judgment, and damages for unjust enrichment.

This matter is currently before the Court on three pending motions: (1) Defendant DAP Products, Inc.'s Motion to Dismiss First Amended Complaint or Alternative Motion to Stay Pending Appeal (Doc. #152); (2) Defendant Hewitt Soap Works, Inc.'s Motion to Dismiss the Amended Complaint (Doc. #153); and (3) Defendant Van Dyne-Crotty Co.'s Motion to Dismiss (Doc. #172).

## I.    Background

According to the Amended Complaint, DAP Products, Inc. ("DAP Products"), Hewitt Soap Works, Inc. ("Hewitt"), and Van Dyne-Crotty Co. ("VDCC") are legal successors in interest to other companies that arranged for disposal of hazardous substances at the Site.  Doc. #144, ¶¶71, 79, 92.  DAP Products argues that because the Amended Complaint concedes that DAP Products did not exist prior to 1991, it cannot be liable as an arranger.  Hewitt and VDCC, on the other hand, maintain that the Amended Complaint does not contain sufficient factual allegations to support claims of successor liability.  They all seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

_____

[1]  DAP Products, Hewitt, and VDCC have each also joined in the *"Res Judicata* Defendants' Motion to Dismiss Complaint or Alternative Motion to Stay Pending Appeal" (Doc. #99), and in "Certain Defendants' Motion to Dismiss" (Doc. #100). The Court has issued a separate Decision and Entry addressing the arguments

2

## II.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain

"a short and plain statement of the claim showing that the pleader is entitled to

relief."  The complaint must provide the defendant with "fair notice of what the

. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal

of a complaint on the basis that it "fail[s] to state a claim upon which relief can be

granted."  The moving party bears the burden of showing that the opposing party

has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir.

1991)).  The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a

defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief

even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d

635, 638 (6th Cir. 1993).  In ruling on a 12(b)(6) motion, a court must "construe

the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v.

City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at

476).

---

raised in those motions.  This Decision and Entry is limited in scope to the
arguments unique to these particular defendants, as set forth in their individual
motions to dismiss, Docs. ##152, 153, and 172.

3

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.  "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id*. at 679.

## III.    Discussion

At issue is whether the allegations contained in Plaintiffs' Amended Complaint are sufficient to state a plausible claim of successor liability against DAP Products, Hewitt, or VDCC.  In CERCLA cases, state law governs successor liability standards. *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 515 (6th Cir. 2005).  Under Ohio law,

> [a] corporation that purchases the assets of another is not liable for the contractual liabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a *de facto* consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability.

4

*Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 344, 617 N.E.2d 1129,

1130-31 (Ohio 1993) (citing *Flaugher v. Cone Automatic Machine Co.*, 30 Ohio

St.3d 60, 507 N.E.2d 331 (Ohio 1987)).

### A.    DAP Products, Inc.'s Motion to Dismiss (Doc. #152)

The Amended Complaint alleges:

> Defendant DAP Products Inc. is the legal successor in interest under
> the theories of de facto merger and/or mere continuation and/or
> assumption of liabilities to DAP, Inc. ("DAP"). DAP Products Inc. was
> first incorporated in Delaware as Wassall USA Acquisition, Inc., on
> September 23, 1991. That same month, Wassall USA Acquisition,
> Inc. purchased the assets of DAP, and agreed to indemnify DAP for
> certain environmental liabilities, within which Plaintiffs' claims are
> included. Wassall USA Acquisition, Inc. changed its name to DAP
> Products Inc. on November 8, 1991. DAP Products Inc. has
> substantially continued DAP's business. DAP Products Inc. claims
> DAP's history as its own on its current website, and it derives
> financial benefit from the "DAP" name. DAP arranged for the disposal
> of wastes at the Site, including waste containing hazardous
> substances from its facilities and operation located in and around
> Dayton. DAP contributed to Contamination at the Site through its
> disposal of wastes that included hazardous substances at the Site.

Doc. #144, ¶71.  In its Motion to Dismiss, Doc. #152, DAP Products argues that

because Plaintiffs concede that DAP Products did not come into existence until

1991, it cannot be liable as an "arranger."

Plaintiffs, however, do not seek to hold DAP Products liable as an entity

who directly arranged for disposal of hazardous waste at the Site.  Rather, the

allegations make it clear that Plaintiffs seek to hold DAP Products liable under a

theory of successor liability, based on an express assumption of DAP's liability for

certain environmental claims.  Because Plaintiffs have adequately pleaded a

plausible theory of successor liability, the Court OVERRULES DAP Products'

Motion to Dismiss, Doc. #152.

### B.    Hewitt Soap Works, Inc.'s Motion to Dismiss (Doc. #153)

According to the Amended Complaint:

Defendant Hewitt Soap Works, Inc. is the legal successor in interest
under the theories of *de facto* merger and/or mere continuation and/or
assumption of liabilities to The Hewitt Soap Company, Inc. ("Hewitt
Soap"). Hewitt Soap Works, Inc. was first incorporated as HSC
Acquisition, Inc. in Rhode Island on September 5, 2003. In October
2003, HSC Acquisition, Inc. purchased the assets of Hewitt Soap.
That same month, HSC Acquisition, Inc. changed its name to Hewitt
Soap Works, Inc. Hewitt Soap Works, Inc. has substantially continued
Hewitt Soap's business and manufacturing operations. Hewitt Soap
Works, Inc. continues to run the Hewitt Soap plant in Columbus,
Indiana, and derives financial benefit from the "Hewitt Soap" name.
Hewitt Soap arranged for the disposal of wastes at the Site, including
waste containing hazardous substances from its facilities and
operation located in and around Dayton. Hewitt Soap contributed to
Contamination at the Site through its disposal of wastes that included
hazardous substances at the Site.

Doc. #144, ¶79.

Hewitt argues that, even though Plaintiffs cite three of the four possible

exceptions to successor non-liability under Ohio law, the conclusory statements

are insufficient to state a claim.  In support, Hewitt cites to *Lack v. Bank of*

*America, N.A.*, Case No. 1:12-cv-553, 2013 WL 1629155 (S.D. Ohio Apr. 16,

2013).  In *Lack*, the Complaint alleged only that the defendant, as the successor

mortgage servicer, was liable for actions taken by its predecessors. *Id.* at *2.

Noting that the Complaint contained no allegations to support an inference that

6

any of the relevant exceptions to successor non-liability applied, the court dismissed the claim. *Id.*

Plaintiffs argue that this case is factually distinguishable. The Amended Complaint alleges that "Hewitt Soap Works, Inc. is the legal successor in interest under the theories of *de facto* merger and/or mere continuation and/or assumption of liabilities to The Hewitt Soap Company, Inc." Doc. #144, ¶79. These, however, are conclusory legal allegations. As such, the Court cannot accept them unless they are supported by specific factual allegations. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011) ("courts may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action.").

Here, Plaintiffs' additional factual allegations include the following: (1) HSC Acquisition, Inc., purchased the assets of Hewitt Soap Company and then changed its name to Hewitt Soap Works, Inc.; (2) Hewitt Soap Works, Inc., continued the business and manufacturing operations of Hewitt Soap Company; and (3) Hewitt Soap Works, Inc., derived financial benefit from the Hewitt name. Doc. #144, ¶79. Hewitt argues that, even accepting these factual allegations as true, they are insufficient to support a finding of successor liability under any of the alleged exceptions. The Court agrees.

As explained by the Ohio Supreme Court,

> [a] *de facto* merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor. A *de facto* merger is a

> merger in fact without an official declaration of such. The hallmarks of a *de facto* merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations. One court has indicated that a transfer of assets for stock is the *sine qua non* of *de facto* merger.

*Welco Indus.,* 67 Ohio St. 3d at 349, 617 N.E.2d at 1134 (internal citations omitted). Here, the Amended Complaint contains no allegations that corporate personnel or shareholders remained the same, that there was a transfer of assets in exchange for stock, that Hewitt Soap Company was immediately dissolved,[2] or that Hewitt assumed all liabilities necessary to continue business operations. As such, it is insufficient to support a plausible claim of a *de facto* merger.

The Amended Complaint is also insufficient to support a claim that Hewitt Soap Works, Inc., is a "mere continuation" of Hewitt Soap Co.

> [U]nder Ohio law, a corporation is not a mere continuation of the corporation whose assets it has purchased, even though it continues to provide the same services and has the same physical plant, officers, employees, and product line as the purported predecessor.

_____

[2]   Hewitt attached to its motion several documents from the Ohio Secretary of State's Office, indicating that Hewitt Soap Company continued to exist, albeit under a different name, for several years after the sale of assets. The parties disagree about whether the Court may consider these public records without converting the motion to dismiss to a motion for summary judgment. However, there is no need for the Court to consider these records in ruling on the pending motion to dismiss. Plaintiffs have asserted three of the four possible exceptions to successor non-liability. Notably, the public records are relevant to just one factor of one of those three theories. Given the Court's conclusion that Plaintiffs' allegations are insufficient to state a claim of successor liability under *any* of these theories, evidence that Hewitt Soap Company was not immediately dissolved after the assets were sold is largely irrelevant at this juncture.

8

> Rather, the key element is identity of ownership: a common identity of stockholders, directors, and stock.

*Mickowski*, 415 F.3d at 515 (6th Cir. 2005) (internal citations omitted).  Because Plaintiffs do not allege common ownership of the two companies, a "mere continuation" theory is unsupportable.

Nor are there any factual allegations to support a claim that Hewitt Soap Works, Inc., expressly or impliedly assumed the liabilities of Hewitt Soap Co. Plaintiffs note that they have not yet had the opportunity for discovery, and therefore, do not have a copy of the agreement between Hewitt and its predecessor that could help support a theory of successor liability.  While the Court sympathizes with Plaintiffs' dilemma, a sufficient pleading is required before discovery is permitted.  *See Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery."); *New Albany Tractor*, 650 F.3d at 1051 ("plaintiff must allege specific facts .. . even if those facts are only within the head or hands of the defendants.  The plaintiff may not use the discovery process to obtain these facts after filing suit.").

The Court finds that Plaintiffs have failed to support their claim of successor liability with any specific factual allegations that render the claim plausible. Accordingly, the Court SUSTAINS Hewitt's Motion to Dismiss (Doc. #153) and DISMISSES Plaintiffs' claims against Hewitt WITHOUT PREJUDICE.  Plaintiffs are given leave to file a Second Amended Complaint against Hewitt Soap Works, Inc.,

9

subject to the strictures of Federal Rule of Civil Procedure 11, within 20 calendar

days from the date of this Decision and Entry.

### C.  Van Dyne-Crotty Co.'s Motion to Dismiss (Doc. #172)

With respect to Defendant VDCC, the Amended Complaint alleges

that:

> Defendant Van Dyne-Crotty Co. is the legal successor in interest
> under the theories of *de facto* merger and/or mere continuation and/or
> assumption of liabilities to Van Dyne-Crotty, Inc. Van Dyne-Crotty,
> Inc. was incorporated in Ohio in 1953. In 1974, the two Crotty
> brothers running the company, R. Francis Crotty and L. William
> Crotty, decided to split the company and its assets into two separate
> companies: Van Dyne-Crotty, Inc. and Van Dyne-Crotty Co. Van
> Dyne-Crotty Co. was incorporated in Ohio on February 11, 1974 with
> some of the assets of the former Van Dyne-Crotty, Inc. and R. Francis
> Crotty as the President. In 1986, Van Dyne-Crotty Co. of Ohio
> merged into the newly-formed Van Dyne-Crotty Co. of Delaware, with
> Van Dyne-Crotty Co. of Delaware as the surviving corporation. In
> 1999, Van Dyne-Crotty Co. registered the name Spirit Services Co.
> for its use. In 2007, Van Dyne-Crotty Co. registered Spirit Services
> Co. of Ohio as its assumed name to transact business in Ohio. The
> current Spirit Services Co. website holds itself out as the original "Van
> Dyne-Crotty." For all of this time and continuing up to the present,
> Van Dyne-Crotty Co. continued to run the Van Dyne-Crotty, Inc.
> business in Columbus, Ohio and derive financial benefit from the "Van
> Dyne-Crotty" name. Van Dyne-Crotty, Inc. arranged for the disposal
> of wastes at the Site, including waste containing hazardous
> substances from its facilities and operation located in and around
> Dayton. Van Dyne-Crotty, Inc. contributed to Contamination at the
> Site through its disposal of wastes that included hazardous
> substances at the Site.

Doc. #144, ¶92.

VDCC has moved to dismiss the claims against it.  Like Hewitt, VDCC

argues that, even assuming that these allegations are true, they are insufficient to

state a claim of successor liability under any of the three of four exceptions cited.

As before, the Court need not accept the conclusory legal allegations that VDCC "is the legal successor in interest under the theories of *de facto* merger and/or mere continuation and/or assumption of liabilities to Van Dyne-Crotty, Inc." Rather, Plaintiffs must include specific factual allegations to support those theories of liability.

Plaintiffs allege that Van Dyne-Crotty, Inc., was split into two distinct companies, Van Dyne-Crotty, Inc., and VDCC. Notably, this allegation is inherently inconsistent with their allegation that there was a *de facto* merger. A merger is what happens when two companies become one. Moreover, Plaintiffs do not allege that corporate personnel or shareholders remained the same, that there was a sale of assets in exchange for stock, or that Van Dyne-Crotty, Inc., was immediately dissolved. In fact, the relevant agreement provides that after VDCC was spun off as a separate entity, R. Francis Crotty would continue Van Dyne-Crotty Inc.'s Dayton operations.[3] Ex. A to Doc. #172. Therefore, the allegations are insufficient to support a theory of successor liability based on a *de facto* merger.

The allegations are also insufficient to support a theory of successor liability based on "mere continuation." As previously noted, the key element of "mere

_____

[3]  In support of its Motion to Dismiss, VDCC attached a copy of the 1973 Agreement in which brothers R. Francis Crotty and L. William Crotty split Van Dyne Crotty, Inc., into two separate companies with two distinct territories. Because this agreement is indirectly referred to in Paragraph 92 of the Amended Complaint, and is central to Plaintiffs' claims, the Court may consider it without converting the motion to dismiss to a motion for summary judgment. *See Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

11

continuation" is "identity of ownership: a common identity of stockholders, directors, and stock." *Mickowski*, 415 F.3d at 515.  In a typical "mere continuation" scenario, one corporation sells all of its assets to another corporation, but the same people own both corporations.  The purpose of such a transaction is usually "to escape the liabilities of the predecessor corporation." *See Aluminum Line Prods. Co. v. Brad Smith Roofing Co., Inc.*, 109 Ohio App.3d 246, 265, 671 N.E.2d 1343 (Ohio Ct. App. 1996).

Here, however, Plaintiffs allege that Van Dyne-Crotty, Inc., was split into two separate companies.  They do not allege that one sold all of its assets to the other.  Nor do they allege common ownership of those two companies.  In fact, the 1973 Agreement provides that L. William Crotty would redeem all of his stock in Van Dyne-Crotty, Inc., in exchange for all of the shares of common stock in VDCC.  Ex. A to Doc. #172.  The court therefore concludes that Plaintiffs have not sufficiently alleged a "mere continuation" theory of successor liability.

This brings us to the final theory asserted -- assumption of liability.  The Amended Complaint contains no factual allegations to support a claim that VDCC expressly or impliedly agreed to assume the liabilities of Van Dyne-Crotty, Inc. Nevertheless, the Court cannot ignore the 1973 Agreement, which has now properly been made part of the record.  As Plaintiffs note, Paragraph 6 of the agreement states:

> The parties agree that in the event there are any contingent liabilities which arise subsequent to the organization and operation of the two corporations and which would become liabilities of Van Dyne-Crotty,

12

Inc., Van Dyne-Crotty Co., shall assume and pay its proportionate share of such liabilities at the time of the separation into two corporations.

Ex. A to Doc. #172.  Plaintiffs argue that this constitutes an express assumption of liability on the part of VDCC for all liabilities that arose prior to the Agreement, including liability for clean-up costs related to the Site.  VDCC, on the other hand, argues that Van Dyne-Crotty, Inc., retained *all* liability for the Dayton operations, and that Paragraph 6 "merely allocates any contingent liabilities that should occur between the date of the agreement and the date the legal separation of the two entities is finalized accordingly."  Doc. #183, PageID#1734 n.1.

At this juncture, the Court need not resolve the apparent ambiguity, or decide the exact scope of the assumption of liability contained in Paragraph 6. For purposes of the pending 12(b)(6) motion, it is enough that the language contained in Paragraph 6 of the Agreement pushes Plaintiffs' claim of successor liability across "the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  The Court therefore OVERRULES VDCC's Motion to Dismiss, Doc. #172.

## IV.   Conclusion

For the reasons set forth above, the Court:

(1)   OVERRULES DAP Products, Inc.'s Motion to Dismiss First Amended Complaint (Doc. #152);

(2)    SUSTAINS Hewitt Soap Works, Inc.'s Motion to Dismiss the Amended

Complaint (Doc. #153), and DISMISSES Plaintiffs' claims against

Hewitt WITHOUT PREJUDICE; and

(3)    OVERRULES Van Dyne-Crotty's Motion to Dismiss (Doc. #172).

Plaintiffs are given leave to file a Second Amended Complaint against

Defendant Hewitt Soap Works, Inc., subject to the strictures of Federal Rule of

Civil Procedure 11, within 20 calendar days from the date of this Decision and

Entry.

Date: February 18, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE