IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,  :

      Plaintiffs,

    v.  :      Case No. 3:13-cv-115

THE DAYTON POWER & LIGHT      JUDGE WALTER H. RICE
COMPANY, *et al.*,  :

      Defendants.  :

---

DECISION AND ENTRY OVERRULING MOTION OF DEFENDANT
CARGILL, INC., FOR SUMMARY JUDGMENT (DOC. #106), WITHOUT
PREJUDICE TO REFILING ONCE PLAINTIFFS HAVE COMPLETED
DISCOVERY

---

In connection with clean-up efforts at the South Dayton Dump and Landfill

Site (the "Site"), Plaintiffs Hobart Corporation, Kelsey-Hayes Company, and NCR

Corporation filed suit against Cargill, Inc. ("Cargill"), and more than thirty other

defendants, all "potentially responsible parties" under the Comprehensive

Environmental Response, Compensation and Liability Act of 1980, as amended, 42

U.S.C. §§9607 and 9613 ("CERCLA"). Plaintiffs assert claims of cost recovery

under § 107(a) of CERCLA, contribution under § 113(f)(3)(B) of CERCLA,

declaratory judgment, and unjust enrichment.

This matter is currently before the Court on Cargill's Motion for Summary

Judgment. Doc. #106. For the reasons set forth below, the Court overrules that

motion, without prejudice to re-filing once Plaintiffs have had the opportunity to complete discovery.

I.      **Background and Procedural History**

The South Dayton Dump and Landfill Site ("the Site") is contaminated with numerous hazardous substances, including 1,2-dichloroethene, tetrachloroethene, toluene, polychlorinated biphenyls, vinyl chloride, arsenic, barium, cadmium, chromium, mercury, nickel, lead, zinc, and polynuclear aromatic hydrocarbons, including phenanthrene, benzoanthracene, benzopyrene, and flouranthene.  Waste was deposited at the Site from the early 1940's until 1996.

Plaintiffs were identified as potentially responsible parties ("PRPs") under CERCLA because they either generated the hazardous substances found at the Site, owned or operated the Site when hazardous substances were disposed of there, or arranged for disposal or transport for disposal of hazardous substances at the Site.  *See generally* 42 U.S.C. §§ 9604, 9607, and 9622.

In August of 2006, Plaintiffs entered into an "Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study" ("2006 ASAOC") with the United States Environmental Protection Agency ("EPA").  In May of 2010, Plaintiffs sued Defendant Cargill and seven other PRPs, seeking cost recovery under § 107(a) of CERCLA, contribution under

§ 113(f)(3)(B) of CERCLA, damages for unjust enrichment, and declaratory judgment. *Hobart Corp. v. Waste Management of Ohio, Inc.*, Case No. 3:10-cv-195 ("*Hobart I*").

Defendant Cargill operates a corn processing facility in the Dayton area, producing feed, corn syrup, high fructose corn syrup, and other corn products. Ex. B to Doc. #106, PageID#898. In *Hobart I*, Cargill filed a motion for summary judgment, arguing that Plaintiffs could not show that any hazardous waste from Cargill was disposed of at the Site. Plaintiffs disagreed but, in the alternative, argued that additional discovery was needed before they could adequately respond. The Court eventually dismissed *Hobart I*, having determined that Plaintiffs were limited to a § 113(f)(3)(B) contribution action, which was barred by the three-year statute of limitations. It overruled Cargill's motion for summary judgment as moot.

On April 5, 2013, Plaintiffs entered into an "Administrative Settlement Agreement and Order on Consent for Removal Action" ("2013 ASAOC") with the EPA, in connection with certain "vapor intrusion risks" at the Site. Plaintiffs then filed the above-captioned case, naming over thirty PRPs as defendants, including Cargill once again. Although Plaintiffs assert the same four causes of action asserted in *Hobart I*, the claims at issue here arise out of the 2013 rather than the 2006 ASAOC.

Plaintiffs allege that "Defendant Cargill, Inc. arranged for the disposal of wastes at the Site, including waste containing hazardous substances from its facilities and operation located in and around Dayton. Cargill, Inc. contributed to

3

Contamination at the Site through its disposal of wastes that included hazardous substances at the Site."  First Am. Compl. ¶64.

Cargill has again moved for summary judgment, arguing that Plaintiffs have no evidence from which a reasonable jury could find that any hazardous substance from Cargill was taken to the Site.  This is an essential element of each claim asserted.  Plaintiffs maintain that the evidence presented is sufficient to withstand summary judgment.  In the alternative, pursuant to Federal Rule of Civil Procedure 56(d), they request that the Court defer ruling on the motion, allowing them time to conduct discovery so that they can adequately respond to the motion.

## II.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility

5

determinations must be left to the fact-finder.  10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties.  Fed. R. Civ. P. 56(c)(3).  "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).  If it so chooses, however, the court may also consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).

## III.    Analysis

It is undisputed that Cargill is not subject to liability on any of Plaintiffs' claims unless Plaintiffs prove that Cargill arranged for disposal or treatment of hazardous substances at the Site.  *See* 42 U.S.C. § 9607(a)(3).  In support of their claim of "arranger" liability, Plaintiffs point to four documents, which were produced as part of Plaintiffs' initial disclosures in *Hobart I*.

Document 1 is an April 19, 1979, interoffice memorandum from Joe Moore, Office of Land Pollution Control, to Dick Carlton, Wastewater.[1]  The subject of the

---

[1]    Although the agency is not identified on the memorandum, the Court notes that Documents 3 and 4 are also authored by "Joe Moore" and printed on Ohio EPA letterhead.  See Ex. E to Doc. #106, PageID##918, 919.  It is therefore reasonable to assume that Document 1 is also an interoffice memorandum of the Ohio EPA.

6

memo is "Cargill Inc., 3201 Needmore Road, Unapproved Sludge Disposal." It reads as follows:

> This company continues to give its sludge to waste scavengers that dump it indiscriminately in ditches, along fence lines, etc. Can't this company be made to develop an approved method of industrial sludge disposal (6111.45, 6111.46)? The industrial waste section has dealt with this company and its "dumpers" before. There should be an industrial file regarding past problems and dealings. For the latest unauthorized promiscuous dumping contact Rhoads Richardson with the Preble County Health Department.

Ex. E to Doc. #106, PageID#920.

Document 2 is a March 24, 1980, letter from the Montgomery County Combined General Health District to The Peerless Transportation Co. It states that fly ash transported from Cargill constitutes "solid waste" that must be disposed of at one of five licensed landfills in the county. The South Dayton Landfill is listed as one of the five acceptable options. Ex. E to Doc. #106, PageID##916-17.

Document 3 is a January 14, 1983, letter from Joe Moore, Division of Land Pollution Control at the Ohio EPA, to Terry Wright of the Montgomery County Health Department, asking for assistance in investigating a complaint made by the Valley Asphalt Company, 1901 Dryden Road. The manager there complained "about Cargill waste that was dumped on property near his headquarters off Dryden Road. The waste was apparently dumped last year (1982). He is complaining about the odors and flies as you would expect from an organic waste." Ex. E to Doc. #106, PageID#919.

Document 4 is related to Document 3. It is dated January 19, 1983, and is an inter-office communication from Joe Moore to Valerie Brinker. It reads, "This company has a history of indiscriminate dumping of its waste sludge. The latest complaint concerns the open dumping of their material off 1901 Dryden Road. Doesn't this company need an acceptable plan for the disposal of its industrial waste?" Hand-written at the bottom of the memo is the following: "Problem corrected. Not sludge but by-product for reuse. Material has been removed." Ex. E to Doc. #106, PageID#918.

Cargill first argues that these documents are inadmissible because they contain multiple layers of hearsay.[2] Cargill further argues that, even if the documents are admissible, they are insufficient to create a genuine issue of material fact concerning whether Cargill arranged for the disposal of any hazardous substances at the Site.

Cargill notes that the dumping of industrial sludge referred to in Document 1 took place in Preble County, not in Montgomery County where the Site is located. Plaintiffs maintain that Document 1 is nevertheless significant because it shows that Cargill's indiscriminate dumping was an ongoing problem.

Document 2 concerns disposal of Cargill's fly ash, which allegedly contained mercury, methyl ethyl ketone, selenium, and arsenic, all hazardous substances.

---

[2]   Plaintiffs maintain that these documents fall within exceptions to the hearsay rule for business records (Fed. R. Evid. 803(6)), public records (Fed. R. Evid. 803(8)), ancient documents (Fed. R. Evid. 803(16)), and present sense impressions (Fed. R. Evid. 803(1)). The Court makes no ruling on the hearsay objections at this time.

*See* Ex. C to Doc. #124, Page ID#1046-47; 40 C.F.R. § 302.4. The letter at issue, however, simply indicates that the Site is *one of five* places where Peerless was *permitted* to dispose of Cargill's fly ash. Plaintiffs have presented no evidence to prove that Peerless chose to take it there.

Documents 3 and 4 concern waste deposited on property near 1901 Dryden Road sometime in 1982. Paragraph 9(a) of the 2013 ASAOC defines the Site as encompassing that address. Doc. #1-1, PageID#32. Cargill nevertheless argues that waste deposited "off" 1901 Dryden Road does not necessarily mean that it was deposited at the Site itself. Cargill also notes that the handwritten note at the bottom of Document 4 indicates that the waste was an organic by-product, not a hazardous substance, and that it was removed, meaning that it could not have caused Plaintiffs to incur response costs.

In addition to these four documents, Plaintiffs have also submitted a declaration of Deborah Grillot-Cornett, who operated Pollard Trucking adjacent to the Site from 1983 to 1985. She states that late one night in the mid-80s, she saw "a pile of some type of waste including food waste, possibly corn waste, on the property of Apollo Trucking," which was located next to Pollard. The pile was approximately two feet high and fifteen feet long and was covered with rats. Grillot-Cornett Decl. ¶¶4-5; Ex. A to Doc. #124. A diagram attached to her declaration indicates where the waste pile was located, and it appears to be within the Site boundaries. Grillot-Cornett further states that Apollo regularly hauled waste from Cargill, and she believes that the waste in the pile she saw came from

9

Cargill. *Id.* at ¶6. Cargill maintains that Grillot-Cornett's speculation that the waste came from Cargill is insufficient to withstand summary judgment, and further argues that there is no evidence that the food waste she allegedly observed contained any hazardous substance.

Finally, Plaintiffs cite to Michael Vlasak's deposition testimony, taken in another case. Vlasak, a Cargill employee, testified that organic waste and sludge from the settling pond was placed into dumpsters at Cargill's facility. Ex. D to Doc. #124, PageID ##1050-55. Plaintiffs note that an analysis of Cargill's settling pond sludge shows that it contains 1, 2-Dichloroethane, toluene, 4-Bromofluro-benzene, mercury, cadmium, selenium and arsenic, all of which are hazardous substances. *See* Ex. C to Doc. #124, PageID##1041-44; 40 C.F.R. §302.4. Cargill points out, however, that Vlasak did not testify that the sludge was placed in the same dumpster as the organic material. Only one of several dumpsters held pond sludge, and it was not emptied very often. Ex. J. to Doc. #139, PageID ##1336-37. Cargill maintains that Plaintiffs' speculation that the wastes may have been mixed together and taken to the Site is insufficient for purposes of avoiding summary judgment.

Plaintiffs contend that they have presented sufficient evidence from which a reasonable jury could find that Cargill arranged to have hazardous substances transported to the Site. In the alternative, Plaintiffs argue that it is premature for the Court to consider Cargill's motion for summary judgment because Plaintiffs have not yet had the opportunity to conduct needed discovery and cannot

10

adequately respond.  *See La Quinta Corp. v. Heartland Props., LLC*, 603 F.3d 327, 334 (6th Cir. 2010) ("it is well established that the plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment").

Federal Rule of Civil Procedure 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Plaintiffs' counsel, Larry Silver, has submitted a declaration stating that Plaintiffs need discovery from "Cargill's haulers and transporters to determine the extent of Cargill's use of the Site for disposal and the composition of its waste." Silver Decl. ¶5, Ex. N to Doc. #124, PageID##1125-27.  In particular, Plaintiffs plan to seek discovery from Peerless Transportation Company ("Peerless") and Industrial Waste Disposal Co. Inc. ("IWD"), companies that contracted to haul a substantial portion of Cargill's waste, and often transported waste to the Site.  *Id.*

Plaintiffs would like to review invoices and shipping manifests to determine where Peerless and IWD took Cargill's waste, and what types of waste they transported from Cargill.  They would also like to inspect employee records to identify potential witnesses who observed disposal at the Site.  *Id.* at ¶¶8-9. Silver notes that this information is not publicly available, but is within the control

11

of Cargill, Peerless, and Waste Management of Ohio, Inc., as successor in interest to IWD.

In determining whether to grant a request under Rule 56(d), the court should consider: (1) when the movant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery could make a difference in the outcome of the pending motion; (3) how long the discovery period has lasted; (4) whether the movant has been dilatory in its discovery efforts; and (5) whether the opposing party was responsive to prior discovery requests. *See Audi AG v. D'Amato*, 469 F.3d 534, 541 (6th Cir. 2006) (citing *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)).

Cargill argues that Plaintiffs have known of their need for the desired evidence for several years, since before they filed suit in *Hobart I*. This appears to be uncontroverted. Proof that Cargill arranged for the disposal of hazardous substances at the Site is an essential element of each of Plaintiffs' claims. This also appears to be the only element in serious dispute. Therefore, the desired discovery could clearly make a difference in the outcome of the summary judgment motion.

Notably, discovery in the above-captioned case has not yet begun. Cargill argues, however, that Plaintiffs had many months to conduct discovery in *Hobart I* before it was stayed pending resolution of certain dispositive motions. According to Cargill, Plaintiffs were dilatory in their discovery efforts, taking just six depositions during that time. Cargill notes that it fully cooperated in discovery in

12

*Hobart I*, answering interrogatories and producing more than 20 boxes of records of its waste transporters, employees, manufacturing processes, and waste disposal practices.

Cargill maintains that Plaintiffs have had ample time and opportunity to obtain whatever they needed from Cargill, IWD, and Peerless, but have uncovered no evidence proving that hazardous waste from Cargill was taken to the Site. Cargill maintains that additional discovery will yield nothing further, and urges the Court to grant summary judgment to spare Cargill the expense of further litigation.

Having weighed the various factors under Federal Rule of Civil Procedure 56(d), the Court concludes that Plaintiffs are entitled to additional discovery before the Court decides whether Cargill is entitled to summary judgment. Discovery in cases like this, involving conduct that took place decades ago by dozens of potentially responsible parties, is, by its very nature, protracted and difficult. Notably, in the limited time they had to conduct discovery in *Hobart I*, Plaintiffs uncovered evidence indicating that: (1) Cargill produced pond sludge and fly ash containing some of the same hazardous substances found at the Site; and (2) Cargill contracted with various haulers who often transported waste to the Site.

In the end, Plaintiffs may be unable to show that Cargill arranged to have any hazardous substances transported to the Site. However, in the Court's view, under the circumstances presented here, Plaintiffs must be given a fair opportunity to conduct additional discovery in an attempt to "connect-the-dots."

## IV.    Conclusion

For the reasons set forth above, the Court OVERRULES Defendant Cargill, Inc.'s Motion for Summary Judgment (Doc. #106), WITHOUT PREJUDICE to re-filing once Plaintiffs have had the opportunity to complete discovery.


Date: February 18, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE