IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORTION, et al.,

    Plaintiffs,

v.

THE DAYTON POWER & LIGHT CO., et al.,

    Defendants.

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SETTING FORTH RULINGS FOLLOWING *IN CAMERA* REVIEW OF VARIOUS DISCOVERY DOCUMENTS

---

On July 14, 2017, the Court issued a Decision and Entry ruling on several discovery-related motions, and directed counsel to submit several documents for an *in camera* review. Doc. #701.

I. **Pharmacia's/Plaintiffs' Answers to Interrogatories**

Plaintiffs and Defendant Pharmacia LLC ("Pharmacia") each moved to compel answers to outstanding interrogatories. Docs. ##647, 654. The Court sustained those motions and directed counsel to submit the answers for an *in camera* review. Given that counsel for Pharmacia has notified the Court that she instead submitted Pharmacia's answers directly to Plaintiffs, the Court assumes that there is no need for judicial review.

Counsel for Plaintiffs have submitted "Plaintiffs' Supplemental Responses to Defendant Pharmacia LLC's Contention Interrogatories to Plaintiffs Hobart Corporation, Kelsey-Hayes Company and NCR Corporation." As requested by Pharmacia, these answers are now in a narrative format. Having reviewed the Supplemental Responses, the Court finds that they constitute a satisfactory response to Pharmacia's contention interrogatories. Accordingly, Plaintiffs are directed to provide them to Pharmacia.

## II. Dayton Power and Light Co./Waste Management of Ohio

Defendants Dayton Power and Light Co. ("DP&L") and Waste Management of Ohio ("WMO") also moved to compel certain discovery responses from Plaintiffs. Docs. ##651, 652. As requested, Plaintiffs' counsel has submitted one redacted copy and one unredacted copy of each of the documents at issue, along with a cover letter setting forth the reasons for each redaction. Plaintiffs maintain that these documents are protected from disclosure by the attorney-client privilege, the work product doctrine, or both.

The attorney-client privilege protects against disclosure of communications between an attorney and his or her client. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3):

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
    (i) they are otherwise discoverable under Rule 26(b)(1); and
    (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).[1]

### A. Deficient Privilege Log

As an initial matter, the Court must determine whether Plaintiffs have in any way waived the attorney-client privilege by failing to include it on their privilege log as a basis for withholding summaries of interviews of former NCR employees, conducted by Larry Strayer, Susan Chema and Larry Silver. The privilege log asserts only "attorney work product" as the basis for withholding these documents. Doc. #652-2, PageID#9451.

Federal Rule of Civil Procedure 26(b)(5)(A)(i) states that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . expressly make the claim." Defendant WMO argues that Plaintiffs' belated

---

[1] Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."

3

assertion of the attorney-client privilege is unsupported and inadequate to allow the Court to determine whether the privilege applies.

Plaintiffs' failure to include the attorney-client privilege on the privilege log with respect to these documents does not necessarily result in a waiver of the privilege. Waiver is an "extreme sanction" typically "reserved for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests." 6 James Wm. Moore, *Moore's Federal Practice* §26.90[2] (3d ed.); *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003). Given that no such allegations are made and that none are remotely inferable from the materials reviewed, the Court finds that waiver is not warranted in this case.

Moreover, having now reviewed the parties' briefs, and conducted an *in camera* review of the interview summaries, the Court has sufficient information to be able to determine whether the privilege applies.

### B. Larry Strayer's Interview Summaries/Maps

Larry Strayer was a paralegal in NCR's Legal Department. At the request of NCR's legal counsel, he interviewed four then-current NCR employees and two retired NCR employees concerning NCR's waste disposal at the Cardington Road Landfill in the 1950s and 1960s. After those interviews, he drafted two confidential memos to the file. One is dated August 15, 1989; the other is dated August 18, 1989. There are also certain maps attached to the August 18, 1989,

memo, on which the interviewees marked the locations of the dumping sites they discussed in their interviews.

Citing *Upjohn*, Plaintiffs maintain that the attorney-client privilege protects these memos, in their entirety, from disclosure, regardless of Defendants' claimed need for them. In *Upjohn*, the company launched an internal investigation into certain payments made to foreign government officials in order to secure government business. Corporate counsel sent questionnaires to certain managers and then interviewed them, along with other officers and employees. When the Internal Revenue Service requested the questionnaires and interview notes, Upjohn refused to produce them, arguing that they were protected by the attorney-client privilege and the work product doctrine.

The Court rejected the Government's argument that the attorney-client privilege should apply only to communications by high-level corporate employees. *Id.* at 393. However, the Court noted that, because the privilege extends only to communications and not to *facts*, the Government was free to question the employees who were interviewed by counsel. The Court concluded that its holding—that the communications by the employees to counsel were protected by the attorney-client privilege—disposed of the case "so far as the responses to the questionnaires *and any notes reflecting responses to interview questions* are concerned." *Id.* at 397 (emphasis added).

Moreover, to the extent that the interview summaries went "beyond recording responses to [counsel's] questions," and revealed the "attorneys' mental

5

processes in evaluating the communications," the Court held that such notes may be protected by the work product doctrine. *Id.* at 401. The Court recognized that "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Id.* at 399.

Based on the holding in *Upjohn*, the Court finds that NCR's interview summaries are protected in their entirety by the attorney-client privilege and the work product doctrine. To the extent that the summaries record communications between the NCR employees and Strayer, made in confidence at the direction of corporate counsel in order to secure legal advice, the responses to Strayer's questions are protected from disclosure by the attorney-client privilege, regardless of Defendants' need for this information. *See U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 WL 2190747, at *4 (E.D. Mich. June 14, 2012) ("unlike the work product doctrine, under which a party may still obtain protected material upon a showing of substantial need, the attorney-client privilege is absolute, and no showing of need, no matter how great, provides a basis for piercing the privilege. *See Siddall v. Allstate Ins. Co.* ., 15 Fed. Appx. 522, 523 (9th Cir. 2001)[.]").

In addition, to the extent that the interview summaries also contain Strayer's mental impressions, opinions and conclusions concerning the responses to his questions, these statements are protected as core work product and "cannot be disclosed simply on a showing of substantial need and inability to obtain the

6

equivalent without undue hardship." *Upjohn*, 449 U.S. at 401. This is true even though the summaries were prepared in anticipation of different litigation involving the Cardington Road Landfill. *See United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 660 (6th Cir. 1976) (holding that the work product doctrine also protects work produced in anticipation of *other* litigation).

Accordingly, Plaintiffs need not produce Larry Strayer's interview summaries.

### C. Chema and Silver Memoranda

Susan Chema was a Senior Attorney for NCR. In connection with the South Dayton Dump investigation, she interviewed a former NCR employee. On February 13, 2003, she prepared a memorandum to the file, summarizing her notes from that interview. It is labeled "Confidential Attorney Work Product Prepared for Anticipated Litigation."

Larry Silver is outside counsel for NCR. In connection with this litigation, he interviewed Clay Lowe and Walter Trimbach, former NCR employees. His summaries of those interviews are recorded in two memoranda to the file. Both memoranda are dated March 18, 2003, and both are labeled "Confidential Attorney Work Product - Prepared in Anticipation of Litigation." Given that Lowe and Trimbach are both now deceased, Defendants argue that they have a substantial need for the factual information contained in the interview summaries.

Citing *Upjohn*, Plaintiffs again argue that these memoranda are protected in

their entirety by the attorney-client privilege, regardless of need. In the alternative, they argue that portions of the memoranda are core work product and are protected because they contain the attorneys' mental impressions. For the reasons cited above, the Court agrees.

To the extent that these interview summaries reflect responses of former NCR employees to the attorneys' interview questions, and the communications were made for the purpose of securing legal advice, they are protected by the attorney-client privilege. In addition, to the extent that the interview summaries also contain the attorney's mental impressions of the interviewees' statements, they are protected as core work product. Accordingly, Plaintiffs need not produce these documents.

### D. NASS Report

North American Security Solutions ("NASS") was hired by Pepe & Hazard LLP, counsel for Plaintiff Hobart, to interview individuals with knowledge of dumping at the South Dayton Landfill. Plaintiffs deny that the NASS Report was based on any of the NCR witness interviews discussed above. In addition, Plaintiffs maintain that the majority of the NASS Summary of Investigation, dated May 23, 2005, is protected by the work product doctrine.

Much of the investigation summary contains "fact" work product, clearly relevant to this litigation. Plaintiffs, however, maintain that Defendants have failed to show that they have a substantial need for the majority of these materials and

that they cannot, without undue hardship, obtain their substantial equivalent by other means. The Court agrees. As Plaintiffs note, the majority of the interviewees cited in the summary are still alive, and Defendants have had the same opportunity to locate and interview these witnesses as did Plaintiffs.

The Court also agrees with Plaintiffs that some portions of the NASS Report (designated sections of pages 1, 4, 8 and 9) also contain core work product that is protected from disclosure on that basis.

Nevertheless, Plaintiffs admit that Defendants have established a substantial need for information regarding Mr. Lowe and Mr. Trimbach (page 9), both deceased, and Mr. Larry Cornett (page 3), who is believed to be deceased. Plaintiffs also admit that Defendants have established a substantial need for information concerning the possible nexus between the old General Motors Corporation and the South Dayton Dump Site (page 8-10). The Court agrees that this information is discoverable under Fed. R. Civ. P. 26(b)(3)(A). Accordingly, Plaintiffs shall redact all but these designated portions of the NASS report and provide it to Defendants.[2]

---

[2] The Court does not, because it need not, address Defendants' argument that, because portions of the NASS Report were allegedly disclosed to the United States EPA and to Defendants, the attorney-client privilege has been waived.

### E. Robert Bleazard's Deposition Preparation Notes

Robert Bleazard was Plaintiff Kelsey-Hayes' 30(b)(6) designee. In preparation for his April 27, 2017, deposition, he made certain interview notes. He also took notes when he and his attorney interviewed Jack Wantz.

Plaintiffs maintain that, because these notes were prepared in anticipation of litigation by an agent of Kelsey-Hayes, they are protected from disclosure by the work product doctrine and, because both Bleazard and Wantz have already been deposed in the context of this litigation, Defendants cannot show a substantial need for Bleazard's notes. The Court agrees. Accordingly, Plaintiffs need not produce them.[3]

## III. Interrogatory re: Kelsey-Hayes' Nexus to the Site

The Court also ordered DP&L to serve an interrogatory on Plaintiff Kelsey-Hayes concerning the basis for Mike Turner's statement that information concerning Kelsey-Hayes' nexus to the Site was known to counsel, but not to him. The Court then ordered Kelsey-Hayes to submit a response to that interrogatory to the Court for an *in camera* review. Kelsey-Hayes has done so, but raises general objections.

Having reviewed Kelsey-Hayes' response to the interrogatory, the Court finds no reason why the information sought by DP&L should not be provided. It is

---

[3] Bleazard's notes also contain one statement that is subject to the attorney-client privilege and constitutes core work product.

relevant to the equitable allocation of response costs, and is not protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. Accordingly, Kelsey-Hayes shall serve its Response to Interrogatory on DP&L.

Date: August 24, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE