IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,  :

     Plaintiffs,

     v.  :    Case No. 3:13-cv-115

THE DAYTON POWER AND  :    JUDGE WALTER H. RICE
LIGHT COMPANY, *et al.*,

     Defendants.  :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS TO
FIFTH AMENDED COMPLAINT (DOC. #473); SUSTAINING
PLAINTIFFS' MOTION TO DISMISS FLOWSERVE'S PROTECTIVE AND
CONTINGENT COUNTERCLAIM TO PLAINTIFFS' FIFTH AMENDED
COMPLAINT (DOC. #535)

---

This matter is currently before the Court on Plaintiffs' Motion to Dismiss

Counterclaims to Fifth Amended Complaint (Doc. #473), and on Plaintiffs' Motion

to Dismiss Flowserve's Protective and Contingent Counterclaim to Plaintiffs' Fifth

Amended Complaint (Doc. #535).


I.    **Background and Procedural History**

Plaintiffs Hobart Corporation, Kelsey-Hayes Company and NCR Corporation,

filed suit under the Comprehensive Environmental Response, Compensation and

Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9601 *et seq.*,

against numerous defendants, seeking contribution for response costs incurred in

connection with the South Dayton Dump and Landfill Site ("the Site"). Many of those defendants filed counterclaims against Plaintiffs, and some defendants also filed crossclaims against each other. Defendants alleged that, if they are found liable for cleanup costs at the Site, they are entitled to contribution from Plaintiffs and from each other under 42 U.S.C. § 9613(f)(1).

On October 16, 2014, the Court issued a Decision and Entry Sustaining Plaintiffs' Motion to Dismiss All Counterclaims. Doc. #277. It found that Plaintiffs were entitled to contribution protection for response costs arising from the 2013 Administrative Settlement and Order on Consent ("2013 ASAOC") between Plaintiffs and the United States Environmental Protection Agency ("EPA"). In addition, the Court found that, although Plaintiffs might be entitled to a declaratory judgment concerning Defendants' liability for future response costs for *other* contamination at the Site, *see* 42 U.S.C. § 9613(g)(2), Plaintiffs could not actually *recover* those future response costs in the context of this lawsuit. Therefore, Defendants' counterclaims for contribution with respect to future response costs outside the scope of the 2013 ASAOC were premature. The Court dismissed them without prejudice to refiling in a subsequent suit. Doc. #277, PageID#2976.

With respect to Plaintiffs' claim of unjust enrichment, seeking contribution for costs incurred in identifying other potentially responsible parties ("PRPs"), the Court concluded that, because the Court is required, under 42 U.S.C. § 9613(f)(1), to equitably allocate response costs among all liable parties, Defendants' interests were already adequately protected, rendering the counterclaims superfluous. *Id.* at

2

PageID##2977-78.  The Court also dismissed the counterclaims for indemnification, finding that Defendants had failed to adequately plead the existence of an express or implied contract.  *Id.* at PageID#2979.

On April 11, 2016, the Court issued an Omnibus Scheduling Order, Doc. #373, in which it rejected Defendant Dayton Power and Light Co.'s ("DP&L") request that each defendant be deemed to have asserted a cross-claim against all other defendants.  The Court noted that, "because Defendants have incurred no response costs at the Site, they have no valid crossclaims against each other."  *Id.* at PageID#5562 n.4.  This footnote prompted several Defendants to file motions to dismiss the crossclaims that had been filed against them.  Docs. ##398, 400, 401, 404, 454, 472.

While those motions were pending, Plaintiffs filed a Fifth Amended Complaint, seeking additional contribution for response costs arising out of a new ASAOC ("the 2016 ASAOC").  Doc. #414.  Thereafter, several Defendants re-asserted counterclaims and crossclaims in their Answers to the Fifth Amended Complaint.  *See* Docs. ##427, 430, 433, 434, 436, 437, 443, 446, 449, 452.[1]

Although Defendants acknowledged the Court's earlier ruling dismissing the counterclaims, they reasserted them to preserve the issue for appeal.  They again alleged that, if they are found liable for response costs at the Site, they are entitled

---

[1]  These included Defendants DP&L, Valley Asphalt, Bridgestone Americas Tire Operations, LLC, Coca-Cola Refreshments USA, Inc., ConAgra Grocery Products Co., LLC, DAP Products Inc., Franklin Iron & Metal Corp., Kimberly-Clark Corporation, Sherwin-Williams Co., and Waste Management of Ohio, Inc.

to contribution and/or indemnification from Plaintiffs. *Id.* In addition, Defendants DP&L and Valley Asphalt alleged that, because they had *themselves* incurred response costs, they are entitled to contribution and/or indemnification from Plaintiffs. Docs. ##437, 443.

On September 26, 2016, the Court issued a Decision and Entry Overruling Defendants' motions to dismiss the crossclaims. Doc. #477. The Court noted that Federal Rule of Civil Procedure 13(g) specifically provides for contingent crossclaims: "The crossclaim may include a claim that the coparty is *or may be* liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant." Fed. R. Civ. P. 13(g) (emphasis added). The Court reiterated its view that "the equitable allocation scheme of §113 largely eliminates the need for counterclaims and crossclaims," but found that, to the extent that the parties disagreed with the Court's allocation, contingent crossclaims were permissible to preserve Defendants' right to seek contribution from others. Doc. #477, PageID##6825-26.

The Court also amended the Omnibus Scheduling Order to allow Defendants who had not already filed a cross-claim to do so no later than November 1, 2016. Doc. #477, PageID#6826. Several did. Defendant Flowserve Corporation, which had not previously filed crossclaims *or* counterclaims, filed a "Protective and Contingent Counterclaim against Plaintiffs, and Protective and Contingent Crossclaim against Certain Defendants." Doc. #503.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs have filed a Motion to Dismiss Counterclaims to Plaintiffs' Fifth Amended Complaint, Doc. #473. They have also filed a Motion to Dismiss Flowserve's Protective and Contingent Counterclaim to Plaintiffs' Fifth Amended Complaint, Doc. #535.[2]

## II.  Rule 12(b)(6) Standard of Review

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all

---

[2]  Although Plaintiffs filed a Sixth Amended Complaint, Doc. #636, on March 17, 2017, to add a few new parties, the Answers previously filed by the current Defendants were deemed to also be their Answers to the Sixth Amended Complaint. *See* Doc. #624, PageID#7854; March 1, 2017, Notation Order sustaining Motion for Leave to File Sixth Amended Complaint. Accordingly, the filing of the Sixth Amended Complaint did not moot Plaintiffs' pending motions.

reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

## III.    Analysis

### A.    Plaintiffs' Motion to Dismiss Flowserve's Protective and Contingent Counterclaim to Plaintiffs' Fifth Amended Complaint (Doc. #535)

As previously noted, Defendant Flowserve Corporation did not include a counterclaim or crossclaims in its Answer to the Fifth Amended Complaint. Doc. #429. However, after the Court amended the Omnibus Scheduling Order and gave the parties leave to file crossclaims, Flowserve asserted crossclaims *and a counterclaim*. Doc. #503.

6

Plaintiffs argue that Flowserve's belated, free-standing counterclaim must be dismissed because it was filed without leave of Court, and is not permitted by the Federal Rules of Civil Procedure. As a general rule, a counterclaim must be asserted as part of a recognized pleading. *See Allied Med. Care Assocs. v. State Farm Mut. Auto. Ins. Co.*, No. 08-2434, 2009 WL 839063, at *2 (E.D. Pa. Mar. 26, 2009) (dismissing free-standing counterclaim as a "procedural nullity"); *Bernstein v. IDT Corp.*, 582 F. Supp. 1079, 1089 (D. Del. 1984) (striking free-standing counterclaim).

Flowserve argues that it would have asserted the counterclaim earlier "but for the Court's Omnibus Scheduling Order that prohibited such counterclaims." Doc. #615, PageID#7762. Nothing in that Scheduling Order, however, prohibited a party from filing a counterclaim to a subsequently-filed amended Complaint. *See* Doc. #373, PageID#5562. In fact, ten other Defendants *did* file counterclaims along with their Answers to the Fifth Amended Complaint. *See* Docs. ##427, 430, 433, 434, 436, 437, 443, 446, 449, 452.

Because Flowserve's free-standing counterclaim was filed without leave of Court and is not permitted by the Rules, the Court SUSTAINS Plaintiffs' Motion to Dismiss Flowserve's Protective and Contingent Counterclaim. Doc. #535.

### B. Plaintiffs' Motion to Dismiss Counterclaims to Plaintiffs' Fifth Amended Complaint (Doc. #473)

In the Fifth Amended Complaint, Plaintiffs seek contribution for response costs incurred in performance of the work required by the 2013 and 2016

ASAOCs. All parties are in agreement that, under 42 U.S.C. § 9613(f)(2), Plaintiffs are entitled to contribution protection for these response costs.

However, Plaintiffs also seek contribution for response costs falling outside the scope of the 2013 and 2016 ASAOCS. More specifically, they seek contribution for the cost of identifying other potentially responsible parties ("PRPs").[3] In addition, Plaintiffs seek a declaratory judgment concerning Defendants' liability for future costs of responding to *other* contamination at the Site.

Defendants' counterclaims are directed to the response costs falling outside the scope of the ASAOCs. Defendants maintain that, if they are found liable for these other response costs, they are entitled to contribution from Plaintiffs. Plaintiffs have filed a motion to dismiss these counterclaims. Doc. #473. They note that the Court has already dismissed them once, *see* Doc. #277, and urge the Court to do so again on the same basis. Defendants have asked the Court to revisit this issue.

Moreover, the new counterclaims filed by Defendants DP&L and Valley Asphalt are unique. In addition to their counterclaims for contribution for response costs falling outside the scope of the ASAOCs, DP&L and Valley Asphalt each seek contribution and/or indemnification from Plaintiffs for response costs that they have incurred related to contamination flowing *from* the Site onto their own

---

[3] The Court has previously held that Plaintiffs are entitled to recover these additional costs in the context of this lawsuit. Doc. #189, PageID#1788-89.

8

properties. Plaintiffs maintain that these Defendants have failed to state a claim upon which relief can be granted.

DP&L and Valley Asphalt have filed individual memoranda in opposition to Plaintiffs' motion to dismiss. Docs. ##490, 492. Eight other defendants (Bridgestone Americas Tire Operations, LLC, Coca-Cola Refreshments USA, Inc., ConAgra Grocery Products Co., LLC, DAP Products Inc., Franklin Iron & Metal Corp., Kimberly-Clark Corporation, Sherwin-Williams Co., and Waste Management of Ohio, Inc.) filed a combined memorandum in opposition. Doc. # 491. Plaintiffs have filed three replies. Docs. ##508, 517, 519.

For the reasons set forth below, Plaintiffs' Motion to Dismiss Counterclaims to Plaintiffs' Fifth Amended Complaint, Doc. #473, is OVERRULED IN PART and SUSTAINED IN PART.

### 1. Arguments Common to All Defendants

All Defendants allege that, to the extent that they are found liable for response costs outside the scope of the 2013 and 2016 ASOACs, they are entitled to contribution and/or indemnification from Plaintiffs.

### a. Indemnification

In its previous Decision and Entry, Doc. #277, the Court dismissed all common law counterclaims for indemnification, finding that Defendants had failed to adequately plead the existence of an express or implied contract. *Id.* at PageID#2979. To the extent that Defendants again seek indemnification, the

Court sustains Plaintiffs' motion to dismiss that portion of the counterclaims for the reasons previously articulated.

### b.    Cost of Identifying Other PRPs

In their efforts to identify other PRPs, Plaintiffs have expended certain funds for which they seek contribution from Defendants under 42 U.S.C. § 9613(f).  In the alternative, they seek to recover these costs under a theory of unjust enrichment.  Defendants correctly note that Plaintiffs are not entitled to contribution protection for the cost of identifying other PRPs, because this falls outside the scope of work required by the ASAOCs.  In their counterclaims, Defendants allege that, if they are found liable for the cost of identifying PRPs, they are entitled to contribution from Plaintiffs under § 9613(f).

As noted above, the Court previously dismissed this portion of Defendants' counterclaim as superfluous, given that the Court is already required to equitably allocate response costs among all liable parties.  Doc. #277, PageID##2977-78.  In their Motion to Dismiss, Doc. #473, Plaintiffs urge the Court to do the same again.

Defendants, however, urge the Court to reconsider its position, particularly in light of the Decision and Entry overruling Defendants' motions to dismiss the contingent crossclaims, Doc. #477.  As with the crossclaims, Defendants argue that, if they disagree with the Court's allocation of these response costs, they should be able to seek contribution from Plaintiffs.

Unlike Federal Rule of Civil Procedure 13(g), which specifically allows contingent *crossclaims*, Rule 13 does not expressly allow contingent

10

*counterclaims*. But neither does it expressly prohibit them. "Counterclaims made contingent on the outcome of the principal action are permissible." *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 886 (D.C. Cir. 2014).

As with the crossclaims, the Court continues to believe that Defendants' interests are adequately protected by the Court's duty to equitably allocate the response costs among all PRPs. Nevertheless, upon reconsideration, and for the sake of consistency and in the interests of judicial economy, the Court will permit Defendants to proceed on their counterclaims for contribution with respect to the cost of identifying other PRPs.

### b. Future Response Costs

In the Fifth Amended Complaint, Plaintiffs also seek "an order declaring that Defendants are liable for *future costs* of responding to the Contamination." Doc. #414, PageID#6176 (emphasis added). As the Court has previously explained, once a defendant's liability has been established in a CERCLA action, there is typically no need to revisit that issue in a subsequent lawsuit seeking contribution for additional response costs. *See* Doc. #277, PageID##2973-76 (citing 42 U.S.C. § 9613(g)(2), and noting that such declaratory judgments are available in CERCLA actions).

The Court previously dismissed Defendants' counterclaims for contribution with respect to future response costs as premature because, even though Plaintiffs may be entitled to a declaratory judgment concerning Defendants' liability for future response costs, Plaintiffs cannot *recover* those costs in the context of this

particular lawsuit. The Court noted that, if and when Plaintiffs file suit to recover those future response costs, Defendants may reassert their counterclaims at that time. Doc. #277, PageID#2976.

Having considered the arguments of all parties, the Court adheres to its previous holding. The Court rejects Defendants' argument that, if Plaintiffs can litigate their *entitlement* to future response costs in this lawsuit, Defendants must be able to assert counterclaims to "preserve" their right to seek contribution from Plaintiffs in a subsequent lawsuit. *See Amcast Indus. Corp. v. Detrex Corp.,* 2 F.3d 746, 748 (7th Cir. 1993) (citing 42 U.S.C. §§9613(f)(1) and (g)(3)(A) for the proposition that a counterclaim for response costs under CERCLA is not compulsory).[4] Accordingly, the Court sustains Plaintiffs' motion to dismiss the counterclaims to the extent that Defendants seek contribution for future response costs.

## 2. Arguments Specific to Certain Defendants

In addition to joining with the other Defendants in the arguments discussed above, Defendants DP&L and Valley Asphalt also allege that they have incurred certain response costs as a result of releases of hazardous substances *from* the

---

[4] The Court rejects DP&L's argument that § 113(g)(2) of CERCLA supplants Federal Rule of Civil Procedure 13, and is contrary to the Rules Enabling Act, 28 U.S.C. § 2072(b). The Rules Enabling Act provides that all laws in conflict with the rules of procedure "shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). As Plaintiffs point out, by its very terms, this statute can invalidate only those laws existing at the time the rule at issue takes effect. Given that CERCLA was enacted almost forty years after Rule 13 was promulgated, the Rules Enabling Act does not apply.

Site onto their *own* properties. In their counterclaims, they seek to recover those response costs from Plaintiffs under 42 U.S.C. § 9607(a).

Plaintiffs maintain that these counterclaims are subject to dismissal under Fed. R. Civ. P. 12(b)(6), because they fail to satisfy *Iqbal*'s requirement that legal conclusions must be supported by factual allegations that give rise to an inference that Plaintiffs are, in fact, liable for the misconduct alleged. Plaintiffs also maintain that the counterclaims are not detailed enough to allow them to formulate a response. Defendants fail to allege when the response costs were incurred, why they were incurred, or under what circumstances they were incurred. Given the lack of specificity, Plaintiffs cannot determine whether Defendants are seeking to recover costs for which Plaintiffs would be entitled to contribution protection by virtue of the ASAOCs.

### a.   Dayton Power and Light Co.

In the Fifth Amended Complaint, Plaintiffs allege that DP&L was a regular customer at the Site and directly disposed of hazardous substances there. Doc. #414, PageID#6181. Plaintiffs further allege that DP&L released hazardous substances on its own property, which is located adjacent to the Site, and that these substances migrated through the groundwater to contaminate the Site. *Id.* In 2009, the EPA issued an administrative order requiring DP&L to allow Plaintiffs to perform certain testing to determine the extent of contamination at the DP&L facility. This testing was performed as part of the 2006 ASAOC. Tests showed the presence of a number of hazardous substances. The release of hazardous

13

substances from the DP&L facility has allegedly caused Plaintiffs to incur response costs. *Id.* at PageID##6192-93.

In its Counterclaim, DP&L alleges as follows:

6. Upon information and belief, there has been both a release and a threatened release of one or more hazardous substances from the Site.

7. As the direct and proximate result of the release and threatened release from the Site, DP&L has incurred substantial and necessary costs of response that are consistent with the [National Contingency Plan] including, without limitation, costs associated with ground water sampling, ground water monitoring, lab results, and consultant's expenses, among others.

8. Upon information and belief, each of the Plaintiffs and Co-Defendants, (collectively the "Counterclaim Defendants"), is an owner operator, arranger, and/or transporter, of hazardous substances that were ultimately disposed of at the Site.

9. DP&L is entitled to contribution and/or indemnification from the Counterclaim Defendants pursuant to Sections 107(a)(4)(B) and 113(f)(1) of CERCLA for the above-referenced costs incurred by DP&L in connection with the contamination at the Site.

10. If and to the extent that DP&L is held liable in this action—which alleged liability DP&L expressly denies—then DP&L is entitled to contribution and/or indemnification from the Counterclaim Defendants pursuant to Sections 107(a)(4)(B) and 113(f)(1) of CERCLA.

Doc. #437, PageID#6508.

The elements of a CERCLA claim are the same, regardless of whether a party seeks relief under § 107(a) or § 113(f). *Kalamazoo River Study Grp. v. Menasha Corp.*, 228 F.3d 648, 653 (6th Cir. 2000). DP&L has alleged all elements necessary to establish a *prima facie* case: (1) that the Site is a "facility"; (2) that there has been a "release" or "threatened release" of a hazardous

substance; (3) that the release caused DP&L to incur "necessary costs of response" that are "consistent" with the National Contingency Plan ("NCP"); and (4) Plaintiffs fall into one of the four categories of potentially responsible parties.[5] *See Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006). The Court rejects Plaintiffs' argument that DP&L's allegations are insufficient to tie Plaintiffs to contamination on DP&L's property.

Plaintiffs argue that DP&L has failed to adequately allege that the response costs are consistent with the NCP. Citing *ITT Industries, Inc. v. BorgWarner, Inc.*, 700 F. Supp. 2d 848, 880 (W.D. Mich. 2010), Plaintiffs note that, because DP&L has not entered into an administrative consent order with the EPA, it is not entitled

---

[5] The four categories of potentially responsible parties subject to liability are defined as follows:

> (1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who . . . arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a).

to an irrebuttable presumption that its actions were consistent with the NCP.

Under 40 C.F.R. § 300.700(c)(3)(i), a private party's response action is considered "consistent with the NCP" if, when evaluated as a whole, the action is in substantial compliance with 40 C.F.R . §§ 300.700(c)(5) and (6) and "results in a CERCLA-quality cleanup."  40 C.F.R. § 300.700(c)(6) provides that private parties "should provide an opportunity for public comment concerning the selection of the response action . . ."

DP&L has not alleged that it offered an opportunity for public comment or that its response resulted in a CERCLA-quality cleanup.  In recent years, several courts have dismissed CERCLA claims containing conclusory allegations of consistency with the NCP.  *See, e.g., J&P Dickey Real Estate Family L.P. v. Northrop Grumman Guidance & Elecs. Co.*, No. 2:11cv37, 2012 U.S. Dist. LEXIS 36497, at *14 (W.D.N.C. Mar. 19, 2012); *Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653, 658 (E.D. Texas 2006); *Francisco-Sanchez v. Essa Standard Oil de Puerto Rico, Inc.*, No. 08-2151, 2010 U.S. Dist. LEXIS 15165, at *10 (D.P.R. Feb. 22, 2010).

Nevertheless, the Sixth Circuit has held that certain "initial" or "preliminary" investigation and monitoring costs may be recoverable by private parties regardless of compliance with the NCP.  *Pierson Sand & Gravel, Inc. v. Pierson Twp.*, No. 94-1472, 1996 WL 338624, at * 6 (6th Cir. June 18, 1996); *Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 934 (6th Cir. 2004) ("consistency with the NCP is not required for the recovery of monitoring and investigation costs.").  Given that

16

DP&L seeks to recover costs of sampling and monitoring, its conclusory allegations of consistency with the NCP are not necessarily fatal to the counterclaim.

There are, however, other pleading deficiencies that are not so easily overcome. As Plaintiffs note, DP&L does not allege *why, when, or under what circumstances* it conducted its own groundwater sampling and monitoring, or incurred lab costs and consulting fees. This makes it impossible to determine whether DP&L is seeking to recover any response costs that fall outside the scope of Plaintiffs' contribution protection.

DP&L responds only that, when viewed in the context of the Fifth Amended Complaint, it is clear that the response costs it seeks were incurred after 2009 when, pursuant to the 2006 ASAOC, Plaintiffs entered DP&L's property to conduct certain testing. Citing a previous Decision and Entry of this Court, Doc. #189, PageID#1786, DP&L argues that it is not, at this stage of the proceedings, required to give more specific details about when, why, or under what circumstances, it incurred response costs. That Decision and Entry, however, dealt with the sufficiency of allegations concerning what kind of hazardous substances were released, how the releases occurred and when the releases occurred, facts that are difficult to know prior to discovery. *Id.* The Decision and Entry said nothing of the specificity required concerning the nature of *response costs* allegedly incurred. If DP&L has already incurred response costs, it should know when and why it did so, and should include those facts in its counterclaim.

Under the circumstances presented here, DP&L's sparse factual allegations fail to give Plaintiffs fair notice of the claims against them. The counterclaim alleges that DP&L is entitled to "*contribution and/or indemnification*" under "Sections 107(a)(4)(B) and 113(f)(1) of CERCLA for the above-referenced costs incurred by DP&L in connection with the contamination *at the Site*." Doc. #437, PageID#6508 (emphasis added). As it relates to Plaintiffs, this allegation is problematic for several reasons. The Court has already held that Defendants' requests for "indemnification" fail to state a claim upon which relief can be granted. More importantly, to the extent that DP&L seeks "contribution" under § 113(f) for response costs incurred "in connection with the contamination at the Site," Plaintiffs correctly note that they are entitled to protection from contribution for all work required by the ASAOCs, which included the testing of DP&L's property.

Despite the allegations in the counterclaim, DP&L now denies that it is seeking "contribution" from Plaintiffs under § 113(f) for response costs incurred "in connection with contamination at the Site." DP&L instead claims that it is seeking only "cost recovery" under §107(a) for response costs incurred on its own property, which is *not* part of the Site. *See United States v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007) (holding that § 107 permits cost recovery by a private party that has itself voluntarily incurred cleanup costs).

To the extent that DP&L seeks to recover response costs incurred on its own property as a result of a release or threatened release of hazardous

18

substances *from* the Site, for which Plaintiffs are partially to blame, Plaintiffs may

not be entitled to contribution protection. Nevertheless, given that Plaintiffs were

required to conduct certain testing *on DP&L's property* as part of the 2006

ASAOC, it is not clear whether the testing performed by DP&L is the same work

performed by Plaintiffs. Without knowing why, when, and under what

circumstances DP&L incurred the response costs at issue, it cannot necessarily be

inferred that Plaintiffs are liable for the response costs sought by DP&L. To

survive a motion to dismiss, the factual allegations must be sufficient to move

DP&L's claim across the line "from conceivable to plausible." *Twombly*, 550 U.S.

at 570. DP&L's do not.

Accordingly, the Court finds that DP&L's counterclaim, as pled, fails to

provide Plaintiffs with fair notice of the claim and the grounds on which it rests. It

is, therefore, dismissed. Nevertheless, DP&L may seek leave, within 30 days of

the date of this Decision and Entry, to file an Amended Counterclaim to cure the

deficiencies discussed above, if it can do so within the strictures of Fed. R. Civ. P.

11.

### b. Valley Asphalt

In the Fifth Amended Complaint, Plaintiffs alleged that Valley Asphalt owns

property within the Site boundaries, and that Valley Asphalt arranged for the

disposal of hazardous substances on its own property and that of an adjacent

property owner, also within the boundaries of the Site. Plaintiffs further alleged

that storm water and runoff containing hazardous substances drains from Valley Asphalt's property onto the Site. Doc. #414, PageID#6188.

In its counterclaim, Defendant Valley Asphalt alleges that Plaintiffs arranged for disposal and/or treatment of hazardous substances at the Site and/or accepted hazardous substances for transport to the Site, rendering Plaintiffs potentially responsible parties under 42 U.S.C. § 9607(a). Valley Asphalt then alleges that there has been a release or threatened release of hazardous substances "from the Site onto Valley Asphalt's property," causing Valley Asphalt to incur "substantial and necessary costs of response consistent with the National Contingency Plan[,]" including costs "incurred under the order and direction of [the EPA]." Like DP&L, Valley Asphalt alleges that, if it is deemed liable in this action, it is entitled to "contribution and/or indemnification" from Plaintiffs under § 107(a)(4)(B) and § 113(f)(1) of CERCLA. Doc. #443, PageID#6575.

To the extent that Valley Asphalt seeks contribution from Plaintiffs for costs incurred in connection with the 2013 Unilateral Administrative Order ("UAO") issued by the EPA, directing Valley Asphalt to test for vapor intrusion on its property and, if necessary, install a vapor abatement mitigation system, Plaintiffs note that the 2013 ASAOC requires Plaintiffs to do the same work Site-wide, which includes the Valley Asphalt property. *See* Docs. ##517-1, 517-2. Accordingly, Plaintiffs are entitled to contribution protection for vapor testing and mitigation efforts conducted on the Valley Asphalt property.

In its memorandum in opposition to the motion to dismiss, Valley Asphalt argues that, even if Plaintiffs are entitled to contribution protection for costs related to the 2013 and 2016 ASAOCs, other response costs are outside the scope of that protection. Valley Asphalt, however, makes no effort to identify what those "other response costs" might be. It argues only that questions concerning when the other alleged costs were incurred, why they were incurred or under what circumstances they were incurred are "all evidentiary issues that are subject to discovery." Doc. #492, PageID##7020-21.

However, as noted above, "Rule 8 . . . does not unlock the doors of discovery for a [party] armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Legal conclusions "must be supported by factual allegations" that give rise to an inference that Plaintiffs are, in fact, liable for the misconduct alleged. *Id*. at 679. In this case, as with DP&L, Valley Asphalt's counterclaim is devoid of factual allegations giving rise to an inference that Valley Asphalt has incurred any response costs for which Plaintiffs are not entitled to contribution protection under § 113(f). The Court therefore finds that Valley Asphalt has failed to state a claim upon which relief can be granted. The factual allegations in the counterclaim do not provide Plaintiffs with fair notice of the claim or the grounds upon which it is based.

Moreover, to the extent that Valley Asphalt seeks to recover response costs that are *unrelated to the UAO*—whatever those costs may be—Valley Asphalt has failed to allege sufficient facts to show that such costs incurred were consistent

21

with the NCP. As previously noted, a private party undertaking a response action must show that it provided an opportunity for public comment, *see* 40 C.F.R. §300.700(c)(6), and show that the work resulted "in a CERCLA-quality cleanup," *see* 40 C.F.R. §300.700(c)(3)(i). Valley Asphalt has alleged neither. Moreover, although consistency with the NCP is not necessarily required if a party seeks to recover investigation and monitoring costs, Valley Asphalt has not limited its counterclaim in any such manner.

For the reasons set forth above, the Court finds that Valley Asphalt has failed to state a claim upon which relief can be granted. The counterclaim is, therefore, dismissed. However, as with DP&L, the Court will give Valley Asphalt 30 days from the date of this Decision and Entry to seek leave to file an Amended Counterclaim to cure the deficiencies discussed above, if Valley Asphalt can do so within the strictures of Fed. R. Civ. P. 11.


## IV.    Conclusion

For the reasons set forth above, the Court SUSTAINS Plaintiffs' Motion to Dismiss Flowserve's Protective and Contingent Counterclaim to Plaintiffs' Fifth Amended Complaint. Doc. #535.

The Court SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' Motion to Dismiss Counterclaims to Plaintiffs' Fifth Amended Complaint. Doc. #473. To the extent that Defendants seek contribution from Plaintiffs for the cost of identifying other PRPs, the Court will allow the counterclaims to proceed.

However, to the extent that Defendants seek contribution from Plaintiffs for any future response costs for which Defendants may be held liable, the Court finds that the counterclaims are premature and must be dismissed without prejudice to refiling in a subsequent lawsuit.

To the extent that DP&L and Valley Asphalt seek to recover response costs incurred as a result of releases or threatened releases from the Site onto their own properties, the Court finds that these Defendants' factual allegations are insufficient to state a claim upon which relief can be granted. Nevertheless, DP&L and Valley Asphalt may seek leave to amend the counterclaims within 30 days of the date of this Decision and Entry.

Date: August 29, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE