IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,

    Plaintiffs,

v.

THE DAYTON POWER & LIGHT COMPANY, et al.,

    Defendants.

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART CERTAIN DEFENDANTS' JOINT MOTION TO STAY ADJUDICATION OF CLAIMS ASSOCIATED WITH THE 2016 ADMINISTRATIVE SETTLEMENT AND ORDER ON CONSENT (DOC. #780)

---

The above-captioned CERCLA case involves Plaintiffs' efforts to obtain contribution for response costs related to cleanup efforts at the South Dayton Dump and Landfill (the "Site").[1] The Sixth Amended Complaint, Doc. #636, seeks contribution for response costs arising from a 2013 Administrative Settlement and Order on Consent ("the 2013 ASAOC") between Plaintiffs and the United States Environmental Protection Agency ("EPA"). The 2013 ASAOC is focused on vapor intrusion risks at the Site. *See* Doc. #1-1. The Sixth Amended Complaint also seeks contribution for response costs arising from a 2016 Administrative

---

[1] CERCLA stands for the Comprehensive Environmental Response, Compensation, and Liability Act, as amended.

Settlement and Order on Consent ("the 2016 ASAOC"), Doc. #414-1. The 2016 ASAOC addresses a much broader array of contamination problems at the Site.

This matter is currently before the Court on Certain Defendants' Joint Motion to Stay Adjudication of Claims Associated with the 2016 ASAOC, Doc. #780.[2] For the reasons set forth below, that motion is sustained in part and overruled in part.

I.

Defendants argue that, because the EPA has not yet completed the Remedial Investigation/Feasibility Study ("RI/FS") required by the 2016 ASAOC, issued a record of decision ("ROD") or selected an appropriate remedy, Plaintiffs' contribution claims arising from the 2016 ASAOC are not yet ripe for adjudication. In order to recover on these claims, Plaintiffs must prove that they have paid more than their fair share of the response costs. However, it is not yet known what particular waste streams contributed to the specific hazards giving rise to the 2016 ASAOC. Nor has the EPA determined what remedy, if any, is needed, or how much it will cost.

According to Defendants, at this point, Plaintiffs' experts are simply guessing at the eventual remedy, and assuming that the relative quantity of waste

---

[2] Those Defendants include The Dayton Power & Light Company, Flowserve Corporation, Waste Management of Ohio, Cox Media Group Ohio, Inc., Valley Asphalt Corporation, Pharmacia LLC, Franklin Iron & Metal Corporation, Coca-Cola Refreshments USA, Inc., and Bridgestone Americas Tire Operation LLC. All claims against Flowserve and Coca-Cola were recently dismissed. Doc. #814.

contributed to the Site by each party will be determinative of contribution costs. Defendants argue, however, that the relative toxicity of each party's waste, its relative harm or threat to the environment, and its relation to the need for any remedy selected, are important factors in equitably allocating response costs arising from the 2016 ASAOC. *See AlliedSignal, Inc. v. Amcast Int'l Corp.*, 177 F. Supp. 2d 713, 752-53 (S.D. Ohio 2001). Much is still unknown. Defendants argue that, until the EPA completes the RI/FS, issues a ROD, and selects a remedy, it will be impossible for the Court to equitably allocate response costs related to the 2016 ASAOC.

In addition, Defendants argue that, because the EPA has primary jurisdiction to determine an appropriate remedy under CERCLA, a stay will provide appropriate deference to that agency. They maintain that the claims arising from the 2016 ASAOC can easily be severed from the claims arising from the 2013 ASAOC. Moreover, the facts developed in connection with the 2013 ASAOC will be part of the record and can be used to resolve the claims arising out of the 2016 ASAOC once those claims are ripe for adjudication.

According to Defendants, a stay will minimize the risk of unnecessary and duplicative expenditures, and conserve judicial resources. Defendants contend that Plaintiffs will suffer no prejudice if the Court issues the stay; however, given the many unknown factors that could affect equitable allocation of response costs, Defendants will be prejudiced if the stay is not granted. For all of these reasons,

Defendants urge the Court to stay adjudication of all claims arising from the 2016 ASAOC.

Plaintiffs argue, however, that Defendants have not established a need for the stay. They concede that the EPA has primary jurisdiction to craft an appropriate remedy, but argue that it is the Court's duty to equitably allocate response costs among the potentially responsible parties. They maintain that staying the case would be an abuse of discretion.

According to Plaintiffs, the claims arising out of the 2016 ASAOC are ripe, and the "unknowns" are not necessary for an adjudication of response costs. They point out that the undersigned has previously directed the entry of a declaratory judgment concerning equitable allocation of liability for past and future response costs in a case in which the RI/FS had not yet been completed and a remedy had not yet been ordered by the EPA. *See Responsible Envt'l Solutions Alliance v. Waste Mgmt.*, No. 3:04cv13, 2011 U.S. Dist. LEXIS 14204, at *54 (S.D. Ohio Feb. 3, 2011).

II.

There is no dispute that the contribution claims arising out of the 2013 ASAOC are ripe for adjudication. In August of 2016, Plaintiffs amended their Complaint to include contribution claims arising out of a new ASAOC, dated June 11, 2016, as well. Doc. #414. Plaintiffs could have filed a separate lawsuit within three years of the date of that Order, *see* 42 U.S.C. § 9613(g)(3)(B), but

4

because the new ASAOC involves the same Site, it made sense, in the Court's opinion, for Plaintiffs to amend their existing Complaint to include these new claims. That does not necessarily mean that the new claims must be, or can be, fully adjudicated in conjunction with the claims arising out of the 2013 ASOAC. As explained below, the claims arising out of the 2013 ASAOC and the 2016 ASOAC are interwoven in some respects, but not all.

Each claim for contribution under § 9613(f) involves a two-step process. First, the Court determines who is legally responsible for paying the response costs for the contamination at issue. Second, the Court allocates those response costs among all liable parties "using such equitable factors as the court determines as appropriate." 42 U.S.C. § 9613(f)(1).

### A.

With respect to the first step, the Court notes that CERCLA is a strict liability statute. Anyone falling in one of the categories set forth in 42 U.S.C. § 9607(a) "shall be liable" for "necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Those categories include owners and operators of the facilities where hazardous substances were disposed of, persons who arranged for disposal or treatment of hazardous substances at those facilities, and persons who accepted hazardous substances for transport to such facilities. *See* 42 U.S.C. § 9607(a).

CERCLA further provides that, "in any such action described in this subsection, the court shall enter a declaratory judgment on liability for response

costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C.A. § 9613(g)(2). Although the "subsection" in which this language appears concerns "[a]ctions for recovery of costs" under 42 U.S.C. § 9607, the Sixth Circuit has held that this mandatory provision is equally applicable to contribution actions brought under 42 U.S.C. § 9613(f). *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 451 (6th Cir. 2004) ("requests for declaratory judgments concerning future response costs in § 107 and § 113(f) suits must be treated alike").

Entry of a declaratory judgment with respect to liability for future response costs is appropriate if the plaintiffs allege facts that support a "likelihood" that they will incur future costs recoverable under CERCLA. *Id*. As the Ninth Circuit noted in *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177 (9th Cir. 2000):

> The statute is silent on whether declaratory judgments are authorized in contribution actions. It does not prohibit them. It is hard to see why it would. CERCLA was intended to encourage quick response and to place the costs on those responsible. Declaratory relief serves these purposes because all parties, like those in this case, will know their share of costs before they are incurred. The more liability can be limited and quantified, the more practical it is for a party to budget and borrow to finance it. Environmental litigation is tremendously complex, lengthy, and expensive. The costs and time involved in relitigating issues as complex as these where new costs are incurred would be massive and wasteful. Declaratory relief allocating future costs is therefore consistent with the broader purposes of CERCLA.

*Id.* at 1191 (footnote omitted).

Given the history of this case, and the allegations in the Sixth Amended Complaint, there is little doubt that Plaintiffs will continue to incur response costs

that will be recoverable under CERCLA. Accordingly, when the Court determines which Defendants are liable for response costs arising out of the 2013 ASAOC, the Court *must* enter a declaratory judgment "on liability for response costs or damages that will be binding on any subsequent action or actions to recover further costs or damages." 42 U.S.C. § 9613(g)(2). This includes Plaintiffs' claim for response costs arising out of the 2016 ASAOC.

As the Fourth Circuit held in *Dent v. Beazer Materials and Services, Inc.*,

> Even if multiple response costs actions exist or might exist, the court in the first action to reach decision is *required* to enter judgment as to liability for the site. The purpose of §113(g)(2) is, in fact, to require that the court's judgment in the first action have a preclusive effect as to liability on all successive actions.

156 F.3d 523, 532 (4th Cir. 1998) (emphasis in original). The court further held that, "[w]hile § 113(g)(2) permits actions for 'further response costs,' such as to contest the amount of response costs, it does not permit a successive determination of liability. . . . If each action required a new liability determination, CERCLA's declaratory judgment provision would be meaningless." *Id.*

In short, nothing precludes the Court from entering a declaratory judgment concerning Defendants' *liability* for response costs to be incurred in connection with the 2016 ASAOC. Declaratory judgment is appropriate even if the total amount of response costs is unknown, and even if Plaintiffs have not yet shown that they have paid more than their fair share. *United States v. Davis*, 261 F.3d 1, 48-49 (1st Cir. 2001) (upholding entry of declaratory judgment, and noting that "[t]he ongoing nature of the work and the fact that its ultimate cost was not

7

known at trial did not affect the district court's ability to consider the evidence that other PRPs contributed to the waste in the soil, and to determine whether some of [plaintiff's] costs should thus be allocated to them."); *New York v. Solvent Chem. Co., Inc.*, 664 F.3d 22, 27 (2d Cir. 2011) (holding that declaratory judgment on liability is proper because there is no need to relitigate these issues each time new costs are incurred).

Accordingly, to the extent that Defendants ask the Court to stay the issuance of a declaratory judgment concerning their *liability* for future response costs incurred in connection with the 2016 ASAOC, the Court OVERRULES Defendants' motion.

**B.**

Nevertheless, the Court agrees with Defendants that it cannot equitably allocate response costs incurred in connection with the 2016 ASAOC until that particular RI/FS is completed, a Record of Decision is issued, and a remedy is selected. Therefore, to the extent that Defendants ask the Court to stay the "equitable allocation" portion of the adjudication of Plaintiffs' claim for contribution for response costs arising out of the 2016 ASAOC, the Court SUSTAINS Defendants' motion.

The Second Circuit described the appropriate procedure in *Solvent Chemical Company*:

> A declaratory judgment with respect to liability saves litigants and courts substantial time and money, leaving for the future only the need to fix the amount of contribution and affording the court

8

flexibility with respect to the time and manner for doing so. Once the uncertainties regarding ongoing response costs have been resolved, a declaratory judgment allows the parties to invoke the jurisdiction of the district court pursuant to 28 U.S.C. § 2202 and obtain 'further relief' in the form of an order establishing the precise costs that each party will bear.

664 F.3d at 27. The Declaratory Judgment Act provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and a hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

Although a defendant's *liability* for response costs is subject to a single determination, applicable to all cost recovery and contribution actions involving that particular site, equitable allocation of response costs is not necessarily "one size fits all" where separate remedies are at issue. Equitable allocation of response costs depends on many factors, known as the "Gore factors," including:

> (1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with the Federal, State or local officials to prevent any harm to the public health or environment.

*Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 354 (6th Cir. 1998).

What constitutes an equitable allocation of response costs arising from the 2013 ASAOC, which is limited to vapor intrusion risks at the Site, may not constitute an equitable allocation of response costs arising from the 2016 ASAOC, which covers a much broader array of environmental hazards at the Site. The particular waste streams that drove the need for vapor mitigation systems at the Site may be markedly different than the waste streams that drove the need for whatever remedy grows out of the 2016 ASAOC. Accordingly, a separate analysis must be undertaken with respect to each remedy selected for the Site. True, many of the Gore factors will remain constant. However, to the extent that one party's contribution to the waste stream at issue can be isolated and tied to the need for the particular remedy at issue, this must be taken into consideration in equitably allocating response costs for that particular remedy. It is conceivable that a party could be allocated responsibility for few, if any, response costs arising from the 2013 ASAOC, but be held responsible for a large share of response costs arising from the 2016 ASAOC, and vice versa.

Accordingly, although Defendants' *liability* for the response costs arising from the 2016 ASAOC does not hinge on the remedy selected by the EPA, an *equitable allocation* of those response costs does. As Defendants have noted, there are many uncertainties regarding response costs related to the 2016 ASAOC. It is not yet known what remedy will be selected, or what specific waste streams

are driving the need for such a remedy. Until those facts are known, the Court is unable to equitably allocate those response costs among the parties.[3]

Plaintiffs correctly note that, in *Responsible Environmental Solutions Alliance v. Waste Management,* No. 3:04-cv-13, 2011 U.S. Dist. LEXIS 14204 (S.D. Ohio Feb. 3, 2011), the undersigned issued a declaratory judgment equitably allocating liability for past and future response costs even though the RI/FS had not yet been completed and the remedy had not yet been determined.

That case, however, is easily distinguishable. The Court's task was to equitably allocate the response costs for the RI/FS between the plaintiff, whose members had *generated* approximately 80% of the hazardous waste that was sent to the facility, and the one remaining defendant, whose corporate predecessors had *owned and operated* the facility and *transported* waste there. The Court decided to split past and future response costs evenly between the plaintiff and the defendant, based solely on the *roles* they had played in contributing to hazardous conditions at the site. The Court noted that, under this unique set of circumstances, where the generators of the hazardous waste were on one side of the equation, and the owners and operators of the facility were on the other, many

---

[3] This situation is obviously different from one involving a single remedy, where the scope of work to be completed has been defined. There, it is often appropriate to enter a broad declaratory judgment, equitably allocating past and future response costs, even though the total cost is not yet known. *See, e.g., AlliedSignal,* 177 F. Supp. 2d at 757; *Boeing,* 207 F.3d at 1191-92.

11

of the traditional "Gore factors," such as volume and toxicity, were largely inapplicable. *Id.* at \*\*39-40.

In contrast to *Responsible Environmental Solutions Alliance*, there are still *many* Defendants remaining in this action and, more importantly, there are two separate ASAOCs, each focusing on a different component of contamination at the Site. For the reasons explained above, the Court is unable to equitably allocate past and future response costs arising out of the 2016 ASAOC until the EPA completes the RI/FS, issues a Record of Decision, and decides on an appropriate remedy.

If those tasks are completed prior to the trial date, the Court should be able to fully adjudicate all claims in the context of the trial. If, however—as the parties anticipate—the EPA has not yet completed these tasks by the time of trial, equitable allocation of response costs arising out of the 2016 ASAOC may need to be postponed. Nevertheless, the Court may choose to enter judgment under Federal Rule of Civil Procedure 54(d). This would allow an immediate appeal of not only the adjudication of all claims stemming from the 2013 ASAOC, but also the declaratory judgment concerning Defendants' *liability* for response costs incurred in connection with the 2016 ASAOC.

III.

Certain Defendants' Joint Motion to Stay Adjudication of Claims Associated with the 2016 ASAOC, Doc. #780, is OVERRULED IN PART and SUSTAINED IN PART. To the extent that Defendants ask the Court to stay entry of declaratory judgment as to Defendants' *liability* for response costs related to the 2016 ASAOC, the Court denies the request. However, to the extent that Defendants ask the Court to stay any determination concerning the *equitable allocation* of those response costs until the RI/FS is completed, a Record of Decision issued, and a remedy selected, the Court grants Defendants' request.

Date: December 11, 2017

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE