IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,

    Plaintiffs,

    v.

THE DAYTON POWER & LIGHT
COMPANY, *et al.*,

    Defendants.

:

:

:

:

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART PLAINTIFFS' MOTION TO DISMISS DEFENDANT VALLEY
ASPHALT CORPORATION'S AMENDED COUNTERCLAIM (DOC.
#794); SUSTAINING PLAINTIFFS' MOTION TO DISMISS DEFENDANT
THE DAYTON POWER & LIGHT COMPANY'S AMENDED
COUNTERCLAIM (DOC. #798)

---

This matter is currently before the Court on Plaintiffs' Motion to Dismiss

Defendant Valley Asphalt Corporation's Amended Counterclaim, Doc. #794, and

Plaintiffs' Motion to Dismiss Defendant The Dayton Power & Light Company's

Amended Counterclaim, Doc. #798.

I.    **Background and Procedural History**

Plaintiffs, Hobart Corporation, Kelsey-Hayes Company and NCR Corporation,

filed suit against numerous defendants under the Comprehensive Environmental

Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42

U.S.C. § 9601 *et seq.*, seeking contribution for response costs incurred in

connection with the South Dayton Dump and Landfill Site ("the Site"). The response costs arose out of two Administrative Settlement Agreements and Orders on Consent ("ASAOCs"), executed in 2013 and 2016 between Plaintiffs and the United States Environmental Protection Agency ("EPA").

Many of the defendants filed counterclaims. On August 29, 2017, the Court issued a Decision and Entry Sustaining in Part and Overruling in Part Plaintiffs' Motion to Dismiss Counterclaims to Fifth Amended Complaint. Doc. #774. With respect to the Counterclaims of all Defendants, the Court: (1) dismissed all claims seeking indemnification; (2) permitted Defendants to proceed on their counterclaims for contribution for the cost of identifying other potentially responsible parties ("PRPs")[1]; and (3) dismissed all claims for contribution for future response costs. *Id.*

The Court also dismissed Counterclaims filed by Defendants Valley Asphalt Corporation ("Valley Asphalt") and The Dayton Power & Light Company ("DP&L"), who alleged that they incurred certain response costs as a result of releases of hazardous substances from the Site onto their own properties. They sought contribution and/or indemnification from Plaintiffs under 42 U.S.C. §§ 9607(a) and § 9713(f). Although the Court held that these two defendants had failed to state a claim upon which relief can be granted, it gave them leave to file Amended Counterclaims to cure the cited deficiencies. Doc. #774.

---

[1] A potentially responsible party or "PRP" is one who falls within one or more of the four categories of persons who may be held liable for response costs under CERCLA. *See* 42 U.S.C. § 9607(a).

On October 5, 2017, Valley Asphalt and DP&L each filed an Amended Counterclaim, Docs. ##787, 788. Plaintiffs have moved to dismiss both Amended Counterclaims, Docs. ##794, 798, arguing that Defendants have still failed to state a claim upon which relief can be granted.

## II.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must provide the opposing party with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a [party] to test whether, as a matter of law, the [opposing party] is entitled to legal relief even if everything alleged in the [claim] is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must construe the pleading in the light most favorable to the non-moving party, accept its

allegations as true, and draw all reasonable inferences in favor of the non-moving party. *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a [party] armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the opposing party is, in fact, liable for the misconduct alleged. *Id.* at 679.


## III.   CERCLA Remedies

The Court starts with a brief review of remedies available under CERCLA. Section 106 of the statute sets forth remedies available to the United States to abate imminent dangers to public health or welfare or the environment because of an actual or threatened release of a hazardous substance. 42 U.S.C. § 9606(a) ("Section 106").

CERCLA also provides two distinct avenues for *private parties* to recover costs incurred in cleaning up contaminated sites. *United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007). Those remedies are set forth in 42 U.S.C. §§ 9607 ("Section 107") and 9613 ("Section 113"). Under § 107, a private party who has voluntarily incurred cleanup costs may recover "necessary costs of response" if those costs are "consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Liability under § 107(a) is joint and several. *See Atl. Research*, 551 U.S. at 140 n.7 (assuming this issue without deciding).

Section 113 provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). "[A] PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties." *Atl. Research*, 551 U.S. at 139. "Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a)." *Id.* Accordingly, a party that is sued under § 106 or § 107 "may seek contribution from other PRPs under § 113(f)(1), so that the recovery costs can be distributed in an equitable fashion." *Hobart Corp. v. Waste Mgmt. of Ohio*, 758 F.3d 757, 762 (6th Cir. 2014) (footnote omitted).

Section 113 also provides that "a person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall

not be liable for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2).  However, a person who has resolved its liability to the Government for some or all of a response action may seek contribution from any person who is not a party to the administrative or judicially approved settlement. 42 U.S.C. § 9613(f)(3)(B).

An initial action for cost recovery under § 107(a) is subject to a three-year or a six-year statute of limitations, depending on the circumstances.  42 U.S.C. § 9613(g)(2).  All contribution claims brought under § 113(f) are subject to a three-year statute of limitations.  42 U.S.C. § 9613(g)(3).

As a general rule, the remedies set forth in § 107(a)(4)(B) and § 113(f) are mutually exclusive.  *Hobart*, 758 F.3d at 766.  The Sixth Circuit explained that "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)."  *Id.* (quoting *Atl. Research*, 551 U.S. at 139-40 n.6).

In *Atlantic Research*, the Court expressly left open the question of whether a PRP who incurs costs *involuntarily* may recover those compelled costs under § 113(f), § 107(a), or both.  551 U.S. at 139 n.6.[2]  The Sixth Circuit, however, addressed this unresolved question in *Hobart*.  The court concluded that the plaintiffs-appellants, who had incurred response costs only because they were

_____

[2]  The Supreme Court also left open the question of whether "§ 107(a) contains an additional implied right to contribution for PRPs who are not eligible for relief under § 113(f)."  *Atl. Research*, 551 U.S. at 141 n.8.

obligated to do so under the ASAOCs, "must proceed under § 113(f) if they meet one of that section's statutory triggers." 758 F.3d at 767. As discussed above, a private party may file a contribution claim under § 113(f): (1) "during or following any civil action" under §§ 106 or 107(a), *see* 42 U.S.C. § 9613(f)(1); or (2) after resolving its liability to the Government in an "administrative or judicially approved settlement[,]" *see* 42 U.S.C. § 9613(f)(3)(B).[3]

With these legal principles in mind, the Court turns to the pending motions.

## IV. Plaintiffs' Motion to Dismiss Defendant Valley Asphalt Corporation's Amended Counterclaim (Doc. #794)

In 2013, the EPA issued a Unilateral Administrative Order ("UAO") under § 106(a), directing Valley Asphalt Corporation to test for vapor intrusion and, if necessary, install a vapor abatement mitigation system on its own property. After being named as a defendant in this lawsuit, Valley Asphalt filed a § 113(f) counterclaim, seeking contribution from Plaintiffs for costs incurred in connection with that UAO.

In its August 29, 2017, Decision and Entry, the Court noted that Valley Asphalt's property is within the boundaries of the Site, and the 2013 ASAOC required Plaintiffs to do this same work Site-wide. Because this was a matter addressed in the ASAOC, Plaintiffs were entitled to contribution protection, under

[3] In *Hobart*, the Sixth Circuit held that, because the ASAOC was an "administrative settlement" within the meaning of § 113(f)(3)(B), plaintiffs-appellants were precluded from bringing a § 107(a)(4)(B) cost-recovery action. 758 F.3d at 769.

§ 113(f)(2), for vapor testing and mitigation efforts on Valley Asphalt's property. The Court held that, to the extent that Valley Asphalt sought contribution from Plaintiffs under § 113(f), the Counterclaim was devoid of factual allegations giving rise to an inference that any of the response costs stemming from the UAO were outside the scope of Plaintiffs' contribution protection. Doc. #774, PageID##21323-24.

In its Amended Counterclaim, Valley Asphalt now seeks to recover those same UAO costs *under § 107(a)*. It also still seeks contribution from Plaintiffs under § 113(f) for the costs of identifying other potentially responsible parties.[4] The Amended Counterclaim alleges, in relevant part, as follows:

> 2. The S. Dayton Dump and Landfill Site ("Site") is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).
>
> 3. On information and belief, Plaintiffs are liable persons at the Site under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) because they arranged for disposal and/or treatment of hazardous substances at the Site and/or accepted hazardous substance for transport to the Site.
>
> 4. On information and belief, there has been a release and a threatened release of hazardous substances from the Site onto Valley Asphalt's property.
>
> 5. As a direct and proximate result of the release and the threatened release from the Site, Valley Asphalt has incurred costs in excess of $220,000 and continues to incur substantial and necessary costs of response in compliance with the terms of a March 2013 Unilateral Administrative Order ("2013 UAO") issued by the United States Environmental Protection Agency ("USEPA") under CERCLA § 106(a), 42 U.S.C. § 9606(a), attached hereto as Exhibit A, including but not

---

[4]  Given that the cost of identifying PRPs is outside the scope of Plaintiffs' contribution protection, the Court has permitted Defendants to proceed with this portion of their § 113(f) Counterclaims. Doc. #744, PageID##21313-14.

limited to sampling and testing, demolition of buildings and installation of a sub-slab vapor mitigation system.

6. The response action required by the 2013 UAO is ongoing.

7. Because Valley Asphalt carried out its response action in compliance with the terms of the 2013 UAO, all costs incurred under the 2013 UAO were and are consistent with the National Contingency Plan pursuant to 40 C.F.R. § 300.700(c)(3)(ii).

8. Under CERCLA Section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), Valley Asphalt is entitled to cost recovery from each Plaintiff for response costs incurred in connection with the 2013 UAO.

9. If, and to the extent that Valley Asphalt is adjudged to be a liable person at the S. Dayton Dump and Landfill Site under Section 107(a) of CERCLA, 42 U.S.C. §9607(a), in this action, Valley Asphalt is entitled to contribution and/or indemnification from Plaintiffs pursuant to Section 107(a)(4)(B) and contribution pursuant to Section 113(f)(1) of CERCLA for the costs of identifying other potentially responsible parties.

Doc. #787, PageID##21699-700.

In their Motion to Dismiss Valley Asphalt's Amended Counterclaim, Plaintiffs argue that: (A) because Valley Asphalt satisfies one or more of the "statutory triggers" needed to bring a counterclaim for contribution under § 113(f), it is prohibited from bringing a cost recovery counterclaim under § 107(a); and (B) Valley Asphalt has not adequately alleged that it incurred any costs of identifying other potentially responsible parties.

## A.    Availability of a § 107(a) Cost Recovery Claim

The Court turns first to Plaintiffs' argument that, because Valley Asphalt is eligible to bring a contribution action under § 113(f), it cannot bring a cost recovery claim under § 107(a).  As discussed above, the Sixth Circuit has held that

"PRPs must proceed under § 113(f) if they meet one of that section's statutory triggers." *Hobart*, 758 F.3d at 767. Those "statutory triggers" are set forth in §§ 113(f)(1) and (f)(3)(B). A private party may bring a contribution claim: (a) during or following any civil action under § 106 or § 107 of ERISA, *see* 42 U.S.C. § 9613(f)(1); or (b) after resolving "its liability to the United States or a State for some or all of a response action or for some or all of the costs of any such action in an administrative or judicially approved settlement," *see* 42 U.S.C. § 9613 (f)(3)(B).

The UAO at issue here specifically states that it does not constitute "a satisfaction of or release from any claim or cause of action" the United States may have against Valley Asphalt. Doc. #787, PageID#21620. Accordingly, because the UAO does not constitute an "administrative or judicially approved settlement," Valley Asphalt cannot pursue a contribution counterclaim under § 113(f)(3)(B).

Therefore, the only relevant question is whether Valley Asphalt can pursue a contribution counterclaim under § 113(f)(1). Such a claim is available "during or following any civil action" under § 106 or § 107(a). 42 U.S.C. § 9613(f)(1). Plaintiffs maintain that Valley Asphalt meets the statutory trigger under § 106 by virtue of the UAO, and also meets the statutory trigger under § 107(a) by virtue of having been named a defendant in this lawsuit. The Court will discuss each of these in turn.

## 1. Section 106

Citing *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1997), Plaintiffs first argue that Valley Asphalt's § 106 UAO gives rise to a contribution claim under § 113(f)(1). In *Centerior*, the plaintiffs, who incurred $9.5 million in costs related to a UAO issued by the EPA, sought recovery under § 107(a). The court held that "[c]laims by PRPs . . . seeking costs from other PRPs are necessarily actions for contribution, and are therefore governed by the mechanisms set forth in § 113(f)." *Id.* at 350. The court noted that the plaintiffs' claim was a "'quintessential' action for contribution." *Id.* at 351. The court concluded that a party who is itself a PRP and is compelled to clean up a hazardous waste site is limited to an action for contribution under § 113(f) and cannot bring a § 107 cost recovery action against other PRPs. *Id.* at 356.

Factually, this case appears to be directly on point. As in *Centerior*, Valley Asphalt, a PRP, incurred response costs pursuant to a UAO and now seeks to recover those costs from other PRPs, including Plaintiffs. Accordingly, if *Centerior* is still good law, Valley Asphalt would be entitled to bring a § 113(f)(1) claim for contribution, and would be precluded from bringing a cost recovery claim under § 107(a).

Valley Asphalt, however, argues that *Centerior* is no longer good law. To the extent that *Centerior* holds that one PRP can *never* bring a § 107(a) cost recovery action against another PRP, the Court agrees. In *Atlantic Research*, the Supreme Court held that "the plain language of [§ 107(a)(4)(B)] authorizes cost-

11

recovery actions by any private party, *including PRPs*." 551 U.S. at 136

(emphasis added). *See also ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452,

457-58 (6th Cir. 2007) (noting that, post-*Atlantic Research*, *Centerior* does not

necessarily bar a PRP from bringing a cost recovery claim under § 107(a)); *Ford*

*Motor Co. v. Mich. Consol. Gas Co.*, 993 F. Supp. 2d 693, 702 (E.D. Mich. 2014)

(noting that *Centerior*'s holding, that cost recovery actions brought by PRPs are

actions for contribution, governed by § 113(f), did not survive *Atlantic Research*).

Whether a PRP can bring a §107(a) cost recovery claim depends on the

"circumstances leading up to the action, not the identity of the parties." *ITT*

*Indus.*, 506 F.3d at 458. As previously noted, the Supreme Court has stated that

"costs incurred *voluntarily* are recoverable only by way of § 107(a)(4)(B), and

costs of reimbursement to another person pursuant to a legal judgment or

settlement are recoverable only under § 113(f)." *Atlantic Research*, 551 U.S. at

139 n.6 (emphasis added). The Court expressly left open the question of whether

a PRP who sustains costs *involuntarily* may recover those compelled costs under

§ 107(a), § 113(f), or both. *Id.* However, in *Hobart*, the Sixth Circuit held that a

PRP who meets one of the statutory triggers set forth in § 113(f) is precluded from

bringing a § 107(a) cost recovery claim. *Hobart*, 758 F.3d at 767.

Accordingly, if the UAO constitutes a "civil action" under § 106, then Valley

Asphalt has a contribution claim under § 113(f) and is prohibited from pursuing a

§ 107(a) cost recovery claim. Courts, however, are split on the question of

whether a UAO constitutes a "civil action" under § 106. The Supreme Court has

12

not yet decided this issue. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 168 n.5 (2004).

Among the lower courts, most have held that a UAO does not constitute a "civil action" for purposes of § 113(f). *See Diamond X Ranch, LLC v. Atl. Richfield Co.*, No. 3:13-cv-00570, 2016 U.S. Dist. LEXIS 114799, at **18-19 (D. Nev. Aug. 26, 2016) (collecting cases); *Raytheon Aircraft Co. v. U.S.*, 435 F. Supp. 2d 1136, 1142 (D. Kan. 2006) (concluding that a UAO is not a "civil action" for purposes of § 113(f)); *Pharmacia Corp. v. Clayton Chem. Acquisition LLC*, 382 F. Supp. 2d 1079, 1088-89 (S.D. Ill. 2005) (same); *Emhart Indus., Inc. v. New England Container Co.*, 478 F. Supp. 2d 199, 203 (D.R.I. 2007) (holding that "§ 113(f)(1) is unavailable for parties who are merely subject to administrative orders").

A few lower courts, however, have held that a UAO does constitute a "civil action" under § 106, giving rise to a § 113(f)(1) contribution claim. *See Carrier Corp. v. Piper*, 460 F. Supp. 2d 827, 841 (W.D. Tenn. 2006) ("the Court finds that a UAO falls within the requirement of a 'civil action' under § 113(f)(1)"); *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 104 F. Supp. 3d 729, 742 (D.S.C. 2015) (same). The Sixth Circuit's holding in *Centerior*, that a UAO requiring cleanup by a PRP gives rise to a claim of contribution under § 113(f)(1), 153 F.3d at 351-52, appears to adhere to this minority view.

The Court need not determine whether this particular holding in *Centerior* is still good law. As explained below, regardless of whether the UAO constitutes a

13

"civil action" under § 106, Valley Asphalt is entitled to bring a § 113(f)(1) contribution claim by virtue of the fact that it has been sued in the instant action.

## 2. Section 107(a)

Valley Asphalt is entitled to seek contribution from another PRP "during or following any civil action" under § 107(a). *See* 42 U.S.C. § 9613(f). Given that Plaintiffs have sued Valley Asphalt for cost recovery at the Site under § 107(a), and for contribution under § 113(f)(3)(B), the statutory trigger has been met.

As explained in greater detail below, it does not matter that the Court has dismissed Plaintiffs' § 107(a) cost recovery claims. The elements of a § 113(f) contribution claim, and the relevant defenses, are based on the requirements set forth in § 107(a). *See ITT Indus.*, 506 F.3d at 458. Accordingly, the language "during or following any civil action under . . . section 9607(a) of this title" must be construed to include § 113(f) contribution claims.[5] Because Valley Asphalt is eligible to bring a claim for contribution under § 113(f), it cannot bring a claim for cost recovery under § 107(a). *Hobart*, 758 F.3d at 767.

## 3. Equitable Considerations

Valley Asphalt argues that this outcome is unfair because, even though it is *eligible* to bring a § 113(f) counterclaim against Plaintiffs, *recovery* is barred by virtue of the contribution protections provided to Plaintiffs in the ASAOCs. Valley

---

[5] Although a defendant sued for contribution under § 113(f) may file contribution cross-claims against co-defendants and counterclaims against Plaintiffs, such claims are largely redundant, given that the Court is already charged with equitably allocating response costs among all liable parties. *See* 42 U.S.C. § 9613(f)(1).

Asphalt maintains that, under the circumstances presented here, the Court should allow it to pursue a cost recovery claim against Plaintiffs under § 107(a). The Court disagrees.

Although Valley Asphalt cannot *recover* from Plaintiffs under § 113(f), this does not justify allowing Valley Asphalt to pursue a § 107(a) cost recovery counterclaim against them. The fact that Valley Asphalt is left without a viable remedy against Plaintiffs,[6] and that Valley Asphalt and other defendants may have to shoulder a disproportionate share of costs associated with the UAO, is of little or no legal import.

Plaintiffs have taken responsibility for the cleanup of the Site and have settled their claims with the EPA. Their actions fulfill CERCLA's goal of promoting timely cleanup of hazardous waste sites. *Kalamazoo River Study Grp. v. Menasha Corp.*, 228 F.3d 648, 657 (6th Cir. 2000). To allow Valley Asphalt to now pursue a § 107(a) cost recovery counterclaim against Plaintiffs would discourage settlement. As previously noted, under § 113(f), a PRP is liable only for its equitable share of the cleanup costs. In contrast, under § 107(a), PRPs are jointly and severally liable. To subject Plaintiffs to joint and several liability for the costs that Valley Asphalt incurred pursuant to the UAO would be unfair, given that Plaintiffs have only a § 113(f) claim against Valley Asphalt.

---

[6] It is undisputed that Valley Asphalt may bring a § 113(f) cross-claim for contribution against the other PRP defendants in this case.

### 4. Conclusion

Given that Valley Asphalt has satisfied at least one of the statutory triggers for bringing a contribution action under § 113(f), it cannot bring a cost recovery claim under § 107(a). The fact that Valley Asphalt will not be able to recover from Plaintiffs on the § 113(f) counterclaim does not warrant a different result. Accordingly, to the extent that Valley Asphalt seeks cost recovery against Plaintiffs under § 107(a), it has failed to state a claim upon which relief can be granted. The Court therefore SUSTAINS Plaintiffs' motion to dismiss this portion of the Amended Counterclaim.

### B. Costs of Identifying Other Potentially Responsible Parties

In its August 29, 2017, Decision and Entry, the Court held that Plaintiffs are not entitled to contribution protection for the cost of identifying other PRPs, because these costs fall outside the scope of the work required by the ASAOCs. Accordingly, it allowed Defendants to proceed on these particular counterclaims for contribution. Doc. #774, PageID##21313-14.

Valley Asphalt has reasserted this counterclaim in paragraph 9 of its Amended Counterclaim. Plaintiffs argue that the counterclaim is insufficiently pled because Valley Asphalt does not allege that it has incurred any costs of identifying other PRPs. It simply alleges that, if it is adjudged liable for such costs, it is entitled to contribution from Plaintiffs.

This, however, is no different than the counterclaims asserted by numerous other Defendants in this case. For the reasons set forth in the August 29, 2017,

Decision and Entry, the Court OVERRULES Plaintiffs' motion to dismiss this portion of Valley Asphalt's Amended Counterclaim.


## V.     Plaintiffs' Motion to Dismiss Defendant The Dayton Power & Light Company's Amended Counterclaim (Doc. #798)

Before turning to the merits of Plaintiffs' Motion to Dismiss Defendant DP&L's Amended Counterclaim, a brief recap of the procedural history of this claim is warranted. DP&L previously sought contribution and/or indemnification from Plaintiffs under §§ 107(a)(4)(B) and 113(f)(1) for costs it voluntarily incurred in connection with contamination at the Site. Doc. #437, PageID##6507-08. Plaintiffs moved to dismiss the counterclaims, arguing that they were entitled to contribution protection on the § 113(f) claims, and that DP&L's allegations on the § 107(a) claim were not specific enough to be able to determine whether any of the costs incurred fell outside the scope of contribution protection. Doc. #473.

In response, DP&L argued that its § 107(a) counterclaim was not precluded by Plaintiffs' alleged § 113(f) contribution protection. Citing *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139, 141 (2007), DP&L argued that, as a private party that had itself incurred cleanup costs, it had a viable cost recovery claim under § 107(a), and that the contribution protection afforded in the ASAOCs did not protect Plaintiffs from liability on a § 107(a) claim. Doc. #490, PageID##6998-99. Plaintiffs noted, however, that *Atlantic Research* did not hold

17

"that a defendant in a CERCLA § 113 contribution claim may bring a § 107(a) counterclaim for costs incurred at the same site." Doc. #508, PageID#7138.

In its August 29, 2017, Decision and Entry, the Court dismissed DP&L's counterclaim. It held that, to the extent that DP&L sought contribution under § 113(f), Plaintiffs were entitled to contribution protection for all work required by the ASAOCs, which included testing on DP&L's property. Doc. #774, PageID#21321.

With respect to DP&L's counterclaim under § 107(a)(4)(B), the Court stated that "[t]o the extent that DP&L seeks to recover response costs incurred on its own property as a result of a release or threatened release of hazardous substances *from* the Site, for which Plaintiffs are partially to blame, Plaintiffs may not be entitled to contribution protection." Doc. #774, PageID##21321-22.[7] It agreed with Plaintiffs, however, that DP&L's Counterclaim did not contain enough specific information about the costs it was seeking to recover, making it impossible to determine whether those costs fell outside the scope of Plaintiffs' contribution

---

[7] In so stating, the Court was under the mistaken impression that DP&L's property was adjacent to the Site but was not part of the Site itself. Plaintiffs have now pointed out that the "Site" was broadly defined in the 2006 ASAOC to include "nearby areas where hazardous substances, pollutants or contaminants have or may have come to be located from the Site." Doc. #1-1, PageID#26 in *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, Case No. 3:10-cv-195 (S.D. Ohio). Moreover, DP&L admits in its Amended Counterclaim, Doc. #788, that its property is included in the 2016 ASAOC's definition of "Operable Unit 2," *i.e.,* "all areas and media of the Site where Site-related hazardous substances, pollutants or contaminants have come to be located outside of OU1, including but not limited to: surface and subsurface soil, groundwater, landfill gas/soil vapor, surface water, sediment and air." *See* Doc. #414-1, PageID#6209. Accordingly, it appears that DP&L's property is actually part of the Site.

protection.  The Court gave DP&L leave to file an Amended Counterclaim to cure these deficiencies.  *Id.* at PageID#21322.

In its Amended Counterclaim, DP&L abandoned its § 113(f) contribution claim.  The Amended Counterclaim seeks only cost recovery under § 107(a)(4)(B). It states, in relevant part, as follows:

> 4. These Counterclaims and Crossclaims concern the Site defined in paragraph 2 of the Sixth Amended Complaint ("the Site").
>
> 5. The Site is a "facility" as that term is defined in 42 U.S.C. § 9601(9).
>
> 6. "Operable Unit Two" or "OU2" is defined in the 2016 Administrative Settlement and Order on Consent ("2016 ASAOC") as "all areas and media of the Site where Site-related hazardous substances, pollutants or contaminants have come to be located outside of OU1, including but not limited to: surface and subsurface soil, groundwater, landfill gas/soil vapor, surface water, sediment and air."
>
> 7. According to the 2016 ASAOC, the DP&L property located at 1900 Dryden Road, Dayton, Ohio is part of OU2.
>
> 8. Upon information and belief, there has been both a release and a threatened release of one or more hazardous substances from the Site.
>
> 9. As the direct and proximate result of the release and threatened release from the Site, DP&L has incurred substantial and necessary costs of response that are consistent with the NCP including, without limitation, costs associated with ground water sampling, ground water monitoring, industrial hygiene air monitoring, lab results, and consultant's expenses, among others.
>
> 10. These costs were incurred between 2009 and the present and are related to the contamination emanating from the Site.

11. Specifically, DP&L incurred response costs associated with Vertical Aquifer Sampling conducted at the DP&L property between fall and winter 2009.

12. Testing conducted by DP&L and its agents was performed in conjunction with suspected groundwater contamination emanating from the Site, and possibly contaminating the DP&L property.

13. DP&L consultants collected groundwater samples between September 2009 and December 2009 which were submitted to a laboratory for detection of volatile organic compounds.

14. Notably, Plaintiffs' Sixth Amended Complaint alleges that the DP&L property may be a source of contamination for the Site. In response, DP&L incurred costs associated with determining: (a) whether or not contamination existed in the groundwater surrounding the DP&L property, and (b) the source of that contamination, namely whether or not it originated with and was emanating from the Site.

15. These samples were also used to determine the depth of contamination associated with volatile organic compounds and potential contamination of the DP&L property.

16. Moreover, in September 2012, DP&L engaged Helix Environmental, Inc. to perform industrial hygiene air monitoring for suspected vapor intrusion air contaminants at the DPL property.

17. The objective of this monitoring was to document potential employee exposures to air contaminants emanating from the Site, including methane and trichloroethylene.

18. Subsequent monitoring took place on September 25, 2012, September 27, 2012 and December 10, 2012, including air sampling results, analytical procedures, sample data sheets, and analytical laboratory reports.

19. Upon information and belief, each of the Plaintiffs and Co-Defendants (collectively "Counterclaim Defendants"), is an owner, operator, arranger, and/or transporter of hazardous substances that were ultimately disposed of at the Site.

20. DP&L is entitled to cost recovery from the Counterclaim Defendants pursuant to Section 107(a)(4)(B) of CERCLA for the

above-referenced costs incurred by DP&L in connection with the contamination at the Site.

21. If and to the extent that DP&L is held liable in this action – which alleged liability it expressly denies – then DP&L is entitled to recovery of costs and/or indemnification from the Counterclaim Defendants pursuant to Section 107(a)(4)(B) of CERCLA.

Doc. #788, PageID##21628-30.

In their Motion to Dismiss the Amended Counterclaim, Plaintiffs once again argue that, as a named defendant in this lawsuit, DP&L is entitled to bring a claim for contribution under § 113(f), and is therefore precluded from bringing a § 107(a)(4)(B) counterclaim to recover costs it has allegedly incurred at the same Site. *See Hobart*, 758 F.3d at 767.

In previously granting DP&L leave to amend its Counterclaim to cure certain pleading deficiencies with respect to the § 107(a) claim, the Court implicitly rejected this argument. On further reflection and research, however, the Court concludes that Plaintiffs are correct, and that DP&L's amendments can do nothing to cure this fatal flaw.

As previously noted, one PRP may seek contribution under § 113(f)(1) from another PRP "during or following any civil action . . . under section [107(a)] of this title." 42 U.S.C. § 9613(f)(1). DP&L argues that, because the Court has dismissed Plaintiffs' § 107(a) claim, there is no "civil action . . . under section [107(a)] of this title" to trigger DP&L's right to bring a § 113(f) counterclaim for contribution. DP&L maintains that, because that statutory trigger has not been met, it is entitled to bring a § 107(a) counterclaim for cost recovery.

The Court rejects this argument. As discussed in connection with Valley Asphalt's Amended Counterclaim, the language "during or following any civil action under section 107(a)" must be interpreted to include civil actions under § 113(f) because, as Plaintiffs note, in order to recover on a § 113(f) claim for contribution, they must first prove that Defendants are liable or potentially liable under § 107(a). *See Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 656 (6th Cir. 2000) (noting that § 107 establishes the basis and elements of liability on a § 113(f) claim).

Accordingly, the fact that the Court has dismissed Plaintiffs' § 107(a) claim is of no import. Section 113(f) contribution claims qualify as a "civil action" under § 107, thereby triggering DP&L's ability to seek contribution from other PRPs under § 113(f), even before common liability for contamination at the Site has been established. *See Atl. Research*, 551 U.S. at 139-39 ("§ 113(f) permits suit before or after the establishment of common liability.").

Because DP&L is eligible to bring a § 113(f) contribution claim against other PRPs, this is its only possible avenue of recovery. *See Hobart*, 758 F.3d at 767 ("a PRP, eligible to bring a contribution action, can bring only a contribution action"). *See also Whittaker Corp. v. U.S.* 825 F.3d 1002, 1007 (9th Cir. 2016) ("a party who *may* bring a contribution action for certain expenses *must* use the contribution action, even if a cost recovery action would otherwise be available.") (emphasis in original).

In *Atlantic Research*, the Supreme Court did hold that a PRP that has voluntarily incurred cleanup costs may bring a § 107(a) cost recovery action against other PRPs. 551 U.S. at 139. Nevertheless, *Atlantic Research* is factually distinguishable in that it did not involve a PRP defendant asserting a § 107(a) *counterclaim* against a PRP plaintiff for response costs incurred at the same Site. The Court has found no authority indicating that such a claim would be viable.

Because DP&L is eligible to seek contribution from all other PRPs under § 113(f)(1), it cannot pursue a § 107(a) cost recovery action against them. *Hobart*, 758 F.3d at 767. This is true even for response costs incurred by DP&L that may fall outside the scope of Plaintiffs' contribution protection. Those response costs must also be pursued under § 113(f). Once common liability has been established for contamination at the Site, the Court must equitably allocate all response costs among the PRPs.

Moreover, as discussed above, due to the contribution protection available to Plaintiffs under the ASAOCs, DP&L may be forced to shoulder a disproportionate share of its own response costs. Nevertheless, this does not warrant allowing DP&L to pursue a § 107(a) counterclaim, which would subject Plaintiffs to joint and several liability.

Given the Court's finding that DP&L cannot pursue a § 107(a) counterclaim against Plaintiffs, it need not address the other grounds for dismissal asserted by Plaintiffs, including whether the response costs incurred by DP&L were "necessary" or whether they are consistent with the National Contingency Plan.

For the reasons set forth above, the Court finds that DP&L's amended allegations are still insufficient to state a plausible claim for relief against Plaintiffs. Accordingly, the Court SUSTAINS Plaintiffs' Motion to Dismiss DP&L's Amended Counterclaim, Doc. #798.

## VI.    Conclusion

For the reasons stated above, the Court SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' Motion to Dismiss Defendant Valley Asphalt Corporation's Amended Counterclaim, Doc. #794, and SUSTAINS Plaintiffs' Motion to Dismiss Defendant The Dayton Power and Light Company's Amended Counterclaim, Doc. #798.

Date: August 20, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE