IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,

    Plaintiffs,

    v.

THE DAYTON POWER & LIGHT
COMPANY, *et al.*,

    Defendants.

:

:

:

:

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CERTAIN ELEMENTS OF
CERCLA (DOC. #869); SUSTAINING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON NECESSITY AND
CONSISTENCY WITH THE NATIONAL CONTINGENCY PLAN (DOC.
#871)

---

Plaintiffs, Hobart Corporation, Kelsey-Hayes Company and NCR Corporation,
filed suit against numerous defendants under the Comprehensive Environmental
Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42
U.S.C. § 9601, *et seq.*, seeking contribution for response costs incurred at the
South Dayton Dump and Landfill Site ("the Site").

This matter is currently before the Court on two motions for partial summary
judgment filed by Plaintiffs: (1) Plaintiffs' Motion for Partial Summary Judgment on
Certain Elements of CERCLA, Doc. #869; and (2) Plaintiffs' Motion for Partial
Summary Judgment on Necessity and Consistency with the National Contingency
Plan, Doc. #871.

## I.     Background and Procedural History

Beginning in the early 1940s, hazardous substances were disposed of at the South Dayton Dump and Landfill Site ("the Site"), located on Dryden Road in Moraine, Ohio. Those hazardous substances allegedly include, but are not limited to, "cleaning solvents, materials containing PCBs, chemical solvents such as trichloroethene (TCE), cutting oils, paint, paint residue, Stoddard solvents, machine-tool water-based coolants, dielectric fluids, oils and brake fluids, in liquid, solid and/or gaseous states." Hazardous substances from adjacent properties also allegedly migrated through the groundwater to contaminate the Site. Doc. #636, PageID#8252.

Plaintiffs Hobart Corporation, Kelsey-Hayes Company and NCR Corporation entered into two settlement agreements with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC").[1] These ASAOCs require Plaintiffs to perform certain work at the Site, including investigation, testing and removal of the contamination.

Plaintiffs seek contribution from numerous defendants under CERCLA, 42 U.S.C. § 9613(f)(3)(B), for response costs incurred in connection with the 2013

---

[1]     An earlier Administrative Settlement Agreement and Order on Consent, the 2006 ASAOC, was the subject of earlier lawsuits.

2

and 2016 ASAOCs. At this stage of the litigation, the Court may determine Defendants' liability for all of those response costs, and can equitably allocate that liability for response costs incurred in connection with the 2013 ASAOC. Nevertheless, until the EPA completes the Remedial Investigation/Feasibility Study ("RI/FS") required by the 2016 ASAOC, issues a Record of Decision and selects an appropriate remedy, the Court cannot equitably allocate response costs related to the 2016 ASAOC. *See* Doc. #816.

On April 11, 2016, the Court issued an Omnibus Scheduling Order, Doc. #373, establishing separate deadlines for fact discovery and expert witness discovery. It also established two deadlines for filing motions for summary judgment—one "based solely on the testimony of the fact witnesses," and another based on fact witnesses, plus expert witness testimony.

On November 30, 2017, the Court issued a Decision and Entry ruling on several motions for summary judgment based solely on the testimony of fact witnesses. Doc. #814. Expert witness discovery has now been completed and, based on those expert witness reports, several Defendants have filed additional motions for summary judgment, which will later be addressed in separate judicial filings.

This matter is currently before the Court, however, on Plaintiffs' Motion for Partial Summary Judgment on Certain Elements of CERCLA, Doc. #869, and Plaintiffs' Motion for Partial Summary Judgment on Necessity and Consistency with the National Contingency Plan, Doc. #871.

## II.     Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a

4

jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.   Relevant CERCLA Law

Plaintiffs seek to recover contribution costs under §113(f)(3)(B) of CERCLA.

That subsection provides that "[a] person who has resolved its liability to the

United States or a State for some or all of a response action or for some or all of

the costs of such action in an administrative or judicially approved settlement may

seek contribution from any person who is not party to a settlement referred to in

paragraph (2)."  42 U.S.C. § 9613(f)(3)(B).

A plaintiff seeking contribution under §113(f) must prove the same elements

as a plaintiff seeking cost recovery under 42 U.S.C. § 9607(a).  *Kalamazoo River*

*Study Group v. Menasha Corp.*, 228 F.3d 648, 653 (6th Cir. 2000).  Those

elements are as follows:

> (1) the property is a "facility"; (2) there has been a "release" or
> "threatened release" of a hazardous substance; (3) the release has
> caused the plaintiff to incur "necessary costs of response" that are
> "consistent" with the NCP; and (4) the defendant is in one of four
> categories of potentially responsible parties.

*Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006).[2]

The "NCP," or National Contingency Plan, is a regulation promulgated by the EPA.

---

[2]   The four categories of potentially responsible parties include:

> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous
>     substance owned or operated any facility at which such hazardous
>     substances were disposed of,
> (3) any person who by contract, agreement, or otherwise arranged for
>     disposal or treatment, or arranged with a transporter for transport
>     for disposal or treatment, of hazardous substances owned or
>     possessed by such person, by any other party or entity, at any

## IV. Plaintiffs' Motion for Partial Summary Judgment on Certain Elements of CERCLA (Doc. #869)

Plaintiffs seek partial summary judgment with respect to the following elements of their CERCLA claim:

- Each of the Defendants remaining for trial is a "person" within the meaning of 42 U.S.C. § 9601(21);
- the Site is a "facility" within the meaning of 42 U.S.C. § 9601(9);
- there has been a release, within the meaning of 42 U.S.C. § 9601(22), or threatened release, of hazardous substances, within the meaning of 42 U.S.C. § 9601(14), from the Site; and
- the release of hazardous substances from the Site has caused the incurrence of costs of response, within the meaning of 42 U.S.C. § 9601(25).

Plaintiffs note that Fed. R. Civ. P. 56(a), as amended in 2010, specifically permits a party to move for summary judgment on *part* of a claim or defense. They maintain that there is no genuine issue of material fact with respect to any of these four foundational elements of a CERCLA claim. Plaintiffs contend that sustaining the motion will save judicial resources by eliminating the need for presentation of evidence and for certain findings of fact and conclusions of law.

_____

> facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a).

Defendants Waste Management of Ohio, Inc.; Cox Media Group Ohio, Inc.; Valley Asphalt Corporation; The Sherwin-Williams Company; Pharmacia, LLC; Bridgestone Americas Tire Operations, LLC; Conagra Grocery Products Company and The Dayton Power & Light Company all oppose Plaintiffs' Motion. *See* Docs. ##904, 919, 921, 922, 923, 926, 929, 931. However, they do not argue that genuine issues of material fact preclude summary judgment on any of the issues identified by Plaintiffs.

Instead, citing several cases that pre-date the 2010 amendment to Rule 56(a), Defendants argue that it is improper to seek summary judgment on constituent parts of a single claim for relief. Defendants also argue that, because the elements on which Plaintiffs seek summary judgment are intertwined with numerous other issues, sustaining Plaintiffs' motion will not materially reduce the length of trial and may inadvertently decide merits issues. Defendants therefore suggest that these matters are better addressed in the form of trial stipulations to be included in the Joint Final Pretrial Order.

Plaintiffs, however, argue that it would be improper for the Court to deny the Motion for Partial Summary Judgment based on the mere possibility that Defendants may later agree to stipulate to certain elements of the CERCLA claim.[3] Moreover, Fed. R. Civ. P. 56(a) now explicitly permits a party to move for

---

[3] Plaintiffs note that prior to filing this motion, they asked Defendants to stipulate to the same, but Defendants refused to do so. Defendants complain that Plaintiffs gave them just a few days to accede to the demand prior to filing the motion.

summary judgment on part of a claim or defense.  The Rule further provides that "[t]he court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added).  The Court finds that Plaintiffs have satisfied this burden.

### A.     "Persons" Within the Meaning of 42 U.S.C. § 9601(21)

CERCLA defines a "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body."  42 U.S.C. § 9601(21).

Plaintiffs note that Defendants ConAgra Grocery Products, LLC; Cox Media Group Ohio, Inc.; The Dayton Power & Light Co.; Franklin Iron and Metal Corporation; Pharmacia, LLC; The Sherwin-Williams Company; Valley Asphalt Corporation and Waste Management of Ohio, Inc., have each admitted that they fall within the statutory definition of "person."  Moreover, no Defendant has presented any evidence to the contrary.

Given the absence of any genuine issue of material fact, the Court finds that Plaintiffs are entitled to summary judgment on this issue.  Each of these Defendants is deemed to be a "person" within the meaning of 42 U.S.C. § 9601(21).

## B.    "Facility" Within the Meaning of 42 U.S.C. § 9601(9)

Plaintiffs also seek summary judgment on the question of whether the South

Dayton Dump and Landfill Site is a "facility" within the meaning of CERCLA.  A

"facility" includes a "landfill."  42 U.S.C. § 9601(9)(A).  It also includes "any site

or area where a hazardous substance has been deposited, stored, disposed of, or

placed, or otherwise come to be located."  42 U.S.C. § 9601(9)(B).

Plaintiffs maintain that, as a former landfill, the Site satisfies subsection (A)

of the definition and, as an area where hazardous substances were disposed of and

later found, the Site also satisfies subsection (B).  Again, Defendants have

presented absolutely no evidence to the contrary.  Accordingly, the Court finds

that Plaintiffs are also entitled to summary judgment on this issue.  The Site is

deemed to be a "facility" within the meaning of 42 U.S.C. § 9601(9).

## C.    "Release," Within the Meaning of 42 U.S.C. § 9601(22), of Hazardous Substances

Plaintiffs next seek summary judgment on the question of whether there has

been a "release" or "threatened release" of hazardous substances from the facility.

CERCLA defines a "release" as "any spilling, leaking, pumping, pouring, emitting,

emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the

environment (including the abandonment or discarding or barrels, containers, and

other closed receptacles containing any hazardous substance or pollutant or

contaminant). . . "  42 U.S.C. § 9601(22).

Plaintiffs note that, in the 2013 ASAOC, the EPA specifically found that there had been an actual or threatened "release" of hazardous substances from the facility, as defined by § 9601(22). Doc. #1-1, PageID#35. Again, Defendants have presented no evidence to the contrary. Accordingly, the Court finds that Plaintiffs are entitled to summary judgment on the question of whether there has been a "release" or "threatened release" of hazardous substances from the facility as defined in 42 U.S.C. § 9601(22).

**D.    "Costs of Response" Within the Meaning of 42 U.S.C. § 9601(25)**

Finally, Plaintiffs seek summary judgment on the question of whether the release or threatened release of hazardous substances from the facility has caused the incurrence of "response costs," as that term is defined by CERCLA. "The terms 'respond' or 'response' means remove, removal, remedy, and remedial action; all such terms (including 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25) (footnotes omitted).

The 2013 ASAOC classifies this as a "Removal Action," in which the EPA had already incurred $85,968.57 in Past Response Costs. Doc. #1-1, PageID##28, 48. In addition, according to Stephen Quigley, the environmental consultant performing vapor intrusion removal work at the Site, Plaintiffs have spent over $1.1 million in responding to vapor intrusion at the Site, and owe the EPA over $450,000 in oversight costs for the vapor intrusion mitigation. Doc. #869-3, PageID##24228-29.

Defendants have failed to present any evidence that would create a genuine issue of material fact as to whether the release or threatened release of hazardous substances at the Site caused the incurrence of these "response costs," as that term is defined by CERCLA. Accordingly, the Court finds that Plaintiffs are entitled to summary judgment on this issue also.

For the reasons set forth above, the Court SUSTAINS Plaintiffs' Motion for Partial Summary Judgment on Certain Elements of CERCLA, Doc. #869.

## V. Plaintiffs' Motion for Partial Summary Judgment on Necessity and Consistency with the National Contingency Plan (Doc. #871)

Plaintiffs have also moved for summary judgment on their claim that approximately $1.57 million in response costs already incurred in complying with the 2013 ASAOC were "necessary" and "consistent with the national contingency plan," or "NCP." *See* 42 U.S.C. § 9607(a)(4)(B). The motion encompasses *only* the $1,121,878 in vapor mitigation costs that Plaintiffs spent through the end of 2017, and the $452,000 in EPA oversight costs for vapor intrusion mitigation at the Site through July 28, 2017, which Plaintiffs are obligated to pay.[4] These response costs are documented in the Declaration of Stephen Quigley, General

_____

[4] Even though Plaintiffs continue to incur response costs in connection with the 2013 ASAOC, they do not currently seek summary judgment on the question of whether these additional costs are "necessary" or "consistent with the NCP." Nor do they seek summary judgment on this issue with respect to any costs incurred in connection with the 2016 ASAOC.

Manager for GHD, Inc., Plaintiffs' environmental manager at the Site. Doc. #871-2, PageID##24660-61.

Response costs are "necessary" if they are "incurred in response to a threat to human health or the environment." *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006). In the 2013 ASAOC, the EPA specifically found that the removal action "is necessary to protect the public health, welfare, or the environment." Doc. #1-1, PageID#38. Plaintiffs maintain that there is no genuine dispute that the response costs they incurred were "necessary" within the meaning of 42 U.S.C. § 9607(a)(4)(B). Doc. #871-2, PageID#24661.

Plaintiffs also argue that there is no genuine dispute that these particular costs are "consistent with the NCP." "A response action is 'consistent with the NCP' if the action is in 'substantial compliance' with 40 C.F.R. § 300.700(c)(5)-(6), and results in a 'CERCLA-quality cleanup.'" *ITT Indus. v. BorgWarner, Inc.*, 700 F. Supp. 2d 848, 880 (W.D. Mich. 2010) (quoting 40 C.F.R. § 300.700 (c)(3)(i)). Federal regulations provide that "[a]ny response action carried out in compliance with the terms of an order issued by EPA pursuant to section 106 of CERCLA, or a consent decree entered into pursuant to section 122 of CERCLA, will be considered 'consistent with the NCP.'" 40 C.F.R. § 300.700 (c)(3)(ii).

The 2013 ASAOC "constitutes an administration settlement for purposes of Section[] . . . 122(h)(4) of CERCLA." Doc. #1-1, PageID#58. Moreover, the 2013 ASAOC states that "[t]he removal action required by this Settlement Agreement . .

13

., if carried out in compliance with the terms of this Settlement Agreement, will be consistent with the NCP, as provided in Section 300.700(c)(3)(ii) of the NCP." *Id.* at PageID##38-39. Plaintiffs further argue that, because their response costs were incurred in connection with the 2013 ASAOC, there is an "irrebuttable presumption" that the response action is consistent with the NCP. *ITT Indus.*, 700 F. Supp. 2d at 880 (quoting *Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1136-37 (10th Cir. 2002)).

Defendants Valley Asphalt; Waste Management of Ohio, Inc.; Cox Media Group; The Sherwin-Williams Company; Pharmacia, LLC; Bridgestone Americas Tire Operations, LLC; The Dayton Power & Light Company and Conagra Grocery Products Company, LLC, all oppose Plaintiffs' motion for partial summary judgment on this issue. Docs. ##900, 905, 918, 920, 924, 925, 927, 930. They raise numerous objections, none of which has merit.

Defendants again argue that it is improper to seek summary judgment on something less than an entire claim. The Court again rejects this argument, given that the amendments to Fed. R. Civ. P. 56(a) now allow summary judgment on part of a claim. Defendants also again suggest that these issues are better suited for a trial stipulation; however, Plaintiffs note that, thus far, Defendants have refused to enter into such a stipulation.

Defendant Pharmacia, LLC, argues that it is premature for the Court to decide whether particular response costs are "necessary" and "consistent with the NCP." It maintains that this issue is relevant only to the question of whether the

costs are ultimately *recoverable* under CERCLA, and is not element of a prima facie case of CERCLA liability.

Quoting *Containerport Group, Inc. v. American Financial Group, Inc.*, 128 F. Supp. 2d 470, 481 (S.D. Ohio 2001), Pharmacia argues that this issue is better left for the "contribution or damages phase of trial." It contends that Defendants should not need to address the issues of "necessity" or "consistency with the NCP" until the Court has determined which Defendants are liable. Pharmacia suggests that, if Defendants are forced to argue over prospective damages now, it may create an unwaivable conflict of interest, or have a preclusive effect on Defendants' ability to challenge whether costs incurred in connection with the 2016 ASAOC are necessary and consistent with the NCP.

Plaintiffs deny that summary judgment on these issues would be premature. They correctly point out that, although the Court has agreed to stay equitable allocation of response costs related to the 2016 ASAOC, the same is not true with respect to costs related to the 2013 ASAOC. That will take place during the upcoming trial. *See* Doc. #816. Before equitably allocating costs incurred in connection with the 2013 ASAOC, the Court must determine whether those costs are "necessary" and "consistent with the NCP." *See Reg'l Airport Auth. of Louisville*, 460 F.3d at 703 (listing elements of CERCLA claim).

Accordingly, the Court does not find Plaintiffs' motion to be premature. Nor does the Court share Pharmacia's concern about a conflict of interest or the preclusive effect of such a ruling on Defendants' ability to challenge the

recoverability of costs incurred in connection with the 2016 ASAOC. This is particularly true given the fact that Plaintiffs' motion for summary judgment is clearly limited in scope to certain response costs incurred in connection with the 2013 ASAOC.

Defendant Cox Media also argues that, because Plaintiffs will continue to accrue costs associated with the 2013 ASAOC, any determination that costs incurred *through a particular date* are necessary and consistent with the NCP would be a waste of judicial resources. Not necessarily. The Court's analysis concerning whether these *particular* response costs are "necessary" and "consistent with the NCP" undoubtedly will be useful in determining whether other response costs incurred in connection with the 2013 ASOAC are "necessary" and "consistent with the NCP." In addition, a ruling on Plaintiffs' motion for summary judgment with respect to a portion of the response costs may help to facilitate settlement of these claims.

These preliminary concerns having been addressed, the Court then turns to the question of whether Defendants have presented sufficient evidence to create a genuine issue of material fact as to whether the costs at issue are "necessary" and "consistent with the NCP." Defendants have presented several arguments, but none precludes summary judgment.

Defendant Cox Media Group Ohio, Inc., first argues that there is a genuine issue of material fact as to whether Plaintiffs are entitled to the irrebuttable presumption of consistency with the NCP. It notes that, in *AlliedSignal, Inc. v.*

*Amcast International Corp.*, 177 F. Supp. 2d 713 (S.D. Ohio 2001), this court, in

determining that the plaintiff's response costs were consistent with the NCP,

noted that the activities were conducted under the "close direction and supervision

by the EPA and OEPA . . . of every step taken by the Plaintiff and its contractor."

*Id.* at 742. Cox Media argues that, because Plaintiffs have failed to establish a

similar level of oversight by the EPA in this case, they are not entitled to the

irrebuttable presumption.

The Court rejects this argument. As previously noted, the regulation at

issue provides that "[a]ny response action carried out in compliance with the terms

of . . . a consent decree entered into pursuant to section 122 of CERCLA, will be

considered 'consistent with the NCP.'" 40 C.F.R. § 300.700 (c)(3)(ii). This

regulation does not require a certain level of EPA oversight before a response

action is deemed consistent with the NCP. Moreover, as Plaintiffs point out, the

presumption of consistency would not be irrebuttable if a Defendant could defeat it

with a showing that the EPA's oversight was not as stringent as it could have

been.

Defendant Valley Asphalt seeks to limit the scope of the presumption of

consistency. It argues that Plaintiffs are not entitled to any presumption that the

costs incurred *prior to April 5, 2013*, the effective date of the 2013 ASAOC, are

consistent with the NCP. Stephen Quigley noted that Plaintiffs began to incur

costs as early as January of 2013, in anticipation of the execution of the 2013

ASOAC. Doc. #871-2, PageID#24661. These pre-ASAOC costs are included in

Quigley's total of the costs incurred through 2017, on which Plaintiffs now seek summary judgment. Doc. #900-2, PageID#30884.[5]

Valley Asphalt argues that, as a matter of logic, pre-ASAOC costs cannot be deemed to have been taken "pursuant to" that consent order, and therefore cannot automatically be deemed consistent with the NCP. The Court disagrees. Nothing in the regulations prevents a finding that response costs incurred prior to the effective date of the ASAOC were carried out "in compliance with" the terms of that order, such that the action may be deemed "consistent with the NCP."

As Plaintiffs note, the regulations provide only that the response action must be carried out "in compliance with" the terms of the order. 40 C.F.R. § 300.700 (c)(3)(ii). As Stephen Quigley explained at his deposition, parties to a consent order typically know, during the course of negotiations, what is going to be required by the EPA, and frequently begin work in anticipation of the formal signing of the order. Doc. #951, PageID#35580. Quigley has stated that Plaintiffs began to incur response costs in January of 2013 "in anticipation that the ASAOC would

_____

[5] The Court rejects The Dayton Power and Light Company's argument that James Campbell, Plaintiffs' 30(b)(6) witness, testified that Plaintiffs are not seeking recovery for any costs associated with work conducted prior to April 5, 2013. In discussing the response costs being sought by Plaintiffs, Campbell testified that he had "simplified" the table. He explained that Plaintiffs were not claiming costs for work conducted under the 2006 ASAOC. He further explained that work done early in 2013, although prior to the effective date of the 2013 ASAOC, "is clearly being done under the plan required by the new order." Doc. #951, PageID#35580.

be signed" and that all of the work "was carried out in compliance with the terms of the 2013 ASAOC." Doc. #871-2, PageID#24661.

Given that Defendants have offered no evidence to the contrary, the Court finds that Plaintiffs are entitled to summary judgment on the question of whether the response costs at issue, some of which were incurred prior to the effective date of the 2013 ASAOC, are consistent with the NCP.

The final argument concerns the sufficiency of Plaintiffs' documentation of the $1,121,878 in response costs. Quigley's Declaration states that, "[a]s set forth in Table 1 of the 2018 report, Plaintiffs spent $1,121,878 through the end of 2017 on vapor intrusion mitigation at the Site." Doc. #871-2, PageID#24660. "Table 1" breaks this total down as follows:

| | |
|---|---|
| Costs from 01/01/2013 – 01/01/2016 | $870,000 |
| 2016 Monitoring | $ 88,307 |
| 2017 VI SSDS upgrades | $111,324 |
| 2017 monitoring and maintenance | $ 52,247 |

*Id.* at PageID#24675.

Cox Media notes that Table 1 is entitled "Estimated Vapor Intrusion Costs," and lists "best case" and "worst case" scenarios. The Court notes, however, that Table 1 includes both the past response costs listed above and future response costs. Although the future response cost estimates vary between the "best case" and "worst case" scenarios, the past response costs remain constant. Accordingly, the Court rejects Cox Media's suggestion that Plaintiffs have no definitive total of past response costs. The Court also rejects Cox Media's

19

argument that additional detail is needed. As Plaintiffs point out, Defendants have had ample opportunity to examine Plaintiffs' response costs and to depose Quigley on this topic.

In short, Defendants have presented no evidence that would create a genuine issue of material fact concerning whether the response costs at issue were necessary and consistent with the NCP. Based on the foregoing, the Court SUSTAINS Plaintiffs' Motion for Summary Judgment on Necessity and Consistency with the NCP, Doc. #871, and finds that the following costs incurred in connection with the 2013 ASAOC were "necessary" and "consistent with the NCP":

- $1,121,878 in vapor mitigation costs that Plaintiffs spent through the end of 2017; and
- $452,000 in EPA oversight costs for vapor intrusion mitigation at the Site through July 28, 2017.

## VI. Conclusion

For the reasons stated above, the Court SUSTAINS Plaintiffs' Motion for Partial Summary Judgment on Certain Elements of CERCLA, Doc. #869. The Court also SUSTAINS Plaintiffs' Motion for Partial Summary Judgment on Necessity and Consistency with the National Contingency Plan, Doc. #871.


Date: April 19, 2019

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE