IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al., :

    Plaintiffs,

v. : Case No. 3:13-cv-115

THE DAYTON POWER & LIGHT : JUDGE WALTER H. RICE
COMPANY, et al.,

    Defendants. :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART WASTE MANAGEMENT OF OHIO, INC.'S MOTION IN LIMINE
TO EXCLUDE 2012 DEPOSITION TESTIMONY OF EDWARD
GRILLOT (DOC. #990); SUSTAINING WASTE MANAGEMENT OF
OHIO, INC.'S MOTION IN LIMINE TO EXCLUDE DEPOSITION
TESTIMONY OF FRANK MIRACLE (DOC. #991)

---

This matter is currently before the Court on two motions in limine: (1) Waste Management of Ohio, Inc.'s Motion in Limine to Exclude 2012 Deposition Testimony of Edward Grillot, Doc. #990; and (2) Waste Management of Ohio, Inc.'s Motion in Limine to Exclude Deposition Testimony of Frank Miracle, Doc. #991.[1]

---

[1] Defendant Valley Asphalt Corporation has also filed a Motion in Limine to Exclude Hearsay Testimony from Edward Grillot, Doc. #995. This motion involves different deposition testimony and will be resolved in a separate Decision and Entry.

I.  Factual Background

Plaintiffs, Hobart Corporation, Kelsey-Hayes Company and NCR Corporation, filed suit against numerous defendants under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601, *et seq.*, seeking contribution for response costs incurred in connection with the South Dayton Dump and Landfill Site ("the South Dayton Dump" or "the Site").

One of those Defendants, Waste Management of Ohio, Inc. ("WMO"), has filed motions in limine asking the Court to exclude certain deposition testimony of lay witnesses Edward Grillot and Frank Miracle at trial and from consideration on the pending summary judgment motions. Docs. ##990, 991.

II.  Motions in Limine

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorizes the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115

2

F.3d 436, 440 (7th Cir. 1997)). Also, pretrial orders often save the parties time and costs in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

III.  **Waste Management of Ohio, Inc.'s Motion in Limine to Exclude 2012 Deposition Testimony of Edward Grillot (Doc. #990)**

Plaintiffs allege that Defendant Waste Management of Ohio, Inc. ("WMO") is the successor-in-interest to Defendants Industrial Waste Disposal Co., Inc. ("IWD"), Blaylock Trucking Company, Inc. ("Blaylock") and SCA Services of Ohio, Inc. (*aka* Container Services, Inc., Container Service, Co., and General Refuse Service, Inc. (collectively "Container Services")).[2]

---

[2] In one of its motions for summary judgment, WMO denies that it is the successor-in-interest to SCA Services of Ohio/Container Services. Doc. #870.

3

On April 12, 2012, Edward Grillot, whose family owned and operated the South Dayton Dump, was deposed in an earlier, related case, *Hobart Corporation v. Waste Management of Ohio, Inc.*, Case No. 3:10-cv-195 (S.D. Ohio) ("*Hobart I*"). In that case, which also involved the South Dayton Dump, IWD was named as a defendant, but Blaylock and Container Services were not. At his deposition in *Hobart I*, Grillot testified that Blaylock and Container Services transported materials to the Site, and that Container Services contributed money to help build the incinerator at the Site. Doc. #990-5, PageID##37885-87. It was Grillot's testimony that led to Blaylock and Container Services being named as Defendants in the instant case.

WMO has filed a motion in limine to exclude Grillot's testimony as it relates to Blaylock and Container Services. Doc. #990. That motion is fully briefed. *See* Docs. ##1035, 1043, 1055, 1057. WMO seeks to exclude use of Grillot's 2012 deposition at trial and from consideration on the pending motions for summary judgment. *See* Docs. ##990, 1026.

WMO argues that use of Grillot's 2012 deposition testimony is barred under Fed. R. Civ. P. 32 and Fed. R. Evid. 804(b)(1). Federal Rule of Civil Procedure 32(a)(8) governs the use of depositions taken in an earlier action. It provides that the earlier deposition may be used in a later action if the later action involves "the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A

4

deposition previously taken may also be used as allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 32(a)(8).

Federal Rule of Civil Procedure 32(a)(1)(A) provides that, at a hearing or trial, a deposition may be used against a party only if "the party was present or represented at the taking of the deposition or had reasonable notice of it." The deposition may only be used "to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying." Fed. R. Civ. P. 32(a)(1)(B). Federal Rule of Evidence 804(b)(1) provides that former testimony is not excluded as hearsay if the declarant is unavailable as a witness and it is offered against a party or its predecessor-in-interest who had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination."

*Hobart I* involved the same subject matter and many, but not all, of the same parties as the instant litigation. As previously noted, neither Blaylock nor Container Services was a party to that action. WMO argues that Grillot's April 12, 2012 deposition testimony cannot be used at trial or considered on the pending motions for summary judgment, because neither Blaylock nor Container Services was represented at that deposition. Attorney William Harbeck was present at Grillot's deposition, representing WMO in its capacity as a successor-in-interest to IWD. At that time, he was unaware that either Blaylock or Container Services was related to WMO. Accordingly, he did not object to any of the questions that were

5

asked about these entities or make any attempt to develop Grillot's testimony through cross-examination. Docs. ##990-3 and 990-4, PageID##37878-82.

WMO argues that, because IWD's attorney had no motive or incentive to thoroughly cross-examine Grillot about his statements concerning Blaylock or Container Services, Grillot's deposition testimony is inadmissible. *See Morrow v. Community Health Sys., Inc.*, 3:16-cv-1953, 2017 WL 2691563, at *2 (W.D. Tenn. June 22, 2017) (not allowing use of deposition from prior case involving no party with the same motivation to cross-examine the deponent); *Schimpf v. Gerald, Inc.*, 52 F. Supp. 2d 976, 983 (E.D. Wis. 1999) (excluding prior deposition testimony where there was no motive, at the time, for defendant's attorney to thoroughly cross-examine deponent).

Plaintiffs argue, however, that Grillot's 2012 deposition testimony is admissible because, at the deposition, William Harbeck said "I represent Waste Management of Ohio." Doc. #1035-1, PageID#39888. He did not state that he was representing WMO only as a successor-in-interest to IWD. Plaintiffs further argue that, because it was likely that Grillot would testify about other companies with connections to the Site, WMO had a duty to inform Harbeck of WMO's potential exposure as successor-in-interest to all relevant entities involved at the Site, including Blaylock and Container Services.

With respect to the applicability of Fed. R. Evid. 804(b)(1), Plaintiffs note that this Rule applies only when the declarant is "unavailable" as a witness. They argue that there is no reason to believe that Grillot falls within this definition.

6

Plaintiffs further note that WMO has had two subsequent opportunities to cross-examine Mr. Grillot during depositions taken in the instant litigation, once in 2013 and once in 2016. They argue that, under these circumstances, it is not unfair to admit Grillot's 2012 testimony.

In its Reply brief, WMO argues that there is no assurance that Grillot will be available for trial, given that he has recently lived in multiple states and may not be subject to subpoena. In addition, WMO argues that Grillot's 2012 deposition testimony was unreliable on its face, given his 2013 deposition testimony that he could not recall what materials Blaylock brought to the Site, Doc. #990-5, PageID#37885, and his 2016 deposition testimony that he did not know whether Container Services was involved in financing the incinerator, Doc. #990-6, PageID#37892-93. WMO maintains that, under these circumstances, the 2012 deposition testimony should be excluded under Fed. R. Evid. 403 because its probative value is outweighed by the danger of unfair prejudice. According to WMO, at the very least, the Court should allow Plaintiffs to use Grillot's 2012 deposition at trial only if Grillot is available to testify.

As WMO acknowledged in its Reply brief, Doc. #1043, and as further discussed in Plaintiffs' Sur-reply, Doc. #1055, and WMO's Sur-sur-reply, Doc. #1057, in deciding this issue, the Court is not writing on a clean slate. In connection with the first round of summary judgment motions in this case, WMO moved to exclude this same testimony on behalf of Blaylock for the same reasons now asserted. The Court held that, even though Grillot's 2012 deposition

7

testimony may be inadmissible against Blaylock at trial because Blaylock was not present or represented at the taking of that deposition, this did not necessarily mean that it could not be considered for summary judgment purposes. Doc. #814, PageID#22056. Because Grillot could testify at trial, where he would be subject to cross-examination, the substance of his April 12, 2012 deposition could be reduced to a "form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Court held that Grillot's 2012 deposition testimony was sufficient to create a genuine issue of material fact concerning whether Blaylock transported waste to the South Dayton Dump. Doc. #814, PageID#22059.

The Court sees no basis to revisit this analysis. Accordingly, WMO's Motion in Limine, Doc. #990, is SUSTAINED IN PART and OVERRULED IN PART. Grillot's 2012 deposition testimony cannot be used against IWD or Blaylock *at trial* because neither defendant was present or represented at the taking of the deposition or had reasonable notice of it. The fact that William Harbeck did not clarify that he was representing WMO only as a successor-in-interest to IWD is of little import. At that point, neither Blaylock nor Container Services had been identified as potentially responsible parties and he was completely unaware of their connection to WMO. Accordingly, he had no motive to develop Grillot's testimony with respect to either entity. Under Fed. R. Civ. P. 32(a), Grillot's 2012 deposition testimony is therefore inadmissible against IWD and Blaylock at trial. For the same reasons, the deposition testimony falls outside the scope of the hearsay exception set forth in Fed. R. Evid. 804(b)(1)(B).

8

Nevertheless, Grillot's 2012 deposition testimony may be considered in ruling on the motions for summary judgment because the content of that deposition may be presented in a form that would be admissible in evidence at trial, *i.e.,* Grillot's live testimony. *See* Fed. R. Civ. P. 56(c)(2). The Court rejects WMO's purely speculative argument that because, at the time of trial, Grillot may be out of state, beyond the reach of a subpoena, or may not be in good enough health to testify, it would be unfair and prejudicial for the Court to consider his deposition testimony in ruling on the summary judgment motions. The Court notes that, with respect to Grillot's health, WMO relies on the Declaration of a Certified Nurse Practitioner concerning various ailments that Grillot had three years ago, in 2016. Doc. #1057-3, PageID##40574-75.

Accordingly, although Grillot's 2012 deposition testimony is not admissible at trial, it may be considered in ruling on the pending motions for summary judgment filed by WMO on behalf of Blaylock and IWD, Docs. ##865, 868.

### IV. Waste Management of Ohio, Inc.'s Motion in Limine to Exclude Deposition Testimony of Frank Miracle (Doc. #991)

WMO has also filed a Motion in Limine to Exclude Deposition Testimony of Frank Miracle. Doc. #991. Again, WMO asks that his deposition testimony be excluded at trial, and from consideration on IWD's pending motion for summary judgment, Doc. #868. *See* Doc. #1026.

9

Frank Miracle, a former employee of the Dayton Tire & Rubber Company ("DTR") (n/k/a Bridgestone Americas Tires Operations, LLC), is now deceased. However, on June 6, 1991, his deposition was taken in state court in an unrelated insurance action, *Bridgestone/Firestone Inc. v. AIU Insurance Co.*, Summit County Court of Common Pleas, Civil Action #89-01-158. The plaintiff, Bridgestone/Firestone, which had incurred environmental liabilities at several sites including the Cardington Road Landfill, was seeking indemnification and costs of defense from AIU and other insurance carriers.

During this deposition, Miracle testified that, on two occasions, he followed an IWD truck carrying waste from DTR. When asked which landfill the truck went to, he replied, "[i]t was called — to the best of my knowledge, it was called the South Dayton landfill or South Dayton Sanitary Landfill." Doc. #991-1, PageID##37992-93. He explained that this landfill was located down South Dixie Drive behind a Ford dealer, just over the hill from "Carrolton Park." *Id.* at PageID#37993. He denied ever hearing this particular landfill referred to as "the Cardington Road landfill." *Id.* at PageID#37994. Plaintiffs rely on Miracle's deposition testimony in support of their claim that IWD transported hazardous waste to the South Dayton Dump.

Citing Fed. R. Civ. P. 32(a)(8) and Fed. R. Evid. 804(b)(1), WMO has moved to exclude Miracle's deposition testimony from trial, and from consideration on summary judgment, because neither WMO nor any related entity was present or

10

represented at that deposition. Docs. #991, 1026. For the following reasons, the Court sustains WMO's motion.

Under Fed. R. Civ. P. 32(a), Miracle's deposition testimony is not admissible at trial against WMO. The state insurance action did not involve the same subject matter between the same parties or their representatives or successors-in-interest. WMO and IWD were not parties to that litigation and were not present or represented at Miracle's deposition. Environmental liability at the South Dayton Dump, which had not yet been identified as a hazardous waste site, was not at issue in that case.

Likewise, Miracle's deposition testimony is not admissible at trial under Fed. R. Evid. 804(b)(1) because, regardless of the fact that Miracle is "unavailable" to testify, neither WMO or its predecessor-in-interest had "any opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(B). Bridgestone/Firestone is not related to WMO or IWD.

Citing *Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289 (6th Cir. 1983), Plaintiffs argue, however, that the Sixth Circuit has broadly interpreted the term "predecessor in interest" to include "a party having a like motive to cross-examine about the same matters as the present party would have." *Id.* at 1295 (quoting *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978)). Plaintiffs maintain that Bridgestone/Firestone had a similar motive to cross-examine Miracle about the exact location where the IWD truck took the DTR waste because, unless the waste was taken to the *Cardington Road Landfill*, AIU had no

obligation to defend or indemnify Bridgestone/Firestone. Therefore, it was in Bridgestone/Firestone's best interest to discredit Miracle's testimony that the IWD truck took the DTR waste to the "South Dayton Sanitary Landfill."

The Court disagrees. Bridgestone/Firestone had no need to question Miracle any further about the name of the landfill where the IWD trucks took the DTR waste. As WMO notes, based on the route he described, it is clear that he was describing the Cardington Road Landfill, which was also called the South Landfill, the Sanitary Landfill and the South Sanitary Landfill. Doc. #953, PageID#36819.[3] Therefore, there was no need to further explore this topic; Bridgestone/Firestone had the testimony it needed to trigger insurance coverage.

Moreover, as WMO correctly notes, when Miracle's deposition was taken in 1991, the South Dayton Dump had not yet been identified as a hazardous waste site. Under these circumstances, it cannot be said that Bridgestone/Firestone had "an opportunity and similar motive to develop" Miracle's testimony concerning IWD's transportation of waste to the South Dayton Dump. His testimony is, therefore, inadmissible at trial under Fed. R. Evid. 804(b)(1)(B).

---

[3] Bridgestone Americas Tire Operations LLC ("BATO") joins in WMO's Reply to the extent WMO argues that the route described by Mr. Miracle led to the Cardington Road Landfill rather than the South Dayton Dump. BATO maintains that there can be no reasonable dispute that Miracle was describing the Cardington Road landfill. *See* Doc. #1046, PageID#40376-77.

In the alternative, Plaintiffs argue that Miracle's testimony is admissible at trial under Fed. R. Evid. 807, the residual exception to the hearsay rule. Rule 807 provides:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a).

Plaintiffs maintain that Miracle's testimony has "equivalent circumstantial guarantees of trustworthiness," given that it is corroborated by deposition testimony of DTR employee Cecil Younker, and two other IWD drivers, Vernon Vencill and Joseph Smart. Each testified about IWD trucks taking waste to the South Dayton Dump.[4] According to Plaintiffs, Miracle's testimony is offered as evidence of a material fact and, given the passage of time, it is more probative than any other evidence currently available. In addition, Plaintiffs argue that

---

[4] Younker testified that he once followed the trucks to see where the trash was dumped, but he did not know where they went. Nevertheless, when asked to identify the location on an aerial map, he identified the area of the South Dayton Dump. Doc. #1036-5, PageID##40153-55. Vencill and Smart testified that they, on just one occasion, hauled waste from the Dayton Power & Light Company to the South Dayton Dump. Doc. #1036-6, PageID##40160-63; Doc. #1036-7, PageID##40168-71.

13

admission of Miracle's testimony will further the interests of justice by making responsible parties pay to clean up the Site.

The Court finds that, because Miracle's testimony does not have "equivalent circumstantial guarantees of trustworthiness," it is not admissible at trial under Fed. R. Evid. 807. Miracle was not certain of the name of the dump where the waste was taken. "To the best of [his] knowledge," it was called the South Dayton Landfill or South Dayton Sanitary Landfill. Moreover, Plaintiffs do not appear to dispute WMO's claim that Miracle's description of the route taken proves that he followed a truck not to the "South Dayton Dump," but to the Cardington Road Landfill. If this is true, then not only is his testimony completely irrelevant to Plaintiffs' claims, but also it is not "corroborated" by the testimony of Younker, Vencill or Smart, who did testify about trucks going to the South Dayton Dump.

The Court also agrees with WMO that, because Miracle's deposition testimony cannot be presented in a form that would be admissible at trial, it cannot be considered in ruling on WMO's motion for summary judgment.

For the reasons set forth above, the Court SUSTAINS WMO's Motion in Limine to Exclude Deposition Testimony of Frank Miracle, Doc. #991. Said deposition testimony cannot be used at trial and will not be considered in ruling on IWD's pending motion for summary judgment.

## V. Conclusion

The Court SUSTAINS IN PART and OVERRULES IN PART Waste Management of Ohio, Inc.'s Motion in Limine to Exclude 2012 Deposition Testimony of Edward Grillot, Doc. #990. Although that deposition cannot be used at trial, the Court will consider it in connection with the pending summary judgment motions. The Court SUSTAINS Waste Management of Ohio, Inc.'s Motion in Limine to Exclude Deposition Testimony of Frank Miracle, Doc. #991.

Date: September 23, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE