IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,

      Plaintiffs,

      v.

THE DAYTON POWER & LIGHT
COMPANY, *et al.*,

      Defendants.

:

:

:

:

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART WASTE MANAGEMENT OF OHIO, INC.'S MOTION IN LIMINE
TO EXCLUDE DECLARATION OF STEPHEN M. QUIGLEY (DOC.
#986); OVERRULING CONAGRA GROCERY PRODUCTS COMPANY,
LLC'S RULE 56(c)(2) OBJECTION TO EXHIBIT 1 OF PLAINTIFFS'
SURREPLY (DOC. #981); OVERRULING CONAGRA GROCERY
PRODUCTS COMPANY, LLC'S MOTION IN LIMINE TO EXCLUDE
CERTAIN EXPERT TESTIMONY OF DR. JURGEN EXNER (DOC.
#998); SUSTAINING IN PART AND OVERRULING IN PART
PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE CERTAIN
TESTIMONY AND OPINIONS OF DR. B. TOD DELANEY (DOC.
#999)

---

This matter is currently before the Court on three motions in limine: (1)

Waste Management of Ohio, Inc.'s Motion in Limine to Exclude Declaration of

Stephen M. Quigley, Doc. #986; (2) ConAgra Grocery Products Company, LLC's

Motion in Limine to Exclude Certain Expert Testimony of Dr. Jurgen Exner, Doc.

#998; and (3) Plaintiffs' Motion in Limine to Exclude Certain Testimony and

Opinions of Dr. B. Tod Delaney, Doc. #999. ConAgra has also filed a Rule 56(c)(2)

Objection to Dr. Exner's Declaration, Doc. #981, raising arguments similar to those raised in its Motion in Limine.

## I.    Factual Background

Plaintiffs, Hobart Corporation, Kelsey-Hayes Company and NCR Corporation, filed suit against numerous defendants under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601, *et seq.*, seeking contribution for response costs incurred in connection with the South Dayton Dump and Landfill Site ("the Site").

Two of those Defendants, Waste Management of Ohio, Inc. ("WMO"), and ConAgra Grocery Products Company, LLC ("ConAgra"), have filed motions in limine asking the Court to exclude, from consideration on the pending summary judgment motions and at trial, certain expert witness testimony of Stephen M. Quigley and Dr. Jurgen Exner. Plaintiffs have also filed a motion in limine, asking the Court to exclude, both from consideration on summary judgment and at trial, certain testimony and opinions of Con Agra's expert witness, Dr. B. Tod Delaney.

## II.    Motions in Limine

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorizes the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course

of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Also, pretrial orders often save the parties time and costs in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp.2d at 846; *Koch*, 2 F. Supp.2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp.2d at 846.

### III.     Waste Management of Ohio, Inc.'s Motion in Limine to Exclude Declaration of Stephen M. Quigley (Doc. #986)

Stephen M. Quigley, of the environmental consulting firm GHD, oversees the vapor intrusion ("VI") mitigation work plan at the South Dayton Dump and Landfill

Site. Plaintiffs designated Quigley as a lay witness who would testify about "Work performed in VI and [Remedial Investigation/Feasibility Study]; consistency with [National Contingency Plan]; releases at Site; [and] connection between releases and incurrence of response costs." Doc. #1038-1, PageID#40208.

Plaintiffs also designated Quigley as an expert witness with respect to costs incurred at the Site. In July of 2017, Quigley submitted a Memorandum concerning past and future anticipated costs of vapor intrusion work activities. Doc. #986-3, PageID##37586-92. He submitted a supplemental report in July of 2018. Doc. #986-4, PageID##37594-600.

When Quigley was deposed on September 6, 2018, he was questioned by several Defendants about the methane gas found at the Site. He noted that they had not been able to isolate the source of the methane. When asked whether, based on his experience, he had an opinion on the source of the methane, he responded "[t]he methane is coming from either the decomposition of some organic material, be it wood or something else that's been disposed of at the site, or it's coming from the degradation of other organics, organic solvents, it's not clear." Doc. #1038-3, PageID##40270-71.

Plaintiffs attached a December 20, 2018, Declaration of Stephen M. Quigley, Doc. #986-1, PageID##37539-43, to their Responses in Opposition to WMO's Motion for Summary Judgment on behalf of Industrial Waste Disposal Co., Inc., Doc. #912-42, and WMO's Motion for Summary Judgment on behalf of Blaylock Trucking Company, Inc., Docs. #935-13.

In paragraphs 9 through 11 of his Declaration, Quigley notes that, as set forth in the 2013 Administrative Settlement Agreement and Order on Consent ("ASAOC"), the United States Environmental Protection Agency ("EPA") found that vapor intrusion mitigation was necessary based on chlorinated volatile organic compounds ("CVOCs"), primarily TCE, found in thirteen buildings at the Site, and on "methane in sub-slab samples at concentrations greater than the Lower Explosive Limit (LEL) in 2 buildings and in samples collected from an off-Site well." Quigley further states that methane was "one of the original drivers of EPA's vapor intrusion removal action at the Site." Doc. #986-1, PageID#37541.

In paragraph 12 of his Declaration, Quigley states:

As I stated in my deposition in this case on September 6, 2018, in response to questioning by counsel for one of the defendants, the sources of methane at the Site come from the decomposition of organic material, such as wood or other materials disposed at the Site, such as organic solvents. In addition to wood and solvents, methane gas at landfills can be produced by organic wastes including food, garden waste, street sweepings, textiles, cardboard, newspaper and other paper products. See ATSDR, Landfill Gas Primer: Landfill Gas Basics (2001), available at www.atsdr.cdc.gov/hac/landfill/pdfs/landfill_2001_ch2mod.pdf (accessed July 16, 2018); US Department of Interior, Bureau of Mines, Johnson, G.E. et al, The Production of Methane by the Anaerobic Decomposition of Garbage and Waste Materials (1972), available at web.anl.gov (accessed December 18, 2018) ("...any organic material is susceptible to some degree of degradation by anaerobic digestion...").

Id. at PageID#37542. The documents cited in this paragraph were attached to Quigley's Declaration.

WMO has moved to exclude Quigley's Declaration and the supporting documents from trial, and from consideration on pending summary judgment motions. WMO also asks that Quigley be prohibited from testifying at trial concerning this Declaration. WMO argues that the Declaration should be excluded under Fed. R. Civ. P. 37(c)(1) because: it is completely unrelated to Quigley's previous expert opinions, which were limited to the topic of the costs of vapor intrusion mitigation activities; it was filed after the close of discovery; and it fails to comply with the expert witness disclosure requirements of Fed. R. Civ. P. 26(a)(2).[1]

Supplementation of a Rule 26 disclosure is warranted "if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." Fed. R. Civ. P. 26(e). However, Quigley's previous reports on the costs of vapor intrusion mitigation at the Site are not alleged to be incomplete or incorrect. WMO maintains that the Declaration is an improper supplement to Quigley's previous expert reports, because it adds new opinions about the risks and sources of methane at the Site, topics on which Plaintiffs have never designated Quigley as an expert.

Although Quigley was questioned at his deposition about sources of methane at the Site, WMO argues that this does not authorize him to offer new

_____

[1] Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

expert opinions on this subject after the close of discovery. Deposition testimony may form the basis for a supplemental report only if it is directly related to the opinions in the expert witness report. *See Lexington Ins. Co. v. Horace Mann Ins. Co.*, No. 11C2352, 2015 WL 5174159, at **9-10 (N.D. Ill. Aug. 27, 2015) (rejecting attempt to "supplement" expert witness report with new opinions introduced at deposition). WMO argues that consideration of Quigley's new opinions would be unfair because WMO has not had the opportunity to cross-examine him about his new Declaration or the supporting documents.

In response, Plaintiffs first note that WMO has actually objected to only a portion of Quigley's declaration, more specifically paragraphs 9-12.[2] Plaintiffs argue that Quigley's Declaration is "not a supplement to his expert report, but rather a factual Declaration based on personal knowledge." Doc. #1038, PageID#40184. The Court agrees with respect to paragraphs 9 through 11, wherein Quigley simply recounts the EPA's factual findings concerning methane and vapor intrusion at the Site, as set forth in the ASAOC.

Paragraph 12, however, is different. Quigley therein opines about the possible sources of methane gas at the Site, stating that the gas comes from the decomposition of organic material. Plaintiffs maintain that these statements are based on his experience doing technical work at landfill cleanups, and are

_____

[2]  Others portions of Quigley's Declaration discuss his role as the project coordinator, groundwater flow at the Site, and Defendant Valley Asphalt's Reclaimed Asphalt Pavement Pile.

consistent with his role as a *fact* witness testifying about releases at the Site and the connection between those releases and the incurrence of response costs.

Nevertheless, as WMO notes, at his deposition, Quigley was asked if he had "any *opinions* as to what you think might be generating the methane at this site." Doc. #1083-3, PageID#40271 (emphasis added). Paragraph 12 of the Declaration specifically refers back to his answer to this question. Moreover, Quigley's statements about sources of methane gas at the Site are beyond the understanding of the average person. Rather, they are based on "scientific, technical, or other specialized knowledge," taking them outside the scope of lay witness testimony. *See* Fed. R. Evid. 701. The Court therefore finds that paragraph 12 of Quigley's Declaration is more properly characterized as an expert opinion. *See United States v. Beierle*, 810 F.3d 1193, 1203 (10th Cir. 2016) ("Knowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701.") (internal quotations omitted)

Plaintiffs maintain that, even if paragraph 12 is considered an expert opinion, it is permissible because it builds on his deposition testimony on the same subject. In support of this argument, Plaintiffs cite to *Great Northern Insurance Co. v. BMW of North America LLC*, No. 2:11-cv-1153, 2015 U.S. Dist. LEXIS 83240 (S.D. Ohio June 26, 2015). Therein, the court held that an expert witness could testify at trial about deposition statements made in response to certain photographs that were shown to him. *Id.* at *25. That deposition testimony, however, was directly related to the opinions already contained in his expert witness report.

8

Here, in contrast, Mr. Quigley was presented as an expert witness on costs, not on the causes of methane. His deposition testimony about sources of methane at the Site falls outside the scope of his expert witness opinions on the cost of vapor intrusion mitigation. The Court agrees with WMO that allowing Quigley to offer a new expert witness opinion concerning the causes of methane at the Site after the close of expert discovery would be unfair to WMO, which has not had the opportunity to challenge these new opinions.[3]

Accordingly, under Fed. R. Civ. P. 37(c)(1), paragraph 12 of Quigley's Declaration, and the documents cited therein, must be excluded from trial and will not be considered in ruling on the motions for summary judgment. Neither will Quigley be permitted to testify about the sources of methane at the Site. As WMO notes, Plaintiffs will not be prejudiced by the exclusion of this portion of Quigley's Declaration, given that they have retained Dr. Jurgen Exner to testify about methane and toxicity issues.

For the reasons set forth above, the SUSTAINS IN PART and OVERRULES IN PART WMO's Motion in Limine to Exclude Declaration of Stephen M. Quigley, Doc. #986. Only paragraph 12 of the Declaration is excludable; the remainder is admissible.

---

[3] Given that all of the motions for summary judgment are fully briefed, allowing Quigley to be re-deposed at this late date is not a viable option.

IV.     **Conagra Grocery Products Company, LLC's Motion in Limine to Exclude Certain Expert Testimony of Dr. Jurgen Exner (Doc. #998) and Rule 56(c)(2) Objection to Exhibit 1 to Plaintiffs' Sur-reply (Doc. #981)**

Defendant ConAgra Grocery Products Company ("ConAgra") is the successor-in-interest to the McCall Printing Company ("McCall"). ConAgra has moved for summary judgment, Doc. #874, arguing, in part, that Plaintiffs' expert witness, Dr. Jurgen Exner, testified at his deposition that he had no evidence that McCall sent any substances containing chlorinated solvents to the Site. Doc. #874-13, PageID#25869.

In their Corrected Response to ConAgra's motion for summary judgment, filed on December 23, 2018, Plaintiffs noted that they had recently discovered a Health Hazard Evaluation Determination, authored in 1975 by the National Institute for Occupational Safety and Health ("NIOSH"), indicating that McCall used kerosene and an unknown solvent named Ottoson No. 9 to clean equipment, and that TCE was used to soften the glue used in splicing paper. Doc. #917-7, PageID#33717.[4]

Attached to ConAgra's Reply Memorandum was a Declaration of ConAgra's expert witness, Dr. B. Todd Delaney, dated January 9, 2019. Doc. #957-1, PageID##37111-12. In response to the recently-discovered NIOSH report, Dr. Delaney states that nothing in that report supports an assertion that McCall disposed of TCE. He stated that "TCE is very volatile and evaporates quickly." To

---

[4]     Plaintiffs do not allege that ConAgra intentionally withheld this report.

the extent that the NIOSH report indicates that TCE was sprayed on the printer rollers in short intervals, Delaney opines that it either ended up on the roller or evaporated almost immediately. No waste containing TCE would have been generated. *Id.*

Thereafter, Plaintiffs were granted leave to file a Sur-reply to address Dr. Delaney's Declaration. Attached to that Sur-reply was a January 22, 2019, Declaration of Jurgen Exner, Ph.D., Doc. #975-1, PageID##37410-11. In that Declaration, Dr. Exner noted that he was not aware of the NIOSH report when he had issued his previous expert reports. He now opined that it was "highly likely that TCE waste was generated from cleanup of spills, leaks, cleanout of process equipment, and disposal of TCE-containing containers." He also opined that it was "highly likely that TCE-containing waste and containers were disposed of by McCall." He disagreed with Dr. Delaney's opinion that all of the TCE evaporated. *Id.*

On February 14, 2019, ConAgra filed a Rule 56(c)(2) Objection to Dr. Exner's Declaration, arguing that it was untimely and prejudicial and should be disregarded. Doc. #981. This was followed by ConAgra's Motion in Limine to Exclude Certain Expert Testimony of Dr. Jurgen Exner. Doc. #998. Again, ConAgra asks the Court to prevent Dr. Exner from presenting any opinions contained in his January 22, 2019, Declaration, which was submitted after the expert disclosure and deposition deadlines. ConAgra seeks to restrict his testimony to opinions offered in his July 13, 2017, and July 24, 2018, reports as

limited by his deposition testimony. ConAgra argues that not only is Dr. Exner's January 22, 2019, Declaration untimely, unsupported, and inconsistent with his prior deposition testimony, but it is also prejudicial in that ConAgra has not had the opportunity to depose Dr. Exner on this topic. For these reasons, ConAgra urges the Court to disregard Dr. Exner's Declaration, and to exclude Dr. Exner's new opinions under Fed. R. Civ. P. 26(a)(2)(D) and Fed. R. Civ. P. 37(c)(1).

In response, Plaintiffs note that Dr. Delaney's and Dr. Exner's Declarations were *both* filed beyond the established deadlines. However, this is attributable solely to the fact that the NIOSH report was not discovered by Plaintiffs until late November of 2018, after the close of discovery. The Court finds that, because the failure to timely produce these supplemental witness opinions was "substantially justified," Fed. R. Civ. P. 37(c)(1) does not bar their consideration either at trial or in connection with the pending motions for summary judgment.[5]

Moreover, this result is not unfair to either party. The expert witnesses of both parties have already stated their opinions on the impact of the NIOSH report. In addition, Plaintiffs have indicated that they do not object to conducting brief, supplemental depositions of Dr. Exner and Dr. Delaney limited in scope to their supplemental opinions related to that report. Should either party wish to pursue

_____

[5] In its Reply brief, ConAgra argues that Plaintiffs' response to the Rule 56(c)(2) Objection is untimely. Given that ConAgra raised the same arguments in the motion in limine that were raised in the Rule 56(c)(2) Objection, and given that Plaintiffs' response to the motion in limine was timely filed (following the Court's May 22, 2019, conference call), the Court need not address this issue.

this option, the Court will entertain a motion for leave to do so. Any such motion must be filed within 15 days of the date of this Decision and Entry.

For the reasons stated above, the Court OVERRULES ConAgra's Rule 56(c)(2) Objection to Exhibit 1 of Plaintiffs' Sur-reply, Doc. #981, and its Motion in Limine to Exclude Certain Expert Testimony of Dr. Jurgen Exner, Doc. #998. The Court will consider Dr. Exner's belated Declarations in ruling on the pending motions for summary judgment and he may testify about his opinions at trial.[6]

## V.    Plaintiffs' Motion in Limine to Exclude Certain Testimony and Opinions of Dr. B. Tod Delaney (Doc. #999)

Plaintiffs ask the Court to exclude from trial, and from consideration on summary judgment, all testimony of ConAgra's expert witness, Dr. B. Tod Delaney, related to his assessment of the credibility of witnesses Edward Grillot and Michael Wendling and his assessment of the trustworthiness of certain documentary evidence. In addition, Plaintiffs seek to exclude certain opinions presented in Dr. Delaney's May 18, 2018, Expert Report and his July 24, 2018, Rebuttal Report which rely on his personal weighing of the evidence and credibility assessments. Doc. #999.

_____

[6]  As WMO has noted, although the NIOSH report and Dr. Exner's Declaration may support a finding that McCall generated waste that contained TCE, neither the report nor the Declaration supports a finding that McCall disposed of any such waste at the South Dayton Dump. Evidence of that link would have to come from elsewhere.

At his three depositions, Edward Grillot, whose family owned and operated the South Dayton Dump, testified about materials that McCall disposed of at the Site, including ink waste and solvents.[7] Michael Wendling, Grillot's cousin, testified twice about hazardous waste transported by McCall to the Site, and later submitted a Declaration concerning this topic. It is undisputed that the testimony of these two witnesses has been somewhat inconsistent over time.

In his May 18, 2018, Expert Report, Dr. Delaney opined as follows: "Opinion 1. There is a low degree of certainty due to a lack of credible evidence that McCall arranged for hazardous materials to be disposed of at the Site or that any such materials generated by McCall were disposed of there." Doc. #883-1, PageID#26495. At his deposition, Dr. Delaney explained that Grillot's testimony on this subject was "just not credible." Doc. #883, PageID#26419.

In his Report, Delaney noted that Grillot's testimony was contrary to that of Horace Boesch, Jr., the son of one of the former owners of the Site, who never mentioned that McCall's waste was hauled to the Site. It was also contrary to the testimony of McCall employee, George Morris, Jr., and of several waste haulers who denied hauling McCall waste to the Site. Dr. Delaney found that Grillot's deposition testimony reflected "uncertainty and confusion." He further noted that Grillot's testimony concerning the nature of McCall's waste and the identity of

---

[7] As previously noted, ConAgra is the successor-in-interest to McCall Printing Company.

who brought it to the Site did not remain constant across the course of his three depositions. Doc. #883-1, PageID#26495-96.

In his July 24, 2018, Rebuttal Report, Dr. Delaney challenges the opinions of numerous other expert witnesses in this case. He concludes as follows:

> Opinion 1. No expert can make a credible determination that McCall disposed of hazardous materials at the Site or arranged for the disposal of such materials there.
> Opinion 2. Exner has insufficient information to determine that McCall arranged for disposal of hazardous substances at the Site.
> Opinion 3. Wittenbrink's conclusions cannot be drawn to a reasonable degree of scientific certainty.
> Opinion 4. Hennet's conclusion that McCall contributed VOCs to the Site is unsupported by the evidence, and his allocation for McCall is therefore flawed.
> Opinion 5. White presents a reasonable preliminary framework, but its immediate utility is limited because . . . the calculated waste volume for McCall is founded on unreliable testimony.

Doc. #883-2, PageID##26532-52. Dr. Delaney opines that, in reaching their conclusions, Exner, Wittenbrink, Hennet and White relied on witness testimony that was not supported by credible evidence, *i.e.*, that of Grillot and Wendling.

Plaintiffs concede that the deposition testimony and Declarations of Grillot and Wendling are inconsistent, and are contrary to the testimony of several other witnesses. Plaintiffs argue, however, that these inconsistencies must be resolved by the finder of fact, not by Dr. Delaney. Plaintiffs note that Delaney is not qualified under Fed. R. Evid. 702 to opine on matters of credibility. Citing *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011), Plaintiffs further argue that Dr. Delaney has improperly usurped the duty of the factfinder to weigh the evidence and make credibility determinations. In addition, they argue that Delaney's

credibility determinations are flawed in numerous respects. Plaintiffs therefore ask the Court to exclude Dr. Delaney's opinions and any testimony about his views on the credibility of Grillot and Wendling.

In its Memorandum in Opposition to Plaintiffs' Motion in Limine, ConAgra agrees with Plaintiffs that it is improper for expert witnesses to make credibility determinations. It argues, however, that Plaintiffs have mischaracterized Dr. Delaney's opinions. According to ConAgra, Dr. Delaney did not make subjective credibility determinations. Instead, most of his opinions "are rooted in the premise that an expert cannot offer an opinion with any degree of scientific certainty if it requires him/her to reconcile inconsistent witness testimony and make credibility determinations." Doc. #1039, PageID#40275. ConAgra argues that, given the conflicting witness testimony in this case, Delaney simply concludes that *no expert* can opine with any degree of scientific certainty that McCall sent hazardous material to the Site. ConAgra therefore argues that there is no reason to exclude Dr. Delaney's testimony or opinions.

The Court disagrees. It is clearly established that expert witness testimony concerning the credibility of a fact witness is improper. *Greenwell v. Boatwright,* 184 F.3d 492, 496 (6th Cir. 1999) (holding that expert witness testimony regarding credibility of eyewitness testimony is improper); *MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 787 (N.D. Ohio 2013) (holding that an expert report that comments on the credibility of witnesses is improper); *United States v. Scop,* 846 F.2d 135, 142 (2d Cir. 1988) (finding that expert witnesses may not offer their

opinions "based on their personal assessment of the credibility of another witness's testimony"). As the Tenth Circuit has explained:

> Such testimony: (1) usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility; and (3) when provided by impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury.

*United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (internal quotations omitted). Moreover, such testimony "exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." *United States v. Shay,* 57 F.3d 126, 131 (1st Cir. 1995).

Many of Dr. Delaney's expert witness opinions are based on his personal assessment of the credibility of Plaintiffs' lay witnesses Grillot and Wendling. In some cases, this is blatant, such as Opinion 1 in the May 18, 2018, Report wherein he opines that "[t]here is a low degree of certainty due to a lack of credible evidence" concerning McCall's alleged disposal of hazardous waste at the Site, Doc. #883-1, PageID#26495, and Opinion 5 in his July 24, 2018, Rebuttal Report wherein he challenges Richard White's expert opinion on the grounds that "the calculated waste volume for McCall is founded on unreliable testimony." Doc. #883-2, PageID#26548.

Likewise, Opinion 1 in the Rebuttal Report is based on Delaney's personal assessment that the other experts' determinations that McCall's waste was hauled to the Site "are unsupported by any credible evidence," and Opinion 3 is based on his assessment that "Wittenbrink's opinion that McCall self-hauled waste is based

on unreliable testimony." *Id.* at PageID ##26538, 26541. Opinion 2 faults Dr.

Exner for relying on "inconsistent" testimony of Edward Grillot and Michael

Wendling. On this basis, Delaney concludes that "Exner has insufficient

information to make a credible determination that McCall actually disposed or

arranged for the disposal of hazardous substances at the Site." *Id.* at

PageID##26539-40.

Of course, at trial, the fact witnesses will be cross-examined about the

inconsistencies in their testimony. Likewise, ConAgra and the other defendants

will almost certainly subject these expert witnesses to cross-examination about the

facts on which their opinions are based. To the extent that their opinions are

based on the testimony of witnesses whose credibility has been called into

question, that will no doubt be brought to light, possibly undermining the weight to

be given their expert opinions. *See* Fed. R. Evid. 705 (although an expert may

state an opinion without disclosing facts or underlying data, the expert may be

required to disclose those on cross-examination).

Nevertheless, the Court agrees with Plaintiffs that it is improper for Dr.

Delaney to offer an expert witness opinion about the credibility of fact witnesses.

Accordingly, Dr. Delaney will not be permitted to testify concerning his assessment

of the credibility of witnesses Edward Grillot or Michael Wendling. Likewise, to the

extent that Opinion 1 in the May 18, 2018, Expert Report, and Opinions 1, 2, 3

and 5 in the July 24, 2018, Rebuttal Report rely on Dr. Delaney's personal

weighing of the evidence and credibility assessments, the Court will exclude those Opinions from consideration on summary judgment and at trial. [8]

Plaintiffs also seek to exclude Dr. Delaney's testimony concerning the trustworthiness of certain documentary evidence. At Dr. Delaney's deposition, Plaintiffs presented him with Building and Zoning Permits, and Applications for Refuse Disposal Permits, filed between 1967 and 1972, in which the Site's owner repeatedly includes McCall on a list of sources of waste deposited at the Site. Doc. #883-3, PageID##26569-602. Dr. Delaney testified that, if there were other credible evidence to corroborate a finding that waste from McCall was actually deposited at the Site, he might find these permits and applications to be credible also. However, because there was no credible corroborating evidence, he speculated that these permits and applications may contain lists of potential customers rather than actual customers. Doc. #883, PageID##26412-13. To the extent that Dr. Delaney's opinion concerning the trustworthiness of these permits and applications again hinges on his assessment of the credibility of witnesses Grillot and Wendling, the Court will exclude it for the reasons set forth above.

---

[8] As ConAgra points out, it is not entirely clear which of the five Opinions contained in the July 24, 2018, Rebuttal Report Plaintiffs seek to exclude. At one point in the Motion in Limine, Plaintiffs reference Opinions 2, 3, and 5; at another point, they reference Opinions 1, 2, and 5. Doc. #999, PageID##38392, 38394. In an abundance of caution, ConAgra's Response covers Rebuttal Opinions 1, 2, 3 and 5. In their Reply brief, Plaintiffs also ask the Court to exclude Opinion 4. Doc. #1047, PageID#40382. Because this is a new argument, to which ConAgra has not had the opportunity to respond, the Court makes no determination as to whether Opinion 4 should be barred from consideration.

Another form submitted to the Ohio EPA in 1981 in connection with a permit application by Dayton Press Company, which purchased the McCall plant from ConAgra in the mid-1970s, estimates that the plant generates 4000 pounds per year of spent halogenated solvents used in degreasing, which would include TCE. Doc. #883-14, PageID#26719; Doc. #883-15, PageID#26723. Dr. Delaney testified that, after the purchase of the plant, Dayton Press made few changes to McCall's operations. Plaintiffs maintain that this gives rise to an inference that McCall generated a like amount of spent halogenated solvents each year. Dr. Delaney, however, testified that, with respect to the 4000 pounds of spent halogenated solvents, "Dayton Press made a mistake" on the form because Dayton Press did not do "degreasing" as that term is properly defined. Doc. #883, PageID##26432-33.

Plaintiffs argue that, in so testifying, Dr. Delaney again oversteps his authority by deciding which parts of this permit application are credible. The Court rejects this argument. Dr. Delaney testified that, based on his experience in this industry during this particular period of time, this was a common mistake made by industry representatives in completing this particular form. *Id.* Unlike Plaintiffs' objections to Dr. Delaney's other expert witness opinions, this one does not involve a credibility assessment. Rather, it is an opinion based directly on his specialized knowledge and experience in this industry. The Court therefore concludes that Dr. Delaney may testify about why the statements contained in the

1981 Ohio EPA form do not support a finding that McCall generated that amount of spent halogenated solvents.

In accordance with the foregoing, the Court SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' Motion in Limine to Exclude Certain Testimony and Opinions of Dr. B. Tod Delaney, Doc. #999.

## VI. Conclusion

For the reasons set forth above, the Court:

- **SUSTAINS IN PART and OVERRULES IN PART** Waste Management of Ohio, Inc.'s Motion in Limine to Exclude Declaration of Stephen M. Quigley, Doc. #986;

- **OVERRULES** Conagra Grocery Products Company, LLC's Rule 56(c)(2) Objection to Dr. Jurgen Exner's Declaration, Doc. #981;

- **OVERRULES** Conagra Grocery Products Company, LLC's Motion in Limine to Exclude Certain Expert Testimony of Dr. Jurgen Exner, Doc. #998; and

- **SUSTAINS IN PART and OVERRULES IN PART** Plaintiffs' Motion in Limine to Exclude Certain Testimony and Opinions of Dr. B. Tod Delaney, Doc. #999.

Date: September 23, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE