IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,

    Plaintiffs,

v.

THE DAYTON POWER & LIGHT CO., et al.,

    Defendants.

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

DECISION AND ENTRY SUSTAINING DEFENDANT VALLEY ASPHALT CORPORATION'S MOTION IN LIMINE TO EXCLUDE HEARSAY TESTIMONY FROM EDWARD GRILLOT (DOC. #995); OVERRULING DEFENDANT VALLEY ASPHALT CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON APPORTIONMENT (DOC. #864)

Plaintiffs, Hobart Corporation, Kelsey-Hayes Corporation and NCR Corporation, sued numerous Defendants, including Valley Asphalt Corporation, under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601, et seq., seeking contribution under 42 U.S.C. § 9613(f) for response costs incurred in connection with the South Dayton Dump and Landfill Site ("the Site").

This matter is currently before the Court on Defendant Valley Asphalt Corporation's Motion for Summary Judgment on Apportionment, Doc. #864, and on Defendant Valley Asphalt Corporation's Motion in Limine to Exclude Hearsay Testimony from Edward Grillot, Doc. #995.

I. **Background and Procedural History**

Beginning in the early 1940s, hazardous substances were disposed of at the South Dayton Dump and Landfill Site ("South Dayton Dump" or "the Site"), located on Dryden Road in Moraine, Ohio. Those hazardous substances allegedly include, but are not limited to, "cleaning solvents, materials containing PCBs, chemical solvents such as trichloroethene (TCE), cutting oils, paint, paint residue, Stoddard solvents, machine-tool water-based coolants, dielectric fluids, oils and brake fluids, in liquid, solid and/or gaseous states." Hazardous substances from adjacent properties also allegedly migrated through the groundwater to contaminate the Site. Doc. #636, PageID#8252.

Plaintiffs Hobart Corporation, Kelsey-Hayes Company, and NCR Corporation entered into two settlement agreements with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC").[1] These ASAOCs require Plaintiffs to perform certain work at the Site, including investigation, testing, and removal of the contamination. *Id.* at PageID##8246-47.

Plaintiffs now seek contribution from numerous defendants under CERCLA, 42 U.S.C. § 9613(f)(3)(B), for response costs incurred in connection with the

---

[1] An earlier settlement agreement, the "2006 ASAOC," is outside the scope of this litigation.

2

2013 and 2016 ASAOCs.[2] Valley Asphalt is one of those defendants. Valley Asphalt is in a unique position because it owns approximately 9.9 acres ("Parcel 5054") at the northern end of the 87.5 South Dayton Dump and Landfill Site, within the boundaries of the Site.

From 1945 until 1968, the previous owners, Jack Boesch, Sr., and Cyril Grillot, operated an unlicensed dump and accepted waste on Parcel 5054. In 1968, the South Dayton Dump became a licensed landfill, but Parcel 5054 was never part of that licensed landfill operation. From 1956 until 1993, Valley Asphalt leased Parcel 5054 from Boesch and Grillot, and then purchased the Parcel in 1993. In 2000, Valley Asphalt also obtained an easement for Parcel 5177, which is immediately south of Parcel 5054. A large mound of recycled asphalt now occupies the southern portion of Parcel 5054 and much of Parcel 5177, and encroaches on two adjacent parcels, also part of the Site.

In addition to alleging that Valley Asphalt is an owner of property within the Site boundaries, the Sixth Amended Complaint alleges that "Valley Asphalt arranged for the disposal of waste materials containing hazardous substances, including a large mound of asphalt on its property and on that of an adjacent land owner, also within the boundaries of the Site," and that "[t]he Valley Asphalt property also contains evidence of spills including stained soils." Doc. #636, PageID#8259.

---

[2] Although Plaintiffs also sought cost recovery under 42 U.S.C. § 9607(a), the Court has dismissed that claim. Doc. #189.

3

Valley Asphalt has filed a Motion for Summary Judgment on Apportionment, Doc. #864. In connection with that motion, Valley Asphalt has also filed a Motion in Limine to Exclude Hearsay Testimony from Edward Grillot, Doc. #995. The Court turns first to the Motion in Limine.

II. **Valley Asphalt's Motion in Limine to Exclude Hearsay Testimony from Edward Grillot (Doc. #995)**

Edward Grillot's family owned and operated the South Dayton Dump. During his April 24, 2012, deposition, Grillot testified that Tom Zeiler, now deceased, operated a blacktop resurfacing company. In 1986, Zeiler told Grillot that "it was a known fact" that he got blacktop from Valley Asphalt. Grillot also testified that his Uncle Kenny told him that Valley Asphalt was the only asphalt supplier in town at the time. Grillot stated that Zeiler, and possibly other paving companies, disposed of leftover asphalt at the Site. He specifically remembered his father getting mad when Zeiler dumped a load of asphalt behind the office. Doc. #995-1, PageID##38292-98.

Valley Asphalt has moved to exclude Grillot's testimony as inadmissible hearsay, both at trial and on consideration of its pending motion for summary judgment. Docs. #995, 1022. Under Federal Rule of Evidence 602, a witness must have personal knowledge of the subject matter of the testimony. Valley Asphalt argues that, although Grillot has personal knowledge that Zeiler dumped a load of asphalt behind the office, he has no independent personal knowledge that it

4

came from Valley Asphalt. He knows only what Mr. Zeiler and Uncle Kenny told him, and that is inadmissible hearsay. Notably, Plaintiffs did not file a Memorandum in Opposition to Valley Asphalt's Motion in Limine; however, Defendant The Dayton Power and Light Company ("DP&L") did. Doc. #1040.

DP&L first argues that it is not necessary for the Court to rule on the motion in limine at this time. It argues that Valley Asphalt's motion for summary judgment must be denied regardless of the Court's ruling on the motion in limine, because Grillot's testimony, that he personally observed asphalt being dumped behind the office at the Site, creates a genuine issue of material fact concerning whether Valley Asphalt disposed of asphalt at the Site. DP&L further argues that, because Grillot is a key witness in this case, the Court should avoid making piecemeal rulings as to the admissibility of certain statements prior to trial.

The Court rejects DP&L's request to delay a ruling on this issue. DP&L's argument assumes that Grillot had personal knowledge that the asphalt that Zeiler dumped behind the office *came from Valley Asphalt*. Valley Asphalt, however, maintains that there is no evidence that Grillot had such personal knowledge. Moreover, given that DP&L, in opposing Valley Asphalt's Motion for Summary Judgment, relies on Grillot's testimony about what Mr. Zeiler told him in support of its argument that Valley Asphalt arranged for waste to be disposed of at the Site, the Court finds that this issue should be decided at this time. Doc. #928, PageID##33992-93.

5

No one disputes that Uncle Kenny's statement to Grillot, that Valley Asphalt was the only asphalt company in town at the time, is inadmissible hearsay. At issue is whether Zeiler's statement to Grillot, that the asphalt he dumped at the Site came from Valley Asphalt, also constitutes inadmissible hearsay. Hearsay is a statement that the declarant makes out-of-court, offered to prove the truth of the matter asserted. Hearsay is generally inadmissible. Fed. R. Evid. 801(c), 802. There are, however, several exceptions to this rule.

DP&L argues that Zeiler's statement falls within the hearsay exception set forth in Fed. R. Evid. 803(20): "*Reputation Concerning Boundaries or General History*. A reputation in a community — arising before the controversy — concerning boundaries of land in the community or customs that affect the land, or concerning general historical events important to that community, state, or nation."

The Court agrees with Valley Asphalt that this exception to the hearsay rule is inapplicable to Zeiler's statement about the origin of the load of asphalt that he dumped at the Site. This was not a matter of general interest that would have been widely discussed in the community. Nor did it concern a general historical "event" that was important to the community. Instead, it was Zeiler's personal assertion about the origin of one load of asphalt. Because this is not "reputation evidence," it falls outside the scope of Rule 803(20). *See Land Grantors in Henderson, Union, Webster Ctys., Ky. v. United States*, 86 Fed. Cl. 35, 74 n.22 (Fed. Cl. 2009) (quoting 4 Stephen A. Saltzburg *et al.*, *Federal Rules of Evidence*

*Manual* § 803.02[21] at 803-78 (9th ed. 2006) ("[I]f the statement is a personal assertion of a single declarant, it will not be admitted under rule 803(20).").

DP&L also argues that this case is akin to *Akers v. Stevenson*, 54 S.W.3d 880 (Tex. Ct. App. 2001), which involved an easement by necessity. The court found that George Hollis's testimony about his great-grandfather's purchase of the land, and the family's use of a roadway across the neighboring property, was admissible under Texas's equivalent of Fed. R. Evid. 803(20).

Notably, in that case, Hollis's testimony concerning the purchase of the land was corroborated by deeds, and his testimony about the family's use of the roadway was corroborated by testimony from several older people in the area. *Id.* at 885-86. DP&L offers no corroborating evidence that the asphalt dumped behind the office originated from Valley Asphalt. Moreover, the testimony at issue in *Akers* related to a "custom" that affected the use of the land, *i.e.*, the use of the roadway across the neighboring property, placing it squarely within Rule 803(20). Grillot's testimony concerning what Zeiler told him about a single load of asphalt being dumped behind the office is factually distinguishable.

DP&L also maintains that Grillot's collected knowledge about the Site uniquely qualifies him to testify about the use of the land at the South Dayton Dump, the customers, and materials disposed of there. This may be true; however, his testimony is still subject to the rules against hearsay. Grillot's testimony that his Uncle Kenny told him that Valley Asphalt was the only supplier of blacktop in the Dayton area at the time, Doc. #995-1, PageID#38298, and his

7

testimony that Tom Zeiler told him that the asphalt that he brought to the Site came from Valley Asphalt, *id.* at PageID##38292-93, is inadmissible. These are out-of-court statements offered for the truth of the matter asserted, and neither falls within any of the recognized exceptions to the rule against hearsay.

For these reasons, the Court SUSTAINS Defendant Valley Asphalt Corporation's Motion in Limine to Exclude Hearsay Testimony from Edward Grillot, Doc. #995.

### III. Valley Asphalt's Motion for Summary Judgment on Apportionment (Doc. #864)

Valley Asphalt has moved for summary judgment on two issues. Doc. #864. As re-stated in its Reply briefs, Valley Asphalt requests judgment as a matter of law that:

> (a) it is not liable as an arranger for storage of a useful product on site; and
>
> (b) it is not jointly and severally liable for all response costs at the Site, but rather is limited to costs associated with investigation and cleanup that occurred on its property or to address contamination emanating from its property.

Doc. #942, PageID#34839; Doc. #946, PageID#35171. Plaintiffs and Defendant DP&L each filed a memorandum in opposition to Valley Asphalt's motion. Docs. ##899, 928. Valley Asphalt replied to each, Docs. ##942, 946, and Plaintiffs filed a sur-reply, Doc. #974.

Plaintiffs and DP&L argue that genuine issues of material fact preclude summary judgment on the question of whether Valley Asphalt has "arranger"

8

liability. They argue that the pile of recycled asphalt pavement ("RAP") spills across Valley Asphalt's property boundary onto land owned by the South Dayton Dump, and that the RAP contains hazardous substances.[3] They also argue that contaminated groundwater from underneath Valley Asphalt's property has migrated to other parts of the Site, causing vapor intrusion problems in Building 9. Doc. #906, PageID#31344. For these reasons, they maintain that Valley Asphalt's contribution to harm at the Site is not divisible based on geography, and that summary judgment is not appropriate on the issue of apportionment.

In its Reply briefs, Docs. ##942 and 946, Valley Asphalt argues that, even if the RAP pile spills across its own property boundary, it cannot be held liable for arranging for the "disposal" of "waste" at the Site because the RAP is reused as a feedstock material in the production of new asphalt. Because the RAP is a "useful product," Valley Asphalt maintains that it has no arranger liability under CERCLA.[4] It further argues that, even if the RAP pile spills across boundary lines, and even if Valley Asphalt is partially to blame for vapor intrusion in Building 9, its liability is still capable of apportionment and divisible on the basis of geography.

### A. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[3] *See* Expert Witness Report of Jurgen Exner, Doc. #899-11, PageID#30721.

[4] Plaintiffs address this argument in their Sur-reply, Doc. #974.

9

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Arranger Liability

The Court turns first to the question of whether Valley Asphalt is entitled to judgment as a matter of law on the question of "arranger" liability under 42 U.S.C. § 9607(a)(3).[5] That subsection provides that:

---

[5] There appears to be no dispute that Valley Asphalt is subject to CERCLA liability as "the owner and operator of . . . a facility." 42 U.S.C. § 9607(a)(1).

11

any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances

is subject to CERCLA liability. 42 U.S.C. § 9607(a)(3). A company is subject to "arranger" liability if it takes "intentional steps to dispose of a hazardous substance." *Burlington N. & Santa Fe Ry. v. United States*, 556 U.S. 599, 611 (2009).

In its motion for summary judgment, Valley Asphalt argues that it neither arranged for disposal of hazardous substances at the South Dayton Dump, nor arranged with a transporter for transport for disposal of hazardous materials there.

### 1. No Admissible Evidence that Valley Asphalt arranged for a Third Party to Transport Hazardous Waste to the Site for Disposal

In its memorandum in opposition to Valley Asphalt's motion for summary judgment, Defendant DP&L argues that Edward Grillot's April 24, 2012, deposition testimony creates a genuine issue of material fact as to whether Valley Asphalt arranged for the disposal of hazardous substances at the Site. The Court disagrees. As noted above, although Grillot saw Tom Zeiler dump his leftover asphalt at the Site, any testimony about the *origin* of that asphalt constitutes inadmissible hearsay and may not be considered. Moreover, there is absolutely no evidence that Valley Asphalt gave leftover asphalt to Tom Zeiler or any other third party with the specific purpose of having them dispose of it at the South Dayton Dump.

Based on the evidence presented, no reasonable factfinder could conclude that Valley Asphalt arranged for a *third party* to transport hazardous waste to the South Dayton Dump for disposal. This, however, does not end the inquiry as to Valley Asphalt's arranger liability.

### 2. Genuine Issues of Material Fact Preclude Summary Judgment on the Question of Whether Valley Asphalt's RAP Pile Gives Rise to Arranger Liability

In its motion for summary judgment, Valley Asphalt argues that its only nexus to the Site is its ownership of Parcel 5054, and that there is no evidence that it arranged for disposal of hazardous waste at the South Dayton Dump.

DP&L and Plaintiffs note, however, that Valley Asphalt's RAP pile extends beyond the boundaries of Parcel 5054. Since at least 1996, it has encroached on Parcel 5177. Doc. #899-1, PageID#30508. Until 2000, Valley Asphalt paid the South Dayton Dump $200 per month for use of Parcel 5177; in 2000, it secured an easement for $3000. Doc. #899-7, PageID#30611. According to Valley Asphalt's expert witness, Neil Ram, Ph.D., some of the RAP pile also encroaches on Parcel 5171 and 5172, to the east. Doc. #864-9, PageID#22699. Plaintiffs and DP&L argue that, based on the foregoing, Valley Asphalt must be deemed to have purposefully disposed of the RAP, which contains hazardous substances, in areas outside of Parcel 5054.[6]

---

[6] Valley Asphalt's own expert witness, Neil Ram, Ph.D., agrees that recycled asphalt may contain hazardous substances such as polyaromatic hydrocarbons due to its exposure to other sources of contamination while it was in use. Doc. #864-9, PageID#22701.

In its Reply briefs, Valley Asphalt argues for the first time that, even if the RAP pile spills across property boundary lines onto land owned by the South Dayton Dump, this cannot give rise to "arranger" liability because the RAP is being stored for use as feedstock material in the production of new asphalt. Dan Crago, Valley Asphalt's Director of Quality Control and Environmental, testified that the RAP is "continuously recycled" and stored only for a short period of time until they can reuse it. Doc. #863, PageID##22413-14.

Valley Asphalt argues that, because the RAP is ultimately recycled, there is no "disposal." CERCLA expressly incorporates the Resource Conservation and Recovery Act's ("RCRA's") definition of "disposal." 42 U.S.C. § 9601(29). RCRA defines "disposal" as follows:

> The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3).

Valley Asphalt further notes that RCRA excludes materials from the definition of "solid waste" when they can be shown to be recycled. *See* 40 C.F.R. § 261.2(e)(1).[7] Valley Asphalt then argues that, because the RAP pile consists of material that is used in the production of new asphalt, it cannot be

---

[7] Valley Asphalt also cites to a section of the Ohio Administrative Code excluding recycled asphalt stored for less than two years from the definition of "solid waste." Ohio Admin. Code § 3745-400-01(C)(2).

14

deemed "solid waste." This is largely irrelevant because, as noted above, the definition of "disposal" encompasses both "solid waste" and "hazardous waste." The RAP contains hazardous substances. Accordingly, regardless of whether the RAP constitutes "solid waste" under RCRA or Ohio law, the placement of the RAP onto the land at the Site constitutes a "disposal."

Citing *AM International, Inc. v. International Forging Equipment Corp.*, 982 F.2d 989 (6th Cir. 1993), Valley Asphalt next argues because the RAP is a "useful product," the placement of the RAP at the Site does not constitute a "disposal." In *AM International*, the outgoing owner of an electroplating company left paint and chemical compounds that were necessary to operate the equipment, so that the new owner could immediately start up operations. Under these circumstances, the court found that the seller did not arrange for their "disposal" and was not subject to arranger liability. *Id.* at 999.

Regardless of whether Valley Asphalt's RAP is a "useful product," the Court concludes that genuine issues of material fact preclude summary judgment on the question of whether Valley Asphalt arranged for the "disposal" of hazardous substances at the South Dayton Dump. Plaintiffs' witnesses, Michael Wendling and David Grillot, testified about Valley Asphalt's "huge" mound of RAP, and Wendling noted that it has increased in size over time. Doc. #676-2, PageID#10556; Doc. #705, PageID##17592-93. Dan Crago of Valley Asphalt admitted that the pile has grown over the years. Doc. #863-1, PageID##22412-13. Plaintiffs note that photographs of the RAP pile, taken in 2018, show trees

growing from the pile in some sections. Plaintiffs argue that this gives rise to the inference that much of the RAP has been there for a long time, that it is not all being recycled, and that Valley Asphalt intended to dispose of at least some of it at the Site. Doc. #864-9, PageID#22705. The Court agrees that this is a reasonable inference.

For these reasons, the Court OVERRULES Valley Asphalt's motion for summary judgment to the extent it seeks judgment as a matter of law that it is not liable as an arranger for the storage of the RAP pile on the Site.

### C. Apportionment of Liability

Valley Asphalt also seeks summary judgment on the question of whether it is jointly and severally liable for all response costs at the Site, or whether its liability is limited to costs associated with investigation and cleanup that occurred on its own property or to address contamination emanating from its own property. Valley Asphalt generally argues that its contributions to contamination at the Site are divisible from the contributions of other defendants. It further argues that the geography of the Site, including waste placement and the nature of the pollution at the Site, provides a reasonable basis for apportioning harm and liability for response costs.

In their memoranda in opposition, Docs. #899 and 928, Plaintiffs and DP&L argue that geographic apportionment is not warranted because Valley Asphalt knowingly disposed of waste, *i.e.*, the RAP pile, outside of the boundaries of its own property. In fact, according to Plaintiffs, the RAP pile now covers four

16

additional acres of the Site. Moreover, the experts agree that hazardous substances from Valley Asphalt's property may have migrated through the groundwater to other portions of the Site, contributing to vapor intrusion problems.

Valley Asphalt maintains that, even if the RAP pile spills across property lines, the boundaries of the pile are still easily discernible, and even if contaminants in the groundwater migrated to other portions of the Site, only a single plume of contamination is involved. Accordingly, the response costs are still capable of apportionment on the basis of geography. On this basis, Valley Asphalt argues that it should not be held jointly and severally liable for all response costs at the Site.

Valley Asphalt's argument concerning joint and several liability appears to be based on a misunderstanding of the law. In *United States v. Stringfellow*, the court explained that, in CERCLA cases, "[t]here are two distinct contexts in which the issue of 'apportionment' arises. It is critical that these two different contexts are not confused." 661 F. Supp. 1053, 1060 (C.D. Cal. 1987).

The first context arises in CERCLA cost recovery actions under § 107(a), where liability for response costs is typically joint and several. "[W]here two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm." *Burlington No. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614 (2009) (citing Restatement (Second) of Torts § 875). Nevertheless, in a cost recovery action under § 107(a), "apportionment" is a defense to joint and several liability. If a defendant can prove that the harm is divisible and that there is

"a reasonable basis for determining the contribution of each cause to a single harm," then apportionment is proper, and the defendant is liable only for the portion of the harm that he, himself, has caused. *Id.* (citing Restatement (Second) of Torts §433(A)(1)(b)).

The second context in which the issue of "apportionment" arises is in contribution actions brought under § 113(f) of CERCLA. In contrast to § 107(a) cost recovery actions, liability in § 113(f) contribution actions is <u>not</u> joint and several. *Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 653 (6th Cir. 2000) ("Unlike with § 107, however, liability under § 113 is not joint and several, but several only."). The Court "may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f). A nonexhaustive list of these factors, commonly referred to as the "*Gore* Factors," includes:

> (1) the ability of the parties to demonstrate that their contribution to a discharge[,] release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with the Federal, State or local officials to prevent any harm to the public health or environment.

*United States v. Township of Brighton*, 153 F.3d 307, 318-19 (6th Cir. 1998) (quotation omitted).

Taking these factors into account, the Court "apportions" the response costs among all liable parties, with each party legally responsible only for its own fair share. In *Township of Brighton*, a § 107(a) cost recovery action, the Sixth Circuit specifically distinguished "the divisibility defense to joint and several liability from the equitable allocation principles available to defendants under CERCLA's contribution provision." *Id.* at 319. It noted that "[t]he former is legal, the latter equitable; the respective tests used to execute them should reflect this distinction." *Id.*

In seeking "judgment as a matter of law that it is not jointly and severally liable for costs, but rather its liability is limited to costs associated only with investigation and cleanup that occurred on its property or to address contamination emanating from its property," Doc. #864, PageID#22494, Valley Asphalt appears to have confused the two types of "apportionment." Here, Plaintiffs are not seeking cost recovery under § 107(a) of CERCLA. Instead, they are seeking contribution under § 113(f). Accordingly, Valley Asphalt is not subject to joint and several liability; it is already liable only for its own fair share of the response costs. In this respect, Valley Asphalt's request for judgment as a matter of law that it is not jointly and severally liable for response costs is somewhat moot.

This does not mean that Valley Asphalt's argument concerning apportionment of response costs is irrelevant. It is simply premature. When the time comes for the Court to equitably allocate response costs under § 113(f), it will analyze the *Gore* factors to determine how those costs should be divided

19

among all liable parties. The first *Gore* factor concerns the ability of the parties to show that their contribution to the contamination can be distinguished from the contributions of others. *Brighton*, 153 F.3d at 318. This is where Valley Asphalt's arguments concerning the divisibility of response costs based on geography will come into play. Accordingly, the Court OVERRULES this portion of Valley Asphalt's Motion for Summary Judgment on Apportionment WITHOUT PREJUDICE to reasserting these arguments at trial and/or in a post-trial brief.

IV. **Conclusion**

The Court SUSTAINS Valley Asphalt's Motion in Limine to Exclude Hearsay Testimony from Edward Grillot, Doc. #995. The Court OVERRULES Defendant Valley Asphalt's Motion for Summary Judgment on Apportionment, Doc. #864.

Date: September 23, 2019

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE