IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,                    :

      Plaintiffs,

      v.                                                         :       Case No. 3:13-cv-115

THE DAYTON POWER & LIGHT                            JUDGE WALTER H. RICE
CO., *et al.*,                                                   :

      Defendants.

---

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION IN
LIMINE TO EXCLUDE TESTIMONY OF PATRICK DOYLE, ESQ.
(DOC. #858); OVERRULING WASTE MANAGEMENT OF OHIO,
INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING SCA
SERVICES OF OHIO, INC. (DOC. #870)

---

Plaintiffs, Hobart Corporation, Kelsey-Hayes Company and NCR Corporation,

filed suit against numerous defendants under the Comprehensive Environmental

Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42

U.S.C. § 9601, *et seq.*, seeking contribution for response costs incurred in

connection with the South Dayton Dump and Landfill Site ("South Dayton Dump"

or "the Site"). One of those Defendants is Waste Management of Ohio, Inc.

("WMO"), as the alleged successor-in-interest to SCA Services of Ohio, Inc. ("SCA

Ohio"), and four of SCA Ohio's predecessors -- Container Services, Inc. (a/k/a

Container Service, Inc., f/k/a Carr-San, Inc.), Container Service Co., General Refuse

Service, Inc., and General Sanitation Corporation.

This matter is currently before the Court on WMO's Motion for Summary Judgment Regarding SCA Services of Ohio, Inc., Doc. #870. This matter is also currently before the Court on Plaintiffs' Motion in Limine to Exclude Testimony of Patrick Doyle, Esq., Doc. #858. For the reasons set forth below, the Court sustains Plaintiffs' motion in limine, and overrules WMO's motion for summary judgment.

## I.    Background and Procedural History

Beginning in the early 1940s, hazardous substances were disposed of at the South Dayton Dump, located on Dryden Road in Moraine, Ohio. Plaintiffs Hobart Corporation, Kelsey-Hayes Company, and NCR Corporation entered into two settlement agreements with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC").[1] These ASAOCs require Plaintiffs to perform certain work at the Site, including investigation, testing, and removal of the contamination. Doc. #636.

In this lawsuit, Plaintiffs seek contribution from numerous defendants under CERCLA, 42 U.S.C. § 9613(f)(3)(B), for response costs incurred in connection with

---

[1]    An earlier ASAOC, executed in 2006, is outside the scope of this lawsuit.

2

the 2013 and 2016 ASAOCs.[2] Plaintiffs seek to hold WMO liable as the

successor-in-interest to SCA Services of Ohio, Inc. ("SCA Ohio"), and as the

successor-in-interest to several other Dayton-area waste collection companies that

SCA Ohio had acquired during the 1970s, including Container Services, Inc. (a/k/a

Container Service, Inc., f/k/a Carr-San, Inc.), Container Service Co., General Refuse

Service, Inc., and General Sanitation Corporation (the "predecessor corporations").

> Paragraph 51 of the Sixth Amended Complaint alleges as follows:

> Defendant Waste Management of Ohio, Inc. or its predecessor is the
> legal successor in interest to SCA Services of Ohio, Inc. . . . SCA
> [Ohio] accepted hazardous substances for transport to and disposal at
> the Site. SCA [Ohio] selected the Site for disposal of hazardous
> substances and contributed to Contamination at the Site through its
> disposal of wastes which included or contained hazardous substances
> at the Site.

Doc. #636, PageID##8253-54. Similar allegations concerning SCA Ohio's

predecessor corporations are contained in paragraphs 52-55. *Id.* at PageID#8254.

In paragraphs 119-124, Plaintiffs further allege that, during the time in question,

SCA Ohio and its predecessor corporations operated the Site, and owned and

operated the incinerators at the Site. *Id.* at PageID#82666-68.[3] Plaintiffs maintain

that WMO is liable under CERCLA as a successor-in-interest to these entities.

———————————————————

[2]  That subsection of CERCLA provides that "[a] person who has resolved its
liability to the United States or a State for some or all of a response action or for
some or all of the costs of such action in an administrative or judicially approved
settlement may seek contribution from any person who is not party to a settlement
referred to in paragraph (2)."  42 U.S.C. § 9613(f)(3)(B).

[3]  CERCLA includes the following as potentially responsible parties:

WMO disagrees.  It has filed a motion for summary judgment on this legal issue.  Doc. #870.  WMO fully admits that the predecessor corporations were ultimately merged into SCA Ohio, that SCA Ohio merged into WMO in 1990, and that WMO is the legal successor to that merger.  Doc. #427, PageID#6355-57.  Nevertheless, WMO denies inheriting liability for prior waste disposal activities of SCA Ohio and its predecessor corporations *in the Dayton area*.  According to WMO, all such liability was previously assumed by GRX Corporation of Ohio ("GRX") and GSX Leasing Corporation ("GSX") as part of a corporate acquisition in 1984.  WMO argues that SCA Ohio's liability for activities at the Site was extinguished, and that GRX and GSX are the proper successors-in-interest.[4]

--------------------------

(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a).

[4]  WMO speculates that Plaintiffs did not sue GRX and GSX because they are judgment-proof.

WMO retained Patrick Doyle, Esq., as an expert witness, to help explain the circumstances surrounding the 1984 corporate acquisition of portions of SCA Ohio by GRX and GSX. Plaintiffs have filed a motion in limine to exclude Doyle's testimony under Fed. R. Evid. 702. Doc. #858. The Court turns first to that motion in limine.

## II.  Plaintiffs' Motion in Limine to Exclude Testimony of Patrick Doyle, Esq. (Doc. #858)

Patrick Doyle is an attorney specializing in mergers and acquisitions. WMO retained him as an expert witness. At trial, he plans to offer his opinion that the documents executed in connection with the 1984 corporate acquisition of SCA Ohio's Dayton operations by Genstar Corporation and its wholly-owned subsidiary, Genstar Refuse Services Corporation ("GRS"), effected a transfer of SCA Ohio's liability for contamination at the South Dayton Dump to GRX and GSX, subsidiaries of GRS. Doc. #858-1, PageID##22301-03.

Plaintiffs have filed a motion in limine to exclude Mr. Doyle's testimony, Doc. #858, arguing that it constitutes an impermissible opinion of law which must be excluded under Fed. R. Evid. 702, governing testimony of expert witnesses.[5]

---

[5]  Fed. R. Evid. 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;

*See Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible."); *Payne v. A.O. Smith Corp.*, 627 F. Supp. 226, 228 (S.D. Ohio 1985) ("the Federal Rules of Evidence do not permit expert testimony as to matters of law"); *Cobra Pipeline Co., Ltd. v. Gas Natural, Inc.*, 132 F. Supp. 3d 945, 952 (N.D. Ohio 2015) ("an expert cannot opine on a question of law.").

WMO denies that Doyle is providing an opinion on a question of law. It contends that because the corporate acquisition at issue was a complicated one, Doyle's opinion would be helpful to the Court in understanding what took place and why. It also suggests that because this is a bench trial, the Court could reserve ruling on the motion until trial. Nevertheless, given that WMO relies on Doyle's report in its motion for summary judgment, the motion in limine is best addressed now.

Having considered the arguments of the parties, the Court agrees with Plaintiffs that Doyle's expert witness opinion is an opinion on a question of law, more specifically, on the legal effect of the documents related to the 1984 corporate acquisition. It is, therefore, inadmissible. *Chavez*, 559 F.3d at 498. Accordingly, the Court SUSTAINS Plaintiffs' Motion in Limine to Exclude

---

**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Testimony of Patrick Doyle, Esq., Doc. #858. The Court will not consider Mr. Doyle's opinion in ruling on WMO's Motion for Summary Judgment. Nor will he be permitted to testify at trial on the issues referenced above.

## III. Waste Management of Ohio, Inc.'s Motion for Summary Judgment Regarding SCA Services of Ohio, Inc. (Doc. #870)

The Court turns next to Waste Management of Ohio, Inc.'s Motion for Summary Judgment Regarding SCA Services of Ohio, Inc. ("SCA Ohio"), Doc. #870. WMO argues that because GRX and GSX assumed all liabilities related to SCA Ohio's Dayton operations six years prior to SCA Ohio's merger with WMO, WMO can no longer be held liable for the waste disposal activities of SCA Ohio or its predecessors in the Dayton area. The Court disagrees.

### A. Relevant Facts

#### 1. 1984 Corporate Acquisition of SCA Ohio by Genstar Corporation and GRS

In 1984, Waste Management, Inc. ("WMI"), WMO's parent company, sought to acquire SCA Services, Inc. ("SCA"), SCA Ohio's parent company. Given the size of both corporations, there were significant antitrust concerns, triggering the involvement of the United States Department of Justice. To resolve these antitrust issues, ownership and control of SCA's businesses in certain areas of the country, including Ohio, was divided between WMI and an unrelated third party, Genstar Corporation (and Genstar's wholly-owned subsidiary, GRS). The WMI

businesses were to be operated completely independently of the GRS businesses.
Doc. #870-3, PageID#24331; Doc. #870-5, PageID#24403.

WMI, Genstar, GRS and WM Acquiring Corporation ("WMAC"),[6] entered into
a Transaction Agreement on July 13, 1984. Doc. #870-3. In that Agreement,
SCA Ohio's operations were divided between WMI and GRS. SCA Ohio's
operations in Canton, Cleveland, Findlay, Lima and Youngstown were to be
distributed to WMI. Its operations in Dayton and Akron were to be distributed to
GRS. *Id.* at PageID##24365, 24367. In the Transaction Agreement, GRS
"assume[d] and agree[d] to pay, perform and discharge, and indemnify and hold
harmless" SCA against all liabilities "primarily relating to or arising out of the
business, operation, other activities or commitments of the GRS Businesses." *Id.*
at PageID#24335.

Pursuant to the Transaction Agreement, on October 24, 1984, SCA Ohio
transferred all assets of its business operations listed in "Schedule I" to GRX
Corporation of Ohio ("GRX") and GSX Leasing Corporation ("GSX"), subsidiaries of
GRS. Docs. ##870-7 and 870-8.[7] "Schedule I" includes "SCA Services of
Dayton, a refuse collection and hauling business conducted in and about Dayton,
Ohio." Doc. #870-7, PageID#24510; Doc. #870-8, PageID#24548.

---

[6] WMAC was set up to effect the corporate acquisition. After it purchased
outstanding shares of SCA stock, SCA became a wholly-owned subsidiary of
WMAC. Doc. #870-3, PageID#24312.

[7] GRX purchased SCA Ohio's intellectual property and customer lists. GSX
purchased the physical assets.

## 2.    Assumption of Liability by GRX and GRS

A separate "Assumption and Indemnity Agreement" was also executed on

October 24, 1984, by SCA Ohio, GRX and GSX.  Doc. #870-9, PageID##24551-

58.  Therein, GRX and GSX expressly agreed to:

> assume and agree to pay, perform, discharge, and indemnify and hold
> harmless . . . SCA [Ohio] against all debts, liabilities, actions, suits,
> obligations, taxes and contracts of any kind, character or description,
> whether known, unknown, direct or indirect, accrued, absolute,
> liquidated or unliquidated, contingent or otherwise, no matter whether
> arising before or after the date hereof, primarily relating to or arising
> out of the business, operations, other activities or commitments of the
> businesses described on Schedule I.

*Id.* at PageID#24552.  This included "current liabilities primarily related to the

Business, to the extent that such liabilities have not been paid, performed or

discharged as of the date hereof."  *Id.*  Again, "Schedule I" to that Agreement

includes "SCA Services of Dayton, a refuse collection and hauling business

conducted in and about Dayton, Ohio."  *Id.* at PageID#24558.

### 3.    1990 Merger of SCA Ohio and WMO

In 1990, SCA Ohio merged with WMO.  WMO fully admits that it is the

successor to that merger.  "[A] successor corporation may be liable for the

CERCLA liabilities of the predecessor corporation."  *Cytec Indus., Inc. v. B.F.*

*Goodrich Co.*, 196 F. Supp. 2d 644, 654 (S.D. Ohio 2002).  Here, however, WMO

argues that, because all of SCA Ohio's liabilities with respect to the Dayton

business operations were expressly assumed by GRX and GSX as part of the 1984

9

acquisition, those liabilities never reached WMO as part of the 1990 merger. WMO seeks summary judgment on this basis.

### B. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a

scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## C.    Analysis

When WMO merged with SCA Ohio in 1990, WMO became liable for all of

SCA Ohio's then-existing legal obligations.  *See* Ohio Revised Code

§ 1701.82(A)(4) (in a merger, "the surviving or new entity is liable for all the

obligations of each constituent entity").  The key question in this case, then, is

whether, at the time of the 1990 merger, SCA Ohio was still liable for its own

prior waste disposal activities at the South Dayton Dump and those of its

predecessor corporations.  If it was, then WMO inherited those liabilities in the

merger; if not, then WMO has no ongoing liability as the successor-in-interest to

SCA Ohio and its predecessor corporations.

Having reviewed all of the relevant documents and the applicable law, the

Court concludes that GRX and GSX did expressly assume SCA Ohio's liabilities

related to its Dayton operations.  Nevertheless, CERCLA prohibits the outright

*transfer* of environmental liability to a third party.  42 U.S.C. § 9607(e)(1).

Accordingly, although GRX and GSX now share in the liability, WMO remains liable

as a successor-in-interest to SCA Ohio and SCA Ohio's predecessor corporations.

### 1. GRX and GSX Expressly Assumed Liability

Successor liability under CERCLA is determined by state law.  *Cytec Indus.*,

196 F. Supp. 2d at 654.  As a general rule, under Ohio law, "the purchaser of a

corporation's assets is not liable for the debts and obligations of the seller

corporation."  *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 346, 617

N.E.2d 1129, 1132 (1993).  There are, however, four exceptions to this rule.

Successor liability may be triggered when: "(1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a *de facto* consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Id.* at 347, 617 N.E.2d at 1132 (quoting *Flaugher v. Cone Automatic Mach. Co.* (1987), 30 Ohio St.3d 60, 62, 507 N.E.2d at 331, 334)).

Here, GRX and GSX expressly agreed to assume all liabilities relative to SCA Ohio's Dayton operations. That assumption of liability was extremely broad, broad enough to include any then-existing environmental liabilities. As previously noted, GRX and GSX agreed to:

> assume and agree to pay, perform, discharge, and indemnify and hold harmless . . . SCA [Ohio] against all debts, liabilities, actions, suits, obligations, taxes and contracts of any kind, character or description, whether known, unknown, direct or indirect, accrued, absolute, liquidated or unliquidated, contingent or otherwise, no matter whether arising before or after the date hereof, primarily relating to or arising out of the business, operations, other activities or commitments of the businesses described on Schedule I attached hereto, as heretofore operated by [SCA Ohio], including but not limited to . . . current liabilities primarily related to the Business, to the extent that such liabilities have not been paid, performed or discharged as of the date hereof. . .

Doc. #870-9, PageID#24552.

## 2. "SCA Services of Dayton" Misnomer

The Assumption and Indemnity Agreement covers all liabilities "primarily relating to or arising out of the business, operations, or other activities or commitments of the businesses described in Schedule 1." *Id.* In turn, "Schedule

1" includes "SCA Services of Dayton, a refuse collection and hauling business conducted in and about Dayton, Ohio." *Id.* at PageID#24558. It is undisputed that there has never been a legal entity named "SCA Services of Dayton."

Plaintiffs argue that the Assumption and Indemnity Agreement is therefore ineffective to divest SCA Ohio of liability for environmental contamination at the Site.[8] In a similar vein, Plaintiffs argue that the Agreement is ineffective to divest SCA Ohio of CERCLA liability for the actions of its predecessor corporations, *i.e.,* Container Services, Inc. (a/k/a Container Service, Inc., f/k/a Carr-San, Inc.), Container Service Co., General Refuse Service, Inc., and General Sanitation Corporation.

The Court rejects these arguments. In order to give effect to the intent of the parties, "SCA Services of Dayton" must be read to mean SCA Ohio, Inc.'s Dayton operations. The Assumption and Indemnification Agreement grew out of "the Transaction Agreement dated July 13, 1984, as amended" and specifically refers to that master agreement. Doc. #870-9, PageID#24551. Exhibit B to the Transaction Agreement is a "listing of the cities, counties, municipalities and other

---

[8]  Plaintiffs' rebuttal expert witness, Dale Oesterle, concludes that, because "SCA Services of Dayton" was not a legal entity capable of owning assets or holding liabilities, the Assumption and Indemnity Agreement did not divest SCA Ohio of any of its liabilities for waste disposal at the South Dayton Dump. He concludes that SCA Ohio therefore carried its CERCLA liabilities into its merger with WMO in 1990. Doc. #896-6, PageID##30103-04. Although WMO has not yet moved to exclude Mr. Oesterle's opinion as an impermissible legal opinion, the Court refuses to consider it for the same reasons it refuses to consider Mr. Doyle's expert witness opinion.

14

areas where the businesses or operations of SCA are to be distributed to GRS."
"Dayton, Ohio" is included on that list. Doc. #870-3, PageID#24367.

"SCA Services of Dayton" is again included on Exhibit B to the Second
Amendment to the Transaction Agreement, dated September 11, 1984. This time,
Exhibit B contains the following qualifying language: "Names and locations of
operating centers are given for identification purposes and do not necessarily
reflect the actual or legal name of the operation or the geographical location of all
relevant assets." Doc. #896-3, PageID#30024. This Amendment pre-dates the
Assumption and Indemnity Agreement. When these documents are read in
conjunction with each other, it is clear that, despite the misnomer, the parties
intended that GSX and GRX would assume all liabilities related to or arising out of
SCA Ohio's business operations in Dayton, Ohio.

The Court also rejects Plaintiffs' related argument that, because the
Assumption and Indemnity Agreement does not expressly assume the liabilities of
SCA Ohio's predecessor corporations, it is ineffective to transfer CERCLA liability
for the waste disposal activities of those predecessor companies to GRX and GSX.
At the time that Agreement was executed, none of the predecessor companies
remained in existence. By operation of law, as the result of the series of earlier
mergers, SCA Ohio was legally responsible for the CERCLA liabilities of those
predecessor companies. Accordingly, the CERCLA liabilities of SCA Ohio's
predecessor corporations are included within the broad scope of liabilities assumed
by GRX and GSX in October of 1984.

Based on the foregoing, the Court concludes that GRX and GSX, having expressly assumed liability, are liable as successors-in-interest for the waste disposal activities of SCA Ohio and its predecessor corporations at the South Dayton Dump. That, however, is not the end of the inquiry. The next question is whether the assumption of liability by GRX and GSX also extinguished the liability of SCA Ohio and that of WMO as the successor-in-interest to SCA Ohio.

### 3. 42 U.S.C. § 9607(e)(1) Bars SCA Ohio from Divesting Itself of CERCLA Liability

Citing *Dobbelaere v. Cosco*, 120 Ohio App. 3d 232, 240, 697 N.E.2d 1016 (Ohio Ct. App. 1997), WMO argues that when GRX and GSX assumed liability for SCA Ohio's Dayton operations, SCA Ohio's liability was completely extinguished. Although *Dobbelaere* was a products liability case, WMO urges the Court to extend its holding to assumptions of liability in CERCLA cases. It notes that the Supreme Court has held that CERCLA does not replace "the entire corpus of state corporation law." *United States v. Bestfoods*, 524 U.S. 51, 63 (1998).

*Bestfoods* dealt with the issue of piercing the corporate veil in a parent-subsidiary relationship. The court went on to state that "the failure of the statute to speak to a matter as fundamental as the liability implications of corporate ownership demands application of the rule that '[i]n order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law.'" *Id.* (quoting *United States v. Texas*, 507 U.S. 529, 534 (1993)).

16

Here, CERCLA does speak directly to the question of whether a purchaser's assumption of liability extinguishes the liability of a seller who might be liable for response costs. It provides:

> (1)    No indemnification, hold harmless, or similar agreement or conveyance shall be effective to *transfer* from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section.

> (2)    Nothing in this subchapter, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

42 U.S.C. § 9607(e) (emphasis added).

The Sixth Circuit has interpreted this statute to mean that, although § 9607(e)(1) prohibits a responsible party from *transferring* its CERCLA liability to a third party, § 9607(e)(2) permits responsible parties to allocate the risk of liability among themselves through releases or indemnity agreements. *AM Int'l, Inc. v. Int'l Forging Equip. Corp.*, 982 F.2d 989, 994 (6th Cir. 1993); *Olin Corp. v. Yeargin, Inc.*, 146 F.3d 398, 407 (6th Cir. 1998). This corresponds with CERCLA's purpose of ensuring that the costs of cleanup efforts are "borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009).

Quoting *John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401, 405 (1st Cir. 1993), Plaintiffs argue that "[i]f § 9607(a) imposes liability on a party, then that party cannot escape liability by means of a contract with another party."

17

Potentially responsible parties can agree, however, to "allocate ultimate

responsibility among themselves by contract." *Id. See also Harley-Davidson, Inc.*

*v. Minstar, Inc.*, 41 F.3d 341, 342-43 (7th Cir. 1994) (holding that § 9607(e)

"does not outlaw indemnification agreements, but merely precludes efforts to

divest a responsible party of his liability"); *United States v. Hardage*, 985 F.2d

1427, 1433 (10th Cir. 1993) ("although responsible parties may not altogether

*transfer* their CERCLA liability, they have the right to obtain indemnification for that

liability."); *Peoples Gas Light and Coke Co. v. Beazer East, Inc.*, 802 F.3d 876,

880 (7th Cir. 2015) ("responsible parties may not transfer their CERCLA liability,

but may obtain indemnification for that liability).

Given that SCA Ohio is a potentially responsible party, it cannot completely

divest itself of CERCLA liability. GRX and GSX, who had no independent CERCLA

liability for waste disposal activities at the Site, were not prohibited from assuming

liability for the waste disposal activities of SCA Ohio and its corporate

predecessors. However, that assumption of liability did not *extinguish* the liability

of SCA Ohio. Such a *transfer* of liability is prohibited by statute. WMO therefore

remains liable as a successor-in-interest to SCA Ohio and its corporate

predecessors with respect to the Dayton operations.

Three cases are illustrative. Most closely on point is *United States v. NCR*

*Corp.*, 840 F. Supp. 2d 1093 (E.D. Wis. 2011), *on reconsideration in part* (Apr.

10, 2012). Appleton Papers, Inc. ("API") purchased some of NCR's assets and

agreed to assume some of NCR's environmental liabilities. NCR, however,

remained in business after the asset purchase. The court held that nothing prohibited API from assuming NCR's CERCLA liability. *Id.* at 1096. "CERCLA case law is clear that parties may assume liability through agreement (though they may not transfer it away), and none of the cases requires that an assumption is only valid if the seller ceases to exist." *Id.* at 1097.

The court noted that, although "CERCLA precludes efforts to divest liability," it does not prohibit a non-liable party from agreeing "to take on direct liability *in addition* to that of the already-liable party: the only condition CERCLA imposes is that the directly liable party must remain liable." *Id.* (emphasis in original). Accordingly, the court concluded that "API could be liable in addition to NCR." *Id.* "[N]othing within CERCLA itself invalidates an attempt to create additional CERCLA liability, so long as the agreement does not purport to *transfer* that liability." *Id.* at 1098.

Likewise, in *United States v. Lang*, 864 F. Supp. 610 (E.D. Tex. 1994), the court concluded that a corporation who agreed, as part of an asset purchase agreement, to assume liabilities of the seller, could be "added to chain of cleanup accountability." *Id.* at 612. Nevertheless, the seller was not permitted to "dodge its potential liability." The seller still remained liable. *Id.* at 612, 614.

The third case is *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097 (E.D. Mich. 1997). Therein, the court held that, although an asset purchaser agreed to assume all of the seller's liabilities, this promise could not absolve the seller of

CERCLA liability. It could only serve to make the purchaser responsible for seller's CERCLA liability. *Id.* at 1109 n.9.

Based on the above-cited case law, the Court concludes that the Assumption and Indemnity Agreement did not operate to extinguish SCA Ohio's CERCLA liability. There is one Sixth Circuit case that merits discussion, however. In *White Consolidated Industries, Inc. v. Westinghouse Electric Corp.*, 179 F.3d 403 (6th Cir. 1999), the court considered whether the assumption-of-liability provision in the purchase agreement was broad enough to impose liability on the purchaser for environmental liabilities that arose in the future.

Citing *Olin Corp. v. Yeargin, Inc.*, 146 F.3d 398, 407 (6th Cir. 1998), the court stated that "[a] broad assumption of liabilities provision . . . *transfers* CERCLA liability to the purchaser of a business who agrees to the broad assumption." *White*, 179 F.3d at 409 (emphasis added). The court found that that the broad assumption language in the purchase agreement "transferred" unknown CERCLA liabilities and that the purchaser was therefore "solely responsible." *Id.* at 410.

Although the *White Consolidated Industries* holding appears to support WMO's position, the Court notes two problems. First, contrary to what is stated, *Olin* did not hold that an assumption-of-liability provision *transferred* CERCLA liability to the purchaser; rather, it held that the purchaser was contractually obligated to *indemnify* the seller for CERCLA liabilities. *Olin*, 146 F.3d at 407-08. More importantly, however, the *White Consolidated Industries* court made

20

absolutely no mention of 42 U.S.C. § 9607(e), which appears to dictate a different result. For these reasons, the Court does not feel compelled to follow that decision.

To summarize, GRX and GSX did assume direct liability for waste disposal activities of SCA Ohio and its predecessors in the Dayton area. As such, GRX and GSX are now subject to CERCLA liability. Nevertheless, this does not mean that SCA Ohio's CERCLA liability was *extinguished*. Section 9607(e)(1) prohibits a *transfer* of liability. Therefore, SCA Ohio remained liable, a liability inherited by WMO as a result of the merger in 1990.

Of course, under 42 U.S.C. § 9607(e)(2), WMO, as successor-in-interest to SCA Ohio and its predecessors, may attempt to enforce the indemnification provisions of the Assumption and Indemnification Agreement against GRX and GSX. Nevertheless, WMO is not entitled to summary judgment on the issue of successor liability. Accordingly, the Court OVERRULES WMO's Motion for Summary Judgment Regarding SCA Services of Ohio, Inc., Doc. #870.

## IV.    Conclusion

For the reasons set forth above, the Court:

- SUSTAINS Plaintiffs' Motion in Limine to Exclude Testimony of Patrick Doyle, Esq., Doc. #858; and

- OVERRULES Waste Management of Ohio, Inc.'s Motion for Summary Judgment Regarding SCA Services of Ohio, Inc., Doc. #870

21

Date: September 23, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE