IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,

    Plaintiffs,

v.

THE DAYTON POWER AND
LIGHT COMPANY, et al.,

    Defendants.

:
:
:
:
:
:

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING *NUNC PRO TUNC*
PLAINTIFFS' UNOPPOSED MOTION FOR LEAVE TO FILE [SUR-]
SUR-REPLY INSTANTER (DOC. #1126); OVERRULING PLAINTIFFS'
MOTION IN LIMINE TO EXCLUDE INTERVIEW OF CLAY LOWE
A/K/A MR. C (DOC. #1087)

---

This matter is currently before the Court on Plaintiffs' Motion in Limine to Exclude Interview of Clay Lowe a/k/a Mr. C. Doc. #1087. Given that Defendants raised new arguments in their Sur-reply, Doc. #1124, and for good cause shown, the Court SUSTAINS *nunc pro tunc* Plaintiffs' Unopposed Motion for Leave to File [Sur-]Sur-Reply Instanter, Doc. #1126, which has already been filed as Doc. #1127.

Clay Lowe, who died in 2007, was a former employee of Plaintiff NCR Corporation, where he worked as a truck driver for more than 30 years. In 2005, long after Lowe had retired, he was interviewed by Reginald Arkell, an investigator with the United States Environmental Protection Agency's Office of Civil

Enforcement, Special Litigation and Projects Division. Arkell was assigned to interview ten individuals who had previously hauled waste to the South Dayton Dump. Lowe was one of those ten individuals.

During that interview, Lowe stated that it was common knowledge that NCR transported drums of plating waste to the South Dayton Dump. He himself transported plating waste to the South Dayton Dump on Saturdays and on days when the regular driver was unavailable. Lowe also told Arkell that NCR had a contract with the South Dayton Dump which allowed NCR to dispose of unlimited waste at that facility for $50 per month.

Arkell memorialized Lowe's interview, and the interviews of the other individuals, in an Investigative Activity Report.[1] Three different summaries of Lowe's interview have been produced. The content of each is largely the same. The first summary, however, identifies Clay Lowe only as "Mr. C." Doc. #1087-1. It was produced by Plaintiffs, who received it from the EPA. The second and third summaries more specifically identify the witness as Clay Lowe. Docs. ##1087-2 and 1087-3. These summaries were apparently obtained by Defendants in 2017 through an FOIA request to the EPA. Only then did Defendants first discover that "Mr. C" and "Clay Lowe" were one and the same. Defendants maintain that Arkell's summary of his interview with Lowe is the "most direct and

---

[1] The Investigative Activity Report itself contains no recommendations or conclusions of the EPA; it simply recites what Lowe and the other individuals told Arkell during their interviews.

comprehensive evidence of NCR's extensive waste disposal activity at the South Dayton Dump." Doc. #1098, PageID#41255.

Plaintiffs argue, however, that the interview summaries, and Lowe's statements as recorded therein, are inadmissible hearsay, *i.e.,* out-of-court statements offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). They have moved to exclude them on that basis. Plaintiffs correctly note that there are two layers of hearsay: (1) what Clay Lowe told Reginald Arkell; and (2) what Arkell documented in his report to his supervisors. To be admissible, both layers "must either be excluded from the hearsay definition or fall within a hearsay exception." *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012).

Defendants object to Plaintiffs' motion in limine. Docs. ##1098, 1102, 1106, 1107, 1109. They contend that both layers of hearsay are admissible under Fed. R. Evid. 807, the residual exception to the hearsay rule. Rule 807(a) provides as follows:

> (a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>
> > (1) the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> >
> > (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.
>
> (b) Notice. The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the

3

> statement--including its substance and the declarant's name--so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing--or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

Fed. R. Evid. 807.

There is little doubt that Rule 807(b) has been satisfied. Plaintiffs are clearly on notice of Defendants' intent to offer the interview summaries. In fact, that is likely what prompted Plaintiffs to file the motion in limine. At issue is whether the interview summaries, and the statements contained therein, satisfy the requirements of Rule 807(a).

In assessing the totality of the circumstances, the Court may consider the declarant's relationship to the parties, the motive of the declarant in making the statement, the extent to which the statement reflects the declarant's personal knowledge, and the consistency of any past statements by the declarant. *United States v. Barlow*, 693 F.2d 954, 961-63 (6th Cir. 1982). Having reviewed the parties' briefs and the applicable evidence of record, the Court finds that both layers of hearsay satisfy the requirements of Rule 807(a).

### *Clay Lowe's Statements to Reginald Arkell*

The first layer of hearsay concerns Lowe's statements to Reginald Arkell, the EPA interviewer.

As Defendants note, before he retired, Lowe was employed by NCR for 33 years and had a flawless work record. In 2003, NCR consulted Lowe in responding to information requests from the EPA, and identified him as someone

"having knowledge of information about the generation, transportation, treatment, disposal or other handling of material" at the South Dayton Dump. Doc. #1098-1, PageID##41279-80.

Lowe was aware that the EPA was investigating the South Dayton Dump and agreed to be interviewed by Arkell. During the interview, he told Arkell that he was upset with NCR for taking life insurance benefits away from retirees while corporate officers were making millions of dollars. Doc. #1087-2, PageID#41212. Nevertheless, nothing in the interview summary suggests that he had any motive to lie to Arkell about waste that was transported to the South Dayton Dump. As Defendants note, he spoke only of matters about which he had personal knowledge and identified just one other living person who may have additional information about NCR's disposal practices.

Plaintiffs suggest that Lowe's recollections may be faulty, given that the events in question had occurred 40-50 years before the interview. However, he was able to clearly describe the appearance and the smell of the plating waste, which he said contained acids and cyanide. He remembered that he drove the "number 13 dump truck," and that the plating waste was transported "on a daily basis to the [South Dayton Dump]" inside sealed 25-gallon drums and 55-gallon drums. He also remembered that the plating wastes came from NCR buildings number 4, 27 and 28. Doc. #1087-2, PageID##41212-13. This level of detail weighs against a finding that the passage of time may have dulled his memory. Defendants further note that, although NCR also interviewed Mr. Lowe on several

5

occasions, it has pointed to no statements in Arkell's interview summaries that are inconsistent with any of Lowe's previous statements.

In addition, Lowe's statements are corroborated by other evidence. Notably, NCR has repeatedly relied on Lowe's statements—in its responses to numerous inquiries from the EPA, Doc. #1098-1, and in the 30(b)(6) deposition of NCR's corporate representative in a related case, *Cargill, Inc. v. Advanced Foundry, Inc.*, S.D. Ohio No. 3:98-cv-36, Docs. ##1098-8 and 1098-9. A 2005 interview by one of Plaintiffs' investigators corroborates Lowe's statements that he worked at NCR for more than 30 years and hauled plating waste from buildings 4, 27 and 28 for at least ten years. Doc. #1098-13.

In addition, Plaintiffs' experts, Richard White and Jurgen Exner, relied on Lowe's statements in identifying the hazardous substances generated by NCR and in calculating the volume of waste transported to the South Dayton Dump. Docs. ##1098-14, 1098-15. Defendants further note that Lowe's statements were relied upon by the EPA in pursuing NCR as a party to the remediation and by NCR in agreeing to undertake the RI/FS.

Considering the totality of the circumstances under which Lowe's statements were made, and the corroborating evidence of record, the Court finds that those statements are supported by sufficient guarantees of trustworthiness. The Court further finds that Lowe's statements are more probative on the question of NCR's equitable allocation of liability for response costs than any other evidence

6

that Defendants can obtain through reasonable efforts.[2] As Defendants note, Lowe had extensive, personal knowledge of NCR's waste disposal practices from decades ago and there appears to be no alternative source for this information. Bryan Heath, NCR's own 30(b)(6) corporate representative, testified that he had seen nothing that either refuted or verified Lowe's statements. Doc. #1098-16, PageID#41703.

Based on the foregoing, the Court finds that Lowe's statements to Reginald Arkell are admissible under the residual exception to the hearsay rule set forth in Fed. R. Evid. 807.

### *Reginald Arkell's Statements in the Interview Summaries*

The second layer of hearsay concerns statements made by Reginald Arkell in the interview summaries. Defendants argue that Arkell's statements are admissible under Fed. R. Evid. 807 for the same reason that Lowe's statements are, given that the interview summary contains nothing more than a recitation of what Lowe told him.

Plaintiffs argue, however, that Defendants have failed to show that Arkell's statement is more probative on the point for which it is offered than any other evidence Defendants can obtain through reasonable efforts. More specifically,

---

[2] Plaintiffs argue that the expert witness testimony will be more probative than Lowe's statements on the issue of equitable allocation. The Court disagrees, given that the experts relied on Lowe's statements in formulating their opinions.

7

Plaintiffs argue that Defendants made no effort to take Arkell's deposition or to subpoena him for trial.

Defendants, however, did attempt to meet with Arkell in 2017 to discuss the interview summaries. Nevertheless, the EPA refused to make him available, offering instead to certify and authenticate his Investigative Activity Report closer to the trial date. Doc. #1124, PageID##42186-93. Defendants argue that, because they did make reasonable efforts to obtain more probative evidence, the interview summaries should be deemed admissible. In response, Plaintiffs argue that, instead of simply asking for a meeting, Defendants should have issued a subpoena for Arkell's deposition. They note that another EPA employee, Karen Cibulskis, appeared for a deposition in this case when subpoenaed to do so. Doc. #1127-1.

In the Court's view, Arkell's interview summaries are likely to be admissible under Fed. R. Evid. 803(6), the hearsay exclusion for records of a regularly conducted activity. This includes:

A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C) making the record was a regular practice of that activity;
(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Lowe, a person with knowledge, was interviewed on May 17, 2005; Arkell's report, made from information transmitted by Lowe, is dated the following day. Doc. #1087-2, PageID#41212. Given the EPA's offer of a certification and authentication of the report "for purposes of admissibility," Doc. #1124, PageID#42192, it appears that Defendants could satisfy subsections (B)(C) and (D). Moreover, there does not appear to be any reason to believe that Lowe, or the method or circumstances of Arkell's preparation of the interview summaries indicate a lack of trustworthiness. The interview summaries would therefore be admissible under Fed. R. Evid. 803(6).

Even if the summaries are not admissible under Rule 803(6), the Court agrees with Defendants that they are admissible under Fed. R. Evid. 807, the residual exception to the hearsay rule. Arkell's report was prepared at the request of the EPA, and Arkell would have no motive to record Lowe's statements inaccurately. Moreover, as discussed above, the statements included in the report are corroborated by other evidence. The Court therefore finds that the report is supported by sufficient guarantees of trustworthiness.

The question of whether the summaries are "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts" is a somewhat closer call. Defendants could have

9

subpoenaed Arkell for a deposition, and Arkell could have testified under oath that he was asked to interview Lowe and that he accurately recorded what Lowe told him during the interview. However, given the circumstances under which the interview was conducted, it is not clear that such deposition testimony would have been any "more probative" on any salient point. The interview summaries are offered for no other reason than to get into evidence the substance of Lowe's statements to Arkell. In that respect, the summaries are more probative on the point for which they are offered than any other evidence that Defendants can obtain through reasonable efforts.

In short, Mr. Arkell's interview summaries are likely admissible under Fed. R. Evid. 803(6). In the alternative, they would be admissible under Fed. R. Evid. 807. For the reasons set forth above, the Court OVERRULES Plaintiffs' Motion in Limine to Exclude Interview of Clay Lowe, a/k/a Mr. C. Doc. #1087.

Date: February 10, 2020

WALTER H. RICE
UNITED STATES DISTRICT JUDGE