IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,  :

    Plaintiffs,

v.  :  Case No. 3:13-cv-115

THE DAYTON POWER & LIGHT  :  JUDGE WALTER H. RICE
COMPANY, et al.,

    Defendants.  :

---

DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY (DOC. #1153); SUSTAINING IN PART AND OVERRULING IN PART WASTE MANAGEMENT OF OHIO, INC.'S RULE 37(c) DISCOVERY MOTION (DOC. #1139); WASTE MANAGEMENT TO FILE REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS WITHIN 10 CALENDAR DAYS

---

Plaintiffs, Hobart Corporation, Kelsey-Hayes Company and NCR Corporation, seek contribution under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA"), 42 U.S.C. § 9601, et seq., for response costs incurred at the South Dayton Dump and Landfill Site. This matter is currently before the Court on Defendant Waste Management of Ohio, Inc.'s Rule 37(c) Discovery Motion, Doc. #1139, and on Plaintiffs' Motion for Leave to File a Surreply to that discovery motion, Doc. #1153.

I.      Procedural History

In their Sixth Amended Complaint, Doc. #636, Plaintiffs alleged that Blaylock Trucking Co., Inc. ("Blaylock"), and Industrial Waste Disposal Co., Inc. ("IWD"), transported hazardous substances, in the form of wooden pallets or skids, to the South Dayton Dump and Landfill Site, and that Defendant Waste Management of Ohio, Inc. ("WMO"), is liable as a successor-in-interest to Blaylock and IWD.

On September 23, 2019, the Court issued a Decision and Entry ruling on several summary judgment motions. Doc. #1072. Therein, the Court noted that Plaintiffs had pointed to no evidence that the wooden pallets brought to the Site were treated, painted or stained. *Id.* at PageID#40712. The Court noted that Dr. Walter Shields, Dr. Jurgen Exner, Leo Mullin, and Jeffrey Smith all appeared to agree that untreated wooden pallets are not a hazardous substance. *Id.* at PageID#40713. Based on expert witness testimony, the Court also found that the wood ash created when those untreated pallets were burned did not contain enough hazardous substances to trigger CERCLA liability. *Id.* at PageID#40715.

The Court concluded that, based on the evidence presented, no reasonable factfinder could conclude that the wooden pallets that were transported to the dump, or the wood ash from those pallets, contained hazardous substances. *Id.* at PageID##40717. On this basis, the Court sustained WMO's Motion for Summary Judgment Regarding Blaylock Trucking Co., Inc., Doc. #865, and WMO's Motion

for Summary Judgment Regarding Industrial Waste Disposal Co., Inc. ("IWD"), Doc. #868.

In the Sixth Amended Complaint, Plaintiffs also alleged that WMO is liable as a successor-in-interest to Container Services, Inc., which not only transported waste to the South Dayton Dump, but also owned or operated an air curtain destructor ("ACD") at the Site. An ACD is an incineration device designed to burn wood waste in a trench or pit. CERCLA liability for response costs exists for "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). Plaintiffs allege that the ACD is a "facility" within the meaning of 42 U.S.C. §9601(9), where hazardous substances were disposed of.

WMO did not previously move for summary judgment with respect to any of the claims asserted against WMO as successor-in-interest to Container Services. Nevertheless, on December 2, 2019, several weeks after the Court granted summary judgment in favor of Blaylock and IWD, WMO filed a Motion to Dismiss for Failure to State a Claim Against Container Services, Inc., as an Owner or Operator of the Air Curtain Destructor, Doc. #1118.

Therein, WMO argues that 99.8% of the materials burned in the ACD were wood pallets, and the only material generated by the ACD was wood ash. Given that the Court has now held that the wooden pallets and wood ash contain no hazardous substances, WMO seeks dismissal of all claims against WMO as successor-in-interest to Container Services in its capacity as the owner or operator

3

of the ACD.¹ WMO argues that, because there was no disposal of hazardous substances in the ACD, and no release or threatened release of a hazardous substance, CERCLA liability is not triggered under 42 U.S.C. § 9607(a)(2).

Plaintiffs filed a Motion to Strike WMO's Motion to Dismiss, Doc. #1122, characterizing it as an untimely motion for summary judgment. The Court overruled Plaintiffs' Motion to Strike and converted WMO's Motion to Dismiss into a motion for summary judgment. Doc. #1129. As required by Fed. R. Civ. P. 12(d), the Court gave the parties the opportunity to "present all the material that is pertinent to the motion."

On January 15, 2020, Plaintiffs filed a Response in Opposition to WMO's Motion for Summary Judgment, Doc. #1133. In support, Plaintiffs attached new Declarations of lay witnesses Edward Grillot and David Grillot, Docs. ##1133-1, 1133-2, 1133-3. They state that many of the wooden pallets had paint or oil stains on them, that the nails or staples holding the pallets together were burned in the ACD along with the wood, and that sometimes plywood and spindles were also burned in the ACD.

Plaintiffs also attached Declarations of Dr. Marshall White, Doc. #1133-4, and Dr. Jurgen Exner, Doc. #1133-6. These Declarations contain new expert witness opinions. Dr. Marshall White, never before identified by Plaintiffs as an

---

¹ Plaintiffs have also alleged that Container Services is liable as a *transporter* of hazardous substances. WMO, as successor-in-interest, has not moved to dismiss these claims.

4

expert witness, opines that many wooden pallets are treated with chemicals containing hazardous substances, and that the nails and staples used to hold the wood pallets together contain hazardous substances. He also opines that any pallets made of plywood likely contained adhesives containing hazardous substances. Doc. #1133-4.

Dr. Exner previously opined about the specific constituents found in wood and wood ash, but rendered no opinions about wood pallet construction. Like Dr. White, Exner now opines that the wooden pallets may have been treated with preservatives, that the materials used to hold the pallets together contain hazardous substances, and that any plywood burned in the ACD would have also contained hazardous substances. Doc. #1133-6. Based on this new lay and expert witness testimony, Plaintiffs argue that genuine issues of material fact preclude summary judgment on the question of whether materials burned in the ACD contained hazardous substances, triggering liability under 42 U.S.C. § 9607 (a)(2).

Plaintiffs' submission of these two new expert witness opinions prompted WMO to file a Rule 37(c) Discovery Motion and Request for Immediate Stay of Reply to Motion for Summary Judgment, Doc. #1139. WMO asks the Court to exclude the new expert witness opinions as untimely. The Court sustained WMO's request for a stay in briefing on the Motion for Summary Judgment, and ordered Plaintiffs to respond to the Rule 37(c) Discovery Motion, Doc. #1141.

5

On February 26, 2020, Plaintiffs filed their Response in Opposition to WMO's Rule 37(c) Discovery Motion, Doc. #1146.  After WMO filed its Reply brief, Doc. #1149, Plaintiffs filed a Motion for Leave to File Surreply, Doc. #1153. WMO filed a Response brief, Doc. #1154, and Plaintiffs filed a Reply brief, Doc. #1156.  Before reaching the merits of WMO's Rule 37(c) Discovery Motion, the Court must decide whether to allow Plaintiffs to file a Surreply to that discovery motion.

II. **Plaintiffs' Motion for Leave to File Surreply (Doc. #1153)**

Plaintiffs maintain that WMO's Reply in Support of its Rule 37(c) Discovery Motion raises two new issues: (1) that "pertinent material" for purposes of evaluating a motion to dismiss that has been converted into a motion for summary judgment is limited to material already in the record at the time the motion is filed; and (2) that Dr. Exner's new opinions contradict his earlier deposition testimony. Plaintiffs therefore seek leave to file a Surreply to respond to these arguments and to the new cases cited by WMO.  Doc. #1153.

WMO opposes Plaintiffs' Motion, Doc. #1154.  WMO denies that it raised any new arguments in its Reply brief.  As to Plaintiffs' allegation that WMO argued for the first time in its Reply brief that "pertinent material" is limited to material already in the record, WMO argues that it was simply responding to Plaintiffs' argument that conversion of the motion to dismiss into a motion for summary

judgment implicitly reopened discovery and allowed Plaintiffs to present new expert opinions.

The Court agrees that WMO did not raise any new arguments in its Reply brief. WMO was merely responding to arguments raised in Plaintiffs' memorandum in opposition, issues that were implicit in the original Rule 37(c) motion. Given that this was not a new argument, no surreply is warranted on this topic. *See Power Mktg. Direct v. Moy*, No. 2:08-cv-826, 2008 U.S. Dist. LEXIS 115810, at *5 (S.D. Ohio Nov. 6, 2008) (denying leave to file a surreply where plaintiff raised no new grounds, "but instead addressed a threshold issue both presented by Defendants and implicit in the original motion.").

As to Plaintiffs' allegation that WMO argued for the first time in its Reply brief that Dr. Exner's new opinions contradict his deposition testimony, WMO points to seven instances in its Memorandum in Support of its Rule 37(c) Discovery Motion where it made this exact argument. This is clearly not an issue raised for the first time in the Reply brief.

In light of the foregoing, the Court finds that Plaintiffs have failed to show good cause for allowing the filing of a Surreply. *See* S.D. Ohio Civ. R. 7.2(a)(2) (prohibiting the filing of additional memoranda "except upon leave of court for good cause shown."). Accordingly, the Court OVERRULES Plaintiffs' Motion for Leave to File Surreply, Doc. #1153.

### III. Waste Management of Ohio, Inc.'s Rule 37(c) Discovery Motion (Doc. #1139)

The Court turns now to the merits of WMO's Rule 37(c) Discovery Motion, Doc. #1139. Fed. R. Civ. P. 37(c) provides as follows:

> (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c).[2]

In this case, the Third Amended Omnibus Scheduling Order, Doc. #817, provided that Defendants' primary witness designations were to be made by May 18, 2018, rebuttal expert designations were to be made by July 24, 2018, and all expert witness discovery was to be completed by October 23, 2018.

Plaintiffs, however, did not disclose Dr. Marshall White as an expert witness until January 15, 2020, when they filed their Response in Opposition to WMO's Motion to Dismiss, which the Court has converted into a motion for summary judgment. Likewise, although Dr. Exner has offered numerous other expert

---

[2] Fed. R. Civ. P. 26(a)(2) governs disclosure of expert witness testimony. Fed. R. Civ. P. 26(e) governs supplemental disclosures of expert witness opinions. Disclosures must be made within the deadlines established by the Court. Fed. R. Civ. P. 26(a)(2)(D).

8

opinions in this case, he has not previously opined about hazardous substances found in nails, staples, or plywood. Plaintiffs did not disclose Dr. Exner's new expert witness opinions until January 15, 2020.[3]

Pursuant to Fed. R. Civ. P. 37(c), WMO asks for an Order excluding all testimony of newly-named expert witness Dr. Marshall White, all consideration of the new Declarations of Dr. White and Dr. Jurgen Exner, and all trial testimony concerning those new Declarations. WMO argues that because Plaintiffs' failure to timely identify Dr. Marshall White as an expert witness, and to timely provide the expert witness opinions of Dr. White and Dr. Exner, are not substantially justified or harmless, exclusion of these new expert opinions is warranted. The Court agrees.

### A. Conversion of Motion to Dismiss to a Motion for Summary Judgment Did Not Automatically Reopen Discovery

When the Court converted WMO's Motion to Dismiss to a motion for summary judgment, and gave the parties the opportunity to present all "pertinent material," it did not also reopen expert witness discovery. That deadline had expired almost fifteen months earlier. A scheduling order cannot be modified except "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Plaintiffs could have sought leave to reopen expert witness discovery, but did not.

---

[3] As WMO notes, under the circumstances presented here, Dr. Exner's new expert witness opinion cannot be deemed a "supplemental" opinion under Rule 26(e).

9

Moreover, if Plaintiffs believed that they needed additional expert witness discovery to fully respond to WMO's motion, they could have sought relief under Fed. R. Civ. P. 56(d). However, they did not. Instead, without seeking leave of Court, they retained Dr. Marshall White, a completely new expert witness, and sought new expert witness opinions from him and Dr. Exner.

In light of the foregoing, the Court is not inclined to allow Plaintiffs' new expert witness opinions. It will, nevertheless, analyze whether Plaintiffs' violation of Fed. R. Civ. P. 26(a)(2) is substantially justified or harmless such that exclusion of these new expert witness opinions is not required.

### B. Substantially Justified or Harmless?

Factors to be considered in determining whether a violation of Rule 26(a) is substantially justified or harmless include:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (internal citation omitted). Although some of these factors do weigh in favor of Plaintiffs, the Court concludes that, as a whole, Plaintiffs' violation of Rule 26(a) was neither substantially justified nor harmless.

#### 1. Surprise

WMO argues that the late disclosure of Dr. White as a new expert witness and the disclosure of the new expert witness opinions of Dr. White and Dr. Exner,

10

15 months after the deadline for all expert witness discovery, came as a complete surprise, particularly because Plaintiffs did not seek leave of Court to reopen discovery or to submit new Rule 26(a)(2) disclosures. This factor clearly cuts in favor of WMO.

### 2. Ability to Cure Surprise

WMO argues that, because all discovery deadlines have expired, it has no ability to depose Dr. White or Dr. Exner concerning their new expert witness opinions. Likewise, WMO has no opportunity to present any expert witnesses in response. WMO further argues that, because the discovery deadline has expired, it has no ability to redepose lay witnesses Edward Grillot and David Grillot, whose new Declarations are allegedly inconsistent with their earlier deposition testimony.

Plaintiffs point out, however, that these problems are easily remedied. The trial date has not yet been set and trial is likely at least two years away. This leaves plenty of time to reopen discovery if needed. This factor cuts in favor of Plaintiffs.

### 3. Extent of Disruption to Trial

The next factor to be considered is the extent to which trial would be disrupted if the Court were to allow consideration of the newly-disclosed expert witness opinions. On the one hand, because the trial date has not yet been set and there is ample time to conduct additional discovery, the risk of disruption to the trial itself appears to be minimal.

11

Nevertheless, allowing Plaintiffs' belated expert witness testimony to support their new theory of liability would wreak significant havoc in other ways. As discussed above, the Court has already granted summary judgment to WMO as successor-in-interest to Blaylock and IWD based on its finding that the wooden pallets that Blaylock and IWD transported to the South Dayton Dump, and the resulting wood ash, contain no hazardous substances.

Plaintiffs now argue that, even if the raw wood and wood ash contain no hazardous substances, the nails or staples that hold the pallets together do. Plaintiffs further now argue that the pallets may have been treated with preservatives or stained with paint or oil that contained hazardous substances. In addition, they now argue that, to the extent that some of the pallets may have been made of plywood, the adhesive that holds the plywood together contains hazardous substances.

If the Court were to entertain Plaintiffs' belated arguments, there is no doubt that this would call into question the Court's previous ruling granting summary judgment to WMO as successor-in-interest to Blaylock and IWD. Plaintiffs would no doubt file a motion for reconsideration of that decision. The Court rejects Plaintiffs' argument that, because the previous summary judgment decision was limited to the question of whether "raw wood" and "wood ash" constituted hazardous substances, the new expert witness opinions are not necessarily inconsistent with the Court's ruling. As explained above, the Court has already concluded that, based on the evidence presented, no reasonable jury could find

12

that the wooden pallets that Blaylock and IWD transported to the Site constitute hazardous substances. Doc. #1072, PageID#40717. Those pallets, like the ones burned in the ACD, were no doubt held together with nails or staples. A new finding, that the nails and staples holding the wooden pallets together contain hazardous substances, cannot possibly be reconciled with the Court's previous finding that the transportation of the wooden pallets to the South Dayton Dump does not trigger CERCLA liability.

Moreover, as WMO notes, several other remaining Defendants also transported wooden pallets to the South Dayton Dump, or arranged to have them transported there. If the Court allows Plaintiffs to assert their new arguments, these Defendants would likely also need to retain new expert witnesses, and present new expert witness opinions, prompting additional depositions and additional summary judgment motions. The Court is not willing to open that "can of worms."

For these reasons, the Court finds that Plaintiffs' violation of Rule 26(a) cannot be considered harmless. This factor cuts heavily in favor of WMO.

### 4. Importance of Evidence

Plaintiffs argue that this new expert witness testimony is crucial to a decision on the merits. They rely on these new expert witness opinions in support of their argument that genuine issues of material fact preclude summary judgment on the question of WMO's liability as successor-in-interest to Container Services in its capacity as the former owner/operator of the ACD.

13

WMO attacks the admissibility of the new expert witness opinions on several grounds, including Dr. Exner's qualifications and Plaintiffs' failure to comply with Fed. R. Civ. P. 26(a)(2)(B).  WMO argues that these new expert opinions are speculative and entitled to little or no weight.  Putting WMO's objections aside for the time being, the Court agrees with Plaintiffs that the new expert witness opinions are critical to Plaintiffs' ability to defend against WMO's motion.  This factor therefore weighs in favor of Plaintiffs.

### 5. Explanation for Failure to Disclose

The final factor—Plaintiffs' explanation for failure to disclose these expert witness opinions in a timely manner—cuts heavily in favor of WMO.  It should come as no surprise that the wooden pallets are held together with nails or staples.  This has been the subject of lay and expert witness testimony.  As early as 2012, Plaintiffs deposed lay witnesses about nails in the wooden pallets.  Doc. #949, PageID#35244.  Lay witnesses were also deposed concerning plywood brought to the South Dayton Dump. *Id.* at PageID#35269.

In 2017, Plaintiffs' expert witness, Dr. Jurgen Exner referenced a USDA Forest Service Report containing information about the construction of wooden pallets, including the nails and staples, plywood and glue. Doc. #1133-7, PageID#42759.  Nevertheless, Dr. Exner rendered no opinions about the construction of wooden pallets in his report. He opined only about the constituents found in the wood itself and in the wood ash.  At his deposition, Dr. Exner testified

that he had no opinion as to whether the wood was treated or whether the pallets themselves were hazardous substances. Doc. #886, PageID##27310-13.

WMO submitted an expert witness report of Dr. Walter Shields, who opined that neither the wooden pallets nor the wood ash constitutes hazardous waste. Doc. #865-21, PageID##23250-56. He noted that pallets were typically made of untreated wood, and that no regulatory agency has deemed wooden pallets to constitute hazardous materials. *Id.* Shields was deposed by Plaintiffs. The Court relied heavily on Dr. Shields' report in granting summary judgment in favor of Blaylock and IWD. Notably, Plaintiffs submitted no rebuttal expert opinion.

WMO correctly points out that nothing prevented Plaintiffs from retaining a rebuttal expert witness on this topic in a timely manner. Nor was there any excuse for Plaintiffs' failure to argue, in response to the summary judgment motions filed by WMO with respect to Blaylock and IWD, that, even if the raw wood and wood ash contained no hazardous substances, the nails and staples holding the pallets together did contain hazardous substances, and that Blaylock and IWD were therefore subject to CERCLA liability on that basis. The same can be said with respect to adhesives in any plywood skids that may have been transported to the Site. Plaintiffs simply failed to assert these arguments in a timely fashion.

The Court agrees with WMO that Plaintiffs have failed to provide an adequate excuse for their belated response to Dr. Shields' expert witness opinions. The information relied upon in the new expert witness opinions was known and readily available before the expert witness discovery deadlines.

15

Plaintiffs counter that it is disingenuous for WMO to argue that Plaintiffs should have anticipated these arguments.  Plaintiffs note that WMO did not move to dismiss the claims against WMO as successor-in-interest to Container Services, in its capacity as the owner and operator of the ACD, until after the Court rendered its decision on the motions for summary judgment related to Blaylock and IWD.  According to Plaintiffs, if WMO could not anticipate this argument, Plaintiffs should not be faulted for failing to do so either.

As discussed below, Plaintiffs' argument may be relevant to the question of whether WMO should be awarded attorneys' fees and costs incurred in connection with its Rule 37(c) discovery motion.  However, in the Court's view, it carries little weight in connection with the question of whether Plaintiffs' violation of Fed. R. Civ. P. 26(a) was substantially justified or harmless.

Given that all of the relevant facts were known when Plaintiffs responded to WMO's motions for summary judgment concerning Blaylock and IWD, Plaintiffs had ample opportunity to argue that, because the nails and staples holding the wooden pallets together contained hazardous substances, the transportation of wooden pallets to the Site triggers CERCLA liability.  Plaintiffs also had ample opportunity to timely retain an expert witness to rebut Dr. Shields' expert witness report.  Based on the foregoing, the Court concludes that Plaintiffs have failed to adequately explain their failure to timely identify Dr. Marshall White as an expert witness, and to timely disclose the expert witness opinions of Dr. White and Dr. Exner.

16

### 6. Conclusion

For the reasons set forth above, the Court finds that Plaintiffs' violation of Fed. R. Civ. P. 26(a)(2) is neither substantially justified nor harmless. Under the circumstances presented here, Plaintiffs' failure to identify an expert to rebut Dr. Shields' expert witness opinion prior to the deadline established by the Court cannot be deemed substantially justified. Nor can it be deemed harmless. Allowing Plaintiffs to assert this belated theory of liability would call into question the Court's ruling granting summary judgment in favor of WMO as successor-in-interest to Blaylock and IWD, and it would open up a "Pandora's box" of new discovery requests and new expert witness opinions from other Defendants who also transported, or arranged for the transport of, wooden pallets to the South Dayton Dump.

Because Plaintiffs' violation of Rule 26(a) was neither substantially justified nor harmless, Plaintiffs are "not allowed to use that information or witness[es] to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). Although the Court is authorized, under Fed. R. Civ. P. 37(c)(1), to impose a sanction other than exclusion of these new expert witness opinions from trial, the Court finds that no alternative sanction will fully remedy the violation.

Accordingly, the Court SUSTAINS WMO's Rule 37(c) Discovery Motion, Doc. #1139, to the extent it asks for an order excluding Dr. Marshall White, excluding new expert witness opinions of Dr. White and Dr. Exner, and precluding any testimony at trial concerning the new Declarations. Likewise, the Court will

not consider these new expert witness opinions in ruling on WMO's Motion to Dismiss for Failure to State a Claim Against Container Services, Inc. as an Owner or Operator of the Air Curtain Destructor, Doc. #1118, which the Court has converted to a motion for summary judgment.

The Court previously granted WMO's request to stay the filing of its Reply brief pending a decision on the Rule 37(c) Discovery Motion. The Court now lifts that stay and directs WMO to file its Reply brief in support of its Motion to Dismiss within 10 calendar days of the date of this Decision and Entry.

### C. Attorney Fees

Pursuant to Fed. R. Civ. P. 37(c)(1)(A), WMO has also requested that the Court consider ordering Plaintiffs to pay WMO's reasonable attorneys' fees and expenses incurred in preparing the Rule 37(c) Discovery Motion. Although Plaintiffs' violation of Rule 26(a) was not substantially justified or harmless, the Court finds that no such sanction is warranted in this case.

In so holding, the Court gives some credence to Plaintiffs' argument that nothing prevented WMO from filing a timely motion for summary judgment on the question of WMO's liability as a successor-in-interest to Container Services in its capacity as the owner/operator of the ACD. Had WMO filed a motion for summary judgment, arguing that owner/operator liability was not triggered because the wooden pallets that were burned in the ACD contained no hazardous substances, Plaintiffs may not be in the position in which they now find themselves.

Case: 3:13-cv-00115-WHR Doc #: 1169 Filed: 08/31/20 Page: 19 of 19 PAGEID #: 45005

For this reason, the Court OVERRULES WMO's Rule 37(c) Discovery Motion to the extent it asks for payment of WMO's reasonable expenses and attorney fees in preparing the motion.

## IV. Conclusion

For the reasons set forth above, the Court OVERRULES Plaintiffs' Motion for Leave to File Surreply (Doc. #1153).

The Court SUSTAINS IN PART and OVERRULES IN PART Waste Management of Ohio, Inc.'s Rule 37(c) Discovery Motion (Doc. #1139). The Court will exclude from consideration on WMO's Motion to Dismiss, and from trial, all testimony of newly-named expert witness Dr. Marshall White, the new Declarations of Dr. White and Dr. Jurgen Exner, and all testimony concerning those new Declarations. The Court, however, overrules WMO's request for attorneys' fees and expenses incurred in preparing the motion.

WMO shall file its Reply in support of its Motion to Dismiss for Failure to State a Claim Against Container Services, Inc. as an Owner or Operator of the Air Curtain Destructor, within 10 calendar days of the date of this Decision and Entry.

Date: August 31, 2020

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

19