IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,

    Plaintiffs,

v.

DAYTON POWER AND LIGHT COMPANY, et al.,

    Defendants.

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT VALLEY ASPHALT CORPORATION'S MOTION FOR LEAVE TO PRODUCE A NEW EXPERT REPORT (DOC. #1215), DEFENDANT SHERWIN-WILLIAMS COMPANY'S MOTION FOR LEAVE TO IDENTIFY NEW EXPERT WITNESS (DOC. #1218), AND OVERRULING AS MOOT DEFENDANT BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC'S MOTION FOR LEAVE TO DESIGNATE A REPLACEMENT EXPERT AND SUPPLEMENT EXPERT TESTIMONY BASED ON NEWLY PRESENTED EVIDENCE (DOC. #1219)

---

Due to the passage of time, several of the parties' expert witnesses have retired, and those parties are now seeking to replace those retired experts with new, substitute, or supplemental expert witnesses. *See* Docs. ##1215–16, 1218–19. The Court set forth the standard by which new, substitute, or supplemental expert witnesses and/or reports will be permitted on April 25, 2024. Doc. #1260. Many parties subsequently filed responses outling reasons why they should be permitted new, substitute, or supplemental expert witnesses or why other parties should not

be able to retain the same. See Docs. ##1267–70, 1272–76. To this point, the pending motions[1] are now fully briefed and ripe for decision.

For the reasons set forth below, Defendants Valley Asphalt Corporation's Motion for Leave to Produce a New Expert Report, Doc. #1215, is SUSTAINED; Defendant Sherwin-Williams Company's Motion for Leave to Identify New Expert Witness, Doc. 1218, is SUSTAINED; and Defendant Bridgestone Americas Tire Operations, LLC's Motion for Leave to Designate a Replacement Expert and Supplement Expert Testimony Based on Newly Presented Evidence, Doc. #1219, is OVERRULED AS MOOT.

## I. Background and Procedural History

Plaintiffs, Hobart Corporation, Kelsey-Hayes Company and NCR Corporation (collectively "Plaintiffs"), seek contribution from numerous defendants under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f), for response costs incurred at the South Dayton Dump and Landfill Site. Plaintiffs also seek, in the alternative, recovery under a theory of unjust enrichment. Many Defendants filed cross-claims and counterclaims for contribution. These claims have been presented to the Court across seven

---

[1] Plaintiffs filed a Motion for Leave to Serve Reports from New and Substitute Experts. Doc. #1216. This motion remains pending before this Court and a decision will be rendered shortly.

complaints, Docs. ##1, 144, 236, 250, 276, 389 & 636, as well as a third-party complaint, Doc. # 493, and numerous responsive pleadings.

Plaintiffs' claims stem from two settlement agreements they entered into with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC"). These ASAOCs required Plaintiffs to perform certain work at the site, including investigation, testing, and removal of the contamination.

Over the course of these proceedings, Plaintiffs have settled their claims with many Defendants, and the Court has entered summary judgment in favor of several other Defendants. On September 8, 2020, the Court approved a settlement agreement between Plaintiffs and the eight remaining Defendants with respect to response costs incurred in connection with the 2013 Administrative Settlement Agreement and Order on Consent ("ASAOC"), which was limited to vapor intrusion risks at the Site. Doc. #1172. With that agreement completed, the 2013 ASAOC was resolved, leaving only the 2016 ASAOC for adjudication. The Court administratively processed the case until the completion of a feasibility study. Doc. #1188.

In mid-2023, now knowing that the feasibility study would take significantly longer than originally anticipated, Plaintiffs moved for a pretrial conference and a trial setting. Docs. ##1194 & 1205. The Court, construing Plaintiffs' requests as a motion to bifurcate the trial on liability, sustained the motion. Doc. #1206. Subsequently, multiple parties have moved the Court for leave to add new, substituted or supplemental expert witnesses or reports. Docs. ##1215–16, 1218–19. These motions spawned a number of responses, both in opposition and in support. Docs. ##1222–35, 1241–43, 1246, 1249. Pursuant to the extensive briefing, this Court set forth the standard that will guide the determination whether the pending motions would be granted and requested the parties to provide additional briefing. Doc. #1260. The parties filed responses both to the Court's Entry and to the responses of other parties. Docs. ##1267–70, 1272–76. In the interest of organizational clarity, the filings, responses, and objections will be discussed in their respective sections below.

## II.  Standard of Review

"In deciding whether to grant a party's request to substitute a new expert witness after the close of discovery, the Court applies the 'good cause' standard for modifying a scheduling order as set forth in Fed. R. Civ. P. 16(b)(4)." *State Farm Mut. Automotobile Ins. Co. v. Physiomatrix, Inc.*, CA No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184669, at *14 (E.D. Mich. June 16, 2014).

4

> A judge may modify a Rule 16(b) scheduling order for "good cause." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.*

*Moore v. Indus. Maint. Serv. of Tenn.*, 570 F. App'x 569, 577 (6th Cir. 2014). In determining whether a party has demonstrated "good cause" for modifying a scheduling order, "[t]he central question . . . is whether a party acted diligently." *Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017) (citing *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)). When assessing a party's diligence, there are five factors to consider:

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling [of the district court]; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . discovery requests.

*Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011) (omission in original) (quoting *Dowling*, 593 F.3d at 478).

The Court will also determine "whether the change in circumstances leading to the requested substitution was 'unforeseen,'" *Physiomatrix, Inc.*, CA No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184669 at *14, i.e., it was not something that could have been identified and addressed prior to the party's withdrawal of the expert. *See. e.g. Whiteside v. State Farm and Cas. Co.*, No. 11-10091, 2011 U.S. Dist.

5

LEXIS 123978, *3 (E.D. Mich. Oct. 26, 2011) (citations omitted) (listing conflict of interest, illness, and incarceration as unforeseen circumstances justifying substitution). The Court "may also consider the potential prejudice suffered by the opposing party if the scheduling order is modified." *Physiomatrix, Inc.*, CA No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184669 at *15 (citing *Inge*, 281 F.3d at 625).

When dealing with substitute experts, parties must maintain compliance with the mandatory disclosure provisions of Fed. R. Civ. P. 26 to avoid being sanctioned under Fed. R. Civ. P. 37(c)(1). *See, e.g., Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 781–82 (6th Cir. 2003). However, Rule 37(c)(1) "provides several remedies to a district judge" beyond the total exclusion of noncompliant testimony. *See id.* at 783. For example, "in lieu of total exclusion," *see* Fed. R. Civ. P. 37(c)(1), an "equitable solution" would include "refusing to allow [new experts] to testify to matters outside of [the previous expert]'s report . . . [or] deviating from [the previous expert]'s prior conclusions," thus allowing a party "to replace its expert without unfairly surprising [other parties] with unexpected new opinions." *Roberts*, 325 F.3d at 784. Upon appeal, "a district court's decision regarding Rule 37 sanctions [will be reviewed] for abuse of discretion," and a district court abuses its discretion when "(1) [it]'s decision is based on an erroneous conclusion of law; (2) [it]'s findings are clearly erroneous; or (3) [it]'s decision is clearly unreasonable, arbitrary or fanciful." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir. 2002).

Fed. R. Civ. P. 16(b)(4) requires that parties seeking to substitute expert witnesses—functionally a request to modify a scheduling order—must show "good cause" for doing so. *See Physiomatrix, Inc.*, CA No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184669, at *14. The moving party must show the original expert is unavailable due to circumstances that were "unforeseen." *Id.* While there is not an exhaustive or exclusive list of what constitutes an "unforeseen" circumstance, simple retirement is not in and of itself sufficient justification.[2] *See, e.g., Washington v. Jenkins,* No. 10-CV-12233, 2015 WL 5729148, n. 1 (E.D. Mich. Sept. 30, 2015) (showing that expert substitution was allowed for a party's sole expert witness who had retired *and* surrendered their medical license).

This Court's April 25, 2024 Entry set forth the standards that will be used to determine which new, substitute, or supplemental expert witnesses and/or reports should be added, substituted, etc. Doc. #1260. In the Entry, the parties were instructed to set forth how retirement makes the prior experts unavailable to testify at trial. To this end, the parties were required to outline: (1) the nature and scope of the proposed testimony being offered by substitute experts; (2) how the proposed

---

[2] For further examples, *see Whiteside v. State Farm and Cas. Co.*, No. 11-10091, 2011 U.S. Dist. LEXIS 123978, *3 (E.D. Mich. Oct. 26, 2011) (citations omitted) (collecting cases listing conflict of interest, illness, and incarceration as unforeseen circumstances justifying substitution of an expert).

substitute testimony correlates to the testimonies and reports of the experts they are being substituted for; (3) what, if any, proposed deviations the substitute expert's opinion will have from the expert they are replacing, supplementing or adding to; (4) when the party became aware that they would need a substitute expert; and (5) how substitution of the proposed expert witnesses at this stage is not prejudicial to opposing parties. *Id.* at PageID #46283.

### III. Analysis

Having set out the standards this Court will use to determine the present motions, this Court turns to the motions themselves.

#### A. Defendant Valley Asphalt's Motion

Defendant Valley Asphalt Corporation ("Valley Asphalt") filed their Motion for Leave to Produce a New Expert Report on February 16, 2024. Doc. #1215. Defendant Waste Management of Ohio, Inc. ("Waste Management") filed a response on March 18, 2024, which was joined by Defendant Dayton Power and Light Company ("DP&L")[3]. Doc. #1223. After this Court's Entry setting the standards, Valley Asphalt filed a response supporting their motion. Doc. #1267. Plaintiffs then filed a response to Valley Asphalt. Doc. #1276.

---

[3] In early 2021, The Dayton Power and Light Company announced that it would henceforth be known as "AES Ohio." *Dayton Power and Light Company Changes Name to AES Ohio*, AES OHIO, https://www.aes-ohio.com/press-release/dayton-power-and-light-company-changes-name-aes-ohio (Feb. 24, 2021). Notwithstanding this change, this Court will continue to refer to this party as "DP&L," given that the prior name continues to appear on the case caption.

Valley Asphalt seeks to replace the expert who principally drafted their original report, Dr. Ram. Doc. #1215, PageID ##45400–01. In addition to his retirement, Dr. Ram reportedly has significant health issues and his professional certifications have lapsed. Doc. #1267, PageID #46430. Valley Asphalt was made aware of Dr. Ram's retirement shortly after the case became active again, on September 12, 2023, and learned of his health issues on May 4, 2024. *Id.* at PageID ##46433–34.

Valley Asphalt seeks to have Dr. Gerbig substitute for Dr. Ram. *Id.* at PageID #46431. Dr. Gerbig worked with Dr. Ram before the latter's retirement and assisted in writing the report for Valley Asphalt, albeit by drafting a relatively minor section. *Id.* at PageID #46432. According to Valley Asphalt, Dr. Gerbig's involvement with the initial report, as well as the deposition that occurred in October 2018, will restrain his testimony closely to the original opinions offered by Dr. Ram. *Id.* at 46432. Valley Asphalt requests that Dr. Gerbig be permitted to offer his opinions relating to new evidence unavailable when the report was authored or changes in site conditions, as well as to respond or rebut opinions offered by other substitute experts. *Id.*

In their joint response, Waste Management and DP&L request that any new or substitute experts be restricted to opinions which are substantially similar to the opinions of the original experts. Doc. #1223, PageID #45834. Plaintiffs do not oppose Valley Asphalt's request to substitute their expert witness but argue that if

9

.

permitted, Plaintiffs should likewise be allowed to substitute experts. Doc. #1276, PageID #48144.

As expressed by this Court in the Entry setting forth the standards for this issue, Dr. Ram's retirement and the expiration of his credentials alone would not be sufficient to justify substituting an expert witness. Doc. #1260, PageID #46282. However, Dr. Ram's health issues, when added to the retirement and expiration of credentials, persuade this Court that it is appropriate to permit Valley Asphalt to substitute Dr. Gerbig. Moreover, had Dr. Ram been able to testify at trial, he would have been permitted to testify to developments that occurred after the report was authored, about evidence that was unknown at that time, and in rebuttal to testimony offered at trial by other experts. Dr. Gerbig should therefore be permitted to do the same. To be clear, this is not *carte blanche* to permit Dr. Gerbig to testify about all matters. Consistent with the decision in *Roberts*, this Court is restricting him from deviating from Dr. Ram's opinions contained in the report, as well as from consistent opinions based on new evidence, site conditions, or trial testimony, and he must comply with all prior rulings in this case. *See Roberts v. Galen of VA., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003).

For these reasons Valley Asphalt's Motion for Leave to Produce a New Expert Report is SUSTAINED.

### B.     Defendant Sherwin-Williams's Motion

Defendant Sherwin-Williams Company ("Sherwin-Williams") filed their Motion for Leave to Identify New Expert Witness on February 19, 2024. Doc. #1218. Waste Management filed a response on March 18, 2024, which was joined by DP&L. Doc. #1223. After the Entry setting the standards, Sherwin-Williams filed a response supporting their motion. Doc. #1268. Plaintiffs then filed a response to Sherwin-Williams. Doc. #1276.

Unlike other parties in this case, Sherwin-Williams seeks permission from this Court to identify expert witnesses for the first time. Doc. #1218, PageID #45476. Under the now-superseded Second Amended Omnibus Scheduling Order, all parties were to designate their rebuttal expert witnesses by March 20, 2018. Doc. #778. However, three months before that deadline, this Court stayed the adjudication of all claims associated with the 2016 ASAOC. Doc. #816. After that stay, with only the 2013 ASAOC-related claims active, Sherwin-Williams opted to forgo retaining expert witnesses relating to their involvement with the 2013 claims.

When the 2016 ASAOC claims became active once again last year, Sherwin-Williams suddenly found themselves in need of experts witnesses for the first time. They have raised the issue dutifully in all status conferences that have occurred since the reactivation of the case and in their present motion. Plaintiffs do not oppose Sherwin-Williams's request, instead asking only that they receive the ability to

designate expert witnesses as well. Doc. #1276, PageID #48144. The other defendants who have filed responses referencing the request of Sherwin-Williams do not oppose Sherwin-Williams's motion, but seek to distinguish this motion from that of Plaintiffs. *See* Doc. #1223, PageID #45834.

Because Sherwin-Williams has not yet been given a fair opportunity to retain expert witnesses on their own behalf, this Court finds good cause to alter the scheduling order to permit them to do so now. For this reason, Defendant Sherwin-Williams's Motion for Leave to Identify New Expert Witness is SUSTAINED.

### C.  Defendant Bridgestone Americas Tire Operations, LLC's Motion

Defendant Bridgestone Americas Tire Operations, LLC ("Bridgestone") filed a Motion for Leave to Designate a Replacement Expert Witness and to Supplement Expert Testimony Based on Newly Presented Evidence on February 19, 2024. Doc. #1219. Waste Management filed a response on March 18, 2024, which was joined by DP&L. Doc. #1223. Bridgestone filed a reply on April 2, 2024. Doc. #1241.

On August 23, 2024, this Court granted the Joint Motion for Approval of the Settlement Agreement Between Plaintiffs and Bridgestone Americas Tire Operations, LLC. As such, Bridgestone's original motion is OVERRULED AS MOOT.

### IV.  Conclusion

For the reasons set forth above, Defendants Valley Asphalt Corporation's Motion for Leave to Produce a New Expert Report, Doc. #1215, is SUSTAINED;

12

Defendant Sherwin-Williams Company's Motion for Leave to Identify New Expert Witness, Doc. 1218, is SUSTAINED; and Defendant Bridgestone Americas Tire Operations, LLC's Motion for Leave to Designate a Replacement Expert and Supplement Expert Testimony Based on Newly Presented Evidence, Doc. #1219, is OVERRULED AS MOOT. A further Scheduling Conference to adjust the expert discovery deadline made necessary by this Court's opinion and the forthcoming opinion on Plaintiffs' motion, Doc. #1216, will be set by separate entry.

Date: September 3, 2024         *Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE