IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,

    Plaintiffs,

v.

DAYTON POWER AND LIGHT
COMPANY, et al.,

    Defendants.

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS HOBART CORPORATION, ET AL.'S MOTION FOR LEAVE TO SERVE REPORTS FROM NEW AND SUBSTITUTE EXPERTS (DOC. #1216); FURTHER SCHEDULING CONFERENCE CALL SET

---

Due to the passage of time, several of the parties' expert witnesses have retired, and those parties are now seeking to replace those retired experts with new, substitute, or supplemental expert witnesses. *See* Docs. ##1215–16, 1218–19. This Court has previously set forth the standard by which new, substitute, or supplemental expert witnesses and/or reports will be permitted. Doc. #1260. Many parties subsequently filed responses outlining reasons why they should be permitted new, substitute, or supplemental expert witnesses or why other parties should not be able to retain the same. *See* Docs. ##1267–70, 1272–76. This Court has previously ruled on three such motions, Doc. #1291, and now addresses this, the lone remaining motion.

For the reasons set forth below, Plaintiffs Hobart Corporation, et al.'s Motion for Leave to Serve Reports from New and Substitute Experts, Doc. #1216, is SUSTAINED IN PART AND OVERRULED IN PART.

### I. Background and Procedural History

Plaintiffs, Hobart Corporation, Kelsey-Hayes Company and NCR Corporation (collectively "Plaintiffs"), seek contribution from numerous defendants under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f), for response costs incurred at the South Dayton Dump and Landfill Site. Plaintiffs also seek, in the alternative, recovery under a theory of unjust enrichment. Many Defendants filed cross-claims and counterclaims for contribution. These claims have been presented to the Court across seven complaints, Docs. ##1, 144, 236, 250, 276, 389 & 636, as well as a third-party complaint, Doc. # 493, and numerous responsive pleadings.

Plaintiffs' claims stem from two settlement agreements they entered into with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC"). These ASAOCs required Plaintiffs to perform certain work at the site, including investigation, testing, and removal of the contamination.

2

Over the course of these proceedings, Plaintiffs have settled their claims with many Defendants, and the Court has entered summary judgment in favor of several others. On September 8, 2020, the Court approved a settlement agreement between Plaintiffs and the eight remaining Defendants with respect to response costs incurred in connection with the 2013 Administrative Settlement Agreement and Order on Consent ("ASAOC"), which was limited to vapor intrusion risks at the Site. Doc. #1172. With that agreement completed, the 2013 ASAOC was resolved, leaving only the 2016 ASAOC for adjudication. The Court administratively processed the case until the completion of a feasibility study. Doc. #1188.

In mid-2023, now knowing that the feasibility study would take significantly longer than originally anticipated, Plaintiffs moved for a pretrial conference and a trial setting. Docs. ##1194 & 1205. The Court, construing Plaintiffs' requests as a motion to bifurcate the trial on liability, sustained the motion. Doc. #1206. Subsequently, multiple parties have moved the Court for leave to add new, substituted or supplemental expert witnesses or reports. Docs. ##1215–16, 1218–19. These motions spawned a number of responses, both in opposition and in support. Docs. ##1222–35, 1241–43, 1246, 1249. Pursuant to the extensive briefing, this Court set forth the standard that will guide the determination whether the pending motions would be granted and requested the parties to provide additional briefing. Doc. #1260. The parties filed responses both to the Court's Entry and to

the responses of other parties. Docs. ##1267–70, 1272–76. This Court previously ruled on motions filed by Defendants Valley Asphalt Corporation, Doc. #1215, Sherwin-Williams Company, Doc. #1218, and Bridgestone Americas Tire Operations, LLC, Doc. 1219. Doc. #1291. Plaintiffs' motion now remains as the only pending motion relating to expert witnesses.

## II. Standard of Review

"In deciding whether to grant a party's request to substitute a new expert witness after the close of discovery, the Court applies the 'good cause' standard for modifying a scheduling order as set forth in Fed. R. Civ. P. 16(b)(4)." *State Farm Mut. Automotobile Ins. Co. v. Physiomatrix, Inc.*, CA No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184669, at *14 (E.D. Mich. June 16, 2014).

> A judge may modify a Rule 16(b) scheduling order for "good cause." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.*

*Moore v. Indus. Maint. Serv. of Tenn.*, 570 F. App'x 569, 577 (6th Cir. 2014). In determining whether a party has demonstrated "good cause" for modifying a scheduling order, "[t]he central question . . . is whether a party acted diligently." *Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017) (citing

4

*Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)). When assessing a party's diligence, there are five factors to consider:

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling [of the district court]; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . discovery requests.

*Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011) (omission in original) (quoting *Dowling*, 593 F.3d at 478).

The Court will also determine "whether the change in circumstances leading to the requested substitution was 'unforeseen,'" *Physiomatrix, Inc.*, CA No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184669 at *14, i.e., it was not something that could have been identified and addressed prior to the party's withdrawal of the expert. *See. e.g. Whiteside v. State Farm and Cas. Co.*, No. 11-10091, 2011 U.S. Dist. LEXIS 123978, *3 (E.D. Mich. Oct. 26, 2011) (citations omitted) (listing conflict of interest, illness, and incarceration as unforeseen circumstances justifying substitution). The Court "may also consider the potential prejudice suffered by the opposing party if the scheduling order is modified." *Physiomatrix, Inc.*, CA No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184669 at *15 (citing *Inge*, 281 F.3d at 625).

When dealing with substitute experts, parties must maintain compliance with the mandatory disclosure provisions of Fed. R. Civ. P. 26 to avoid being sanctioned under Fed. R. Civ. P. 37(c)(1). *See, e.g., Roberts v. Galen of Va., Inc.*, 325 F.3d

5

776, 781-82 (6th Cir. 2003). However, Rule 37(c)(1) "provides several remedies to a district judge" beyond the total exclusion of noncompliant testimony. *See id.* at 783. For example, "in lieu of total exclusion," *see* Fed. R. Civ. P. 37(c)(1), an "equitable solution" would include "refusing to allow [new experts] to testify to matters outside of [the previous expert]'s report . . . [or] deviating from [the previous expert]'s prior conclusions," thus allowing a party "to replace its expert without unfairly surprising [other parties] with unexpected new opinions." *Roberts*, 325 F.3d at 784. Upon appeal, "a district court's decision regarding Rule 37 sanctions [will be reviewed] for abuse of discretion," and a district court abuses its discretion when "(1) [it]'s decision is based on an erroneous conclusion of law; (2) [it]'s findings are clearly erroneous; or (3) [it]'s decision is clearly unreasonable, arbitrary or fanciful." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir. 2002).

Fed. R. Civ. P. 16(b)(4) requires that parties seeking to substitute expert witnesses—functionally a request to modify a scheduling order—must show "good cause" for doing so. *See Physiomatrix, Inc.*, CA No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184669, at *14. The moving party must show the original expert is unavailable due to circumstances that were "unforeseen." *Id.* While there is not an exhaustive or exclusive list of what constitutes an "unforeseen" circumstance,

6

simple retirement is not in and of itself sufficient justification.[1] *See, e.g., Washington v. Jenkins,* No. 10-CV-12233, 2015 WL 5729148, n. 1 (E.D. Mich. Sept. 30, 2015) (showing that expert substitution was allowed for a party's sole expert witness who had retired *and* surrendered their medical license).

This Court's April 25, 2024, Entry set forth the standards that will be used to determine which new, substitute, or supplemental expert witnesses and/or reports should be added, substituted, etc. Doc. #1260. In the Entry, the parties were instructed to set forth how retirement makes the prior experts unavailable to testify at trial. To this end, the parties were required to outline: (1) the nature and scope of the proposed testimony being offered by substitute experts; (2) how the proposed substitute testimony correlates to the testimonies and reports of the experts they are being substituted for; (3) what, if any, proposed deviations the substitute expert's opinion will have from the expert they are replacing, supplementing or adding to; (4) when the party became aware that they would need a substitute expert; and (5) how substitution of the proposed expert witnesses at this stage is not prejudicial to opposing parties. *Id.* at PageID #46283.

---

[1] For further examples, *see Whiteside v. State Farm and Cas. Co.*, No. 11-10091, 2011 U.S. Dist. LEXIS 123978, *3 (E.D. Mich. Oct. 26, 2011) (citations omitted) (collecting cases listing conflict of interest, illness, and incarceration as unforeseen circumstances justifying substitution of an expert).

### III. Analysis

Plaintiffs filed their Motion for Leave to Serve Reports from New and Substitute Experts on February 19, 2024.[2] Doc. #1216. Defendant Waste Management of Ohio, Inc. ("Waste Management"), filed a response on March 18, 2024, which was joined by Defendant Dayton Power and Light Company ("DP&L")[3]. Doc. #1223. This response was also joined by Defendant Sherwin-Williams Company ("Sherwin-Williams"). Doc. #1228. Responses were separately filed by Defendant Conagra Grocery Products Company ("Conagra"), Doc. #1224; Defendant Pharmacia, LLC ("Pharmacia"), Doc. #1233; and Defendant Cox Media Group Ohio Inc. ("Cox Media"), Doc. #1235. Additionally, DP&L filed their own response. Doc. #1229. Plaintiffs filed a reply in support of their motion. Doc. #1243.

After the Entry setting the standards, Plaintiffs filed a response supporting their motion. Doc. #1270. Objections were filed to Plaintiffs' response by

---

[2] Plaintiffs' initial filing requested that this Court permit them to name and serve reports from new and substitute witnesses. Doc. #1216. In their later filing in response to this Court's Entry, Plaintiffs asked that their other experts be permitted to serve supplemental reports. Doc. #1270. Although this request did not appear in the initial motion, this Court construes the later filing as augmenting their initial request and will consider the supplementation of reports herein.

[3] In early 2021, The Dayton Power and Light Company announced that it would henceforth be known as "AES Ohio." *Dayton Power and Light Company Changes Name to AES Ohio*, AES OHIO, https://www.aes-ohio.com/press-release/dayton-power-and-light-company-changes-name-aes-ohio (Feb. 24, 2021). Notwithstanding this change, this Court will continue to refer to this party as "DP&L," given that the prior name continues to appear on the case caption.

Pharmacia, Doc. #1272; Waste Management, Doc. #1273; DP&L, Doc. #1274; and Conagra, Doc. #1275.

In their original motion, Plaintiffs sought to name a total of three substitute experts and one new expert. Doc. #1216, PageID #45405. Specifically, Plaintiffs ask this Court to permit them to name Dr. Jeffrey Dagdigian and Dr. David Stradling as substitutes for Dr. Jurgen Exner who has retired and Ms. Marcia Williams as a substitute for Mr. Leo Mullin who has retired. *Id.* Additionally, Plaintiffs propose to name a new expert, Dr. Marshall White,[4] "who will opine on the hazardous substance content, components, construction, use and fate of wooden pallets during the period when the South Dayton Dump and Landfill (SDDL) was operational." *Id.*

Plaintiffs' requests were clarified further following this Court's Entry setting the standards for replacement or addition of experts. In their response, Plaintiffs again reiterated their desire to introduce Dr. Dagdigian, Dr. Stradling, and Ms. Williams as replacement experts; Dr. Marshall White as a new expert; but for the first time asked to permit their experts Mr. Dovell, Mr. Quigley, Mr. Smith, and Mr. Richard White to supplement their earlier reports with updated information. Doc. #1270.

---

[4] Plaintiffs seek to file a supplemental report from Mr. Richard Lane White and file a new expert report from Dr. Marshall White. In pursuit of preventing confusion, all references to either Mr. Richard White or Dr. Marshall White will include their first names.

### A.   Dr. Marshall White's New Expert Report

Plaintiffs seek to serve a new expert report from Dr. Marshall White. Doc. #1270, PageID #46651–52. This proposed new expert report would involve Dr. Marshall White's opinions on hazardous substances contained within wood pallets disposed of at the site. *Id.*

Defendants strongly oppose this addition, arguing that this Court's prior rejection of Dr. Marshall White in 2020 caused parties to be dismissed and witnesses to be released such that reversing course now would create havoc in the case. *See* Doc. #1223, PageID #45837 ("It is the law of the case that Dr. [Marshall] White and his opinions are excluded from this matter, and nothing has changed in this matter since that decision."); *see also* Doc. #1224, PageID #45842; Doc. #1273, PageID #47721; Doc. #1274, PageID #47759; Doc. #1275, PageID ##48135–36.

This is not the first time that Plaintiffs have attempted to introduce Dr. Marshall White as an expert witness in this case. Dr. Marshall White's first involvement with the case appeared in Plaintiffs' Response in Opposition to Waste Management's Motion for Summary Judgment for Container Services, Inc. Doc. #1133. In this response, Plaintiffs attempted to use an attached Declaration by Dr. Marshall White to rebut Waste Management's arguments concerning the absence of hazardous waste at the site resulting from the burning of pallets. *Id.* at PageID #42716–17.

10

In response to Plaintiffs' introduction of Dr. Marshall White, Waste Management moved to exclude his declaration and testimony pursuant to Fed. R. Civ. P. 37(c)(1). Doc. #1139, PageID #42956–58. This Court granted Waste Management's request and excluded Dr. Marshall White and precluded any of this testimony at trial. Doc. #1169, PageID #45003. Based upon this decision, and the resulting absence of evidence connecting hazardous substances with the burning of the pallets, this Court found that there was no genuine issue of material fact as to the liability of Container Services, Inc. Doc. #1177, PageID ##45097–98. This Court, therefore, granted summary judgment in favor of Container Services, Inc., as an Owner or Operator of the Air Curtain Destructor and dismissed it from the case. *Id.* at PageID #45098.

Plaintiffs now attempt to reintroduce Dr. Marshall White and state that his testimony will "generally track" his declaration first used in their opposition to summary judgment in 2020. Doc. #1270, PageID #46651 ("His Declaration was filed on the docket in this case on January 15, 2020 as Doc. #1133-4"). However, this Court has previously rejected this very testimony. *See* Doc. #1169, PageID #45003 ("the Court SUSTAINS [Waste Management]'s Rule 37(c) Discovery Motion, Doc. #1139, to the extent it asks for an order excluding Dr. Marshall White, excluding new expert witness opinions of Dr. White and Dr. Exner, and precluding any testimony at trial concerning the new Declarations."). In so doing, this Court

ruled that the lack of expert testimony concerning whether the burning of pallets results in a "disposal" of hazardous material under CERCLA justified the dismissal of Container Services. Doc. #1177, PageID # 45097-98.

To change course now and permit Dr. Marshall White to offer expert reports regarding the burning of pallets would be to permit Plaintiffs to relitigate an issue already determined and one which resulted in a dismissed Defendant. Moreover, such a decision would also prejudice the remaining Defendants as they would now be required to locate witnesses already released in reliance on this Court's earlier decision. Therefore, this Court OVERRULES Plaintiff's Motion with regard to the proposed new expert, Dr. Marshall White.

### B. Substitution of Experts for Dr. Exner and Mr. Mullin

Plaintiffs represent that Dr. Exner and Mr. Mullin are retired and live outside of the subpoena power of the Court and therefore are unavailable as witnesses going forward. Doc. #1270, PageID ##46637, 41. In substitution, Plaintiffs intend to introduce Dr. Dagdigian who will stand in for Dr. Exner's technical knowledge of the dispute. *Id.* at PageID # 46638. Additionally, Plaintiffs represent that Dr. Exner's historical knowledge relating to the operations of the facilities will be replaced by testimony of Dr. Stradling. *Id.* Furthermore, Plaintiffs state that Ms. Williams will be able to testify to items previously included in reports submitted by Mr. Mullin. *Id.* at PageID #46641.

Defendant Waste Management objects to the proposed substitution, believing that the introduction of reports and the recorded deposition of both retired experts should suffice. Doc. #1273, PageID #47715. Waste Management also asks that, if the Court grants permission to use substitute experts, that the new experts be limited to substantially similar opinions as the opinions in the original reports and depositions. *Id.* at PageID #47720. Moreover, they request that any expert substituted for Dr. Exner be barred from testifying about previously excluded opinions regarding pallets. *Id.* Defendants DP&L and Conagra also object to Plaintiffs request on the basis that the reports and deposition testimony on file from Dr. Exner and Mr. Mullin are sufficient. Doc. #1274, PageID ##47758-59; Doc. #1275, PageID #48139.

This Court recently released a decision and entry relating to other requests to substitute experts. Doc. #1291. Specifically, the Court granted Valley Asphalt permission to retain a substitute expert for one who had retired. In so doing, this Court restricted the substitute expert's testimony consistent with the Sixth Circuit's decision in *Roberts*. *Roberts v. Galen of VA., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003).[5]

---

[5] In *Roberts*, the district court permitted a substitute expert but instructed both parties that the substitute would not be permitted to testify differently than the original expert's report. *Roberts v. Galen of VA., Inc.*, 325 F.3d 776, 783 (6th Cir. 2003). the Sixth Circuit approved of this type of restriction put in place:

A similar approach is called for here. This Court will allow Plaintiffs to substitute Dr. Dagdigian, Dr. Stradling, and Ms. Williams for Dr. Exner and Mr. Mullin, but will provide similar guardrails. These three substitute witnesses are restricted from deviating from the opinions contained in Dr. Exner's and Mr. Mullin's reports, as well as from consistent opinions based on new evidence, site conditions, or trial testimony, and they must comply with all prior rulings in this case. This includes, but is not limited to, this Court's prior rulings regarding the disposal of pallets at the site. Plaintiffs' motion is SUSTAINED, to this extent, as to the substitute experts.

### C. Supplemental Reports from Existing Experts

Plaintiffs also seek to have four of their experts serve supplemental expert reports because of the time that has passed since the original reports were submitted. *Id.* at PageID #46643-51. Specifically, these include potential supplemental reports from Mr. Dovell, Mr. Quigley, Mr. Smith, and Mr. Richard White. *Id.*

---

By refusing to allow [substitute expert] to testify to matters outside of [original expert]'s report, the district judge prevented [the moving party] from deviating from [original expert]'s prior conclusions. This sensible compromise allowed [the moving party] to replace its expert without unfairly surprising [the non-moving party] with unexpected new opinions. This solution was an equitable one, consonant with both the text and logic of Rule 37(c)(1) [of the Federal Rules of Civil Procedure].

*Id.* at 784.

14

Waste Management believes that this Court need not weigh in on this request because all parties are expected to supplement their expert reports under Rule 26(e). *See* Fed. R. Civ. P. (26)(e). This Rule requires parties to supplement an expert report prior to the deadline for pretrial disclosures when the party learns that the disclosure is "incomplete or incorrect" in some material respect. This has been interpreted as being limited to "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *In re Davol, Inc./C.R. Bard, Inc, Polypropylene Hernia Mesh Prods. Liab. Litig.*, No. 2:18-md-2846, 2020 WL 1154809, at *4 (S.D. Ohio Mar. 10, 2020).

The purpose of a supplemental report during discovery is to inform the opposing party of any changes or alterations, not to provide an extension of the deadline by which a party must deliver its expert information. Therefore, courts will not permit an alleged "supplementation" made under Rule 26(e) if it appears to truly be an impermissible revision of the earlier report. *McNamee v. Nationstar Mortgage LLC*, No. 2:14-cv-1948, 2021 WL 4355549, at *5 (S.D. Ohio Sept. 24, 2021).

Here, Plaintiffs represent that all four of the supplemental reports will focus on developments that have occurred since their original reports were filed. According to Plaintiffs: Mr. Dovell's supplemental report will provide updates on cost allocation, Doc. #1270, PageID #46643–44; Mr. Quigley's supplemental report will provide updated estimates for costs in light of the final 2013 ASAOC, and the costs

for the RI/FS, *id.* at 46645–46; Mr. Smith's supplemental report will be updated after review of a number of materials which did not yet exist when he authored his original report, *id.* at PageID #46646–49; and Mr. Richard White's supplemental report will include an updated allocation to account for settled and dismissed parties, *id.* at 46649–51.

It appears to this Court, therefore, that these supplemental reports will be wholly focused on updating prior reports. Moreover, it appears that these updates are necessary due to new information in the years since the inception of the reports, not due to a desire to rewrite or correct the conclusions originally reached. For that reason, it appears that these supplementations fall squarely within the contemplation of Rule 26(e) and the requirements stated therein. Furthermore, because the permission of this Court is not required to effect a standard supplementation under Rule 26(e), the portion of Plaintiffs' motion seeking leave to do so is OVERRULED AS MOOT.

## IV. Conclusion

For the reasons set forth above, Plaintiffs Hobart Corporation, et al.'s Motion for Leave to serve Reports from New and Substitute Experts, Doc. #1216, is SUSTAINED IN PART AND OVERRULED IN PART. Specifically, Plaintiffs' request to add Dr. Marshall White is OVERRULED; Plaintiffs' request to substitute Dr. Dagdigian, Dr. Stradling, and Ms. Williams is SUSTAINED; and Plaintiffs' request to

16

file supplemental reports from Mr. Dovell, Mr. Quigley, MR. Smith, and Mr. Richard White is OVERRULED AS MOOT.

A further Scheduling Conference to adjust the expert discovery deadline made necessary by this Court's recent opinions will be convened on October 17, 2024, beginning at 1:00 PM. In advance of this call, counsel must confer to discuss a discovery schedule as ordered herein. Such must be filed with this Court prior to the conference call.

Date: September 24, 2024                *Walter H. Rice*

                                                  WALTER H. RICE
                                                  UNITED STATES DISTRICT JUDGE