IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,    :

     Plaintiffs,

   v.                   :      Case No. 3:13-cv-115

DAYTON POWER AND LIGHT           JUDGE WALTER H. RICE
COMPANY, et al.,
                       :

     Defendants.

---

DECISION AND ENTRY OVERRULING PLAINTIFFS HOBART CORPORATION, ET AL.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CONAGRA'S SUCCESSORSHIP TO MCCALL CORPORATION

---

This case is before the Court on Plaintiffs Hobart Corporation, et al.'s ("Plaintiffs"), Motion for Partial Summary Judgment on ConAgra's Successorship to McCall Corporation. Doc. #1311. Defendant ConAgra Grocery Products Company ("ConAgra) filed a memorandum in opposition, Doc. #1318, and Plaintiffs filed a reply, Doc. #1323. After seeking leave of Court, ConAgra filed a sur-reply to the motion. Doc. #1329. This issue is now ripe for review and for the reasons stated below, Plaintiffs' motion is OVERRULED.

## I.   Background and Procedural History

Plaintiffs seek contribution from numerous defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980

("CERCLA"), 42 U.S.C. § 9613(f), for response costs incurred at the South Dayton Dump and Landfill Site ("SDD" or "site"). Plaintiffs also seek, in the alternative, recovery under a theory of unjust enrichment. Many Defendants filed crossclaims and counterclaims for contribution. These claims have been presented to the Court across seven complaints, Docs. #1, 144, 236, 250, 276, 389, & 636, as well as a third-party complaint, Doc. # 493, and numerous responsive pleadings.

Plaintiffs' claims stem from two settlement agreements they entered into with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC"). These ASAOCs required Plaintiffs to perform certain work at the site, including investigation, testing, and removal of the contamination.

Over the course of these proceedings, several Defendants have been dismissed either due to settlements or summary judgment. On September 8, 2020, the Court approved a settlement agreement between Plaintiffs and the eight remaining Defendants with respect to response costs incurred in connection with the 2013 ASAOC, which was limited to vapor intrusion risks at the Site. Doc. #1172. With that agreement completed, the 2013 ASAOC was resolved, leaving only the

2

2016 ASAOC for adjudication. The Court administratively processed the case until the completion of a feasibility study. Doc. #1188.

In mid-2023, now knowing that the feasibility study would take significantly longer than originally anticipated, Plaintiffs moved for a pretrial conference and a trial setting. Docs. #1194 & 1205. The Court, construing Plaintiffs' requests as a motion to bifurcate the trial on liability, sustained the motion. Doc. #1206. With the Court's permission, Plaintiffs filed this motion seeking partial summary judgment against ConAgra.

## II. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; see also *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241,

1245 (6th Cir. 1995); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the

4

factfinder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, a court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. Analysis

The motion before the Court concerns ConAgra's successorship to McCall Corporation. McCall Corporation ("Old McCall") was originally incorporated in 1913 and operated a large printing facility in Dayton, Ohio. In 1968, Old McCall entered into an agreement with two other corporations, Hunt Foods and Canada Dry, to create a new entity, Norton Simon, Inc. ("Norton Simon"). The merger agreement specified that Old McCall was to create a new subsidiary, Newcallmac Corporation ("New McCall"), and transfer all assets and liabilities to New McCall. Once Old McCall merged with Hunt Foods and Canada Dry and became Norton Simon, New McCall retitled itself, taking back the now-vacant "McCall Corporation" name.

In 1993, Norton Simon merged with Beatrice U.S. Food Corp., becoming Beatrice Company. This new company promptly merged with Hunt-Wesson, Inc.,

with the resulting company continuing under the name Hunt-Wesson, Inc. In 1999, Hunt-Wesson, Inc., changed its name to ConAgra Grocery Products Company, and in 2005, this new company reorganized into their present form, becoming Defendant ConAgra Grocery Products Company, LLC.

Plaintiffs' motion asks for a ruling "on their allegation that [ConAgra] is the successor to the McCall Corporation." Doc. #1311, PageID #49175. Plaintiffs clarify in a footnote that "'McCall Corporation' refers to the single entity incorporated in 1913 that existed prior to the series of transactions resulting in the creation of Norton Simon, Inc. in 1968," and does not refer to New McCall nor does it refer to Norton Simon which contained the remnants of Old McCall. *Id.* ConAgra does not dispute that Old McCall become a part of their present-day entity but argues that Old McCall's liabilities were successfully transferred as part of the 1968 merger. Doc. #1308, PageID #48467.

Plaintiffs seek a finding that ConAgra's successorship includes the liabilities, particularly the CERCLA liability, that Old McCall incurred prior to 1968. Doc. #1311, PageID #49179. While making this request, Plaintiffs predict two arguments they expect ConAgra to make in opposition: (1) Old McCall successfully discharged all CERCLA liability to New McCall, a non-party in this case, before forming Norton Simon and (2) New McCall's asset sale to the Charter Company in 1975 did not remove Old McCall's CERCLA liability. *Id.* at PageID #49179–83.

6

ConAgra argues three points in response: (1) ConAgra is not liable for any actions taken by New McCall; (2) New McCall successfully and exclusively assumed all liabilities incurred by Old McCall prior to the 1968 merger; and (3) Norton Simon was not subject to the Charter Company asset sale in 1975 and was therefore unaffected by the action. Doc. #1318, PageID #49972–78. The Court notes that ConAgra's first argument regarding their liability for actions taken by New McCall is the subject of ConAgra's pending Motion for Partial Summary Judgment. Doc. #1308. As briefing has not yet concluded on that motion, the Court declines to address these arguments at this time.

**A.    Old McCall's Ability to Discharge CERCLA Liability Prior to 1980**

Plaintiffs argue that, under CERCLA, Old McCall could not have discharged their liability to New McCall in 1968. Doc. #1311, PageID #49181. As support, they point to a relevant subsection in the statutory text of CERCLA and refer to a prior decision in this case on a similar issue. *Id.* In response, ConAgra asserts that Sixth Circuit precedent recognizes the permissibility of a pre-CERCLA discharge of their liability. Doc. #1318, PageID 49976–77.

Passed in 1980, CERCLA provides helpful instructions on how parties may alter their liability via contract:

> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the

7

> liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1). Almost two decades later, the Sixth Circuit was faced with a case involving a party who purported to shift their CERCLA liability in an agreement that predated CERCLA. *White Consol. Indus., Inc. v. Westinghouse Elec. Corp.*, 179 F.3d 403, 410 (6th Cir. 1999). In that case, the appellant argued that the liability assumption clause in the agreement was inapplicable to CERCLA liabilities. However, the court disagreed and permitted the pre-CERCLA shift, finding that the clause was operative. Notably, this decision did not address nor even mention the text of subsection (e)(1).

A similar, but distinguishable, issue came before this Court several years ago. Depending in large part upon *White Consol. Indus.*, a motion was brought by Defendant Waste Management of Ohio ("Waste Management") seeking summary judgment based on a theory that they had successfully transferred their liability in 1984. *See* Doc. #1071 (published as *Hobart Corp. v. Dayton Power & Light Co.*, 407 F. Supp.3d 732 (S.D. Ohio 2019)). Recognizing that the *White Consol. Indus.* did not address subsection (e)(1) and that the plain text of the subsection dictated a different result, this Court stated that *White Consol. Indus.* did not control. Doc. #1071, PageID #40695–96. As a result, Defendant Waste was found to be liable, despite an earlier attempt to divest liability.

8

As stated, this Court's prior decision is distinguishable in that it sought to determine the legal effect of a liability discharge that occurred *after* the passage of CERCLA, where *White Consol. Indus.* involved consideration of a discharge agreement predating CERCLA. While it is commonly recognized that "Congress intended CERCLA to function retroactively," this has always been interpreted to refer to the environmental damage at the heart of CERCLA. *Franklin Cnty. Convention Facs. Auth. V. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 552 (6th Cir. 2001). This Court has been unable to find any documented case in this district or elsewhere where a pre-CERCLA shift in liability was barred by subsection (e)(1). Moreover, the view that subsection (e)(1) is not retroactive explains the Sixth Circuit's failure to address that subsection in *White Consol. Indus.*

Plaintiffs' cited cases support this understanding of subsection (e)(1). In *Chrysler Corp.*, the district court recognized that a pre-CERCLA shift was legally possible, but ultimately found that the parties had failed to agree to such a shift. *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1110 (E.D. Mich. 1997). Similarly, the district court in *NCR Corp.*, found that an agreement to assume CERCLA liability would be enforceable, but the clauses at issue in that case were insufficient to show mutual assent to do so. *United States v. NCR Corp.*, 840 F. Supp.2d 1093, 1104–05 (E.D. Wis. 2011). Finally, Plaintiffs add one additional case in their reply brief, *Wiegmann & Rose Intern. Corp. v. NL Indus.*, which is

unpersuasive as it involves a 1981 agreement and does nothing to show whether subsection (e)(1) applies to pre-CERCLA agreements. 735 F. Supp. 957, 960 (N.D. Cal. 1990).

**B.    Old McCall's Discharge of Liability in this Case**

Plaintiffs argue in their motion that, even if the law permitted Old McCall to discharge their CERCLA liability, their failure to follow through on that action justifies summary judgment. Doc. #1311, PageID #49181. ConAgra rebuts this argument by pointing to evidence that the discharge did occur, specifically citing a deposition of Kenneth Anderson. Doc. #1329, PageID #50508–16.

Mr. Anderson testified about the 1968 merger. At times he answered without qualification that Old McCall transferred all their assets and all their liabilities to New McCall prior to the merger. At other times, he gave similar answers based on a reading of the merger agreement which called for Old McCall to take such an action. As a result, the Court cannot say with any certainty whether Mr. Anderson's testimony is based on his own knowledge, or what he assumes occurred from the requirements of the merger agreement. This basis of knowledge would likely affect his credibility to a factfinder in this case and therefore could affect a determination of whether the liability discharge occurred.

Plaintiffs retain the burden to show that "that there is no genuine dispute as to any material fact" Fed. R. Civ. P. 56(a). Because Mr. Anderson's testimony is

unclear regarding whether the discharge occurred and whether it was in the form of a transfer, assumption, or indemnity agreement, an issue of material fact remains.

### C.    New McCall's Asset Sale to the Charter Company

Plaintiffs' motion also preemptively argues that, assuming Old McCall retained CERCLA liability after the 1968 merger, the 1975 sale of New McCall's assets to the Charter Company did not divest Old McCall of CERCLA liability. Doc. #1311, PageID #49182–83. ConAgra's response agrees with the basis of Plaintiff's argument: that New McCall's 1975 asset sale did not involve their predecessor, Norton Simon, and therefore did not affect their liabilities. Doc. #1318, PageID #49978. Given the agreement on that issue, the Court need not go further and attempt to analyze the effect of the asset sale on New McCall and the Charter Company, neither of which are parties to this case.

## IV.    Conclusion

Plaintiffs have failed to show the absence of genuine dispute as to whether Old McCall successfully divested itself of CERCLA liability prior to the 1968 merger. For that reason, Plaintiffs' Motion for Partial Summary Judgment, Doc. #1311, is OVERRULED.

Date: April 15, 2025

WALTER H. RICE
UNITED STATES DISTRICT JUDGE