IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,   :

      Plaintiffs,

  v.             :     Case No. 3:13-cv-115

DAYTON POWER AND LIGHT      JUDGE WALTER H. RICE
COMPANY, et al.,

      Defendants.    :

---

DECISION AND ENTRY OVERRULING CONAGRA'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DOC. #1308; SUSTAINING PLAINTIFFS' MOTION TO CLARIFY ISSUES FOR TRIAL, DOC. #1348; SUSTAINING IN PART AND OVERRULING IN PART WASTE MANAGEMENT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DR. DAGDIGIAN AND DR. STRADLING AND STRIKE THEIR REPORTS, DOC. #1347; SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DR. RAUSCHENBERGER, DOC. #1359; AND OVERRULING PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DR. HAGEN, DOC. #1383.

---

This case is before the Court on several pending motions. First is a Motion for Partial Summary Judgment filed by Defendant ConAgra Grocery Products Company, LLC ("ConAgra"). Doc. #1308. Plaintiffs Hobart Corporation, et al.'s ("Plaintiffs"), filed a response in opposition, Doc. #1360, and ConAgra filed a reply in support of its motion. Doc. #1377.

Second, Plaintiffs filed a Motion to Clarify Issues for Trial. Doc. #1348. ConAgra filed a response to Plaintiffs' motion, Doc. #1356, and Plaintiffs filed a reply in support of their motion. Doc. #1358.

Third, Defendant Waste Management of Ohio, Inc. ("Waste Management") filed a Motion in Limine and Motion to Strike and Exclude portions of Plaintiffs' Replacement Expert Reports for Failure to Comply with Court orders. Doc. #1347. Plaintiffs filed a response in opposition, Doc. #1349, and Waste Management filed a reply in support of its motion. Doc. #1361.

Fourth, Plaintiffs filed a Motion in Limine to Exclude Testimony of Robert Rauschenberger, Ph.D. Doc. #1359. Defendant Sherwin-Williams ("Sherwin-Williams") filed a response in opposition to Plaintiffs' motion, Doc. #1382, and Plaintiffs filed a reply in support of their motion. Doc. #1384.

Fifth, Plaintiffs filed a Motion in Limine to Exclude Testimony of David J. Hagen. Doc. #1383. ConAgra filed a response in opposition to Plaintiffs' motion, Doc. #1385, and Plaintiffs filed a reply in support of their motion. Doc. #1387.

All five of these motions are fully briefed and ripe for review. For the reasons contained herein, ConAgra's Motion for Partial Summary Judgment, Doc. #1308, is OVERRULED; Plaintiffs' Motion to Clarify Issues for Trial, Doc. #1348, is SUSTAINED; Waste Management's Motion in Limine to Exclude Testimony of Dr. Dagdigian and Dr. Stradling and Strike Their Reports, Doc. #1347, is SUSTAINED IN

2

PART and OVERRULED IN PART; Plaintiffs' Motion in Limine to Exclude Testimony of Dr. Rauschenberger, Doc. #1359, is SUSTAINED IN PART and OVERRULED IN PART; and Plaintiffs' Motion in Limine to Exclude Testimony of Dr. Hagen, Doc. #1383, is OVERRULED.

## I.    Procedural and Factual Background

Plaintiffs seek contribution from numerous defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f), for response costs incurred at the South Dayton Dump and Landfill Site ("SDD" or "site"). Plaintiffs also seek, in the alternative, recovery under a theory of unjust enrichment. Many Defendants filed crossclaims and counterclaims for contribution. These claims have been presented to the Court across seven complaints, Docs. #1, 144, 236, 250, 276, 389, & 636, as well as a third-party complaint, Doc. # 493, and numerous responsive pleadings.

Plaintiffs' claims stem from two settlement agreements they entered into with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC"). These ASAOCs required Plaintiffs to perform

3

certain work at the site, including investigation, testing, and removal of the contamination.

Over the course of these proceedings, several Defendants have been dismissed either due to settlements or summary judgment. On September 8, 2020, the Court approved a settlement agreement between Plaintiffs and the eight remaining Defendants with respect to response costs incurred in connection with the 2013 ASAOC, which was limited to vapor intrusion risks at the Site. Doc. #1172. With that agreement completed, the 2013 ASAOC was resolved, leaving only the 2016 ASAOC for adjudication. The Court administratively processed the case until the completion of a feasibility study. Doc. #1188.

In mid-2023, now knowing that the feasibility study would take significantly longer than originally anticipated, Plaintiffs moved for a pretrial conference and a trial setting. Docs. #1194 & 1205. The Court, construing Plaintiffs' requests as a motion to bifurcate the trial on liability, sustained the motion. Doc. #1206.

## II. Legal Standard

### A. Summary judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial

responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

5

matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, a court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

**B.    Motions in Limine**

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorizes the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course

of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Also, pretrial orders often save the parties time and costs in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus.*, Inc., 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp.2d at 846; *Koch*, 2 F. Supp.2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp.2d at 846.

## III. Analysis

### A. ConAgra's Motion for Partial Summary Judgment (Doc. #1308)

The Court turns first to ConAgra's Motion for Partial Summary Judgment. ConAgra's motion seeks a finding that it is not liable for any alleged actions of New McCall. Doc. #1308, PageID #48469. It bases that request on the idea that when New McCall was created, it existed as a subsidiary of Old McCall. As Old McCall merged into Norton Simon, New McCall became a subsidiary of Norton Simon until New McCall was eventually dissolved in 1988.

Under general principles of corporate liability, which CERCLA does nothing to displace, a parent entity is liable for the actions of a subsidiary only when the corporate veil may be pierced or when the parent entity has direct liability stemming from its own actions. *United States v. Bestfoods*, 524 U.S. 51, 61–62, 64 (1998). ConAgra, in its Motion for Summary Judgment, argues that Plaintiffs have waived the right to advocate in favor of piercing the corporate veil by not presenting evidence justifying such an action. Doc. #1308, PageID #48481–88. Instead of responding to this argument, Plaintiffs state in a footnote that they "reserve the right" to argue later that the Court should pierce the corporate veil. Doc. #1360, PageID #51322 n.3. However, when a party seeks summary judgment on an issue, like piercing the corporate veil, the opposing party cannot merely "reserve the right" to argue their position later in the litigation, they must present evidence that

8

creates an issue of material fact on the question. *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). By not presenting such evidence here, Plaintiffs have forfeited the right to later argue in favor of piercing the corporate veil.

However, Plaintiffs do argue that, between 1968 and 1975, Norton Simon directly controlled New McCall's printing and publishing operations in Dayton, arranging for the disposal of hazardous waste at the SDD. Doc. #1360, PageID #51312. This argument depends on the precise organization of the various corporate entities between 1968 and 1975.

As Plaintiffs offer the evidence, following the 1968 reorganization, Norton Simon decided to divide "former McCall" into four divisions, of which two—the McCall Printing Company and the McCall Publishing Company—are relevant to this case. They posit that these divisions were directly controlled and operated by Norton Simon, not by New McCall. As evidence, they point to several annual reports which connect the new divisions with Norton Simon without making mention of New McCall, and which also show that the presidents of each respective division were listed as "Principal Operating Officers" of Norton Simon. Doc. #1360, PageID #51316–17.

In 1971, a fire broke out at a warehouse, destroying a large quantity of paper owned by McCall Publishing. Doc. #1360, PageID #51317. The subsequent insurance

9

claim and bench trial focused on the ability of Norton Simon and McCall Publishing to recover, without bringing any attention to New McCall. New McCall sold its assets in 1975 to the Charter Company, including McCall Printing Company and McCall Publishing Company. Plaintiffs present two contemporaneous news articles to support their argument that when the companies were sold, they were under the direction of Norton Simon, not New McCall. Doc. #1360, PageID #51314–15.

Both parties agree that the four divisions of McCall were divisions, not separate corporate entities. ConAgra diverges from Plaintiffs by arguing that they were still parts of the New McCall corporate structure. Under this view, the various divisions were referred to as if referring to New McCall itself, making it unsurprising that New McCall was not *also* mentioned when McCall Publishing or McCall Printing was referenced.

According to ConAgra, when the fire occurred in 1971, Norton Simon carried liability insurance on behalf of itself and many of its subsidiaries, including McCall Printing and McCall Publishing.[1] Doc. #1377-2, PageID #52350–51. In 1975, when the assets were sold to the Charter Company, the Assets Purchase Agreement shows

---

[1] ConAgra attached a 1973 insurance document, from two years after the fire. Doc. #1377-2, PageID #52350–51. This document lists many subsidiaries of Norton Simon, seemingly grouped under difference corporate entities, though this is not made clear by the document itself. Noticeably, the McCall Publishing Company is aligned to the left edge, as is McCall Corporation. The McCall Printing Company is indented and placed under the McCall Corporation. *Id.*

that New McCall owned the McCall Printing Company. Doc. #1377, PageID #52343–44.

On the question of whether Norton Simon or New McCall directed the actions of McCall Publishing and McCall Printing, there is support for both arguments. On one hand, public facing information like the annual reports or the news article regarding the 1975 sale appear to indicate that Norton Simon directs the McCall divisions. Yet, on the other hand, the paperwork executed as part of the 1975 Assets Purchase Agreement specifies that New McCall is the entity that is selling the divisions to the Charter Company.

For ConAgra to be successful in its motion for Partial Summary Judgment, it must show that no reasonable jury could find that Norton Simon was directly controlling the actions of McCall Publishing and McCall Printing. There is strong evidence for its arguments, and may be a meritorious position at trial, but the Court cannot say that *no* reasonable jury would find for Plaintiffs on this issue. While the Assets Purchase Agreement states that New McCall was the owner of these assets, Plaintiffs' arguments that New McCall was owner in name only, and that Norton Simon was responsible for the direction of the divisions is believable. For this reason, an issue of material fact remains regarding Norton Simon's direct control of McCall Printing and McCall Publishing and ConAgra's motion is OVERRULED.

**B.    Plaintiffs' Motion to Clarify Issues for Trial (Doc. #1348)**

In a motion filed on May 5, 2025, Plaintiffs ask the Court to provide clarification on "whether, as a matter of law, CERCLA § 107(e) applies retroactively to agreements entered into by persons liable under 107(a) prior to CERCLA's enactment on December 11, 1980." Doc. #1348, PageID #51098. Plaintiffs filed this motion following the Court's decision dated April 15, 2025, which overruled their motion for partial summary judgment regarding ConAgra's successorship to McCall Corporation. Doc. #1346.

McCall Corporation ("Old McCall") was originally incorporated in 1913 and operated a large printing facility in Dayton, Ohio. In 1968, Old McCall entered into an agreement with two other corporations, Hunt Foods and Canada Dry, to create a new entity, Norton Simon, Inc. ("Norton Simon"). The merger agreement specified that Old McCall was to create a new subsidiary, Newcallmac Corporation ("New McCall"), and transfer all assets and liabilities to New McCall. Once Old McCall merged with Hunt Foods and Canada Dry and became Norton Simon, New McCall retitled itself, taking back the now-vacant "McCall Corporation" name.

In 1993, Norton Simon merged with Beatrice U.S. Food Corp., becoming Beatrice Company. This new company promptly merged with Hunt-Wesson, Inc., with the resulting company continuing under the name Hunt-Wesson, Inc. In 1999, Hunt-Wesson, Inc., changed its name to ConAgra Grocery Products Company, and

in 2005, this new company reorganized into its present form, becoming Defendant ConAgra Grocery Products Company, LLC.

Determining how CERCLA's enactment affect prior liability transfers is a novel issue, with very few cases either directly or tangentially on point. To fully understand CERCLA's affect, the Court must differentiate the common methods by which liability is altered by contract and appreciate the legal distinctions between them.

Generally, there are two methods that business entities employ when seeking to curtail their liabilities: indemnity and assumption. "Indemnity does not mean that the indemnified party is immune from liability; to the contrary, where an indemnity provision protects against liability, the indemnitor's obligation arises when the liability of the indemnitee is established." 42 C.J.S. *Indemnity* § 2 (2024). In a case involving an indemnity agreement, the indemnified party remains liable to an injured party. *Id.* If the injured party is successful in bringing their claims against the indemnified party, that party then has a cause of action to enforce the agreement against the indemnitor. *Id.* Conversely, when liability is assumed, the assuming party is directly liable to an injured party in lieu of the original party. *See White Consol. Indus., Inc. v. Westinghouse Elec. Corp.*, 179 F.3d 403, 410 (6th Cir. 1999).

This understanding aligns with both the statutory text and the limited caselaw on the subject. The text of 42 U.S.C. § 9607(e)(1) makes clear that an indemnification clause does not absolve the original party of responsibility under CERCLA.[2] Many of the cases that the parties have cited regarding liability from prior to CERCLA's enactment, involve liability shifts in the form of an indemnification. *Olin Corp. v. Yeargin Inc.*, 146 F.3d 398 (6th Cir. 1998); *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993); *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206 (3d Cir. 1994), *cert. denied*, 514 U.S. 1065 (1995); *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321 (7th Cir. 1994). But some cases involve assumptions of liability. *White Consol. Indus., Inc.*, 179 F.3d 403 (Broad assumption clause was sufficient to terminate prior party's liability). While these cases involve a multitude of narrow issues that are not directly on point with this case, the distinction between assumption and indemnification underly each decision.

As this Court stated in the April 15, 2025, decision, Congress intended CERCLA to apply retroactively in the sense that past environmental damage is

---

[2] 42 U.S.C. § 9607(e)(1) states:
> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

14

within the purview of the statute. Doc. #1346, PageID #50790; *Franklin Cnty. Convention Facs. Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 552 (6th Cir. 2001). However, CERCLA's bar to liability assumption, codified in subsection (e)(1), is not retroactive.

While the Sixth Circuit has never expressly held this finding, much of the caselaw seemingly assumes it to be true. For example, in *White Consol. Indus., Inc.*, the Sixth Circuit needed to decide whether a pre-CERCLA assumption agreement successfully terminated the transferring entity's liability. 179 F.3d 403. If CERCLA's bar to assumption of liabilities *was* retroactive, the court would not have needed to undergo the analysis and would have simply held that the contractual provision was pre-empted by CERCLA. But this is not what occurred. Instead, the Sixth Circuit analyzed the agreement to determine whether it contained "'broad language sufficient to indicate that the parties intended to include all liabilities,'" in which case the effect would "'include environmental liabilities as well even without specific reference to an environmental statute such as CERCLA.'" *White Consol. Indus., Inc.*, 179 F.3d 403, 409 (6th Cir. 1999) (quoting *Olin Corp. v. Yeargin, Inc.*, 146 F.3d 398, 407 (6th Cir. 1998)).

As relevant in this case, the question then becomes, assuming that some sort of liability transfer occurred within the series of mergers and divestments that make up the history of ConAgra and McCall, what was the precise nature of the liability

transfer? Was it an indemnification, in which case ConAgra may still be liable, with recourse of bringing its own action against its indemnifier; or was it an assumption of liability, in which case ConAgra may have successfully divested its liability?

At this stage, the Court's review of the record does not conclusively answer that question. The parties have previously produced records which call for the transfer of liability, discuss the transfer of liability, and recently provided the deed which transferred the land. Docs. #1308-1, 1308-11, 1308-13, 1311-1, 1356-1. Yet, the Court has not been able to locate conclusive evidence to determine exactly which method was used, leaving an open question for which a fact-finder could reasonably find either answer once all evidence was presented at trial.

To summarize this explanation of governing law, the Court hereby clarifies that CERCLA's provision preventing transfers of liability does not apply retroactively. One issue to be decided at trial will be, at the time of CERCLA's enactment, what company or companies possessed liability stemming from McCall's actions. If the evidence shows that Old McCall successfully fully divested itself of liability via an assumption by New McCall, then ConAgra may not be liable. However, if the evidence shows that New McCall simply agreed to indemnify Old McCall, then ConAgra may very well still be liable.

To the extent that this explanation has successfully met Plaintiffs' request to clarify the issues, their motion is SUSTAINED.

**C.    Waste Management's Motion in Limine (Doc. #1347)**

The motion filed by Waste Management requests that the Court strike portions of expert reports compiled by Dr. Dagdigian and Dr. Stradling and preclude the stricken evidence and allied testimony from being entered at trial. Doc. #1347, PageID #50794. Specifically, Waste Management takes issue with references to Blaylock Trucking Co., Inc. ("Blaylock"), Industrial Waste Disposal Co., Inc. ("IWD"), and Container Services, Inc. ("Container Services").

This Court previously held that raw wood did not constitute hazardous waste for the purposes of CERCLA, nor did the natural byproducts of burning raw wood or wooden pallets. Doc. #1072.[3] As a result, the Court dismissed Blaylock, IWD, and Container Services from this case. Doc. #1072, 1177.

Plaintiffs have several responses to Waste Management's motion: (1) that the issue is better left to be determined at trial; (2) that Dr. Dagdigian and Dr. Stradling were permitted to create their own expert reports without trying to understand and apply the legal ramifications of the Court's prior rulings; and (3) that the motion is unnecessary because the experts are already barred from testifying about pallets

---

[3] After this holding, Plaintiffs attempted to include new expert opinions concerning the nails, fasteners, and glue that were apart of the wooden pallets. Doc. #1133. The Court struck those new expert opinions as untimely and has repeatedly prevented litigation over the issue of wooden pallets. Doc. #1169.

or the dismissed companies at trial. Plaintiffs also argue that the inclusion of the already-barred evidence is simply to preserve their arguments for appeal.

The Court has previously decided that testimony and evidence relating to wooden pallets or the materials that construct wooden pallets are precluded from being introduced at trial. Doc. #1072, PageID #40717; Doc. #1169, PageID #44999. Under Fed. R. Evid. 103(b), Plaintiffs need not renew their objection to this ruling to preserve the issue for appeal.

After reviewing the reports created by Dr. Dagdigian and Dr. Stradling, the Court is convinced that the evidence remains properly excluded from presentation at trial, but that the reports need not be stricken of all references to Blaylock, IWD, and Container Services. Such an exercise would require expending additional time and resources to achieve a minimal amount of helpfulness. Given that the upcoming trial will be conducted as a bench trial, some of the traditional concerns of juror confusion are lessoned. The Court is well aware of its prior holdings, including that Blaylock, IWD, and Container Services were dismissed and will certainly be able to refrain from considering evidence that has already been excluded. As a result, Waste Management's motion in limine is SUSTAINED IN PART and OVERRULED IN PART. Specifically, Dr. Dagdigian and Dr. Stradling are precluded from testifying at trial regarding Blaylock, IWD, or Container Services'

relation to the air curtain destructor, but their reports are not ordered to be stricken of any reference to these topics.

Further, Waste Management requests leave to seek attorney's fees incurred as a result of this motion. Doc. #1347, PageID #50804. Consistent with this Court's historic practice, the Court will consider the issue of appropriate attorney's fees at the conclusion of this litigation. *Schnieder v. City of Springfield*, 102 F. Supp. 2d 827, 843–44 (S.D. Ohio 1999) (Rice, C.J.); *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445 (1982). Therefore, Waste Management's request for leave to file a motion seeking attorney's fees is OVERRULED WITHOUT PREJUDICE to refiling after final judgment.

Pursuant to Waste Management's request, its rebuttal report deadline was stayed pending disposition of its motion in limine. Given this decision, Waste Management's rebuttal report will now be due 30 days after the issuance of this order.

### D. Plaintiffs' Motion in Limine to Exclude Testimony of Dr. Rauschenberger (Doc. #1359)

Plaintiffs have filed a Motion in Limine seeking to exclude Sherwin-William's expert Dr. Rauschenberger from testifying at trial. Doc. #1359. Dr. Rauschenberger was retained by Sherwin-Williams as an expert on human memory. As it relates to this case, Dr. Rauschenberger filed a report in which he analyzed how the passage

19

of time has effected the memory of two of Plaintiffs' fact witnesses: Edward Grillot and Michael Wendling.

Plaintiffs' stated rationale for the exclusion of Dr. Rauschenberger is that he would be asked to "improperly intrude upon the Court's role as factfinder of assessing witnesses' credibility." Doc. #1359, PageID #51271. As the Court described in this same case in 2019, it is clearly established that expert witness testimony concerning the credibility of a fact witness is improper. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) (holding that expert witness testimony regarding credibility of eyewitness testimony is improper); *MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 787 (N.D. Ohio 2013) (holding that an expert report that comments on the credibility of witnesses is improper); *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) (finding that expert witnesses may not offer their opinions "based on their personal assessment of the credibility of another witness's testimony"). As the Tenth Circuit has explained:

> Such testimony: (1) usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility; and (3) when provided by impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury.

*United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (internal quotations omitted). Moreover, such testimony "exceeds the scope of the expert's specialized

knowledge and therefore merely informs the jury that it should reach a particular conclusion." *United States v. Shay*, 57 F.3d 126, 131 (1st Cir. 1995).

In a prior decision by this Court, issued September 23, 2019, Plaintiffs successfully precluded an expert retained by ConAgra from testifying about the credibility of Edward Grillot and Michael Wendling. Doc. #1069. The Court recognized then, as it does now, that expert testimony regarding credibility determinations is impermissible.

However, there is a difference between an expert who opines on the credibility of a witness and an expert who presents the science about memory. Given the history of this case, the reliability of all witnesses' memory may be an issue the Court needs to consider. A better understanding of the science behind memory would certainly be relevant to the task at hand and serve to aid the trier of fact, in this case, the Court. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

Therefore, the Court SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' motion to exclude the testimony of Dr. Rauschenberger. Specifically, Dr. Rauschenberger is precluded from testifying regarding the memory of Edward Grillot and Michael Wendling, or any other witness. Dr. Rauschenberger will be permitted to testify about the effect of the passage of time on a theoretical

individual's memory, including his second and third opinions as presented in his

Summary of Opinions:

> Human memory is not a facsimile copy of the events experienced earlier in life. It is selective, porous, prone to fading over time, open to insinuation, and, ultimately, reconstructive, so that what is remembered and what objectively transpired historically are often not the same thing, especially with the passage of time and particularly in older age.
>
> Autobiographical memories are vivid and subjectively experienced as true, and therefore indistinguishable, to the person recalling the past, from misremembered, imputed, insinuated, adulterated, or skewed reconstructions, or, indeed, from false memories that reflect circumstances that were never experienced.

Doc. #1359-2, PageID #51301.

Pursuant to Plaintiffs' request, their rebuttal report deadline was stayed

pending disposition of their motion in limine. Given this decision, Plaintiffs' rebuttal

report will now be due 30 days after the issuance of this order.

### E.    Plaintiffs' Motion to Exclude Testimony of Dr. Hagen (Doc. #1383)

Plaintiffs seek to exclude the testimony of ConAgra's expert Dr. David Hagen.

Doc. #1383, PageID #52556. To understand the grounds for their motion, some

additional background of this case must be explained. Dr. Hagen was previously

designated as an expert for Defendant Cox Media Group Ohio, Inc.[4] ("Cox Media").

As an expert retained by Cox Media, Dr. Hagen provided a report in May 2018.

---

[4] By the time they were dismissed in September 2024, Cox Media had undergone a corporate name change and was then known as Ohio Newspapers, Inc. Doc. #1170.

In January 2024, understanding that some parties may need to add replacement or substitute experts due to the length of this case, the Court directed parties interested in new or replacement experts to file motions by March 18, 2024. Doc. #1213. After reviewing the motions submitted, the Court ordered all parties interested in substituting or replacing experts to file memoranda by May 10, 2024, detailing the scope of testimony from the new witnesses.  Doc. #1260.

One week prior to this deadline, on May 3, 2024, Cox Media settled with Plaintiffs. Doc. #1261. Understanding that the settlement meant that Dr. Hagen would no longer be an expert for any active party, ConAgra identified him for the first time as its expert witness on May 10, 2024. Doc. #1269.

The Court issued a decision on September 3, 2024, determining which parties' experts could be included and which would be excluded. Doc. #1291. However, through an oversight by the Court, ConAgra's attempt to include Dr. Hagen was not ruled upon. As a result, ConAgra and Plaintiffs each assumed that the issue was resolved in their favor. It was only when ConAgra served Dr. Hagen's Rebuttal Report on June 2, 2025, that the parties' contrary views became evident.

Plaintiffs argue that ConAgra's declaration of its intent to use Dr. Hagen is untimely and that he should be excluded for that reason. Doc. #1383, PageID #52563. In arguing their position, Plaintiffs cite to the factors articulated in *Howe v. City of Akron* for determining whether a noncompliant disclosure is substantially

23

justified or harmless. Doc. #1383, PageID #52564; 801 F.3d 718, 748 (6th Cir. 2015).

The *Howe* factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 748 (internal quotation omitted). These factors are intended to assist a court in determining whether nondisclosure of a witness is harmless or whether it warrants exclusion of the witness under Fed. R. Civ. P. 37(c). *Id.*

When Rule 37(c) was revised in 1993, the Advisory Committee Notes explained that:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures. In the latter situation, however, exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party.

Fed. R. Civ. P. 37, 1993 advisory committee's note. As explained by the Sixth Circuit, "'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance ex rel. Hammons v. United States*, 182 F.3d 920, *5 (6th Cir. 1999).

24

In the Court's opinion, ConAgra's failure to properly disclose Dr. Hagen falls squarely within this understanding of harmless. ConAgra filed a "response" before the Court on May 10, 2024, in which they identified Dr. Hagen as an expert witness for trial. Doc. #1269. As mentioned earlier, this action was taken upon ConAgra's discovery that the party which had previously retained Dr. Hagen, Cox Media, had settled and would no longer be participating in the litigation. Despite Plaintiffs arguments to the contrary, the Court believes that ConAgra acted in good faith and believed that they had successfully complied with the Court's order to disclose Dr. Hagen. It was this Court's inadvertent oversight, and subsequent failure to rule on the issue, which led to the present dispute, and while the Court understands Plaintiffs' arguments, the Court's failure should not be visited upon ConAgra.

Moreover, Plaintiffs are familiar with Dr. Hagen, having previously deposed him as a witness for Cox Media after his 2018 report was submitted. Doc. #1032. In fact, during this 2018 deposition, Dr. Hagen was asked about McCall's connection with certain types of ink. Doc. #1032, PageID #39446–47. While these questions were brief, Plaintiffs were clearly on notice that the particular pigments of ink found at the SDD would be an issue at trial and that ConAgra, as the potential successor in interest to McCall, would have an interest in Dr. Hagen's analysis.

Finally, the Court notes that Dr. Hagen is not a new entity to Plaintiffs, requiring investigation as to his qualifications or opinions. To the contrary, Plaintiffs

have been aware of Dr. Hagen for years, including the possibility that ConAgra could have elicited testimony from him when he was still retained by Cox Media. Plaintiffs have already conducted a deposition of Dr. Hagen and have the opportunity to inquire further into his updated opinions.

For these reasons, Plaintiffs Motion in Limine to Exclude the Testimony of David J. Hagen is OVERRULED.

## IV.     Conclusion

For the reasons contained herein, ConAgra's Motion for Partial Summary Judgment, Doc. #1308, is OVERRULED. Plaintiff's Motion to Clarify Issues for Trial, Doc. #1348, is SUSTAINED.

Waste Management's Motion in Limine to Exclude testimony of Dr. Dagdigian and Dr. Stradling and strike their reports, Doc. #1347, is SUSTAINED IN PART and OVERRULED IN PART. Specifically, Dr. Dagdigian and Dr. Stradling are precluded from testifying about Blaylock Trucking Co., Inc. and Industrial Waste Disposal, Co., Inc., and are precluded from testifying about Container Services Co., Inc. in relation to the air curtain destroyer.

Plaintiffs' Motion in Limine to Exclude Testimony of Dr. Rauschenberger, Doc. #1359, is SUSTAINED IN PART and OVERRULED IN PART. Specifically, Dr. Rauschenberger is precluded about testifying regarding the credibility of any witness but is permitted to present testimony about the science of human memory.

26

Plaintiffs' Motion in Limine to Exclude Testimony of Dr. Hagen, Doc. #1383,

is OVERRULED.

Date: September 5, 2025

*Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE