IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al., :
    Plaintiffs, :
v. : Case No. 3:13-cv-115
DAYTON POWER AND LIGHT : JUDGE WALTER H. RICE
COMPANY, et al., :
    Defendants. :

---

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR LEAVE TO SERVE REBUTTAL EXPERT REPORT (DOC. #1400)

---

This case is before the Court on Plaintiffs' Motion for Leave to Serve Rebuttal Expert Report. Doc. #1400. Defendant ConAgra Grocery Products Company, LLC ("ConAgra") filed a Response in Opposition the Motion, Doc. #1404, and Plaintiffs filed a Reply in Support of their Motion. Doc. 1405

For the reasons contained herein, Plaintiffs Motion for Leave to Serve Rebuttal Expert Report is SUSTAINED.

I. **Procedural and Factual Background**

The history of this case is lengthy and has been laid out in a multitude of prior filings by the parties and Orders of this Court. Here, the Court will lay out the facts pertinent to the present motion.

On February 3, 2025, the Court issued an Amended Scheduling Order with the hopes of bringing the liability portion of this case to trial in February of 2026. Doc. #1330. Pursuant to the Scheduling Order, the parties were to issue expert reports by their approved replacement and supplemental experts by April 7, 2025, with rebuttal reports being filed by June 2, 2025. *Id.* On April 7, 2025, Plaintiffs served the expert report of Dr. Dagdigian on Defendants. On June 2, 2025, ConAgra served a rebuttal report drafted by Dr. Hagen on Plaintiffs. On July 2, Plaintiffs moved to exclude the testimony and report by Dr. Hagen. Doc. #1383. This Court overruled Plaintiffs' motion on September 5, 2025. Doc. #1397. On September 19, 2025, Plaintiffs filed the present motion seeking to serve a rebuttal report ("sur-rebuttal") from Dr. Dagdigian in response to the rebuttal report from Dr. Hagen. Doc. #1400.

Understanding that Plaintiffs' motion was filed some four days prior to Dr. Dagdigian's deposition, the Court instructed the parties to continue with the deposition as scheduled, while setting an expedited briefing schedule on the merits of the motion. Doc. #1401. Briefing on the motion has now concluded and it is ripe for review.

## II.   **Analysis**

Plaintiffs state that Dr. Dagdigian's sur-rebuttal report is necessary because Dr. Hagen's rebuttal report opined on issues not contained in Dr. Dagdigian's initial

2

expert report. Doc. #1400, PageID #53038–39. Specifically, they argue that Dr. Hagen renders an opinion on ConAgra's nexus to the South Dayton Dump (the "site" or "SDD"), a topic which Dr. Dagdigian did not directly address. *Id.* at PageID #53039.

As an initial matter, it appears that the parties have some disagreement over the legal standard which governs this dispute. Under Plaintiffs' view, Dr. Hagen's rebuttal report impermissibly exceeded the scope of the original report. Specifically, because it was not "intended *solely* to contradict or rebut evidence *on the same subject matter identified by another party*," Dr. Hagen's report exceeded the permissible scope identified by Fed. R. Civ. P. 26(a)(2)(D)(ii). Doc. #1400, PageID #53040; Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). Plaintiffs further argue that, because the rebuttal report exceeded its scope, alteration of the pre-trial schedule is justified under Rule 16(b)(4) to permit Plaintiffs to adequately respond to the portions of Dr. Hagen's report which were outside the scope of Dr. Dagdigian's initial report. Doc. #1400, PageID #53040; Fed. R. Civ. P. 16(b)(4).

Conversely, ConAgra argues that Dr. Hagen did not offer an opinion on Nexus. Doc. #1404, PageID #53226. To support this stance, ConAgra includes several lines from Dr. Hagen's deposition in which he unequivocally testifies that

3

he was not rendering an opinion on whether McCall sent waste to the site.[1] *Id.* Instead, ConAgra claims that Plaintiffs are seeking to serve Dr. Dagdigian's sur-rebuttal report as a "do-over." *Id.* at PageID #53227. As ConAgra sees it, Plaintiffs are seeking to remedy deficiencies in Dr. Dagdigian's report, deficiencies that Plaintiffs could have, and should have, identified and rectified earlier. *Id.*

The Court begins by examining whether Dr. Hagen's rebuttal report extended beyond the scope of Dr. Dagdigian's initial report. Dr. Dagdigian's initial report spans 128 pages, 12 of which are focused on McCall. Doc. #1347-2, PageID #50910–21. A sizable portion of those 12 pages is spent explaining what chemicals and ingredients printing inks are comprised of. *Id.* at PageID #50910–15. From there, the report discusses specific inks McCall used in their printing business, as well as the methods by which McCall created, stored, and disposed of their inks. *Id.* at PageID #50915–18. As a result, Dr. Dagdigian published two opinions with regard to McCall:

> MCC Opinion 1. MCC printing operations generated waste that contained printing ink, magazines and paper, office trash, cardboard, and wood skids.

---

[1] McCall Corporation was the relevant company existing contemporaneously with the waste disposal at the heart of this case. There remains an open question regarding whether ConAgra is liable for waste attributable to McCall as its successor. *See* Doc. #1397.

4

> MCC Opinion 2. MCC waste contained the following hazardous substances: lead, chromium, cadmium, zinc, copper, selenium, cyanide, barium salts, PAHs, PCBs, benzidine, toluene, TCE, 1,1,1-TCA, and ignitable solvents.

Doc. #1347-2, PageID #50921.

Dr. Hagen's rebuttal report responded to both Dr. Dagdigian's expert report, as well as a separate expert report compiled by Dr. Stradling. Doc. #1400-2. In his report, Dr. Hagen identifies that "Dagdigian states that he was not asked and does not provide an opinion on whether McCall disposed of waste at the SDD." *Id.* at PageID #53081. Instead, Dr. Hagen describes Dr. Dagdigian's report as "imply[ing] that McCall disposed of waste that contained hazardous substances that contributed to the COPCs[2] identified at the SDD which is contrary to [Dr.] Exner's deposition testimony." *Id.* Therefore, Dr. Hagen's rebuttal report includes opinions which state, in part, "the implication that McCall arranged for or disposed of waste ink at SDD is unsubstantiated" and "implications that McCall arranged for or disposed of waste at the SDD are unfounded. *Id.* at 53078.

"The purpose of rebuttal reports is not to advance new arguments or new evidence outside the scope of the opposing expert's testimony." *Sinomax USA, Inc. v. Am. Signature Inc.*, No. 2:21-cv-3925, 2022 WL 7180339 (S.D. Ohio Sept. 30, 2022) (Jolson, M.J.) (quotation omitted); *Presidio, Inc. v. People Driven Tech., Inc.*, 686 F.

---

[2] "COPC" stands for Constituents of Potential Concern. Doc. #1400-1, PageID #53049.

Supp. 3d 652, 676 (S.D. Ohio 2023) (Marbley, C.J.). Sur-rebuttal expert reports are not guided by either the Federal Rules of Civil Procedure, nor this Court's Scheduling Order. Doc. #1330; Fed. R. Civ. P. 26(a)(2)(D)(ii). Instead, "[t]he decision of whether to allow a party to present a sur-rebuttal is generally committed to the trial court's discretion." *Shupe v. Rocket Companies, Inc.*, 752 F. Supp. 3d 689, 734 n.21 (E.D. Mich. 2024).

Dr. Dagdigian's proposed sur-rebuttal report focuses on a key chemical compound discussed in Dr. Hagen's rebuttal report and known as 3,3'-dichlorobenzidine. Doc. #1400-1. Dr. Hagen uses the absence of a sufficient concentration of 3,3'-dichlorobenzidine as evidence that McCall did not dispose of waste ink at the site. In comparison, Dr. Dagdigian's only reference to 3,3'-dichlorobenzidine in his initial report was in passing as a source of PCB 11.[3] Doc. #1347-2, PageID #50918 ("PCB 11 was identified as a byproduct of 3,3'-dichlorobenzidine which is used in yellow pigments.").

The Court has reviewed Dr. Dagdigian's initial expert report, Doc. #1347-2, Dr. Hagen's rebuttal report, Doc. #1400-2, and Dr. Dagdigian's proposed sur-rebuttal report, Doc. #1400-1. Despite ConAgra's arguments otherwise, the Court sees Dr. Hagen's rebuttal report as raising new issues concerning 3,3'-dichlorobenzidine and

---

[3] "PCBs" are polychlorinated biphenyls, a family of carcinogenic chemical compounds. Doc. #1347-2, PageID #50846.

6

McCall's nexus to the SDD. Therefore, it seems only fitting to permit Plaintiffs to respond to these new issues my permitting Dr. Dagdigian's proposed sur-rebuttal expert report.

The parties should carefully note, however, that the expert discovery portion of this case needs to be at a conclusion if there is any hope to work towards an ultimate resolution. ConAgra's concern about their lack of notice on certain items within Dr. Dagdigian's report, for example, the calculation of 3,3'-dichlorobenzidine's half-life is noted. *See* Doc. #1404, PageID #53229. Arguably, the service of Dr. Dagdigian's sur-rebuttal is helpful to ConAgra as it permits them to more fully anticipate Plaintiffs' arguments at trial and prepare to rebut them. ConAgra is free to properly discuss the issue with their own expert and present testimony on the issue should it arise at trial, but no leave will be granted for additional expert reports barring extreme circumstances.

ConAgra, in their response, makes clear that they reserve the right to challenge the scope of Dr. Dagdigian's testimony at trial. Doc. #1404, #53222. The basis of this challenge, as ConAgra explains, would be that Dr. Dagdigian's testimony runs afoul of the guardrails that this Court installed when it allowed substitute and replacement experts. *Id.*; Doc. #1297. Nothing in this Entry should be construed to prejudge the merits of any such motion ConAgra makes.

7

## III. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Leave to Serve Rebuttal Expert Report, Doc. #1400, is SUSTAINED.

Date: October 8, 2025

*Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE