IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,

    Plaintiffs,

v.

DAYTON POWER AND LIGHT
COMPANY, et al.,

    Defendants.

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION TO DISMISS COUNT IV OF PLAINTIFFS' SIXTH AMENDED COMPLAINT (DOC. #1395)

---

This case is before the Court on a Motion to Dismiss Count IV of Plaintiffs' Sixth Amended Complaint filed by Defendants The Dayton Power and Light Company; ConAgra Grocery Products Company, LLC; Valley Asphalt, Inc.; The Sherwin Williams Company; and Waste Management of Ohio, Inc. (collectively "Defendants"). Doc. #1395. Plaintiffs Hobart Corporation, Kelsey-Hayes Company, and NCR Corporation (collectively "Plaintiffs") filed a Response in opposition, Doc. #1403 and Defendants filed a reply in support of their motion. Doc. #1407

For the reasons contained herein, Defendants Motion to Dismiss Count IV is SUSTAINED IN PART and OVERRULED IN PART. Specifically, Plaintiffs may pursue

declaratory judgment as it relates to future costs incurred under the 2016 ASOAC, but may not pursue declaratory judgment for costs of future remediation.

I. **Procedural and Factual Background**

Plaintiffs seek contribution from numerous defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f), for response costs incurred at the South Dayton Dump and Landfill Site ("SDD" or "site"). Plaintiffs also seek, in the alternative, recovery under a theory of unjust enrichment. Many Defendants filed crossclaims and counterclaims for contribution. These claims have been presented to the Court across seven complaints, Docs. #1, 144, 236, 250, 276, 389, & 636, as well as a third-party complaint, Doc. # 493, and numerous responsive pleadings.

Plaintiffs' claims stem from two settlement agreements they entered into with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 and Operable Unit 2[1] ("2016 ASAOC"). These ASAOCs required Plaintiffs to perform

---

[1] Operable Unit 1 ("OU1") and Operable Unit 2 ("OU2") are two geographic subdivisions within the SDD.

2

certain work at the site, including investigation, testing, and removal of the contamination.

Over the course of these proceedings, several Defendants have been dismissed either due to settlements or summary judgment. On September 8, 2020, the Court approved a settlement agreement between Plaintiffs and the eight remaining Defendants with respect to response costs incurred in connection with the 2013 ASAOC, which was limited to vapor intrusion risks at the Site. Doc. #1172. With that agreement completed, the 2013 ASAOC was resolved, leaving only the 2016 ASAOC which requires Plaintiffs to complete the RI/FS for adjudication.

Also looming over this case are the future remediation efforts. Once the RI/FS is complete, the United States EPA will determine the precise steps needed to cleanse the site of hazardous materials. These future efforts are not covered by any of the ASAOCs Plaintiffs have previously entered into.

In mid-2023, now knowing that the feasibility study would take significantly longer than originally anticipated, Plaintiffs moved for a pretrial conference and a trial setting. Docs. #1194 & 1205. The Court, construing Plaintiffs' requests as a motion to bifurcate the trial on liability, sustained the motion. Doc. #1206. In February 2025, the Court set a trial date of February 23, 2026, for the trial on liability, permitting some limited discovery to occur in the interim. Doc. #1330. On

3

September 2, 2025, Defendants filed the present Motion under Fed. R. Civ. P. 12(c). Doc. #1395.

## II.     Legal Standard

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal

4

claim plausible, i.e., more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] also may be taken into account." *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III. Analysis

Defendants' Motion specifically attacks Count IV of Plaintiffs' Sixth Amended Complaint, which seeks:

> declaratory judgment on liability for response costs that will be binding in any subsequent action or actions to recover further response costs and which declares that the Defendants are liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), and/or CERCLA Section 113(f)(3)(B), 42 U.S.C. §9613(f)(3)(B), for all or their proper share of response costs incurred and to be incurred by Plaintiffs with respect to the Contamination at the Site, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. §9613(g)(2), and 28 U.S.C. §§2201–2202.

Doc. #636, PageID #8270.

5

The declaratory judgment count was a part of Plaintiffs' case from the very beginning. Doc. #1, PageID #25–26. On February 18, 2014, the Court dismissed a portion of Plaintiffs' case involving §107 of CERCLA but allowed the claims under §113 to continue. Doc. #189, PageID #1787–90. As part of that decision, the Court found that declaratory judgment under §107 was not viable and was dismissed, but permitted the continued prosecution of declaratory judgment under §113. *Id.* at PageID #1792. Plaintiffs continued to use the same declaratory judgment language in later amended complaints, despite the earlier ruling that §107 did not present a feasible pathway to relief. *See, e.g.,* Doc. #414, PageID #6199; Doc. #636, PageID #8270.

Plaintiffs' declaratory judgment claim facially invokes authority under both CERCLA and the Declaratory Judgment Act ("DJA"). However, Defendants argue that neither pathway permits declaratory judgment. Doc. #1395, PageID #52987. As Plaintiffs claim for declaratory judgment only requires one of the two pathways to present a possible route for the claim, the Court will address each avenue.

### A. Declaratory Judgment under CERCLA

In the beginning of this case, two separate provisions were thought to provide Plaintiffs a right to seek contribution from Defendants. The first of these was a cost-recovery claim under §107(a)(4)(B), codified at 42 U.S.C. §9607(a)(4)(B). The common alternative to seeking cost-recovery under §107(a)(4)(B) is to seek

6

contribution under §113(f), codified at 42 U.S.C. §9613(f). Despite their similarities, these provisions operate under different conditions: "it suffices to demonstrate that costs incurred voluntarily are recoverable only by way of §107(a)(4)(B), and costs or reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under §113(f)." *United States v. Atlantic Rsch. Corp.*, 551 U.S. 128, 139 n.6 (2007).

With that understanding, the Sixth Circuit examined Plaintiffs' claims under §107(a)(4)(B) and §113(f) in a prior interlocutory appeal. *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757 (6th Cir. 2014) ("*Hobart I*"). In this appeal, the circuit court expressly stated that these two sections provide mutually exclusive remedies and that Plaintiffs, by way of signing an ASAOC, are permitted to pursue claims under §113(f) only. *Id.* at 768, 771. As a result, the court affirmed the dismissal of Plaintiffs §107(a)(4)(B) claims, leaving only the §113(f) claims intact. *Id.* at 771.

Defendants now argue, pursuant to a recent Sixth Circuit decision, that CERCLA's declaratory judgment provision does not permit such an award when the underlying claims are based on §113(f) rather than §107(a)(4)(B). Doc. #1395, PageID #52991–92; *see also Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 136 F.4th 690 (6th Cir. 2025).

7

The 2025 *Georgia-Pacific* decision is only the most recent decision in a case that stems back 35 years. In 1990, the EPA added the Kalamazoo River in Michigan to the National Priority List ("NPL") for contaminated sites and entered into an ASAOC with several companies that had contributed hazardous waste. *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 32 F.4th 534, 538 (6th Cir. 2022) ("*Georgia-Pacific I* "). In 1995, the members who had signed the ASAOC brought a cost-recovery action under §107 against several other companies potentially liable for contribution to the cleanup. *Id.* This action was bifurcated and, in 1998, the district court found several of the companies liable for contribution. *Kalamazoo River Study Group v. Rockwell Intern.*, 107 F.Supp.2d 817 (W.D. Mich. 2000) ("*KRSG*").

In 2010, the parties which had been judicially adjudicated as liable, brought claims under both §107 and §113 against additional parties. *Georgia-Pacific I*, 32 F.4th at 539. After more than a decade of litigation in that case, the Sixth Circuit held that the §113 claims were time-barred because the statute of limitations began to run when the *KRSG* liability determination was handed down in 1998. *Id.* at 547. Moreover, the circuit court found the discrete nature of §107 and §113 claims, as demonstrated in *Hobart I*, meant that the plaintiffs could not pursue §107 claims unless they related to claims outside the scope of the *KRSG* decision, because §107 applies only to voluntary payments. *Id.* at 548.

8

On remand, the district court vacated the §113 claims and instead entered declaratory judgment under §107. *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 136 F.4th 690, 695 (6th Cir. 2025) ("*Georgia-Pacific II*"). Once again, the case was appealed to the Sixth Circuit to determine whether declaratory judgment was proper. The circuit court repeated and clarified that, under *Hobart I*, because the parties had obtained a judgment, they could proceed only under §113 and not under §107. *Id.* at 697. Additionally, §113(g)(2), which provides the CERCLA declaratory judgment remedy, specifies that it applies only to §107 claims. 42 U.S.C. §9613(g)(2). Therefore, because the *Georgia-Pacific* plaintiffs could not proceed with a §107 claim, they could not obtain declaratory relief either. *Georgia-Pacific II*, 136 F.4th at 697.

In the present case, Defendants argue that this line of cases conclusively demonstrates that Plaintiffs cannot seek declaratory judgment under CERCLA. Plaintiffs appear to accept this conclusion and instead argue that *Georgia-Pacific* "says nothing about a district court's power to issue a declaratory judgment regarding liability and costs plaintiffs are obligated to incur in a pending action pursuant to a signed agreement, such as in this case; nor does *Georgia-Pacific* address a court's powers under the Declaratory Judgment Act." Doc. #1403, PageID #53204.

9

In the Court's view, *Georgia-Pacific* is clear: if a party cannot maintain a claim under §107, they cannot be awarded declaratory judgment brought under CERCLA's declaratory judgment scheme. The Court sees no textual or precedential support for Plaintiffs' position that CERCLA's declaratory judgment scheme may still apply to claims in the current lawsuit seeking relief under §113. Simply put, CERCLA's declaratory judgment provision requires a claim under §107, a condition which Plaintiffs do not meet.

Plaintiffs' other argument seeks to protect their claim under the DJA from preemption. Defendants have not sought to argue that CERCLA preempts the DJA aside from a single footnote included in the motion stating that the issue is not addressed. Doc. #1395, PageID #52993 n.1. As such, the Court has no need to examine possible preemption.

In conclusion, the Court finds the Sixth Circuit caselaw precludes Plaintiffs from pursuing declaratory judgment based on 42 U.S.C. §9613(g) in this §113 action.

**B. Declaratory Judgment under the Declaratory Judgment Act**

Plaintiffs' operative complaint also invokes the Declaratory Judgment Act as a basis upon which they seek declaratory judgment. Doc. #636, PageID #8270. The Declaratory Judgment Act provides that:

10

> In a case of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. sec. 2201(a).

Defendants argue that Plaintiffs cannot properly invoke the DJA because there is no case or controversy covering future costs at the Site. Doc. #1395, PageID #52993. Defendants also argue that, if there is a case or controversy covering the future costs, then it has not yet ripened into a viable claim. *Id.* at PageID #52995. Naturally, Plaintiffs disagree on both issues, believing that there is an actual controversy existing between the parties and that the controversy is ripe to be adjudicated under the DJA. Doc. #1403, PageID #53210–15.

This case, initially filed in 2013, originally included claims related to the 2013 ASAOC and the costs incurred by Plaintiffs pursuant to that agreement. Later, Plaintiffs signed the 2016 ASAOC, requiring them to incur costs related to conducting a remedial investigation and feasibility study ("RI/FS"). When they incurred these new liabilities, Plaintiffs amended their operative complaint to include these new expenditures. However, the process of conducting the RI/FS has proven to be a long process with no end date in sight.

The purpose of the RI/FS is to determine the extent of the contamination at the Site and what measures will be required to remediate the contamination. Based

11

on projections shared by both parties, the future amount involved with remediation could range between $50 million to $500 million or more, depending on how widespread the contamination is and in which areas the contamination is located. For example, if it is determined that the contamination requires a portion of the riverbed of the Great Miami River to be remediated, the parties expect that the total cost will increase exponentially.

Importantly, this future remediation will occur only after the RI/FS has been completed and will likely require some future agreement be consummated identifying the scope of the work. With that in mind, it is important to separate the parties' arguments that pertain to the 2016 ASAOC and the RI/FS from the arguments that go to the future agreement outlining the scope of remediation efforts.

Defendants' arguments regarding the presence of a case and ripeness do not seem to extend to the future costs associated with completing the RI/FS under the 2016 ASAOC. Doc. #1407, PageID #53280 ("Plaintiffs may be entitled to a declaration of liability for the RI/FS work – that is, costs expended to date and costs to complete that work."). Because Defendants do not challenge whether the DJA permits an award of declaratory judgment on the future costs arising under the 2016 ASAOC, the Court need not address the issue.

12

### 1. *Future Remediation Costs Under the Future ASAOC*

Defendants argue that Plaintiffs have not alleged a controversy sufficient to justify declaratory judgment. In making this argument, they take the position that a valid claim under the DJA requires a showing that the future controversy, the one to which the declaratory judgment would apply, is of sufficient immediacy and reality. Specifically, Defendants point out that Plaintiffs are not obligated to undertake any actions after the completion of the RI/FS, arguing that the lack of future commitment necessarily means that the parameters of any future remediation case is uncertain.

Plaintiffs do not dispute that they have no current contractual obligation to undertake remediation efforts but assert that they will be obligated to incur those future costs, nonetheless. Doc. #1403, PageID #53212, 53215. They also argue that ripeness is not intended to be a claim-by-claim inquiry, and that the declaratory judgment is ripe because this case itself is ripe. *Id.* at PageID #53214.

At times it is difficult to determine when a claim for declaratory judgment presents itself in an actual controversy or whether it merely seeks an advisory opinion to be used on a hypothetical set of future facts. *Aetna Life Ins. Co. of Harford, Conn. V. Haworth*, 300 U.S. 227, 240 (1937). Often, "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Maryland Cas. Co. v. Pacific Coal & Oil*

13

*Co.*, 312 U.S. 270, 273 (1941). As a result, the burden falls on a plaintiff to allege facts that "under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted).

However, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); 28 U.S.C. §2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added). A court's use of discretion whether to permit declaratory judgment claims is often determined at the motion to dismiss stage of litigation. *See Adrian Energy Assoc. v. Michigan Public Serv. Comm'n*, 481 F.3d 414 (6th Cir. 2007); *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004); *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x. 433 (6th Cir. 2001).

In determining whether to exercise discretion over a declaratory judgment request, courts within the Sixth Circuit apply the five *Grand Trunk* factors:

(1) whether the declaratory action would settle the controversy;
(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
(5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Some of these factors do not weigh either in favor of or against the use of declaratory judgment. For example, the third factor is inapplicable here as Plaintiffs have not filed the present case for the purpose of obtaining res judicata before Defendants can get a contrary ruling from another case. Likewise, the fourth factor does not apply because declaratory judgment would not affect state courts or encroach upon state jurisdiction.

In the Court's opinion the other three factors weigh against the use of declaratory judgment in this case. The first two *Grand Trunk* factors are closely related and often considered in connection with each other. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 556 (6th Cir. 2008). If the Court were to grant declaratory judgment in this case, it is unclear what effect it would have in a future remediation case. At the end of the first stage of the bifurcated trial, the Court will determine which, if any, of the Defendants are PRPs and, therefore, liable to some extent to

15

contribute to the costs associated with the RI/FS. After the allocation portion of the trial, the Court will be able to conclusively state the extent to which each of the PRPs are liable to contribute to the RI/FS.

However, the scope of the RI/FS is not fixed. The study may require additional testing methods, locate traces of different hazardous materials, or even shift the geographical scope of the target area. With these variables, it is impossible to forecast exactly what completion of the RI/FS will entail. This was one important reason why the allocation portion of this case will not be determined until later.

These same variables are key to understanding why the Court is doubtful that declaratory judgment will aide future controversies. The parties have recognized the wide range of potential remediation plans that this case may require. The RI/FS may determine that remediation is needed to focus only on a particular portion of OU1 or OU2, an outcome that may affect some PRPs and not others. The RI/FS could determine that the Site needs to be expanded to include the riverbed of the Great Miami River, which would not only drastically increase the financial magnitude of the remediation but would also likely open the door to additional PRPs who may have contributed waste upstream that settled within the Site. In short, this is not the type of case where the Court or any of the parties can predict what the future dispute will entail, and without a viable forecast, any declaration given would likely be ineffective.

The final *Grand Trunk* factor examines whether there is an alternate remedy which is better or more effective. Here, the Court finds that there is an alternative to declaratory judgment that is both better and more effective: collateral estoppel. "Collateral estoppel applies (1) when the issue presently asserted was actually litigated in an earlier trial, (2) when it was actually and necessarily determined by a court of competent jurisdiction, and (3) when preclusion in the second trial does not work an unfairness." *United States v. Berman*, 884 F.2d 916, 922 (6th Cir. 1989). In this case, Plaintiffs and Defendants will vigorously litigate whether they are PRPs and, if so, to what extent they are liable for hazardous material at the SDD. One would expect that whichever party or parties prevail would invoke collateral estoppel in any subsequent case necessary to prevent relitigating the very issues this case will address.

The important difference is that collateral estoppel is a backward-looking doctrine, rather than the forward-looking nature of declaratory judgment. If, and when, collateral estoppel is invoked, that court can determine whether the issues at stake in the future case were determined in this case.

CERCLA cases are particularly complicated, presenting an "elephantine carcass" to be addressed by interested parties and the court system. *United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 573 (6th Cir. 1991). As a result, many cases do not fit within the guidelines that permit declaratory judgment under the DJA. *See*

17

*Cooper Indus., Inc. v. United States E.P.A.*, 775 F. Supp. 1027, 1041 (W.D. Mich. 1991) (declining to provide relief under Declaratory Judgment Act in CERCLA case where other forms of relief would be available). Perhaps that is why Congress opted to create a provision within CERCLA which expressly created a right to declaratory judgment in appropriate cases. *See* 42 U.S.C. § 9613(g)(2). By making the CERCLA declaratory judgment applicable only to cost-recovery actions brought under §107, not to contribution actions under §113, Congress evidently made a policy decision to provide an extra incentive to plaintiffs who voluntarily undertake remediation actions without waiting for an agreement or court order.

In conclusion, this Court does not render a decision whether declaratory judgment can be sought under the Declaratory Judgment Act, but assuming it may be pursued, the Court finds that the *Grand Trunk* factors weigh in favor of declining to issue declaratory judgment under the Declaratory Judgment Act for any future cases.

## IV.     Conclusion

For the reasons contained herein, the Court concludes that Plaintiffs are precluded from seeking declaratory judgment pursuant to the declaratory judgment provision included within CERCLA. The Court also observes that neither party seeks to preclude declaratory judgment under the Declaratory Judgment Act regarding the future costs incurred under the 2016 ASAOC. As such, the Court takes no action

18

on that portion of the declaratory judgment claim. However, the Court exercises the discretion granted to it under the Declaratory Judgment Act to preclude an award of declaratory judgment for any disputes following the 2016 ASAOC.

Therefore, the Court SUSTAINS IN PART and OVERRULES IN PART Defendants' Motion to Dismiss Count IV of Plaintiffs Sixth Amended Complaint for Declaratory Judgment. Doc. #1395. Plaintiffs may continue to pursue declaratory judgment as it would relate to future costs incurred under the 2016 ASAOC, but may not pursue any other form of declaratory relief.

Date: November 13, 2025          *Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE


on that portion of the declaratory judgment claim. However, the Court exercises the discretion granted to it under the Declaratory Judgment Act to preclude an award of declaratory judgment for any disputes following the 2016 ASAOC.

Therefore, the Court SUSTAINS IN PART and OVERRULES IN PART Defendants' Motion to Dismiss Count IV of Plaintiffs Sixth Amended Complaint for Declaratory Judgment. Doc. #1395. Plaintiffs may continue to pursue declaratory judgment as it would relate to future costs incurred under the 2016 ASAOC, but may not pursue any other form of declaratory relief.

Date: November 13, 2025        *Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE