IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al., :

       Plaintiffs,

      v.                :     Case No. 3:13-cv-115

DAYTON POWER AND LIGHT       :     JUDGE WALTER H. RICE
COMPANY, et al.,

       Defendants.       :

---

DECISION AND ENTRY OVERRULING VALLEY ASPHALT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (DOC. #1497); OVERRULING
WASTE MANAGEMENT'S MOTION FOR SUMMARY JUDGMENT
(DOC. #1498); SUSTAINING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT (DOC. #1499); SUSTAINING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (DOC. #1500); OVERRULING
PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY (DOC. #1540);
OVERRULING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-
REPLY (DOC. #1546)

---

This case is before the Court on several motions for summary judgment. First

is a Motion for Partial Summary Judgment filed by Defendant Valley Asphalt

Corporation ("Valley Asphalt"), on the issue of its liability as an arranger. Doc.

#1497. Plaintiffs Hobart Corporation, et al.'s ("Plaintiffs"), filed a response in

opposition, Doc. #1518, and Valley Asphalt filed a reply in support of its motion.

Doc. #1533. Plaintiffs filed a motion seeking leave to file a sur-reply, Doc. #1540.

But, because the underlying motion is adequately decided without the aid of the sur-reply, Plaintiffs' motion, Doc. #1540, is OVERRULED.

Defendant Waste Management of Ohio, Inc. ("Waste Management" or "WMO"), also filed a Motion for Summary Judgment regarding its liability as an alleged transporter. Doc. #1498. Both Plaintiffs and ConAgra Grocery Products Co., LLC ("ConAgra") filed responses in opposition, Docs. #1517 & 1521, and Waste Management filed a reply in support of its motion. Doc. #1532. Plaintiffs filed a motion seeking leave to file a sur-reply, Doc. #1546. But, because the underlying motion is adequately decided without the aid of the sur-reply, Plaintiffs' motion, Doc. #1546, is OVERRULED.

The third summary judgment motion was filed by Plaintiffs and seeks a finding that certain hazardous substances are present at the South Dayton Dump. Doc. #1499. All remaining Defendants filed a collective response, Doc. #1520, and Plaintiffs filed a reply in support of their motion. Doc. #1530.

The final summary judgment motion addressed in this Decision was filed by Plaintiffs and seeks a finding that Valley Asphalt is liable as an owner and operator. Doc. #1500. Valley Asphalt filed a response in opposition, Doc. #1519, and Plaintiffs filed a reply in support of their motion. Doc. #1531.

These issues are now ripe for review and for the reasons stated below, Valley Asphalt's Motion for Partial Summary Judgment, Doc. #1497, is OVERRULED;

2

Waste Management's Motion for Summary Judgment, Doc. #1498, is OVERRULED;

Plaintiffs' Motion for Partial Summary Judgment, Doc. #1499, is SUSTAINED; and

Plaintiffs' Motion for Summary Judgment, Doc. #1500, is SUSTAINED.

## I.    Background and Procedural History

Plaintiffs seek contribution from numerous defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f), for response costs incurred at the South Dayton Dump and Landfill Site ("SDD" or "site"). Plaintiffs also seek, in the alternative, recovery under a theory of unjust enrichment. Many Defendants filed crossclaims and counterclaims for contribution. These claims have been presented to the Court across seven complaints, Docs. #1, 144, 236, 250, 276, 389, & 636, as well as a third-party complaint, Doc. # 493, and numerous responsive pleadings.

Plaintiffs' claims stem from two settlement agreements they entered into with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC"). These ASAOCs required Plaintiffs to perform certain work at the site, including investigation, testing, and removal of the contamination.

3

Over the course of these proceedings, several Defendants have been dismissed either due to settlements or summary judgment. On September 8, 2020, the Court approved a settlement agreement between Plaintiffs and the eight then-remaining Defendants with respect to response costs incurred in connection with the 2013 ASAOC, which was limited to vapor intrusion risks at the Site. Doc. #1172. With that agreement completed, the 2013 ASAOC was resolved, leaving only the 2016 ASAOC for adjudication. The Court administratively processed the case until the completion of a feasibility study. Doc. #1188.

In mid-2023, now knowing that the feasibility study would take significantly longer than originally anticipated, Plaintiffs moved for a pretrial conference and a trial setting. Docs. #1194 & 1205. The Court, construing Plaintiffs' requests as a motion to bifurcate the trial on liability, sustained the motion. Doc. #1206. On December 8, 2025, despite the fact that the deadline for motions seeking summary judgment had long since passed, the Court permitted these motions to be filed.

## II. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those

4

portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute

5

about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, a court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

III.     **Analysis**

   A.     **Valley Asphalt's Motion for Partial Summary Judgment on the Issue of Its Liability as an Arranger (Doc. #1497)**

Valley Asphalt's Motion for Partial Summary Judgment seeks a finding that it is not liable as an arranger. CERCLA specifies certain categories of individuals who are liable under the statute. 42 U.S.C. § 9607(a). Among others, liability is imputed to the present owner or operator of a qualifying facility (§9607(a)(1)); any

6

person who owned or operated the facility when hazardous materials were disposed of (§9607(a)(2)); and any person who arranged for disposal of hazardous materials at a qualifying facility (§9607(a)(3)). Plaintiffs are pursuing a theory that Valley Asphalt is liable under all three of these subsections. Doc. #636, PageID #8259, 8565–66. Valley Asphalt's present motion seeks summary judgment on its liability under subsection (a)(3) as an arranger.[1]

Valley Asphalt's argument revolves around the nature of recycled asphalt pavement ("RAP"). RAP, as evidenced by its name, is produced when old asphalt surfaces are ground up and disposed of. The resulting substance can be used in new asphalt production and, indeed, Valley Asphalt supplies asphalt that ranges from 15% RAP to 46% RAP for use in road resurfacing. As Valley Asphalt argues in its motion, RAP is recycled, not disposed of, therefore falling outside of the statutory parameters of §9607(a)(3). Doc. #1497, PageID #62068.

Plaintiffs respond by pointing to a prior ruling in this case in which, they argue, the Court determined that mere placement of RAP onto the land constitutes disposal under CERCLA. Doc. #1518, PageID #63415. They also argue that RAP is not a "useful product" under which Valley Asphalt can invoke the useful product

---

[1] Valley Asphalt's liability under subsection (a)(1) is the subject of one of Plaintiff's motions addressed below. *See infra* Section III.D.

exception and that genuine issues remain regarding whether Valley Asphalt intended to dispose of RAP, thereby foreclosing summary judgment. *Id.* at PageID #63417–20.

Plaintiffs reference a September 23, 2019, Decision in which the Court denied summary judgment to Valley Asphalt. Doc. #1070. In the prior motion, Valley Asphalt raised, but the Court did not address, the useful product argument. *Id.* at PageID #40670. Instead, the Court relied on testimony showing that the size of the RAP pile had grown over the years to determine that there were open questions surrounding the circumstances under which Valley Asphalt received the RAP. *Id.* at PageID #40670–71.

Valley Asphalt's argues that this prior decision does not foreclose their present motion because the facts the Court relied on, the growing size of the pile and the fact that the pile had begun sprouting trees due to its static longevity, are no longer reflective of the RAP pile. Doc. #1497, PageID #62067.

Like many aspects of CERCLA litigation, caselaw interpreting arranger liability is sparse. Yet it is clear that the relevant question when determining arranger liability is one of mental state. *United States v. Cello-Foil Prods., Inc.*, 100 F.3d 1227, 1231 (6th Cir. 1996). In other words, the court, when sitting as factfinder in this case, must determine whether, when Valley Asphalt received the RAP, it was with the mindset that it would dispose of some or all the material. *Id.* at 1232. This

8

determination can be difficult to make at times but can be inferred from the totality of the circumstances. *Id.* at 1231.

The useful product exception is a logical corollary to this subsection of CERCLA. Under subsection (a)(3), liability attaches to entities that make arrangement to *dispose* of hazardous materials. If, however, the hazardous material is conferred, sold, or otherwise transferred for the purpose of continued use, than it cannot be said that it was part of an arrangement to be disposed of, and, therefore, not subject to (a)(3) liability. *AM Intern., Inc. v. Intern. Forging Equip. Corp.*, 982 F.2d 989, 998–99 (6th Cir. 1993).

Valley Asphalt argues that there is a lack of evidence pointing to the idea that it intended to dispose of the RAP and, conversely, that it has made a sufficient showing that RAP is managed as a valuable commodity. Doc. #1497, PageID #62070. Much of this argument is premised on facts that have come into being since the 2019 ruling in which the Court determined there was sufficient evidence to foreclose summary judgment.

To succeed in its motion, Valley Asphalt must show that no reasonable factfinder could believe that it took possession of the RAP with the intent to dispose of it. The actions it took increasing its usage of RAP and decreasing the size of the

9

RAP pile[2] between 2019 and 2026 are evidence of a present mindset to use RAP. But the Court is not convinced that such late-breaking evidence is sufficient to conclusively establish Valley Asphalt's mindset during the relevant period in which they obtained the RAP such that a reasonable jurist could not find for Plaintiffs. As such, a reasonable factfinder could find in favor of Plaintiffs on the issue and determine that Valley Asphalt has arranger liability under subsection (a)(3) of CERCLA. Therefore, Valley Asphalt's Motion for Partial Summary Judgment, Doc. #1497, is OVERRULED.

## B. Waste Management's Motion for Summary Judgment on the Issue of Its Liability as a Transporter (Doc. #1498)

Waste Management has brought a motion seeking summary judgment on the issue of its liability as a transporter. Doc. #1498. Transporter liability, outlined in 42 U.S.C. §9607(a)(4), extends to any entity who transported hazardous substances for disposal at sites that the entity selected. Plaintiffs have alleged that Waste Management is liable as successor to Container Services, and that Container Services (1) "accepted hazardous substances for transport to and disposal at the

---

[2] Plaintiffs have not conceded that the RAP pile has shrunk in recent years, only that it has moved location within parcel 5054. Doc. #1518, PageID #63409. The Court makes no finding on this factual question and simply assumes it to be true for the purposes of Valley Asphalt's motion.

10

Site," and (2) "selected the Site for disposal of hazardous substances." Doc. #636, PageID #8254.

Waste Management's motion argues that no factfinder could reasonably find that Waste Management selected the SDD for disposal of hazardous substances. Further, it argues that such a determination would run contrary to reason as Waste Management would have been required to pay a fee to dispose of materials at the SDD when no such fee would be necessary if it dumped materials at its own dump located a few miles away.

Plaintiffs spend much of their responsive brief arguing that Waste Management's witnesses, upon whom it makes its factual arguments, are incompetent to testify about key facts. Plaintiffs also argue that Container Services was a partial owner of the air curtain destroyer at the Site. Because of this fact, they posit, Container Services' economic incentives would have changed when the air curtain destroyer became operable: rather than paying to bring waste to SDD, it would have been paid "to bring waste to SDD, as long as some of it was burned in the air curtain destroyer." Doc. #1517, PageID #63389. Further, because Container Services was bringing at least some burnable waste to burn at the SDD, it also

would have brought non-burnable waste, intended to be disposed of at the Site, because the two categories would have been commingled.[3]

Waste Management disputes many of the factual assertions that Plaintiffs make. For example, it claims that Container Services was not an owner of the air curtain destroyer and that it took McCall waste to the Powell Road Landfill, not the SDD. Finally, it argues that any McCall waste that went to the SDD went there because McCall selected the destination, not Waste Management.

One common difficulty in CERCLA cases is the lack of direct evidence due to the passage of time. This case is no different. Here, the parties have the unenviable responsibility of determining what events occurred more than a half century ago and trying to present evidence of those events to the Court. While the parties still dispute certain details, for the purpose of this motion, the Court must view the evidence in the light most favorable to Plaintiffs and draw all reasonable inferences in favor of them, as Plaintiffs are the party against whom the motion is directed.

As stated, to make out a valid case that Waste Management is liable as a transporter, Plaintiffs must show that Waste Management transported hazardous

---

[3] ConAgra's opposition brief makes it clear that they oppose any finding that McCall directed Container Services to dispose of hazardous materials at the SDD. Doc. #1521, PageID #63723. Given the analysis of Waste Management's motion contained herein, the Court declines to make such a finding at this time.

12

materials and that it selected the SDD to dispose of those materials. In his deposition, Container Services' owner Robert Aldridge testified that when the county opened its first incinerator in 1970, Container Services closed its own landfill. Doc. #882, PageID #26310–11. In fact, Mr. Aldridge testified that "When the incinerator time come [sic], they closed all the landfills." *Id.* at PageID #26312–13. Further, Mr. Aldridge testified that Container Services hauled waste from McCall until at least 1971 when he sold the company. Driver Joseph Smart testified in his deposition that the waste which Container Services hauled from McCall contained ink buckets. Doc. #1513, PageID #63189.

However, because it appears Mr. Smart worked for Container Services in the mid- to late-60s, it would take an inference to conclude that Container Services continued hauling ink after his employment ended. *Id.* at PageID #63183–84. Given the deferential posture of a summary judgment motion, the court finds it reasonable to believe a factfinder could make that inference. Therefore, the Court finds that for the purpose of defeating a summary judgment motion, Plaintiffs have provided sufficient evidence to at least create a material dispute whether Container Services hauled hazardous waste to the SDD.

Yet Plaintiffs' burden is not yet complete. They must also show that there is a material dispute surrounding whether Container Services selected the SDD for the disposal of waste. On this point, Plaintiffs argue that Container Services partly

owned the air curtain destroyer and, with financial incentive to use it, would have disposed of non-burnable waste at SDD as well. Doc. #1517, PageID #63387. Waste Management rejects the assertion that Container Services was a partial owner of the air curtain destroyer.

Plaintiffs rely on an assertion from Mr. Aldridge: "So I don't know if we owned 25 percent of it or half of it or what, but I'm sure we wasn't [sic] over there doing it for nothing. You know, we had some kind of arrangement to use it or buy it or buy into it." Doc. #882, PageID #26235. Yet Mr. Aldridge's testimony is far from unequivocal. While stating his belief that Container Services had an ownership stake, he admitted that Larry Brannon would have made any such deal and that he (Mr. Aldridge) did not have personal knowledge. Doc. #882, PageID #26234–35.

Whether Container Services partially owned the incinerator is not dispositive on its own. Instead, it is simply evidence that would go toward the ultimate issue: whether Container Services selected the SDD for disposal of hazardous waste. On this question there is a dearth of direct evidence. In fact, Plaintiffs and Waste Management each point out that the other cannot provide evidence on the issue. See Doc. #1498, PageID #62320–21 ("Plaintiffs cannot establish that Container Services selected the Site.); Doc. #1517, PageID #63390 ("WMO suggests that McCall selected SDD, but there is no evidence of that; nor is there any evidence that any customer directed Container Services where to take its waste.").

14

Assuming that the facts presented in the briefing were presented at trial, the Court would be left having to make one inference or another: either Container Services selected the SDD for disposal of waste or its customers directed Container Services to dispose at the SDD. In the Court's view, both inferences would be considered reasonable.

As reiterated, the question at this stage is not whether Plaintiffs have proven their factual claims by a preponderance of the evidence. It is only whether the inferences they ask the Court to make are reasonable. The Court finds that at this stage and with the record presented before it, these inferences are indeed reasonable. It is reasonable to believe that Container Services disposed of waste at the SDD and that they selected the SDD as the destination of that waste. For that reason, Waste Management's Motion for Summary Judgment, Doc. #1498, is OVERRULED.

C.     **Plaintiffs' Motion for Partial Summary Judgment on the Presence of Certain Hazardous Substances at the South Dayton Dump (Doc. #1499)**

In order to prove their claims under CERCLA, one element that Plaintiffs must prove is that hazardous substances were found at the relevant site. Federal Regulations promulgated by the EPA, in accordance with CERCLA, have identified specific substances and chemicals that are defined as "hazardous." 42 U.S.C. §9601(14); §9602; 40 C.F.R. §302.4.

15

Plaintiffs argue that summary judgment is justified because there is no genuine issue of material fact regarding whether the following substances are present at the South Dayton Dump:

> 1,1,1-trichloroethane (TCA), acetone, arsenic, barium, benzene, cadmium, carbon tetrachloride, chloride, chlorobenzene, chromium, cobalt, copper, cyanide, cyclohexane, ethylbenzene, lead, manganese, 2-butanone (methyl ethyl ketone) (MEK), mercury, methylene chloride, 4-methyl-2-pentanone (methyl isobutyl ketone) (MIBK), naphthalene, nickel, polycyclic aromatic hydrocarbons (PAHs), PCBs, dioxins and furans (PCDD/PCDF), tetrachloroethene (PCE), phenols, selenium, silver, sodium, trichloroethene (TCE), toluene, xylene, and zinc.

In response, Defendants do not oppose a ruling strictly limited to the presence or absence of these substances at the Site. Doc. #1520, PageID #63717. However, they seek to ensure that the ruling is constrained to that issue and does not link any of the defendants to any of the hazardous substances.

The Court agrees that there is no material issue remaining on the question of whether those substances outlined above are present or were detected at the Site. Therefore, the Court SUSTAINS Plaintiffs' motion on the issue. This ruling is limited to the presence of the substances and makes no finding on any alleged connection between any of the substances and any of the Defendants.

### D.    Plaintiffs' Motion for Summary Judgment on Valley Asphalt's Liability as an Owner and Operator (Doc. #1500)

Plaintiffs' second motion seeks summary judgment on Valley Asphalt's liability as an owner or operator of a qualifying facility. Doc. #1500, PageID #62699.

16

As described above, CERCLA specifies certain categories of individuals who are liable under the statute. 42 U.S.C. § 9607(a). Plaintiffs' motion explicitly states that they seek a finding as to Valley Asphalt's liability under subsection (a)(1) only: whether Valley Asphalt presently owns all or a portion of the Site. Doc. #1500, PageID #62699 n.1.

As a basis for that finding, they argue that deposition testimony, as well as a March 21, 2013, Administrative Order issued by the EPA, present unrebutted evidence that Valley Asphalt owns parcel 5054 within the Site. Doc. #1500, PageID #62700–01. Plaintiffs also argue that Valley Asphalt, in briefing a summary judgment motion in 2018, judicially admitted to ownership of parcel 5054 and must, therefore, be held to that admission now. *Id.* at PageID #62702–04. In response, Valley Asphalt argues that briefing on a prior motion does not constitute a judicial admission and is not binding on their current and future arguments. Doc. #1519, PageID #63709.

By arguing the legal point of whether prior briefing constitutes a binding judicial admission, Valley Asphalt chooses to forgo challenging the factual representations Plaintiffs bring forward. In 2018, Valley Asphalt's experts, Dr. Ram and Dr. Gerbig, coauthored an expert report discussing Valley Asphalt's liability. Doc. #906-1. In this report, Valley Asphalt's ownership of parcel 5054 is treated as a foregone conclusion. *See, e.g., Id.* at PageID #31422 ("Contaminated soil and

17

drummed waste identified and then removed from the Valley Asphalt property (Parcel 5054) in 2000."); *Id.* at PageID #31435 ("In 2012, vapor intrusion investigations were completed at the Site in 33 buildings, including 7 buildings on Valley Asphalt Property (1901 and 1903 Dryden Road, Parcel 5054)…"); *Id.* at PageID #31439–40. Likewise, the deed that Plaintiffs submitted shows that in 1993, Valley Asphalt purchased parcel 5054. Doc. #1500, PageID #62839–43.

In short, the Plaintiffs have provided unrebutted evidence showing that Valley Asphalt owns parcel 5054. As parcel 5054 is located within the Site, this evidence is sufficient to show that there is no genuine issue of material fact remaining on the question of whether Valley Asphalt is an owner of a portion of the site. As such, Plaintiffs motion for summary judgment on Valley Asphalt's Liability as an owner or operator under 28 U.S.C. §9607(a)(1), Doc. #1500, is SUSTAINED. Consistent with prior rulings, this decision is constrained to this form of liability only and should not be construed as a determination as to Valley Asphalt's potential liability under §9607(a)(2) or (a)(3).

## IV.    Conclusion

For the reasons stated herein, Valley Asphalt's Motion for Partial Summary Judgment, Doc. #1497, is OVERRULED; Waste Management's Motion for Summary Judgment, Doc. #1498, is OVERRULED; Plaintiffs' Motion for Partial Summary

18

Judgment, Doc. #1499, is SUSTAINED; and Plaintiffs' Motion for Summary Judgment, Doc. #1500, is SUSTAINED.


Date: February 20, 2026

*Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE