IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,

     Plaintiffs,

v.

DAYTON POWER AND LIGHT
COMPANY, et al.,

     Defendants.

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART
CONAGRA'S MOTION IN LIMINE TO LIMIT THE TESTIMONY OF DR. JEFFREY V.
DAGDIGIAN (DOC. #1463); OVERRULING DEFENDANTS' MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF DR. DAVID STRADLING (DOC. #1466);
OVERRULING VALLEY ASPHALT'S MOTION IN LIMINE TO EXCLUDE OR LIMIT
TESTIMONY FROM PLAINTIFFS' EXPERT JEFFREY SMITH (DOC. #1467);
OVERRULING PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DEFENDANTS'
EXPERTS' TESTIMONY ON FACT WITNESS CREDIBILITY (DOC. #1472);
OVERRULING PLAINTIFFS' MOTION TO FILE SUR-REPLY (DOC. #1528); AND
SUSTAINING IN PART AND OVERRULING IN PART CONAGRA'S MOTION IN
LIMINE TO PRECLUDE PLAINTIFFS FROM PURSUING THE FORFEITED VEIL
PIERCING ARGUMENT AGAINST CONAGRA (DOC. #1559)

---

This case is before the Court on several pending motions. First is a Motion in

Limine to Limit the Testimony of Dr. Jeffrey V. Dagdigian, filed by Defendant

ConAgra Grocery Products Company, LLC ("ConAgra"). Doc. #1463. Plaintiffs filed

a response in opposition to the motion, Doc. #1494, and ConAgra filed a reply in

support of its motion. Doc. #1507.

Second is a collective motion filed by all then-five present Defendants[1] entitled as a Motion in Limine to Exclude the Testimony of Dr. David Stradling. Doc. #1466. Plaintiffs filed a response to Defendants' motion, Doc. #1495, and Defendants filed a reply in support of their motion. Doc. #1508. After the close of briefing, Plaintiffs filed a Motion for Leave to File Sur-reply, Doc. #1528. Defendants filed a response in opposition, Doc. #1541, and Plaintiffs filed a reply in support of their motion. Doc. #1550. However, because the underlying motion is adequately decided without the aid of the sur-reply, Plaintiffs' motion, Doc. #1528, is OVERRULED.

Third, Defendant Valley Asphalt Corporation ("Valley Asphalt") filed a Motion to Exclude or Limit Testimony from Plaintiffs' Expert Jeffrey Smith. Doc. #1467. Plaintiffs filed a response in opposition, Doc. #1496, and Valley Asphalt filed a reply in support of its motion. Doc. #1510.

Fourth, Plaintiffs filed a Motion in Limine to Exclude Defendants' Experts' Testimony on Fact Witness Credibility. Doc. #1472. Responses in opposition to Plaintiffs' motion were filed by ConAgra, Doc. #1489, and Defendant Waste

---

[1] Defendant Sherwin Williams is included in this group of five current Defendants. Subsequent to this motion's briefing, it was reported to the Court that Sherwin Williams and Plaintiffs have reached a settlement.

2

Management of Ohio ("WMO"). Doc. #1491. Plaintiffs filed a reply in support of their motion. Doc. #1512.

Fifth, ConAgra filed a Motion in Limine to Preclude Plaintiffs from Pursuing the Forfeited Veil Piercing Argument Against ConAgra. Doc. #1559. Plaintiffs filed a response in opposition to the motion, Doc. #1566, and ConAgra filed a reply in support of its motion. Doc. #1569.

All of these motions are fully briefed and ripe for review. For the reasons contained herein, ConAgra's Motion in Limine to Limit the Testimony of Dr. Jeffrey V. Dagdigian, Doc. #1463, is SUSTAINED IN PART and OVERRULED IN PART; Defendants' Motion in Limine to Exclude the Testimony of Dr. David Stradling, Doc. #1466, is OVERRULED; Valley Asphalt's Motion to Exclude or Limit Testimony from Plaintiffs' Expert Jeffrey Smith, Doc. #1467, is OVERRULED; Plaintiffs' Motion in Limine to Exclude Defendants' Experts' Testimony on Fact Witness Credibility, Doc. #1472, is OVERRULED; Plaintiffs' Motion for Leave to File Sur-Reply, Doc. #1528, is OVERRULED; and ConAgra's Motion in Limine to Preclude Plaintiffs from Pursuing the Forfeited Veil Piercing Argument Against ConAgra, Doc. #1559, is SUSTAINED IN PART and OVERRULED IN PART.

## I.    Procedural and Factual Background

Plaintiffs seek contribution from numerous defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980

3

("CERCLA"), 42 U.S.C. § 9613(f), for response costs incurred at the South Dayton Dump and Landfill Site ("SDD" or "site").

Plaintiffs' claims stem from two settlement agreements they entered into with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC"). These ASAOCs required Plaintiffs to perform certain work at the site, including investigation and testing of the contamination.

On September 8, 2020, the Court approved a settlement agreement between Plaintiffs and the eight remaining Defendants with respect to response costs incurred in connection with the 2013 ASAOC, which was limited to vapor intrusion risks at the Site. Doc. #1172. With that agreement completed, the 2013 ASAOC was resolved, leaving only the 2016 ASAOC for adjudication. The Court administratively processed the case until the completion of a feasibility study. Doc. #1188.

In mid-2023, now knowing that the feasibility study would take significantly longer than originally anticipated, Plaintiffs moved for a pretrial conference and a trial setting. Docs. #1194 & 1205. The Court, construing Plaintiffs' requests as a motion to bifurcate the trial on liability, sustained the motion. Doc. #1206.

4

## II.     Legal Standard

### A.     Motions in Limine

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorizes the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Also, pretrial orders often save the parties time and costs in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus.*, Inc., 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp.2d at 846; *Koch*, 2 F. Supp.2d at 1388. If

5

this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp.2d at 846.

### B. Expert Witnesses

Fed. R. Evid. 702, governing expert witness testimony, provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
  (b) the testimony is based on sufficient facts or data;
  (c) the testimony is the product of reliable principles and methods; and
  (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that the trial judge must act as a gatekeeper, excluding expert witness testimony that is not both relevant and reliable. *Id.* at 589. Relevant testimony is that which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. P. 401.

Expert witness testimony must also rest on a reliable foundation. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008). Reliable evidence is

6

"supported by appropriate validation." *Daubert*, 509 U.S. at 590. In determining whether expert witness testimony is sufficiently reliable, the court must focus "on [the] principles and methodology, not on the conclusions they generate." *Id.* at 595. Factors to be considered include "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94).

When a party moves to exclude expert witness testimony, an evidentiary hearing is not necessarily required. *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

### III. Analysis

#### A. ConAgra's Motion in limine to Limit the Testimony of Dr. Jeffrey V. Dagdigian (Doc. #1463).

ConAgra argues that Dr. Dagdigian should be barred from testifying that McCall's printing operations generated waste containing magazines and paper, office trash, cardboard, and wood skids, because these opinions deviate from Plaintiffs' original expert, Dr. Jurgen Exner. Doc. #1463, PageID #58848. A comparison of Dr. Exner's opinion and the one issued by Dr. Dagdigian show that they are identical. *Compare* Doc. #1270-12, PageID #46779 *with* Doc. #1347-2, PageID #50859. ConAgra's basis for the exclusion is an admission by Dr. Exner that

magazines, paper, office trash, cardboard, and wood skids do not contain hazardous substances. Doc. #886, PageID #27362.

In the prior Decision permitting the substitution of experts, the Court stated that the "substitute witnesses are restricted from deviating from the opinions contained in Dr. Exner's and Mr. Mullin's reports, as well as from consistent opinions based on new evidence, site conditions, or trial testimony." Doc. #1297, PageID #48404. This Decision was issued with the goal of limiting all parties from using the witness substitutions as a justification to expand the issues. Where new facts, new testimony, and changing site conditions lead to new opinions which could not have been foreseen by the original witness, it would be inequitable to constrain that new testimony. However, where the issues and facts were known to the original witness and that witness chose not to pursue a given theory, a substitute witness cannot now try to draw forth that forfeited opinion.

For this reason, the Court will not permit Dr. Dagdigian to testify that those materials listed above contain hazardous substances barring any sort of showing that new evidence has emerged to which Dr. Exner was not aware. Yet, the Court also notes that an admission by Dr. Exner that those items did not contain hazardous substances is not akin to an admission that McCall's waste stream did not include those items. The Court will permit Dr. Dagdigian to testify that McCall generated waste that included magazines, paper, office trash, cardboard, and wood

8

skids as consistent with Dr. Exner's testimony. However, Dr. Dagdigian will not be permitted to change Dr. Exner's position and now argue that those items contained hazardous substances.

As to ConAgra's second point, it identifies that Dr. Dagdigian's opinion listing the hazardous substances created by McCall adds three items that Dr. Exner's opinion lacked: PCBs, TCE, and 1,1,1-TCA.[2] Doc. #1463, PageID #58848. Of these three substances, only PCBs are at issue. Plaintiffs argue for the inclusion of Dr. Dagdigian's McCall PCB opinion because it is consistent with Dr. Exner's opinions and, if extraneous, the differences are harmless.

Often, when a court determines that substitution of expert witnesses is called for, the new witnesses are confined to testimony that is "substantially similar" to that of the witness who is unavailable. *See In re Davol, Inc.*, No. 2:18-md-2846, 2021 WL 3286439 (S.D. Ohio Aug. 1, 2021); *Whiteside v. State Farm Fire & Cas. Co.*, No. 11-10091, 2011 WL 5084981 (E.D. Mich. Oct. 26, 2011); *Hilber v. Malley's Candies,*

---

[2] On January 31, 2019, Dr. Exner issued a supplemental declaration stating that he had reviewed a new report and was now of the opinion that McCall had disposed of TCE and TCA. Doc. #975-1. On September 23, 2019, the Court ruled that those opinions were permitted to be argued by Plaintiffs going forward. Doc. #1069. Dr. Exner's new declaration was premised on the discovery of new facts—a 1975 report authored by the National Institute for Occupational Safety and Health—justifying a change in his opinion. As explained *infra*, if a party can show that new facts, new testimony, or changing site conditions lead to new opinions which could not have been foreseen by the original witness, a substitute witness may be permitted to deviate from the original witness's opinions.

9

*Inc.*, 1:22-cv-02305, 2025 WL 3029615 (N.D. Ohio Oct. 30, 2025). The same is true in this case.

This issue is one of framing and can be viewed differently depending upon the perspective one takes. From a top level, both Dr. Exner and Dr. Dagdigian have offered the opinion that the waste stream generally includes hazardous waste. If one takes a more granular view, they might see that both listed a number of compounds that constituted hazardous waste and Dr. Dagdigian's list contained an additional substance: PCBs.

As the *Davol* court identified, one expert will never present opinions exactly identical to another. *In re Davol*, 2021 WL 3286439, at *3. "The substantial similarity inquiry requires substantial similarity, not perfect similarity, and prohibits opinions that are contrary to or inconsistent with those presented by the original expert." *Id.* (quotation omitted). While the Court will continue to ensure that the replacement experts do not deviate excessively from the original experts, the Court does not believe that, in most cases, a granular, line-by-line, comparison is necessary. However, the Court recognizes that Dr. Exner did not explicitly state that PCBs were a hazardous substance found in the waste stream. The Court does not believe that "substantially similar" opinions in this context encompasses adding a new hazardous substance to an opposing party's waste stream.

10

Dr. Exner stated in his report that his "work has included a wide range of pollutants in soil, water, and ground water" including "Polychlorinated biphenyls (PCBs)." Doc. #1270-12, PageID #46772. Despite this familiarity, his report did not list PCBs as one of the hazardous wastes contained in McCall's waste stream. *Id.* at PageID #46779. PCBs are a substance which Dr. Exner was familiar with and chose to exclude from his report. Plaintiffs have not provided an explanation for why Dr. Exner's exclusion of PCBs should be overlooked, such as the discovery of new evidence or a change in the conditions of the Site.

It appears to the Court that Dr. Dagdigian's attempt to add PCBs to this list now is an attempt to bolster its case against ConAgra by adding an additional substance which it claims it is responsible for. Therefore, Dr. Dagdigian's opinion regarding PCBs is a deviation from Dr. Exner's opinion, with no identifiable justification. Thus, his opinions about PCBs in relation to ConAgra are excluded.

Therefore, the Court will SUSTAIN IN PART and OVERRULE IN PART ConAgra's Motion in Limine to Limit the Testimony of Dr. Jeffrey V. Dagdigian. Doc. #1463. Specifically, Dr. Dagdigian may testify that McCall's waste stream included magazines, paper, office trash, cardboard, and wood skids, but may not testify that one or more or all of those items constituted or contained hazardous waste. Additionally, he is barred by testifying about PCBs in relation to McCall and ConAgra, but may testify as to TCE and 1,1,1 TCA. However, to preserve the record,

11

the Court will permit Plaintiffs to proffer Dr. Dagdigian's testimony relating to PCBs at trial.

### B.  Defendants' Motion in Limine to Exclude the Testimony of Dr. David Stradling (Doc. #1466)

Defendants collectively filed a motion in limine seeking to exclude Plaintiffs' expert, Dr. David Stradling, from testifying at trial. Doc. #1466. They base the motion on the argument that Dr. Stradling's report and anticipated testimony is merely a recitation of facts given by other sources, and that he does not apply any independent expert analysis. Instead, Defendants argue that Dr. Stradling encroaches upon the role of the factfinder by focusing his report on deciphering the reliability of witnesses and evidence and synthesizing factual evidence presented by others to create a narrative.

In opposition, Plaintiffs argue that Dr. Stradling has not and is not attempting to render an opinion of other witnesses' credibility, nor is he merely recapping existing evidence as a layman could. Doc. #1495. Instead, they argue that he reviewed voluminous records, articles, reports, and transcripts and used his experience and training in historical research to help contextualize the history of the Site and of Dayton's industrial past. Nor, they argue, did he render improper opinions on witness credibility. While he may have developed his own opinions about other witnesses' credibility, they were not proffered and used only in his own mind when weighing differing sources.

Expert historians are no strangers to CERCLA litigation. *See Foster v. United States*, 130 F. Supp. 2d 68, 72 n.6 (D.D.C. 2001). In a case like this, where the arguments will center on activities that occurred more than a half-century ago, understanding the history of the region may be important. That said, expert witnesses are intended to provide context and explain facts that may be helpful to a factfinder. But expert witnesses are not "mouthpieces" from which a party may provide closing arguments from the witness stand. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liability Lit.*, 45 F. Supp. 3d 724, 741 (N.D. Ohio 2014) (citing *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002)).

While the Court certainly has a duty to ensure that expert testimony complies with Fed. R. Evid. 702, the Court also recognizes that "[t]he 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial." *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004). A "trial judge sitting alone is presumed capable of weighing evidence to sift the important from the unimportant, and even the admissible from the inadmissible when those are intertwined in a way that might counsel excluding the same evidence from consideration by a lay jury." *UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 387 (E.D. Mich. 2006). Certainly, during a bench trial, the court can never rely on expert witness testimony that does not satisfy the requirements of Fed. R. Evid. 702. Nevertheless, rather than excluding challenged expert witness testimony

13

altogether, it often makes sense for the court to hear all of the evidence and then determine how much weight to allot to the given expert witness opinions, if any.

This Court has previously described the improprieties that result from an expert witness opining on the credibility of other witnesses. *See* Doc. #1069, PageID 40649; Doc. #1397, PageID #53022. The Court has also differentiated between opinions concerning another's credibility and opinions about the general nature of human memory. Doc. #1397, PageID #53023. It may turn out that Dr. Stradling's testimony will allow his historical expertise to provide a useful perspective on this case. If so, the Court would be very hesitant to exclude it.

With that in mind, the Court believes that it is prudent to see what Dr. Stradling's testimony will be at trial. Certainly, if his testimony opines on the credibility of other witnesses, Defendants can move to have that testimony stricken. Likewise, if he acts merely as a mouthpiece reciting Plaintiffs arguments or presenting historical facts without any expert analysis, Defendants will be permitted to challenge his testimony at that point. However, because the Court is unable to categorically rule that Dr. Stradling's testimony will not be admissible and helpful, Defendants' Motion in Limine to Exclude the Testimony of Dr. David Stradling, Doc. #1466, is OVERRULED.

14

**C.** **Valley Asphalt Motion in Limine to Exclude or Limit Testimony From Plaintiffs' Expert Jeffrey Smith (Doc. #1467)**

Valley Asphalt has moved to exclude or limit testimony from Plaintiffs' expert Jeffrey Smith. Doc. #1467. It bases this request on the notion that "Mr. Smith does not have any affirmative opinions relevant to the issue of which parties may be responsible for disposal of hazardous substances at the South Dayton Dump ("SDD")." Doc. #1467, PageID #59449. Rather, it argues that Mr. Smith's opinions "relate to the scope and cost of potential remedies that might be selected by U.S. EPA to remediate SDD." *Id.* In other words, it argues that Mr. Smith's opinions are only relevant to the second phase of this case: allocation.[3] Valley Asphalt also argues that Mr. Smith's testimony is improper because it infringes upon the role of the Court as gatekeeper of the admissibility of evidence and as the ultimate factfinder. Doc. #1467, PageID #59450.

Plaintiffs agree that several portions of Mr. Smith's report are not relevant to this phase of the case. Doc. #1496, PageID #61501. Specifically, Plaintiffs admit that opinions 1, 3, and 4, as well as conclusions 2, 4, and 5, are not relevant until the allocation phase. *Id.* However, Plaintiffs argue that opinions 2, 5, 6, 7, 8,  and 9, as well as conclusions 1 and 3, are relevant to the liability phase. *Id.* at PageID #61502—

---

[3] Valley Asphalt notes that co-Defendants Dayton Power & Light Company, ConAgra, and Waste Management join it in seeking to exclude Mr. Smith on this first basis. Doc. #1467, PageID #59450 n.1.

15

07. Plaintiffs further argue that Mr. Smith's testimony does not improperly intrude into the role of the Court.

The Court agrees with Plaintiffs that the mere fact that a witness comments on another witness's methodology does not generate an implication that the testimony is improper. Plaintiffs are well within their right to attempt to refute Valley Asphalt's witness with one of their own. That rebuttal witness may, in turn, attempt to explain deficiencies in the expert's testimony, whether it be though improper methodology or incomplete information. Yet, as this Court has reiterated periodically in this case, the breadth of appropriate testimony does not extend as far as legal relevance or credibility determinations.

In many cases, whether a witness is testifying as to another's credibility or merely whether their methodology is proper can be a difficult issue. Certainly, a witness is forbidden from commenting that another witness, testifying in court, appeared to lack credibility. On the other hand, it would be proper for a rebuttal witness to explain that an expert failed to adhere to industry standard methodology or failed to account for certain data points.

In this case, the Court need not undertake a rigorous parsing of Mr. Smith's potential testimony at this time. As explained above, because this case will not be heard by a jury, the Court can determine during the trial which portions of Mr. Smith's testimony properly opines about other experts' methodology, and which

16

portions improperly opine on credibility. *See UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 387 (E.D. Mich. 2006).

Though Plaintiffs admit that several of Mr. Smith's opinions and conclusions are not germane to the present phase of the case, they argue that others are relevant and should be permitted. Plaintiffs provide specific arguments on each opinion and conclusion they intend to use at trial, but these arguments boil down to the proposition that Mr. Smith will testify regarding constituents of potential concern (COPC) and explain how the presence and concentration of certain COPCs make it more likely that certain Defendants contributed hazardous waste to the Site. Valley Asphalt's reply memoranda argues that his testimony goes to allocating response costs, given that his report seems to focus on what methods of remediation will ultimately be necessary.

While the predominance of Mr. Smith's testimony may be in determining a fair allocation of remediation costs, his opinions can still be relevant to the initial determination regarding which entities are liable at all. The Court has previously sustained a motion finding that certain substances are present at the Site. Doc. #1568, PageID #66938–39. In that ruling, the Court explained that the presence of the substances alone did not link any of the Defendants to any of the substances. For that, Plaintiffs will need to provide additional evidence.

17

It may turn out that Mr. Smith provides evidence to span that missing link. If he has information regarding concentrations of substances that make it more or less probable that any particular Defendant contributed hazardous substances, then that testimony will be relevant to this phase of this case and will be permitted. Yet, the Court will not permit Mr. Smith, or any other witness, to present evidence irrelevant to the binary determinations whether a Defendant is liable or not. The allocation of liability is not yet at issue, and Plaintiffs, nor any other party, cannot argue that any entity should shoulder more of a burden than any other entity at this stage.

In summary, Mr. Smith will be permitted to testify about the presence or absence of specific substances in an effort to show that certain Defendants are liable. To the extent that he has relevant knowledge and expertise, he may critique other experts' methodology, but may not directly opine on credibility. Should Mr. Smith's testimony cross the line into an area which Valley Asphalt believes to be inadmissible, it may object and renew its motion to exclude at the relevant time. At this point, however, Valley Asphalt's Motion to Exclude or Limit Testimony from Plaintiffs' Expert Jeffrey Smith, Doc. #1467, is OVERRULED.

### D. Plaintiffs' Motion in Limine to Exclude Defendants' Experts' Testimony on Fact Witness Credibility (Doc. #1472)

Plaintiffs seek to exclude testimony from ConAgra's expert David Hagen and WMO's expert Christopher Wittenbrink on the basis that both witnesses "explicitly

18

or implicitly opined on the credibility of fact witnesses." Doc. #1472, PageID #59692. The crux of Plaintiffs' arguments is that both experts engage in improper witness credibility determinations, infringing upon the Court's role as factfinder. Both ConAgra and WMO filed responses arguing that their respective experts have not engaged in and will not be testifying about credibility determinations. Docs. #1489, 1491. Their position is that, while the experts may have made independent credibility determinations while writing their reports, such determinations are not improper and do not justify exclusion, especially when the testimony they will present is focused on their own conclusions, and not on other experts' credibility.

Strictly speaking, Plaintiffs' request to prevent experts from testifying about other witnesses' credibility is a request that is easily sustained. The Court has made it clear that it will not allow witnesses to testify as to others' credibility. Yet, it is not convinced that credibility is the subject matter upon which Mr. Hagen and Mr. Wittenbrink will be called to testify. Both witnesses have compiled expert reports, in which they have reviewed the evidence presented to them, including depositions, statements, and reports of other witnesses. In order to produce a report, the experts necessarily had to look at the evidence and, when there are conflicts, make determinations about which accounts to credit and which to discredit. Ultimately, the report includes details explaining why they lean on certain sources of information and shirk others.

19

In a case like this, where the Court sits as factfinder, there is a presumption that it will be able to decipher which portions of testimony are permissible and which portions are improper. All parties are aware that witnesses cannot testify as to others' credibility as ConAgra and WMO recognize here. *See* Doc. #1489, PageID #61143 ("ConAgra has been clear that it intends to call Mr. Hagen about his technical opinions and his opinions regarding the flaws in Plaintiffs' expert opinions, which are consistent with the Court's prior rulings precluding opinions about witness credibility."); Doc. #1491, PageID #61252. However, the Court also sees a distinction between credibility testimony and the type of personal credibility determinations that these two witnesses (not to mention many others) made in the drafting of their reports. To the extent that Plaintiffs, or any other party, believes that a witness's personal credibility determination was unfounded and led to a flawed report or opinion, that matter is better handled via a probing cross-examination, as well as a possible motion to strike all or a portion of that witness's testimony.

Should either witness attempt to testify as to another witness's credibility, Plaintiff may object and move to bar that testimony at the time. However, the Court believes it will be able to make independent credibility determinations and will maintain an understanding that any witness's personal determinations of witness credibility are nothing more than their own opinion. At this time, Plaintiffs' Motion

20

in Limine to Exclude Defendants' Experts' Testimony on Fact Witness Credibility is OVERRULED.

  **E.  Defendant ConAgra's Motion in Limine to Preclude Plaintiffs from Pursuing the Forfeited Veil Piercing Argument Against ConAgra (Doc. #1559)**

  ConAgra's motion in limine seeks to preclude Plaintiffs from attempting to pierce the corporate veil or argue a form of corporate liability inconsistent with the decision in *Bestfoods*. This particular issue revolves around the McCall Corporation which was incorporated in 1968 ("New McCall") and a printing facility in the area. Plaintiffs believe that New McCall was the owner of the printing facility in name only, and that ConAgra's predecessor corporation actually controlled the facility. ConAgra has maintained that neither it nor its predecessor controlled the facility. The Court has previously ruled that the issue of control is one to be determined at trial. Doc. #1397, PageID #53013.

  At this juncture, ConAgra seeks to limit the methods under which it may be held liable for the operations at the printing facility. The first of these potential avenues is by seeking indirect liability by piercing the corporate veil. *United States v. Bestfoods*, 524 U.S. 51, 62 (1998). However, this method is often required to be presented in the factual pleadings. *Baseball at Trotwood, LLC v. Dayton Professional Baseball Club*, No. C-3-98-260, 2003 WL 25566103, *26 n.32 (S.D. Ohio Sept. 2, 2003) (Rice, C.J.); *Scarbrough v. Perez*, 870 F.2d 1079, 1084 (6th Cir. 1989).

21

Plaintiffs did not plead such facts and do not contest that they are foreclosed from pursuing this avenue of liability.

Plaintiffs may also pursue direct liability for ConAgra consistent with the decision in *Bestfoods*. In *United States v. Bestfoods*, the Supreme Court of the United States analyzed the differences between direct and indirect liability of corporate entities within the context of CERCLA litigation. 524 U.S. 51 (1998). In determining whether a parent corporation has direct liability:

> The question is not whether the parent operates the subsidiary, but rather whether it operates the facility, and that operation is evidenced by participation in the activities of the facility, not the subsidiary. Control of the subsidiary, if extensive enough, gives rise to indirect liability under piercing doctrine, not direct liability under the statutory language.

*Bestfoods*, 524 U.S. at 68 (quotation omitted). Simply put, the question of parent liability hinges on whether that parent operated the facility directly or whether it merely operated the subsidiary which, in turn, operated the facility.

The *Bestfoods* Court recognized that this question would come down to the facts unique to each case:

> Just as we may look to such norms in identifying the limits of the presumption that a dual officeholder acts in his ostensible capacity, so here we may refer to them in distinguishing a parental officer's oversight of a subsidiary from such an officer's control over the operation of the subsidiary's facility. "[A]ctivities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct

liability." Oswald 282. The critical question is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are [unconventional or unusual] under accepted norms of parental oversight of a subsidiary's facility.

*Id.* at 71–72 (quoting Lynda Oswald, *Bifurcation of the Owner and Operator Analysis under CERCLA*, 72 WASH. U.L.Q. 223, 282 (1994)).

In this case, Plaintiffs will be required to prove that ConAgra's predecessor exercised direct control over the printing facility, rather than merely activities "consistent with the parent's investor status." ConAgra points to a handful of statements Plaintiffs made in their trial brief as evidence that Plaintiffs will try to establish liability by showing their predecessor had control over New McCall. Doc. #1559, PageID #66375. For example, Plaintiffs argue that "New McCall was 'not an operating business from 1968 through 1975,' was 'simply a shell entity,' and that it did not 'conduct any business of its own accord.'" *Id.* (quoting Doc. #1479, PageID #60169–71).

In the Court's view, these statements appear to go toward the issue of whether New McCall was actually operating the printing facility or, alternatively, whether ConAgra's predecessor was. Plaintiffs can present evidence and argument that ConAgra's predecessor controlled the Dayton printing facility, and may have direct liability consistent with *Bestfoods*. However, Plaintiffs will not be able to establish liability based on a showing that the predecessor controlled New McCall

23

which, in turn, controlled the printing facility, nor on a theory of piercing the corporate veil.

To the extent that this Decision agrees with ConAgra's motion as titled, but does not grant the breadth of relief that it seeks, ConAgra's Motion in Limine to Preclude Plaintiffs from Pursuing the Forfeited Veil Piercing Argument Against ConAgra, Doc. #1559, is SUSTAINED IN PART and OVERRULED IN PART.

## IV.    Conclusion

For the reasons contained herein, ConAgra's Motion in Limine to Limit the Testimony of Dr. Jeffrey V. Dagdigian, Doc. #1463, is SUSTAINED IN PART and OVERRULED IN PART; Defendants' Motion in Limine to Exclude the Testimony of Dr. David Stradling, Doc. #1466, is OVERRULED; Valley Asphalt's Motion to Exclude or Limit Testimony from Plaintiffs' Expert Jeffrey Smith, Doc. #1467, is OVERRULED; Plaintiffs' Motion in Limine to Exclude Defendants' Experts' Testimony on Fact Witness Credibility, Doc. #1472, is OVERRULED; Plaintiffs' Motion to File Sur-Reply, Doc. #1528, is OVERRULED; Plaintiffs' Motion to File Sur-Reply, Doc. #1528, is OVERRULED; and ConAgra's Motion in Limine to Preclude Plaintiffs from Pursuing the Forfeited Veil Piercing Argument Against ConAgra, Doc. #1559, is SUSTAINED IN PART and OVERRULED IN PART.

24

Date: March 27, 2026

**WALTER H. RICE**
**UNITED STATES DISTRICT JUDGE**
(Reviewed by Judge Rice prior to his
signature being affixed)