IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, et al.,   :

      Plaintiffs,

    v.                 :

DAYTON POWER AND LIGHT
COMPANY, et al.,

      Defendants.      :

Case No. 3:13-cv-115

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART CONAGRA'S MOTION IN LIMINE TO ADMIT THE STORY OF NORTON SIMON, INC., AS AN ANCIENT DOCUMENT (DOC. #1577); OVERRULING THE JOINT MOTION IN LIMINE TO EXCLUDE DECLARATIONS AS SUBSTANTIVE EVIDENCE, FILED BY WASTE MANAGEMENT OF OHIO ("WMO") AND CONAGRA (DOC. #1578); OVERRULING PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DEPOSITION TESTIMONY OF DR. JURGEN EXNER FROM TRIAL (DOC. #1579); SUSTAINING WMO'S MOTION IN LIMINE TO EXCLUDE 2012 DEPOSITION TESTIMONY OF JAMES SOUTH (DOC. #1581); AND SUSTAINING IN PART AND OVERRULING IN PART WMO'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO DISMISSED ENTITIES AND TO CONTAINER SERVICES' RELATION TO THE AIR CURTAIN DESTROYER (DOC. #1582).

---

This case is before the Court on several pending motions. First is a Motion in Limine to Admit the Story of Norton Simon, Inc., as an Ancient Document filed by ConAgra Grocery Products Company, LLC ("ConAgra"). Doc. #1577. Plaintiffs filed a response in opposition to the motion, Doc. #1588, and ConAgra filed a reply in support of its motion. Doc. #1626.

Second is a joint Motion in Limine to Exclude Declarations as Substantive Evidence filed by ConAgra and Defendant Waste Management of Ohio, Inc. ("WMO"). Doc. #1578. Plaintiffs filed a response to the motion, Doc. #1587, and Defendants filed a reply in support of their motion. Doc. #1628.

Third, Plaintiffs filed a Motion in Limine to Exclude Deposition Testimony of Dr. Jurgen Exner from Trial. Doc. #1579. ConAgra and WMO filed a joint response in opposition to the motion, Doc. #1586, and Plaintiffs filed a reply in support of their motion. Doc. #1630.

Fourth, WMO filed a Motion in Limine to Exclude 2012 Deposition Testimony of James South. Doc. #1581. Plaintiffs filed a response in opposition to the motion, Doc. #1591, and WMO filed a reply in support of its motion. Doc. #1629.

Fifth, WMO filed a Motion in Limine to Exclude Evidence Relating to Dismissed Entities and to Container Services' Relation to the Air Curtain Destroyer. Doc. #1582. Plaintiffs filed a response in opposition to the motion, Doc. #1590, and WMO filed a reply in support of its motion. Doc. #1627.

All these motions are fully briefed and ripe for review. For the reasons contained herein, ConAgra's Motion in Limine to Admit the Story of Norton Simon, Inc., as an Ancient Document, Doc. #1577, is SUSTAINED IN PART and OVERRULED IN PART; the joint Motion in Limine to Exclude Declarations as Substantive Evidence, filed by WMO and ConAgra, Doc. #1578, is OVERRULED; Plaintiffs'

2

Motion in Limine to Exclude Deposition Testimony of Dr. Jurgen Exner from Trial, Doc. #1579, is OVERRULED; WMO's Motion in Limine to Exclude 2012 Deposition Testimony of James South, Doc. #1581, is SUSTAINED; and WMO's Motion in Limine to Exclude Evidence Relating to Dismissed Entities and to Container Services' Relation to the Air Curtain Destroyer, Doc. #1582, is SUSTAINED IN PART and OVERRULED IN PART.

## I.  Procedural and Factual Background

Plaintiffs seek contribution from numerous defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f), for response costs incurred at the South Dayton Dump and Landfill Site ("SDD" or "site").

Plaintiffs' claims stem from two settlement agreements they entered into with the United States Environmental Protection Agency ("EPA"): (1) Administrative Settlement Agreement and Order on Consent for Removal Action ("2013 ASAOC"); and (2) Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 and Operable Unit 2 ("2016 ASAOC"). These ASAOCs required Plaintiffs to perform certain work at the site, including investigation and testing of the contamination.

On September 8, 2020, the Court approved a settlement agreement between Plaintiffs and the then-eight remaining Defendants with respect to response costs

3

incurred in connection with the 2013 ASAOC, which was limited to vapor intrusion risks at the Site. Doc. #1172. With that agreement completed, the 2013 ASAOC was resolved, leaving only the 2016 ASAOC for adjudication. The Court administratively processed the case until the completion of a feasibility study. Doc. #1188.

In mid-2023, now knowing that the feasibility study would take significantly longer than originally anticipated, Plaintiffs moved for a pretrial conference and a trial setting. Docs. #1194 & 1205. The Court, construing Plaintiffs' requests as a motion to bifurcate the trial on liability, sustained the motion. Doc. #1206.

## II. Legal Standard

### A. Motions in Limine

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorizes the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

4

Also, pretrial orders often save the parties time and costs in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus.*, Inc., 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp.2d at 846; *Koch*, 2 F. Supp.2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp.2d at 846.

### B.  Expert Witnesses

Fed. R. Evid. 702, governing expert witness testimony, provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that the trial judge must act as a gatekeeper, excluding expert witness testimony that is not both relevant and reliable. *Id.* at 589. Relevant testimony is that which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. P. 401.

Expert witness testimony must also rest on a reliable foundation. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008). Reliable evidence is "supported by appropriate validation." *Daubert*, 509 U.S. at 590. In determining whether expert witness testimony is sufficiently reliable, the court must focus "on [the] principles and methodology, not on the conclusions they generate." *Id.* at 595. Factors to be considered include "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94).

When a party moves to exclude expert witness testimony, an evidentiary hearing is not necessarily required. *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

### III.   Analysis

####   A.   ConAgra's Motion in Limine to Admit the Story of Norton Simon, Inc., as an Ancient Document (Doc. #1577)

ConAgra seeks a ruling admitting a document entitled "Growth and Social Responsibility, the Story of Norton Simon, Inc." Doc. #1577, PageID #67596. This document is a 1973 published version of a speech delivered by David Mahoney at the National Dinner of the Newcomen Society in North America on October 26, 1972. Because the written version was published in 1973, ConAgra seeks to admit the writing as an ancient document under Fed. R. Evid. 901(b)(8) and 803(16).

In response, Plaintiffs argue that the document in question is not authentic because it was not found "in a place where, if authentic, it would likely be." Doc. #1588; Fed. R. Evid. 901(b)(8). In particular, they take issue with the fact that ConAgra located the speech on the internet, without producing a witness who can independently verify the authenticity of the speech.

One of the most common ways that a document can be authenticated is though the testimony of a witness who has knowledge that the item is what it is claimed to be. Fed. R. Evid. 901(b)(1). However, the Rule also lists an alternative for the authentication of an ancient document. Under this subsection, the authenticating party must show that it:

7

(A) is in a condition that creates no suspicion about its authenticity;

(B) was in a place where, if authentic, it would likely be; and

(C) is at least 20 years old when offered.

Fed. R. Evid. 901(b)(8).

Plaintiffs point to a Fifth Circuit case to demonstrate that courts are generally skeptical of documents sourced from the internet. Doc. #1588, PageID #70210; *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 582 (5th Cir. 2022). In *Weinhoffer*, the court stated that "[w]here a website or electronic source is concerned, 'testimony by a witness with direct knowledge of the source, stating that the exhibit fairly and fully reproduces it, may be enough to authenticate.'" *Weinhoffer*, 23 F. 4th at 582 (quoting *Thompson v. Bank of America Nat'l Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015)). Though neither *Weinhoffer* nor *Thompson* identify which subsection of Rule 901 they are applying in making their authenticity determination, it appears that both decisions are apply the example located in subsection 901(b)(1). This is bolstered by the recognition that neither case appears to discuss internet sources in the context of ancient documents.[1] In cases like *Thompson* and *Weinhoffer*, focused on items which cannot be considered ancient documents, it is

---

[1] Plaintiffs also offer a case from this district in which the court approvingly cited *Weinhoffer*. *Schwartz v. Hall Ins. Grp. Inc.*, No. 1:23-cv-374, 2024 WL 4335509 (S.D. Ohio Sept. 27, 2024) (Litkovitz, C.M.J.). Like both *Weinhoffer* and *Thompson*, *Schwartz* did not involve a scenario in which the ancient document subsection of Rule 901 was invoked.

8

understandable that a court may require a witness to testify to authenticate the item.

This document is different. Here, the document in question appears to be a photocopy of a 1973 book which itself claims to be a publishing of a 1972 speech. The Court believes there is strong evidence that the book is at least 20 years old, and the fact that it was digitized in 2019 does not alter the conclusion that the document meets this element.[2] Likewise, as the Court reviews the submitted document, it appears to be in a condition that does not create suspicion about its authenticity, with one minor caveat. The submitted exhibit contains five boxes which appear to highlight certain words. *See* Doc. #1577-1, PageID #67610 (blue box highlighting "McCall Corporation"); PageID #67614 (grey box highlighting "McCall Corporation"); PageID #67615 (three blue boxes all highlighting "McCall Pattern"). The highlighting boxes appear similar to boxes that may populate into a document if it is being text-searched. Given that these slight alterations appear to alter the document, albeit minimally, the Court believes that the best course of action would be to submit a non-highlighted version if such a version exists.

---

[2] In the Court's view, the fact that it was digitized relatively recently is immaterial. Undertaking the work to scan a book into a more permanent medium is more akin to a photocopy or duplication. The critical question is when the work was created, not when it was duplicated into a digital format.

9

Moreover, the Court is satisfied that the document is in a place in which it would likely be if it is authentic. The document was located on the Internet Archive, a forum which has been recognized for hosting and sharing historical recordings and digital educational materials. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 954 (2005) (Breyer, J., Concurring).

In summary, the Court finds that the document ConAgra has submitted, "Growth and Social Responsibility, the Story of Norton Simon, Inc.," is authentic under Fed. R. Evid. 901(b)(8) and is what it appears to be. However, because the document appears to contain five boxes highlighting specific terms that do not appear to be original, the Court requests that a "clean" copy without these boxes be submitted into evidence. As an ancient document, it is also considered an exception to hearsay under Fed. R. Evid. 803(16), and the Court finds that it is admissible at trial. ConAgra's motion is SUSTAINED IN PART and OVERRULED IN PART, in that it will be admitted upon submission of a version without the highlighted boxes.

### B. WMO's and ConAgra's Joint Motion in Limine to Exclude Declarations as Substantive Evidence (Doc. #1578)

WMO and ConAgra seek to exclude several declarations by David A. Grillot, Edward R. Grillot, Cecil Hunter, Richard Hunter, and Michael Wendling on the basis that they are inadmissible hearsay. Doc. #1578, PageID #67624. Moreover, they seek to exclude declarations by Edward and David Grillot on the additional reasoning

10

that they are relevant to the issue of wooden pallets, an issue which this Court has excluded from trial. *Id.*

Plaintiffs make several points in response. First, they argue that many of the declarations were adopted by the witnesses when they were later deposed. Additionally, they argue that the Court should not definitively rule out the use of the declarations, as they may become necessary to impeach a witness or refresh a witness's memory.

As an initial consideration, the Court does recognize the potential hearsay issues that are presented by the use of the various declarations. Despite being sworn and signed declarations, they are out-of-court statements and, if used for the truth of the matter asserted, will need an identifiable hearsay exception to be permitted. Whether or not they were "adopted" by the witness at a subsequent deposition does not alter that status as hearsay.

Plaintiffs state that at least one declarant, Richard Hunter, will not be able to testify at trial. As such, it appears that they will attempt to introduce portions of his deposition as substantive evidence under Fed. R. Evid. 804(b)(1). Plaintiffs also state that Mr. Hunter's declaration was given on April 3, 2019, in advance of his April 30, 2019, deposition, and clarify that Mr. Hunter repeated the content of his declaration in his deposition. Having reviewed both the April 3 declaration, Doc. #1010-2, and the April 30 deposition, Doc. #1030, it appears that Mr. Hunter's declaration was

11

effectively adopted in the subsequent deposition. Importantly, this permitted the substance of the declaration to be examined by the opposing party under oath as the April 30 deposition was attended by attorneys representing both WMO and ConAgra. Doc. #1030, PageID #38964. Therefore, his deposition testimony may be admissible, because it falls into a recognized exception to the hearsay rule, Fed. R. Evid. 804(b)(1), but his declaration itself does not fall within that exception.

Ultimately, the Court can imagine a number of scenarios in which one party or another might attempt to use a prior witness declaration despite any hearsay objections. For one, if a witness testifies in a manner inconsistent with their declaration, a party may attempt to use that declaration to impeach that witness. For another, a party may attempt to use a declaration to rehabilitate their witness. At this stage, the permutations are simply too many to be able to forecast the potential ways in which any particular declaration may be used. For that reason, the Court is very hesitant to conclusively exclude declarations at this point.

In their reply memorandum, Defendants also raise the concern that Plaintiffs may attempt to use the declarations improperly under Rule 612 or attempt to admit them under Rule 803(5). While these concerns are noted, it is premature for the Court to take any action at this point. Should the issue arise at trial, the Court expects that Defendants will re-raise their objection and all parties involved will be in a better position to determine the proper course of action. However, without

12

knowing the particular facts and circumstances surrounding how, or whether, Plaintiffs employ Rule 612 or 803(5), the Court can only assure Defendants that it will be cognizant of their concern and will ensure that the rules are applied properly.

The Court turns now to the portions of the declarations that relate to pallets. There is no question that the Court has conclusively established that the pallets themselves are not hazardous materials for the purpose of present litigation. Doc. #1177. However, if Plaintiffs can make an argument that discussion of the pallets is relevant to a viable theory of liability, they may present that evidence. To provide a hypothetical illustration, if Plaintiffs have evidence that pallets displaying the name of a defendant were at SDD, and that those pallets carried hazardous materials, the evidence would be admissible against that defendant because it would tend to bear on its connection with hazardous material. However, Plaintiffs could not present that evidence if the only theory was that the pallet itself contained hazardous material.

In summary, it is premature to make any determination about the use of Plaintiffs' witnesses' prior declarations. Once trial is underway, the parties will be able to put forth their justification for attempting to use the declarations and the Court will be able to determine whether the uses are permissible under Fed. R. Evid. 612, 801, 803, 804, or some other Rule. As such, WMO's and ConAgra's joint Motion

in Limine to Exclude Declarations as Substantive Evidence, Doc. #1578, is OVERRULED.

### C. Plaintiffs' Motion in Limine to Exclude Deposition Testimony of Dr. Jurgen Exner From Trial (Doc. #1579)

Plaintiffs seek an order barring Defendants from using previous testimony of Dr. Jurgen Exner at trial. Doc. #1579. Prior to Dr. Exner's retirement, he served as an expert witness for Plaintiffs. However, in 2024, the Court permitted Plaintiffs to enter substitute experts for Dr. Exner. Doc. #1297. Because Dr. Exner has been replaced and will not be called by Plaintiffs, they seek an Order finding that no party may use Dr. Exner's deposition transcripts.

According to Plaintiffs, Sixth Circuit precedent forecloses the ability of Defendants from using Dr. Exner. Moreover, they claim that his deposition testimony is inadmissible hearsay under Fed. R. Evid. 801(c) and cannot be used to impeach any other expert under Fed. R. Evid. 613(a). Defendants WMO and ConAgra argue that Dr. Exner's prior testimony is admissible under Fed. R. Civ. P. 32 and Fed. R. Evid. 804(a)(5)(A) and (b)(1).[3]

Plaintiffs point to *Olmstead* to support their assertion that the Sixth Circuit generally does not permit a party to call an opposition expert. Doc. #1579, PageID

---

[3] WMO and ConAgra cite to "Fed. R. Evid. 802(a)(5)(A) and (b)(1)," which do not exist. Doc. #1586, PageID #70192. The Court presumes that the parties intended to cite to Rule 804 and interprets their arguments accordingly.

14

#67634; *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 899 (N.D. Ohio 2009). In *Olmstead*, the issue before the court was whether a witness who had been redesignated from a testifying witness to a non-testifying witness may be deposed by the opposition. *Olmstead*, 657 F. Supp. 2d at 902. *Olmstead* cited an unpublished Sixth Circuit case for the proposition that "the Sixth Circuit does not allow a party to call another party's expert as a witness." *Id.* at 904 (citing *Zvolensky v. Ametek, Inc.*, 142 F.3d 438 (6th Cir. 1998) (unpublished table decision)).

Yet, the Court does not read *Zvolensky* quite as broadly as *Olmstead* may imply. The case involved a witness who, by stipulation of the parties, had been rendered non-testifying. The opposing party, evidently unhappy with their stipulation, attempted to call the expert as a fact witness anyway. The Sixth Circuit found that the district court had not abused its discretion in denying the witness's testimony at trial. In part, the court viewed that ruling as a natural extension to the protection of trial preparation documents. *Zvolensky*, 142 F.3d 438 at *2 ("Generally, non-testifying experts are protected from discovery so as to allow a party to feel free to hire and consult with such experts without risking exposing certain information to the opposing party. *See* Fed. R. Civ. P. 26(b)(4)(B). Likewise, the same reasoning would apply to prevent the opposition party from calling as a witness at trial that same expert. *See, e.g., Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984).").

Other courts within this circuit have recognized that the holding in *Zvolensky* applies to consulting experts, not testifying experts. *See, e.g., Niles v. Owensboro Med. Health Sys., Inc.*, No. 4:09-cv-61, 2011 WL 3439278 (W.D. Ky. Aug. 5, 2011). For example, the *Niles* court determined that the issue of "whether a party may utilize the testimony of an opposing party's expert once that expert has been deposed" is governed by Fed. R. Evid. 403, not by Fed. R. Civ. P. 26. *Niles*, 2011 WL 3439278 at *1. Likewise, *Tipton* analyzed both *Olmstead* and *Zvolensky* but found both cases' Rule 26 analysis inapplicable. *Tipton v. Union Tank Car Co.*, No. 3:15-cv-311, 2018 WL 116516749 (E.D. Tenn. Mar. 5, 2018).

This Court agrees with the analysis in both *Niles* and *Tipton*. Dr. Exner was properly deposed years ago while he was classified as a testifying witness. Whether his testimony may be used now is a question to be determined by Fed. R. Evid. 403, as well as any applicable hearsay rules.

ConAgra and WMO posit that Dr. Exner's deposition testimony falls into a recognized exception to the general hearsay rule as former testimony made by a declarant who is unavailable. Fed. R. Evid. 804(b)(1). Plaintiffs argue that Rule 804(b)(1) does not apply in this instance because they did not have the "similar motive" to develop his testimony. Doc. #1630, PageID #76519. Specifically, they mention that they "had no incentive to cross-examine him at his deposition on matters for which Defendants might plan to *affirmatively* use his testimony." *Id.*

16

(emphasis in original). However, Rule 804(b)(1) requires only a "similar motive" to develop testimony, not an identical motive. *See United States v. Salerno*, 505 U.S. 317, 326 (Blackmun, J. concurring); Fed. R. Evid. 804(b)(1)(B). Though Plaintiffs may be able to point to some difference between their motivations during the deposition and now, the motivations are substantially similar in that Plaintiffs were motivated to prove Defendants' liability.

Defendants cannot rely on an assertion that they lacked motive to develop testimony because they expected to call Dr. Exner at trial. Such an assertion would render Rule 804 largely moot in the very situations for which it was written: the unavailability of a witness. However, this situation is also unique in that the Court permitted the substitution of Dr. Exner as a witness with the intent that the new witnesses would become the focal point of the issues to which Dr. Exner was scheduled to testify. Yet, the Court believes this can be adequately compensated for when weighing the testimony and evidence at the conclusion of the trial. The Court finds that, although Plaintiffs did not anticipate the future unavailability of Dr. Exner, they nonetheless had opportunity and motive to address any unfavorable testimony during his deposition. The Court finds that Dr. Exner's deposition testimony is excepted from the hearsay rule as former testimony made by a declarant who is unavailable for trial.

17

Nonetheless, this is not the end of the analysis. To be admissible, the testimony must comply with Fed. R. Evid. 403. Under this Rule, evidence is excluded only if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, concern that it would be misleading, cause undue delay, waste time, or if it would needlessly present cumulative evidence. Plaintiffs argue that the "cumulative and misleading nature of duplicative expert testimony substantially outweighs any probative value that Dr. Exner's testimony might have." Doc. #1579, PageID #67635. Defendants state that it is impossible to weigh the cumulative nature of the testimony at this point without knowing what testimony may be admitted. Doc. #1586, PageID #70192.

The Court agrees. Without knowing what testimony gets introduced at trial, it is impossible to gauge whether Dr. Exner's testimony will be needlessly cumulative such that it might get excluded under Rule 403. Therefore, Plaintiffs' Motion in Limine to Exclude Deposition Testimony of Dr. Jurgen Exner, Doc. #1579, is OVERRULED at this time, without prejudice to renewal during trial if Plaintiffs believe that his testimony violates Rule 403.

The Court adds one final note on Dr. Exner's testimony. One point that Plaintiffs make in their motion is that Defendants may not use Dr. Exner's testimony to impeach Plaintiffs' replacement experts. This is true. Fed. R. Evid. 613(a) permits examining a witness about their own prior statement and Fed. R. Civ. P. 32(a)(2)

18

outlines the use of depositions to contradict or impeach a witness using their own prior testimony. Neither of these rules, however, permit a party to impeach a witness using a deposition given by another.

Though ConAgra and WMO do not directly address or attempt to refute this point, they do hypothesize that Dr. Exner's testimony may be necessary in the event that a party objects to Plaintiffs' replacement experts as having testified outside their permissible scope. Doc. #1586, PageID #70192–93. The Court recognizes the distinction that Defendants draw and will permit the testimony to be used in arguing such an objection but will not permit it to be used as impeachment against the replacement experts.

### D. WMO's Motion in Limine to Exclude 2012 Deposition Testimony of James South (Doc. #1581)

WMO seeks an Order finding that a 2012 deposition from James South is inadmissible as to it. Doc. #1581. In 2012, Mr. South was deposed in an earlier, related case, *Hobart v. Waste Management of Ohio*, Case No. 3:10-cv-195 (S.D. Ohio) ("*Hobart I*"). In that case, which also involved the South Dayton Dump, Industrial Waste Disposal Co. ("IWD") was named as a defendant, but Container Services, Inc. ("Container Services") was not.

WMO argues that the use of Mr. South's 2012 deposition testimony is barred under Fed. R. Civ. P. 32(a) and Fed. R. Evid. 804(b)(1)(B). Doc. #1581, PageID #67689. Federal Rule of Civil Procedure 32(a)(8) governs the use of depositions taken in an

19

earlier action. It provides that the earlier deposition may be used in a later action if the later action involves "the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 32(a)(8).

Federal Rule of Civil Procedure 32(a)(1)(A) provides that, at a hearing or trial, a deposition may be used against a party only if "the party was present or represented at the taking of the deposition or had reasonable notice of it." The deposition may only be used "to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying." Fed. R. Civ. P. 32(a)(1)(B). Federal Rule of Evidence 804(b)(1) provides that former testimony is not excluded as hearsay if the declarant is unavailable as a witness and it is offered against a party or its predecessor-in-interest who had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination."

*Hobart I* involved the same subject matter and many, but not all, of the same parties as the instant litigation. Notably, Container Services was not a party to that action. WMO argues that Mr. South's 2012 deposition cannot be used at trial because Container Services was not represented at that deposition. Attorney William Harbeck was present at Mr. South's deposition, representing WMO in its capacity as successor-in-interest to IWD. At that time, he was unaware that

20

Container Services was related to WMO. Accordingly, he did not object to any of the questions that were asked about Container Services, nor did he make any attempt to develop Mr. South's testimony through cross-examination. Doc. #1454.

WMO argues that, because Mr. Harbeck had no motive or incentive to thoroughly cross-examine Mr. South about his statements concerning Container Services, Mr. South's testimony is inadmissible. *See Morrow v. Community Health Sys., Inc.*, 3:16-cv-1953, 2017 WL 2691563, at *2 (W.D. Tenn. June 22, 2017) (not allowing use of deposition from prior case involving no party with the same motivation to cross-examine the deponent); *Schimpf v. Gerald, Inc.*, 52 F. Supp. 2d 976, 983 (E.D. Wis. 1999) (excluding prior deposition testimony where there was no motive, at the time, for defendant's attorney to thoroughly cross-examine deponent).

Mr. South's 2012 deposition testimony cannot be used against Container Services at trial because it was not present or represented at the taking of the deposition. In 2012, Mr. Harbeck was representing WMO as successor-in-interest to IWD only and had no motive to develop testimony with respect to Container Services. Under Fed. R. Civ. P. 32(a), Mr. South's 2012 deposition testimony is therefore inadmissible against Container Services at trial. For the same reasons, the deposition testimony falls outside the scope of the hearsay exception set forth in Fed. R. Evid. 804(b)(1)(B).

21

Plaintiffs' only response to WMO's motion is that the motion is moot. As they see it, the deposition testimony only includes a single reference to Container Services, a reference which has no bearing on the liability of any party. Because the law supports WMO's motion and because Plaintiff does not argue otherwise, WMO's Motion in Limine to Exclude 2012 Deposition Testimony of James South is SUSTAINED, as to WMO as successor-in-interest to Container Services. Any deposition testimony of Mr. South brought forth at trial may still be considered to determine the liability of other parties, but the Court will not use his testimony in deciding whether WMO is liable.

### E.   WMO's Motion in Limine to Exclude Evidence Relating to Dismissed Entities and to Container Services' Relation to the ACD (Doc. #1582)

WMO seeks exclusion of evidence relating to IWD and Blaylock Trucking Co., Inc. ("Blaylock"), as well as evidence that relates to Container Services' alleged liability relating to the Air Curtain Destroyer ("ACD"). Doc. #1582. It bases this request on the fact that the Court previously dismissed IWD and Blaylock from this case with prejudice and dismissed Plaintiffs' claim that Container Services was an owner/operator of the ACD.

Plaintiffs do not refute that IWD and Blaylock have been dismissed with prejudice, nor do they disagree with WMO's assertion that they cannot pursue a theory that Container Services was an owner/operator of the ACD. Instead, they

22

wish to proffer testimony related to these dismissed parties and theories to preserve the issues for appeal.

Fed. R. Evid. 103(b) makes it unnecessary to continue lodging objections after the Court has ruled certain evidence inadmissible or ruled that certain parties are dismissed. At times, this Court has permitted parties to proffer testimony even when it has been ruled inadmissible. *See* Doc. #1614, PageID #74638–39 (permitting Plaintiffs to proffer testimony relating to PCBs). However, the Court has also identified times when proffering to preserve an issue for appeal is not necessary under Fed. R. Evid. 103(b) and will not be permitted. *See* Doc. #1397, PageID #53020. The key difference in the Court's handling of these matters is the extent to which the proffered testimony will extend the trial. The Court may be willing to accommodate a relatively short proffer for the sake of clarifying an appellate record but will be less generous to a party seeking an extensive record relating to claims or evidence this Court has already dismissed or excluded.

It appears from the briefing that Plaintiffs intend to call multiple witnesses for the sole purpose of proffering testimony on claims previously dismissed by the Court. Adding supplemental witnesses whose testimony would only go toward claims and parties outside the current scope of the lawsuit would unnecessarily add to the length of the trial and will not be permitted. The Court understands that many parties are understandably concerned about creating a record from which they can

23

lodge an appeal if the case does not turn out in their favor, but Rule 103 preserves their objections once they have been ruled upon and the parties have no requirement to renew their objections time and time again.

The only remaining theory upon which WMO can be held liable is as a transporter. This would require Plaintiffs to show that WMO selected the SDD for disposal of hazardous waste. Plaintiffs argue that evidence of Container Services' ownership of the ACD will make it more likely that Container Services selected the SDD for disposal of waste, making the evidence relevant to this case. While ownership of the ACD is a disputed topic, Plaintiffs will be permitted to present evidence of ownership for the limited purpose of pursuing the theory that WMO selected the SDD for disposal. Ownership of the ACD will not be considered under any theory that the ACD itself was involved in the creation or disposal of hazardous substances.

Therefore, WMO's Motion in Limine to Exclude Evidence Relating to Dismissed Entities and to Container Services' Relation to the ACD, Doc. #1582, is SUSTAINED IN PART and OVERRULED IN PART. The Court will exclude evidence relating to the dismissed entities IWD and Blaylock[4] and will permit evidence

---

[4] The Court clarifies that this ruling pertains to evidence aimed at alleging that IWD and Blaylock are liable. However, if evidence is produced for the purpose of establishing the liability of another party, but happens to mention IWD or Blaylock, this evidence should not be suppressed but will be considered only for its proper purpose.

24

relating to the ACD only for the purpose of linking ownership to Site selection, not for the purpose of establishing liability via ownership of the ACD.

## IV.    Conclusion

For the reasons contained herein, ConAgra's Motion in Limine to Admit the Story of Norton Simon, Inc. as an Ancient Document, Doc. #1577, is SUSTAINED IN PART and OVERRULED IN PART; the joint Motion in Limine to Exclude Declarations as Substantive Evidence, filed by WMO and ConAgra, Doc. #1578, is OVERRULED; Plaintiffs' Motion in Limine to Exclude Deposition Testimony of Dr. Jurgen Exner from Trial, Doc. #1579, is OVERRULED; WMO's Motion in Limine to Exclude 2012 Deposition Testimony of James South, Doc. #1581, is SUSTAINED; and WMO's Motion in Limine to Exclude Evidence Relating to Dismissed Entities and to Container Services' Relation to the ACD, Doc. #1582, is SUSTAINED IN PART and OVERRULED IN PART.

Date: April 6, 2026

_Walter H. Rice_

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

25